# United States District Court

*for the*

# Eastern District of New York

Case No. 23-cv-09226

IN RE: AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,

*Debtor.*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP) IN 23-70989

## APPELLANT'S APPENDIX
## Volume 1 of 13 (Pages A-1 to A-466)

DANIEL S. BLECK
(*Pro Hac Vice* Pending)
EMILY KANSTROOM MUSGRAVE
(*Pro Hac Vice* Pending)
ERIC R. BLYTHE
(*Pro Hac Vice* Pending)
CATHERINE S. LOMBARDO
(*Pro Hac Vice* Pending)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
dsbleck@mintz.com
ekmusgrave@mintz.com
erblythe@mintz.com
cslombardo@mintz.com

DALLAS G. TAYLOR
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022
(212) 935-3000
dgtaylor@mintz.com

*Counsel for Appellant*

CP COUNSEL PRESS (800) 4-APPEAL • (326870)

UMB BANK, N.A. in its capacity as bond trustee for the Series 2021 Bonds,

*Appellant*,

– v. –

AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY INC. doing business as The Harborside, AMSTERDAM CONTINUING CARE HEALTH SYSTEM, INC., OFFICIAL COMMITTEE OF UNSECURED CREDITORS, LIFE CARE SERVICES COMMUNITIES LLC doing business as LCS Real Estate, KONG-BP AMSTERDAM, LLC and NASSAU COUNTY INDUSTRIAL DEVELOPMENT AGENCY,

*Appellees*,

– and –

UNITED STATES TRUSTEE,

*Trustee*.

## TABLE OF CONTENTS


| | Page |
|---|---|
| Bankruptcy Court Docket Entries ............................ | A-1 |
| Voluntary Petition for Non-Individuals Filing for Bankruptcy, dated March 22, 2023 [Dkt. No. 1] ... | A-97 |
| Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, dated March 23, 2023 [Dkt. No. 12] ........................................................ | A-117 |
| Exhibit A to Emergency Motion - Proposed Interim Order ........................................ | A-152 |
| Exhibit 1 to Proposed Interim Order - DIP Term Sheet ................................................. | A-178 |
| Exhibit 2 to Proposed Interim Order - Approved Budget .............................................. | A-190 |
| Exhibit B to Emergency Motion - Liquidity Support Agreement, dated June 14, 2021 ....................................................... | A-192 |
| Declaration of Michael Morton in Support of the Debtor's Chapter 11 Petition and First Day Motions, dated March 23, 2023 [Dkt. No. 13] ...... | A-203 |
| Exhibit A to Morton Declaration - Committees and Committees' Professionals.......... | A-245 |

| | Page |
|---|---|
| Exhibit B to Morton Declaration - Debtor's Thirty Largest Unsecured Claims | A-246 |
| Exhibit C to Morton Declaration - Top Five Largest Secured Claims | A-250 |
| Exhibit D to Morton Declaration - Unaudited Balance Sheet, dated December 31, 2022 | A-251 |
| Exhibit E to Morton Declaration - Premises Owned or Leased by Debtor | A-256 |
| Exhibit F to Morton Declaration - Location of Debtor's Significant Assets and Records | A-257 |
| Exhibit G to Morton Declaration - Pending or Threatened Litigation Against the Debtor or Its Property | A-258 |
| Exhibit H to Morton Declaration - Summary of the Debtor's Senior Management | A-259 |
| Exhibit I to Morton Declaration - Estimated Payroll 30-days Following Petition Date | A-260 |
| Exhibit J to Morton Declaration - Estimated Payment to Officers and Directors 30-days Following Petition Date | A-261 |
| Exhibit K to Morton Declaration - Schedule of Estimated Cash Receipts, Net Gains or Loss, Obligations, and Receivables Unpaid for 30-Days Following Petition Date | A-262 |
| Exhibit L to Morton Declaration - Insurance Policies List | A-263 |

| | Page |
|---|---|
| Exhibit M to Morton Declaration - The Debtor's Bank Accounts | A-265 |
| Exhibit N to Morton Declaration - Organizational Chart | A-268 |
| Transcript of Proceedings, dated March 24, 2023 | A-269 |
| Letter Regarding Revised Order from Gregory M. Juell to the Honorable Alan S. Trust, dated March 24, 2023 [Dkt. No. 33] | A-327 |
| Exhibit A to Letter - Revised Proposed Interim Order | A-328 |
| Exhibit B to Letter - Redline of Revised Proposed Interim Order | A-345 |
| Letter Regarding Revised Cash Collateral Order from Gregory M. Juell to the Honorable Alan S. Trust, dated March 27, 2023 [Dkt. No. 41] | A-386 |
| Exhibit A to Letter - Revised Cash Collateral Order | A-387 |
| Exhibit B to Letter - Redline Revised Cash Collateral Order | A-404 |
| Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S. Trustee Guidelines, dated March 27, 2023 [Dkt. No. 43] | A-421 |
| Exhibit 1 to Interim Order - List of Bank Accounts | A-433 |

| | Page |
|---|---|
| Exhibit 2 to Interim Order - Cash Management Schematic | A-436 |
| Amended Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S. Trustee Guidelines, dated March 28, 2023 [Dkt. No. 49] | A-438 |
| Exhibit 1 to Amended Interim Order - List of Bank Accounts | A-446 |
| Exhibit 2 to Amended Interim Order - Cash Management Schematic | A-449 |
| Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Further Interim Hearing and (IV) Granting Related Relief, dated March 28, 2023 [Dkt. No. 50] | A-451 |
| Exhibit A to Interim Order - Cash Collateral Budget | A-465 |
| Letter Submitting Second Interim Cash Collateral Order from Gregory M. Juell to the Honorable Alan S. Trust, dated April 4, 2023 [Dkt. No. 58] | A-467 |
| Exhibit A to Letter - Proposed Second Interim Cash Collateral Order | A-468 |
| Exhibit B to Letter - Redline of Proposed Second Interim Cash Collateral Order | A-485 |
| Transcript of Proceedings, dated April 5, 2023 | A-504 |

**Page**


Second Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S. Trustee Guidelines, dated April 6, 2023 [Dkt. No. 66] .......................... A-538

Exhibit 1 to Second Interim Order - List of Bank Accounts .......................................... A-547

Exhibit 2 to Second Interim Order - Cash Management Schematic ................................ A-550

Second Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Further Interim Hearing and (IV) Granting Related Relief, dated April 6, 2023 [Dkt. No. 67] .................................. A-552

Exhibit A to Second Interim Order - Cash Collateral Budget .......................................... A-567

Interim Order Authorizing the Debtor to Pay Certain Prepetition Taxes and Fees, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 6, 2023 [Dkt. No. 68] ......................................................... A-569

| | Page |
|---|---|
| Interim Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 6, 2023 [Dkt. No. 71] | A-573 |
| Second Interim Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 6, 2023 [Dkt. No. 72] | A-578 |
| Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates, dated April 6, 2023 [Dkt. No. 73] | A-583 |
| Notice of Filing of Declaration of Brooke Navarre in Support of Debtor's Motion for Entry of an Order, Pursuant to Section 333(A) of the Bankruptcy Code and Bankruptcy Rule 2007.2, (I) Waiving the Appointment of a Patient Care Ombudsman and (II) Allowing the Debtor to Self-Report, dated April 6, 2023 [Dkt. No. 78] | A-593 |

**Page**

Exhibit A to Notice of Filing - Declaration of Brooke Navarre in Support of Debtor's Motion for Entry of an Order, Pursuant to Section 333(A) of the Bankruptcy Code and Bankruptcy Rule 2007.2, (I) Waiving the Appointment of a Patient Care Ombudsman and (II) Allowing the Debtor to Self-Report, dated April 6, 2023 ........................................................ A-595

Second Interim Order (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fees, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 12, 2023 [Dkt. No. 86] ........................................................ A-609

Interim Order (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance, dated April 12, 2023 [Dkt. No. 87] ........................ A-613

Letter Regarding Agreed-To Objection Deadline Extension from Dallas G. Taylor to the Honorable Alan S. Trust, dated April 13, 2023 [Dkt. No. 89] ........................................................ A-621

Appointment of the Official Committee of Unsecured Creditors, dated April 13, 2023 [Dkt. No. 91] ........................................................ A-622

**Page**

Preliminary Objection of the Trustee to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, dated April 13, 2023 [Dkt. No. 94] ........ A-626

Exhibit A to Preliminary Objection - Comparison of Parent DIP and Trustee DIP .......... A-653

UMB Bank N.A.'s Witness and Exhibit List for the April 17, 2023 Hearing, dated April 14, 2023 [Dkt. No. 96] ........ A-656

Transcript of Proceedings on Emergency Motions, dated April 17, 2023 ........ A-659

Transcript of Proceedings on Pro Hac Vice Motions, dated April 17, 2023 ........ A-716

Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated April 19, 2023 [Dkt. No. 106] ........ A-791

Page

Exhibit A to Debtor's Motion - Bidding Procedures Order ....... A-818

Exhibit 1 to Bidding Procedures Order - Bidding Procedures ....... A-829

Exhibit 2 to Bidding Procedures Order - Auction and Hearing Notice ....... A-840

Exhibit 3 to Bidding Procedures Order - Assignment Procedures ....... A-846

Exhibit 4 to Bidding Procedures Order - Contract Assumption Notice ....... A-852

Exhibit 5 to Bidding Procedures Order - Auction Results Notice ....... A-858

Supplemental Declaration of Michael Morton in Support of the Debtor's DIP Financing Motion and Bid Procedures Motion, dated April 19, 2023 [Dkt. No. 107] ....... A-862

Exhibit A to Morton Declaration - Revised DIP Term Sheet ....... A-874

Exhibit B to Morton Declaration - Redline of DIP Term Sheet ....... A-886

Exhibit C to Morton Declaration - Budget ....... A-900

Exhibit D to Morton Declaration - Liquidity Support Agreement, dated June 14, 2021 (Reproduced herein at pp. A-192-A-202)

Exhibit E to Morton Declaration - Proposed DIP Order ....... A-902

**Page**

Declaration of David Kliewer in Support of the Debtor's Bid Procedures Motion and DIP Financing Motion, dated April 19, 2023 [Dkt. No. 108] ........ A-930

Final Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S. Trustee Guidelines, dated April 21, 2023 [Dkt. No. 113] ........ A-941

Exhibit 1 to Final Order - List of Bank Accounts ........ A-947

Exhibit 2 to Final Order - Cash Management Schematic ........ A-950

Third Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing and (IV) Granting Related Relief, dated April 21, 2023 [Dkt. No. 114] ........ A-952

Exhibit A to Third Interim Order - Cash Collateral Budget ........ A-967

Page

Final Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 21, 2023 [Dkt. No. 115] ...................... A-969

Final Order (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance, dated April 21, 2023 [Dkt. No. 116] ...................... A-972

Final Order (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay all Obligations Arising Thereunder, and (B) Renew, Revise, Extend, Supplement, Change, or Enter Into New Insurance Policies, and (II) Granting Certain Related Relief, dated April 21, 2023 [Dkt. No. 117] ...................................................... A-979

**Page**

Final Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief, dated April 21, 2023 [Dkt. No. 118] ...................... A-982

Final Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information, dated April 21, 2023 [Dkt. No. 119] ....................................................... A-987

Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, undated [Dkt. No. 126] ....................................................... A-991

Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, undated [Dkt. No. 127] ....................................................... A-1131

**Page**

Supplemental Objection of the Trustee to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, dated April 25, 2023 [Dkt. No. 134] ........................................................ A-1164

Declaration of Chad J. Shandler in Support of the Trustee's Objection to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, dated April 25, 2023 [Dkt. No. 135] ........................................................ A-1177

**Page**

Objection of the Trustee to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated April 25, 2023 [Dkt. No. 136] ............................... A-1187

Exhibit 1 to Objection - Redline Comparison of the Bidding Procedures ... A-1207

Declaration of Andrew Turnbull in Support of Trustee's Objection to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (IV) Authorizing (A) the Sale Of The Debtor's Assets Free And Clear Of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated April 25, 2023 [Dkt. No. 137]...................................................... A-1222

**Page**

Declaration of James Davis in Support of the Debtor's DIP Financing Motion, dated April 25, 2023 [Dkt. No. 138] .............................. A-1231

UMB Bank, N.A.'s Witness and Exhibit List for the May 2, 2023 Hearing, dated April 28, 2023 [Dkt. No. 148] ...................................................... A-1235

Response of Amsterdam Continuing Care Health System, Inc. to Bond Trustee Objections to Proposed Debtor-in-Possession Financing, dated April 28, 2023 [Dkt. No. 149] .............................. A-1238

Debtor's Reply in Support of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, dated April 28, 2023 [Dkt. No. 150] ...................................................... A-1247

Exhibit A to Reply - Sponsor DIP Contribution Sheet ............................ A-1266

Exhibit B to Reply - Redline Comparison of Sponsor DIP Contribution Sheet to Revised Sponsor Term Sheet ........................................................................ A-1274

Joint Stipulation Regarding (I) Undisputed Facts and (II) Disputes in Connection with the Debtor's Bid Procedures Motion and DIP Financing Motion, dated May 1, 2023 [Dkt. No. 152] ........... A-1288

**Page**

Letter Regarding Revised Final DIP Order from Gregory M. Juell to the Honorable Alan S. Trust, dated May 1, 2023 [Dkt. No. 155] ......................... A-1300

Exhibit A to Letter - Revised Final DIP Order ....................................... A-1301

Exhibit B to Letter - Redline Comparison of Revised Final DIP Order to Proposed Final DIP Order ................................. A-1321

Letter Regarding Revised Proposed Bidding Procedures and Bidding Procedures Order from Gregory M. Juell to the Honorable Alan S. Trust, dated May 1, 2023 [Dkt. No. 156] ......................... A-1354

Exhibit A to Letter - Revised Bidding Procedures Order ....................... A-1356

Exhibit B to Letter - Redline Comparison of the Revised Bidding Procedures Order to the Proposed Bidding Procedures Order .................................................. A-1390

Exhibit C to Letter - Revised Bidding Procedures ................................. A-1429

Exhibit D to Letter - Redline Comparison of the Revised Bidding Procedures to the Proposed Bidding Procedures ... A-1441

Statement of the Official Committee of Unsecured Creditors in Support of the Debtor's Emergency Motions to Obtain Post-Petition Financing and Establish Bidding Procedures, dated May 1, 2023 [Dkt. No. 158] ...................................................... A-1457

Transcript of Proceedings, dated May 2, 2023 .......... A-1462

**Page**

Motion of UMB Bank, N.A. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery Of Amsterdam Continuing Care Health System, Inc., dated May 8, 2023 [Dkt. No. 169] ........ A-1509

Exhibit A to Motion - Definitions of Terms ........ A-1522

Exhibit B to Motion - Deposition Topics ........ A-1529

Exhibit C to Motion - Proposed Order ........ A-1530

Letter Regarding Bidding Procedures Order from Gregory M. Juell to the Honorable Alan S. Trust, dated May 10, 2023 [Dkt. No. 172] ........ A-1534

Exhibit A to Letter - Final Bidding Procedures Order ........ A-1535

Exhibit 1 to Bidding Procedures Order - Bidding Procedures ........ A-1547

Exhibit 2 to Bidding Procedures Order - Auction and Hearing Notice ........ A-1559

Exhibit 3 to Bidding Procedures Order - Assignment Procedures ........ A-1565

Exhibit 4 to Bidding Procedures Order - Contract Assumption Notice ........ A-1571

Exhibit 5 to Bidding Procedures Order - Auction Results Notice ........ A-1577

**Page**

Order Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated May 17, 2023 [Dkt. No. 179] ........ A-1581

Exhibit 1 to Bidding Procedures Order - Bidding Procedures ........ A-1592

Exhibit 2 to Bidding Procedures Order - Auction and Hearing Notice ........ A-1604

Exhibit 3 to Bidding Procedures Order - Assignment Procedures ........ A-1610

Exhibit 4 to Bidding Procedures Order - Contract Assumption Notice ........ A-1616

Exhibit 5 to Bidding Procedures Order - Auction Results Notice ........ A-1622

Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of New England Life Plan Communities Corp., dated May 17, 2023 [Dkt. No. 180] ........ A-1626

Letter Regarding Final DIP Order from Gregory M. Juell to the Honorable Alan S. Trust, dated May 17, 2023 [Dkt. No. 181] ........ A-1629

**Page**

Exhibit A to Letter - Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Granting Related Relief, undated .................... A-1630

Exhibit 1 to Final Order - Term Sheet ........................................................ A-1648

Exhibit 2 to Final Order - Approved Budget .............................................. A-1656

Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Granting Related Relief, dated May 18, 2023 [Dkt. No. 184] ...................................................... A-1658

Exhibit 1 to Final Order - Term Sheet ........................................................ A-1675

Exhibit 2 to Final Order - Approved Budget .................................................. A-1683

The Official Committee of Unsecured Creditors Response to Motion of UMB Bank, N.A. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc., dated May 23, 2023 [Dkt. No. 189] ...................................................... A-1685

**Page**

Debtor's Limited Objection and Reservation of Rights Regarding Motion of UMB Bank, N.A., for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc., dated May 23, 2023 [Dkt. No. 190] ...................... A-1689

Objection of Amsterdam Continuing Care Health System, Inc. to Motion of UMB Bank, N.A. for Entry of Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc., dated May 23, 2023 [Dkt. No. 191] ...................................................... A-1694

Debtor's Application for Entry of an Order Authorizing (i) the Employment and Retention of Ankura Consulting Group, LLC to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (ii) the Designation of Michael W. Morton as the Debtor's Chief Restructuring Officer, effective as of the Petition Date, dated May 23, 2023 [Dkt. No. 192] ............ A-1701

Exhibit A to Application - Proposed Order .................................................... A-1717

Exhibit B to Application - Engagement Agreement, dated March 21, 2013.... A-1721

| | Page |
|---|---|
| Exhibit C to Application - Declaration of Michael W. Morton in Support of the Debtor's Application for Entry of an Order Authorizing (i) the Employment and Retention of Ankura Consulting Group, LLC to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (ii) the Designation of Michael W. Morton as the Debtor's Chief Restructuring Officer, effective as of the Petition Date, dated May 23, 2023 | A-1737 |
| Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Grandbridge Real Estate Capital LLC as Real Estate Broker for the Debtor Effective as of the Petition Date, dated May 23, 2023 [Dkt. No. 193] | A-1762 |
| Exhibit A to Application - Proposed Order | A-1776 |
| Exhibit B to Application - Engagement Agreement, dated September 1, 2022 | A-1779 |
| Exhibit C to Application - Declaration of David Kliewer in Support of Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Grandbridge Real Estate Capital LLC as Real Estate Broker for the Debtor Effective as of the Petition Date, dated May 23, 2023 | A-1784 |
| Letter Regarding Revised Final DIP Order from Gregory M. Juell to the Honorable Alan S. Trust, dated May 24, 2023 [Dkt. No. 201] | A-1798 |
| Exhibit A to Letter - Amended DIP Order | A-1799 |

**Page**

Exhibit 1 to Final Order -
Term Sheet ........................................................ A-1817

Exhibit 2 to Final Order -
Approved Budget .............................................. A-1825

Exhibit B to Letter -
Redline Comparison of Amended DIP Order to
DIP Order ........................................................... A-1827

Order to Vacate, dated May 24, 2023 [Dkt. No. 202] A-1849

Letter Providing Notice of Court Hearing from
Dallas G. Taylor to the Honorable Alan S. Trust,
dated May 25, 2023 [Dkt. No. 204] ....................... A-1880

Omnibus Reply in Support of UMB Bank, N.A.'s
Motion for Entry of an Order Pursuant to
Bankruptcy Rule 2004 Directing the Production
of Documents by and Other Discovery of
Amsterdam Continuing Care Health System, Inc.,
dated June 2, 2023 [Dkt. No. 215] ......................... A-1881

Stipulation and Agreed Order Amending Final
Order (I) Authorizing the Debtor to Obtain DIP
Contribution; (II) Granting Adequate Protection;
(III) Authorizing Use of Cash Collateral; (IV)
Modifying the Automatic Stay; and (V) Granting
Related Relief, dated June 5, 2023 [Dkt. No. 216] A-1890

Stipulation and Agreed Order Amending Final
Order (I) Authorizing the Debtor to Obtain DIP
Contribution; (II) Granting Adequate Protection;
(III) Authorizing Use of Cash Collateral; (IV)
Modifying the Automatic Stay; and (V) Granting
Related Relief, dated June 5, 2023 [Dkt. No. 217] A-1894

Transcript of Proceedings, dated June 6, 2023 .......... A-1898

**Page**

Stipulation and Agreed Order by and Between the Undersigned Parties Amending Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief, dated June 5, 2023 [Dkt. No. 231] A-1951

Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc., dated June 15, 2023 [Dkt. No. 232]. A-1955

Proposed Stipulation Extending Discovery Deadlines and Investigation Period, dated June 29, 2023 [Dkt. No. 248]........................................ A-1959

Proposed Stipulation Governing the Production of Confidential Materials, dated June 29, 2023 [Dkt. No. 249]...................................................... A-1967

Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order, dated July 11, 2023 [Dkt. No. 256]...................................................... A-1985

Exhibit A to Motion - Proposed Order ..................................................... A-1994

Exhibit B to Motion - Otterbourg Invoice, dated June 14, 2023............... A-1997

Exhibit C to Motion - Committee's Objection to Otterbourg Invoice, dated June 21, 2023 .............................................. A-2103

**Page**

Exhibit D to Motion -
Bond Trustee's Objection to Otterbourg Invoice, dated June 22, 2023 ............................................. A-2108

Annexed to Motion -
Notice of Hearing, dated July 11, 2023 ................ A-2112

Bond Trustee's Reservation of Rights, dated July 19, 2023 [Dkt. No. 261] ................................ A-2115

Notice of Designation of Stalking Horse Bidder, dated July 19, 2023 [Dkt. No. 262] ...................... A-2118

Exhibit A to Notice of Designation -
Asset Purchase Agreement, dated July 19, 2023 ... A-2121

Bond Trustee's Objection to the Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order, dated July 19, 2023 [Dkt. No. 263] ........... A-2199

Exhibit A to Objection -
E-mail from James V. Drew to Eric Blythe, dated June 29, 2023, with Preceding E-mail Chain ........ A-2209

The Official Committee of Unsecured Creditors' Objection to Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order, dated July 19, 2023 [Dkt. No. 264] ...................................................... A-2219

Exhibit 1 to Objection -
Spreadsheet Containing the Specific Time Entries that are Subject to the Committee's Objection ...... A-2225

Exhibit 2 to Objection -
Member's Comments to the Proposed DIP Order . A-2231

| | Page |
|---|---|
| *Ex Parte* Motion of the Bond Trustee for Leave to File Under Seal Its Objection to the Debtors Stalking Horse Designation, dated July 24, 2023 [Dkt. No. 271] | A-2253 |
| Exhibit A to *Ex Parte* Motion - Proposed Order | A-2259 |
| Certificate of Service, dated July 24, 2023 [Dkt. No. 272] | A-2262 |
| Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 24, 2023 [Dkt. No. 273] (Reproduced in confidential volume at pp. A-5674-A-5689) | |
| Exhibit 1 to Objection - Agreement for the Sale of Real Property, dated December 18, 2020 (Reproduced in confidential volume at pp. A-5690-A-5739) | |
| Emergency Motion of the Bond Trustee (I) to Compel Production of Documents of Amsterdam Continuing Care Health System, Inc. Pursuant to Bankruptcy Rule 2004(c) and (II) for Entry of an Order Extending the Challenge Period, dated July 24, 2023 [Dkt. No. 274] | A-2268 |
| Exhibit A to Emergency Motion - Proposed Order | A-2282 |
| Exhibit B to Emergency Motion - E-mail from Daniel T. McCarthy to Catherine S. Lombardo, dated July 21, 2023, with Preceding E-mail Chain | A-2286 |

**Page**

Exhibit C to Emergency Motion - E-mail from Erik B. Weinick to Emily Kanstroom Musgrave, dated July 18, 2023, with Preceding E-mail Chain ........................................ A-2298

Exhibit D to Emergency Motion - E-mail from Emily Kanstroom Musgrave to Erik B. Weinick, dated May 26, 2023, with Preceding E-mail Chain ........................................................ A-2307

Exhibit E to Emergency Motion - Excerpts of Transcript of Proceedings, dated June 6, 2023 ........................................................ A-2311

Exhibit F to Emergency Motion - E-mail from Emily Kanstroom Musgrave to Dallas Gray Taylor, dated July 7, 2023, with Preceding E-mail Chain ........................................ A-2314

Exhibit G to Emergency Motion - E-mail from Emily Kanstroom Musgrave to Erik B. Weinick, dated June 17, 2023........................... A-2325

Motion to Shorten Notice on Emergency Motion of the Bond Trustee (I) to Compel Production of Documents of Amsterdam Continuing Care Health System, Inc. Pursuant to Bankruptcy Rule 2004(c) and (II) for Entry of an Order Extending the Challenge Period, dated July 24, 2023 [Dkt. No. 275]....................................................... A-2327

Exhibit A to Motion - Proposed Order ..................................................... A-2332

**Page**

Exhibit B to Motion - Local Rule 9077-1 Affirmation of Dallas G. Taylor in Support of the Bond Trustee's Motion to Shorten Notice on Emergency Motion of the Bond Trustee (I) to Compel Production of Documents of Amsterdam Continuing Care Health System, Inc. Pursuant to Bankruptcy Rule 2004(c) and (II) for Entry of an Order Extending the Challenge Period, dated July 24, 2023 ............ A-2335

Debtor's *Ex Parte* Motion to Seal Reply in Support of Designation of Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 279] ................................ A-2338

Annexed to *Ex Parte* Motion - Proposed Order ..................................................... A-2344

Statement of Life Care Services Communities LLC, d/b/a LCS Real Estate in Support of the Debtor's Designation of a Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 280] ................................ A-2346

*Ex Parte* Motion of the Official Committee of Unsecured Creditors for Leave to File Under Seal Its Response to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 281] ................................ A-2356

Exhibit A to *Ex Parte* Motion - Proposed Order ..................................................... A-2361

Motion of Amsterdam Continuing Care Health System, Inc. to Seal Response to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 282]........... A-2364

| | Page |
|---|---|
| Exhibit A to Motion - Proposed Order | A-2369 |
| Debtor's Statement with Respect to the Motion of Amsterdam Continuing Care Health System, Inc. to Compel Payment of Fees Pursuant to DIP Order, dated July 25, 2023 [Dkt. No. 283] | A-2372 |
| Objection of Amsterdam Continuing Care Health System, Inc. to the Emergency Motion of the Bond Trustee (i) to Compel Production of Documents and (ii) for Entry of an Order Extending the Challenge Period Under Bankruptcy Rule 2004(c), dated July 25, 2023 [Dkt. No. 285] | A-2376 |
| Response of Amsterdam Continuing Care Health System, Inc. to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 291] (Reproduced in confidential volume at pp. A-5740-A-5743) | |
| Exhibit A to Response - Corporate Structure of ACCHS and ANH (Reproduced in confidential volume at pp. A-5744-A-5745) | |
| Transcript of Proceedings, dated July 26, 2023 | A-2385 |
| Transcript of Proceedings, dated July 26, 2023 (Reproduced in confidential volume at pp. A-5746-A-5795) | |
| Proposed Stipulation Extending Discovery Deadlines and Investigation Period, dated August 2, 2023 [Dkt. No. 302] | A-2445 |

| | Page |
|---|---|
| Stipulation Extending Discovery Deadlines and Investigation Period, dated August 2, 2023 and so-ordered August 3, 2023 [Dkt. No. 304] ............ | A-2453 |
| Order Granting the Debtor's Motion to Seal Reply in Support of Designation of Stalking Horse Bidder, dated August 3, 2023 [Dkt. No. 305] ........ | A-2461 |
| Order Granting *Ex Parte* Motion of the Official Committee of Unsecured Creditors for Leave to File Under Seal Its Response to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated August 3, 2023 [Dkt. No. 308] ........ | A-2463 |
| Order Granting Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order, dated August 4, 2023 [Dkt. No. 312] ...................................................... | A-2465 |
| Order Granting The Bond Trustee's Request for Sealed Transcript of July 26, 2023 Hearing, dated August 4, 2023 [Dkt. No. 313] ............................. | A-2467 |
| Order Approving Designation of Life Care Services Communities LLC d/b/a LCS Real Estate as Stalking Horse Bidder, dated August 7, 2023 [Dkt. No. 316] ...................................................... | A-2469 |
| Notice of Filing of Amendments to the Debtor's Schedule E/F and Schedule G, dated August 9, 2023 [Dkt. No. 319] ............................. | A-2471 |
| Annexed to Notice of Filing - Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a), dated August 9, 2023 ............................................ | A-2473 |

**Page**

Exhibit A to Affidavit - Listing of Additions and Amendments to Schedule E/F and Schedule G ............................ A-2474

Exhibit B to Affidavit - Amended Schedules .......................................... A-2478

Exhibit C to Affidavit - Additions to Mailing Matrix ............................. A-2601

Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, dated August 11, 2023 [Dkt. No. 325] ...... A-2603

Exhibit A to Notice - Assignment Procedures ........................................ A-2608

Exhibit B to Notice - List of Executory Contract or Unexpired Lease .... A-2614

Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 14, 2023 [Dkt. No. 328] ............................ A-2618

Exhibit A to Emergency Motion - Proposed Order ..................................................... A-2626

**Page**

The Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 15, 2023 [Dkt. No. 331] ........................... A-2630

*Ex Parte* Motion of the Bond Trustee for Leave to File Under Seal the Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 15, 2023 [Dkt. No. 332] ....... A-2637

Exhibit A to *Ex Parte* Motion - Proposed Order .................................................... A-2642

Order Approving Motion to Shorten Notice on Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estatel (II) Extending Certain Deadlines Established by the Bidding Procedures Order; (III) Granting Related Relief, dated August 16, 2023 [Dkt. No. 333].............................................. A-2645

Order Assigning Matters to Mediation, dated August 16, 2023 [Dkt. No. 335] ........................... A-2647

**Page**

The Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 15, 2023 [Dkt. No. 336] (Reproduced in confidential volume at pp. A-5796-A-5802)

Order Granting the *Ex Parte* Motion of the Bond Trustee for Leave to File Under Seal the Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 18, 2023 [Dkt. No. 340] ............................ A-2652

Omnibus Reply in Support of Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 22, 2023 [Dkt. No. 348]....................................................... A-2654

**Page**

Omnibus Reply of Life Care Services Communities LLC d/b/a LCS Real Estate in Support of Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 22, 2023 [Dkt. No. 350] ............................ A-2661

The Bond Trustee's Objection to the Debtor's Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof, dated August 22, 2023 [Dkt. No. 351] ............................ A-2669

Transcript of Proceedings, dated August 23, 2023 .... A-2681

Letter Regarding Proposed Order Extending Mediation from Gregory M. Juell to the Honorable Alan S. Trust, dated August 30, 2023 [Dkt. No. 370]....................................................... A-2727

Exhibit A to Letter - Order Extending Mediation, undated .................... A-2728

Order Extending Mediation, dated August 31, 2023 [Dkt. No. 373]....................................................... A-2732

Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 31, 2023 [Dkt. No. 375] ............................ A-2735

Declaration of Disinterestedness of Eugene D. Bond, Jr., dated August 31, 2023 [Dkt. No. 381] .. A-2738

**Page**

Declaration of Disinterestedness of Anna Rizzo, dated September 7, 2023 [Dkt. No. 382] ............... A-2741

Declaration of Disinterestedness of Brad Struab, dated September 7, 2023 [Dkt. No. 383] ............... A-2744

Declaration of Disinterestedness of Aryeh (Ari) Rothkopf, CPA, dated September 7, 2023 [Dkt. No. 384] ........................................................ A-2747

Letter Regarding Proposed Order Extending Mediation from Gregory M. Juell to the Honorable Alan S. Trust, dated September 9, 2023 [Dkt. No. 387] ......................... A-2750

Exhibit A to Letter - Second Order Extending Mediation, undated ........ A-2751

Letter Regarding Stalking Horse Designation from Thomas R. Califano to the Honorable Alan S. Trust, dated September 11, 2023 [Dkt. No. 388] ... A-2755

Proposed Stipulation Extending Discovery Deadlines and Investigation Period, dated September 12, 2023 [Dkt. No. 389] ....................... A-2757

Letter Regarding Agreed-To Sale Objection Deadline Extension from Dallas G. Taylor to the Honorable Alan S. Trust, dated September 14, 2023 [Dkt. No. 392] ....................... A-2773

**Page**

Reservation of Rights Regarding Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated September 14, 2023 [Dkt. No. 395] ....................... A-2774

*Ex Parte* Motion of the Bond Trustee for Leave to File Under Seal the Bond Trustee's Initial Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, dated September 18, 2023 [Dkt. No. 400] ....................................................... A-2778

Exhibit A to *Ex Parte* Motion - Proposed Order ..................................................... A-2786

The Bond Trustee's Initial Objection to the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, dated September 18, 2023 [Dkt. No. 400.1] (Reproduced in confidential volume at pp. A-5803-A-5823)

Exhibit A to Objection - Deposition Transcript of James Davis, dated September 8, 2023 (Reproduced in confidential volume at pp. A-5824-A-5897)

Page

Exhibit B to Objection -
E-mail from R. Scott Edmonds to Pamela Landman, dated April 26, 2023, with Preceding E-mail Chain
(Reproduced in confidential volume at pp. A-5898-A-5900)

Exhibit C to Objection -
Agreement for the Sale of Real Property, dated December 18, 2020
(Reproduced in confidential volume at pp. A-5901-A-5950)

Exhibit D to Objection -
E-mail from Rachel Nanes to Emily Kanstroom Musgrave, dated September 9, 2023, with Preceding E-mail Chain
(Reproduced in confidential volume at pp. A-5951-A-5956)

Exhibit E to Objection -
The Amsterdam at Harborside Residency Agreement, dated January 1, 2018
(Reproduced in confidential volume at pp. A-5957-A-5985)

Second Order Extending Mediation, dated September 19, 2023 [Dkt. No. 403]....................... A-2789

Proposed Stipulation Extending Investigation Period, dated September 20, 2023 [Dkt. No. 405]. A-2792

Letter Regarding Adjournment of Auction and Sale Hearing from Gregory M. Juell to the Honorable Alan S. Trust, dated September 25, 2023 [Dkt. No. 411]....................................................... A-2797

**Page**

Reservation of Rights with Respect to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated September 26, 2023 [Dkt. No. 413] ...................... A-2798

Letter Regarding September 28, 2023 Hearing from Gregory M. Juell to the Honorable Alan S. Trust, dated September 26, 2023 [Dkt. No. 416] ............ A-2801

Proposed Stipulation Extending Investigation Period, dated September 28, 2023 [Dkt. No. 418]. A-2803

Transcript of Proceedings, dated September 28, 2023 ............................................. A-2809

Stipulation Extending Investigation Period, dated September 28, 2023 and so-ordered October 2, 2023 [Dkt. No. 424] ............................ A-2841

Stipulation Extending Investigation Period, dated September 20, 2023 and so-ordered October 2, 2023 [Dkt. No. 425] ............................ A-2846

Stipulation Extending Discovery Deadlines and Investigation Period, dated September 12, 2023 and so-ordered October 2, 2023 [Dkt. No. 426] .... A-2850

**Page**

Proposed Stipulation Extending Investigation Period, dated October 13, 2023 [Dkt. No. 437]..... A-2858

Proposed Stipulation and Agreed Consent Order Permitting the Filing of the Bond Trustee's Redacted Sale Objection, dated October 16, 2023 [Dkt. No. 440]....................................................... A-2863

Exhibit A to Proposed Stipulation - The Bond Trustee's Redacted Initial Objection to the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, dated September 18, 2023.................................... A-2867

Notice of Auction Results, dated October 25, 2023 [Dkt. No. 448]....................................................... A-3051

Exhibit A to Notice - Asset Purchase Agreement, dated October 24, 2023 ................................................. A-3054

Proposed Stipulation Extending Investigation Period, dated October 25, 2023 [Dkt. No. 449]..... A-3132

Transcript of Proceedings, dated October 26, 2023... A-3138

Stipulation and Agreed Consent Order Limiting the Scope of Pamela Landman's Deposition, dated October 30, 2023 [Dkt. No. 453].......................... A-3189

Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, dated October 30, 2023 [Dkt. No. 455]....................................................... A-3194

Exhibit A to Joint Motion - Proposed Order .................................................... A-3209

**Page**

Exhibit B to Joint Motion - Settlement Term Sheet ........................................ A-3213

Exhibit C to Joint Motion - Declaration of Michael Morton, dated October 30, 2023 ................................................ A-3219

Exhibit D to Joint Motion - Declaration of Janice Grubin, dated October 30, 2023 ................................................ A-3224

Objection to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 [Dkt. No. 465] ..................................................... A-3229

**Page**

Exhibit A to Objection - Declaration of Coe Schlicher in Support of Objection to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 ............... A-3250

Exhibit 1 to Schlicher Declaration - Letter from Coe Schlicher to Gregory M. Juell, Rachel Nanes and James Muenker, dated September 14, 2023, with Enclosure ................. A-3257

Exhibit B to Objection - Minimum Qualified Bid Calculation ..................... A-3346

Exhibit C to Objection - Harborside Bid Analysis ....................................... A-3348

Exhibit D to Objection - Harborside Bid Analysis ....................................... A-3350

Exhibit E to Objection - Deposition Transcript of Michael Morton, dated October 31, 2023 .................................................. A-3352

Exhibit F to Objection - E-mail from Rachel Nanes to Eileen M. Sethna, dated October 23, 2023, with Preceding E-mail Chain ..................................................................... A-3418

**Page**

Exhibit G to Objection - Deposition Transcript of David Kliewer, dated November 1, 2023 .................................................. A-3423

Exhibit H to Objection - E-mail from Harold D. Israel to Rachel Nanes and Others, dated October 24, 2023, with Preceding E-mail Chain ........................................ A-3494

Exhibit I to Objection - Certificate of Amendment of the Certificate of Incorporation of Amsterdam House Continuing Care Retirement Community, Inc., dated June 9, 2016 .......................................................... A-3498

Declaration of Janice Grubin, as Executrix of the Estate of Robert Grubin and Chair of the Official Committee of Unsecured Creditors, in Support of Debtor's Proposed Sale to Life Care Services Communities LLC d/b/a LCS Real Estate, dated November 4, 2023 [Dkt. No. 466] ......................... A-3509

Declaration of David Kliewer in Support of the Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 [Dkt. No. 467] ......................... A-3522

**Page**

Exhibit A to Kliewer Declaration - Minimum Qualified Bid Calculation (Reproduced herein at pp. A-3346-A-3347)

Exhibit B to Kliewer Declaration - E-mail from Rachel Nanes to Bidders, dated September 21, 2023 ............................................. A-3543

Exhibit C to Kliewer Declaration - E-mail from David Kliewer to Kong Team, dated September 21, 2023 ............................................. A-3546

Exhibit D to Kliewer Declaration - Updated Information Sent to Kong Team on October 23, 2023 (Reproduced herein at pp. A-3350-A-3351)

Declaration of Daniel L. Lahey in Support of the Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 [Dkt. No. 468]......................... A-3549

**Page**


Declaration of Michael Morton in Support of the Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 [Dkt. No. 469] ........................ A-3559

The Bond Trustee's Supplemental Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, dated November 4, 2023 [Dkt. No. 470] ........................ A-3570

Exhibit A to Supplemental Objection - Declaration of Chad J. Shandler in Support of the Bond Trustee's Supplemental Objection, dated November 4, 2023 ................................................ A-3587

Exhibit B to Supplemental Objection - Declaration of Andrew Turnbull in Support of the Bond Trustee's Supplemental Objection, dated November 4, 2023 ................................................ A-3594

**Page**

Exhibit C to Supplemental Objection - Declaration of Coe Schlicher in Support of Objection to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023
(Reproduced herein at pp. A-3250-A-3256)

Exhibit D to Supplemental Objection - Deposition Transcript of David Kliewer, dated November 1, 2023
(Reproduced herein at pp. A-3423-A-3493)

Exhibit E to Supplemental Objection - Deposition Transcript of Michael Morton, dated October 31, 2023
(Reproduced herein at pp. A-3352-A-3417)

Exhibit F to Supplemental Objection - E-mail from Harold D. Israel to Rachel Nanes and Others, dated October 24, 2023, with Preceding E-mail Chain
(Reproduced herein at pp. A-3494-A-3497)

Exhibit G to Supplemental Objection - Transcript of Auction Proceedings, dated September 20, 2023 ............................................. A-3604

| | Page |
|---|---|
| Exhibit H to Supplemental Objection - Transcript of Auction Proceedings, dated September 21, 2023 | A-3616 |
| Exhibit I to Supplemental Objection - Transcript of Auction Proceedings, dated September 22, 2023 | A-3622 |
| Exhibit J to Supplemental Objection - Transcript of Auction Proceedings, dated October 23, 2023 | A-3629 |
| Exhibit K to Supplemental Objection - Transcript of Conclusion of Auction Proceedings, dated October 24, 2023 | A-3634 |
| Exhibit L to Supplemental Objection - Harborside Bid Analysis | A-3639 |
| The Bond Trustee's Preliminary Objection to the Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, dated November 4, 2023 [Dkt. No. 471] | A-3641 |
| Exhibit A to Preliminary Objection - Deposition Transcript of Michael Morton, dated October 31, 2023 (Reproduced herein at pp. A-3352-A-3417) | |
| Exhibit B to Preliminary Objection - Letter Regarding Nassau County Industrial Development Agency Continuing Care Retirement Community Bonds from Pamela Landman to Daniel S. Bleck and Poonam Patidar, dated February 13, 2023 | A-3660 |

**Page**

Joint Stipulation Regarding Undisputed Facts in Connection with the Debtor's Sale Hearing, dated November 7, 2023 [Dkt. No. 475] ........................ A-3666

Rebuttal Declaration of David Kliewer in Support of the Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 8, 2023 [Dkt. No. 479] ........................ A-3675

Omnibus Reply of Life Care Services Communities LLC d/b/a LCS Real Estate in Support of Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 10, 2023 [Dkt. No. 483] ...................... A-3684

**Page**

Exhibit A to Omnibus Reply - Amsterdam House Continuing Care Retirement Community, Inc. – Approving Resolution No. 2021–46, dated July 22, 2021 ............................... A-3706

Exhibit B to Omnibus Reply - Certificate of Amendment of the Certificate of Incorporation of Amsterdam House Continuing Care Retirement Community, Inc., dated June 9, 2016 ........................................................ A-3721

Exhibit C to Omnibus Reply - Deposition Transcript of Coe Schlicher, dated November 8, 2023 ................................................ A-3731

Exhibit D to Omnibus Reply - Complaint *In Re: Northwest Senior Housing Corporation, et al.* (U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division Case No. 22-30659 (MLV)), dated April 14, 2022 A-3843

The Bond Trustees Witness and Exhibit List for the November 15, 2023 Hearing, dated November 10, 2023 [Dkt. No. 485]...................... A-3877

The Bond Trustee's Amended Witness and Exhibit List for the November 15, 2023 Hearing, dated November 10, 2023 [Dkt. No. 486]...................... A-3881

Kong-BP Amsterdam's Witness and Exhibit List for the November 15, 2023 Hearing, dated November 10, 2023 [Dkt. No. 488]...................... A-3885

| | Page |
|---|---|
| Exhibit 1 to Witness and Exhibit List - Declaration of Coe Schlicher in Support of Objection to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief, dated November 4, 2023 (Reproduced herein at pp. A-3250-A-3256) | |
| Exhibit 2 to Witness and Exhibit List - Letter from Coe Schlicher to Gregory M. Juell, Rachel Nanes and James Muenker, dated September 14, 2023, with Enclosure (Reproduced herein at pp. A-3257-A-3265) | |
| Exhibit 3 to Witness and Exhibit List - Asset Purchase Agreement, dated September 14, 2023 | A-3889 |
| Exhibit 4 to Witness and Exhibit List - Asset Purchase Agreement, dated September 22, 2023 | A-3970 |
| Exhibit 5 to Witness and Exhibit List - Minimum Qualified Bid Calculation (Reproduced herein at pp. A-3346-A-3347) | |

**Page**

Exhibit 6 to Witness and Exhibit List -
Harborside Bid Analysis
(Reproduced herein at pp. A-3348-A-3349)

Exhibit 7 to Witness and Exhibit List -
Harborside Bid Analysis
(Reproduced herein at pp. A-3350-A-3351)

Exhibit 8 to Witness and Exhibit List -
Comparison of Kong/LCS Bids ............................ A-4051

Exhibit 9 to Witness and Exhibit List -
Certificate of Amendment of the Certificate of Incorporation of Amsterdam House Continuing Care Retirement Community, Inc., dated June 9, 2016
(Reproduced herein at pp. A-3498-A-3508)

Exhibit 10 to Witness and Exhibit List -
Proposed Stipulation and Agreed Consent Order Permitting the Filing of the Bond Trustee's Redacted Sale Objection, dated October 16, 2023, with Exhibit A
(Reproduced herein at pp. A-2863-A-3050)

Exhibit 11 to Witness and Exhibit List -
The Bond Trustee's Supplemental Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, dated November 4, 2023, with Exhibits A through L
(Reproduced herein at pp. A-3570-A-3640)

Exhibit 12 to Witness and Exhibit List -
Deposition Transcript of Janice Grubin, dated November 9, 2023 ................................................ A-4053

**Page**

Exhibit 13 to Witness and Exhibit List - Deposition Transcript of David Kliewer, dated November 1, 2023
(Reproduced herein at pp. A-3423-A-3493)

Exhibit 14 to Witness and Exhibit List - Deposition Transcript of Pamela Landman, dated October 31, 2023 .................................................. A-4105

Exhibit 15 to Witness and Exhibit List - Deposition Transcript of Michael Morton, dated October 31, 2023
(Reproduced herein at pp. A-3352-A-3417)

Exhibit 16 to Witness and Exhibit List - Deposition Transcript of Coe Schlicher, dated November 8, 2023
(Reproduced herein at pp. A-3731-A-3842)

Exhibit 17 to Witness and Exhibit List - Deposition Transcript of Chad J. Shandler, dated November 8, 2023 ................................................ A-4134

Exhibit 18 to Witness and Exhibit List - Deposition Transcript of Andrew Turnbull, dated November 8, 2023 ................................................ A-4160

Exhibit 19 to Witness and Exhibit List - E-mail from Eileen M. Sethna to Rachel Nanes, dated August 2, 2023 ............................................ A-4229

Exhibit 20 to Witness and Exhibit List - E-mail from Eileen M. Sethna to Rachel Nanes, dated August 4, 2023, with Preceding E-mail Chain ..................................................................... A-4231

| | Page |
|---|---|
| Exhibit 21 to Witness and Exhibit List - E-mail from Eileen M. Sethna to Rachel Nanes, dated August 5, 2023 | A-4237 |
| Exhibit 22 to Witness and Exhibit List - E-mail from Daniel S. Bleck to Eileen M. Sethna, dated August 7, 2023, with Preceding E-mail Chain | A-4239 |
| Exhibit 23 to Witness and Exhibit List - E-mail from James Muenker to Eileen M. Sethna and Rachel Nanes, dated August 11, 2023, with Preceding E-mail Chain | A-4244 |
| Exhibit 24 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated August 13, 2023, with Preceding E-mail Chain | A-4247 |
| Exhibit 25 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated August 29, 2023, with Preceding E-mail Chain | A-4251 |
| Exhibit 26 to Witness and Exhibit List - E-mail from Rachel Nanes to Eileen M. Sethna and Harold D. Israel, dated September 5, 2023 | A-4257 |
| Exhibit 27 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated September 10, 2023, with Preceding E-mail Chain | A-4259 |
| Exhibit 28 to Witness and Exhibit List - E-mail from Kimberly T. Boike to Rachel Nanes and Rachel Ludwig, dated September 13, 2023 | A-4262 |

**Page**

Exhibit 29 to Witness and Exhibit List - E-mail from Eileen M. Sethna to and Rachel Nanes, dated September 19, 2023, with Preceding E-mail Chain ........................................................ A-4264

Exhibit 30 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker, dated September 21, 2023, with Preceding E-mail Chain ........................................................ A-4269

Exhibit 31 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated September 22, 2023, with Preceding E-mail Chain ................................ A-4273

Exhibit 32 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker, Rachel Nanes and Others, dated September 22, 2023 ............................................. A-4276

Exhibit 33 to Witness and Exhibit List - E-mail from Eileen M. Sethna to Rachel Nanes and Harold D. Israel, dated October 11, 2023, with Preceding E-mail Chain ................................ A-4279

Exhibit 34 to Witness and Exhibit List - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated October 19, 2023, with Preceding E-mail Chain ........................................ A-4287

Exhibit 35 to Witness and Exhibit List - E-mail from Rachel Nanes to Eileen M. Sethna, dated October 23, 2023, with Preceding E-mail Chain ........................................................ A-4291

**Page**

Exhibit 36 to Witness and Exhibit List - E-mail from Harold D. Israel to Rachel Nanes, Daniel S. Bleck and Others, dated October 24, 2023, with Preceding E-mail Chain ...................... A-4296

Exhibit 37 to Witness and Exhibit List - Transcript of Proceedings, dated July 26, 2023 (Reproduced herein at pp. A-2385-A-2444)

Exhibit 38 to Witness and Exhibit List - Transcript of Proceedings, dated August 23, 2023 (Reproduced herein at pp. A-2681-A-2726)

Exhibit 39 to Witness and Exhibit List - Transcript of Proceedings, dated September 28, 2023 (Reproduced herein at pp. A-2809-A-2840)

Exhibit 40 to Witness and Exhibit List - Transcript of Proceedings, dated October 26, 2023 (Reproduced herein at pp. A-3138-A-3188)

Exhibit 41 to Witness and Exhibit List - Transcript of Auction Proceedings, dated September 20, 2023 (Reproduced herein at pp. A-3604-A-3615)

Exhibit 42 to Witness and Exhibit List - Transcript of Auction Proceedings, dated September 21, 2023 (Reproduced herein at pp. A-3616-A-3621)

Exhibit 43 to Witness and Exhibit List - Transcript of Auction Proceedings, dated September 22, 2023 (Reproduced herein at pp. A-3622-A-3628)

**Page**

The Bond Trustee's Second Supplemental Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interest and Encumbrances, dated November 10, 2023 [Dkt. No. 489] ............ A-4300

Exhibit A to Second Supplemental Objection - Deposition Transcript of Coe Schlicher, dated November 8, 2023 (Reproduced herein at pp. A-3731-A-3842)

Kong-BP Amsterdam's Amended Witness and Exhibit List for the November 15, 2023 Hearing, dated November 10, 2023 [Dkt. No. 490] ............ A-4305

Statement of the Official Committee of Unsecured Creditors in Support of (I) The Debtor's Proposed Sale to Life Care Services Communities LLC d/b/a LCS Real Estate and (II) the Joint 9019 Motion, dated November 10, 2023 [Dkt. No. 491] ...................................................... A-4309

Exhibit A to Statement - Deposition Transcript of Coe Schlicher, dated November 8, 2023 (Reproduced herein at pp. A-3731-A-3842)

Exhibit B to Statement - Deposition Transcript of David Kliewer, dated November 1, 2023 (Reproduced herein at pp. A-3423-A-3493)

Exhibit C to Statement - Deposition Transcript of Andrew Turnbull, dated November 8, 2023 (Reproduced herein at pp. A-4160-A-4228)

**Page**

Debtor's Omnibus Reply to the Objections of UMB Bank, N.A. and Kong-BP Amsterdam, LLC to the Debtor's Sale Motion, dated November 10, 2023 [Dkt. No. 492] ....................... A-4328

Exhibit A to Omnibus Reply - Deposition Transcript of Andrew Turnbull, dated November 8, 2023 (Reproduced herein at pp. A-4160-A-4228)

Exhibit B to Omnibus Reply - Deposition Transcript of Chad J. Shandler, dated November 8, 2023 (Reproduced herein at pp. A-4134-A-4159)

Exhibit C to Omnibus Reply - Deposition Transcript of Coe Schlicher, dated November 8, 2023 (Reproduced herein at pp. A-3731-A-3842)

Debtor's Reply to the Bond Trustee's Preliminary Objection to the Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, dated November 10, 2023 [Dkt. No. 493] ....................... A-4359

Objection and Reservation of Rights to the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, dated November 13, 2023 [Dkt. No. 495] ....................... A-4367

**Page**

Joint Witness and Exhibit List of the Debtor, the Official Committee of Unsecured Creditors, and Life Care Services Communities LLC, d/b/a LCS Real Estate, for the Hearing Scheduled on November 15, 2023 at 10:00 a.m. (ET), dated November 13, 2023 [Dkt. No. 498] ....................... A-4381

Amended Joint Witness and Exhibit List of the Debtor, the Official Committee of Unsecured Creditors, and Life Care Services Communities LLC, d/b/a LCS Real Estate, for the Hearing Scheduled on November 15, 2023 at 10:00 a.m. (ET), dated November 13, 2023 [Dkt. No. 499].... A-4387

Kong-BP Amsterdam's Second Amended Witness and Exhibit List for the November 15, 2023 Hearing, dated November 10, 2023 [Dkt. No. 500]....................................................... A-4393

Exhibit 44 to Second Amended Witness and Exhibit List - Redline Asset Purchase Agreement (September 14, 2023 Version to September 22, 2023 Version). A-4397

The Bond Trustee's Second Amended Witness and Exhibit List for the November 15, 2023 Hearing, dated November 13, 2023 [Dkt. No. 502] ............. A-4480

Nassau County Industrial Development Agency Witness and Exhibit List for the November 15, 2023 Hearing, dated November 14, 2023 [Dkt. No. 510]....................................................... A-4488

Kong-BP Amsterdam's Third Amended Witness and Exhibit List for the November 15, 2023 Hearing, dated November 14, 2023 [Dkt. No. 513] ............. A-4491

**Page**

Exhibit 45 to Second Amended Witness and Exhibit List - E-mail from Eileen M. Sethna to Rachel Nanes, dated September 22, 2023, with Preceding E-mail Chain ..... A-4495

Transcript of Sale and Settlement Proceedings, dated November 15, 2023 ..... A-4500

Letter Regarding Exhibits at November 15, 2023 Hearing from Jason M. Hopkins to the Honorable Alan S. Trust, dated November 17, 2023 [Dkt. No. 526] ..... A-4735

Proposed Stipulation Extending Investigation Period, dated November 17, 2023 [Dkt. No. 530]. A-4737

Letter Regarding Settlement from Melanie L. Cyganowski to the Honorable Alan S. Trust, dated November 20, 2023 [Dkt. No. 531] ..... A-4741

Bond Trustee Closing Demonstratives, dated November 21, 2023 [Dkt. No. 535] ..... A-4742

Debtor Closing Demonstratives, dated November 21, 2023 [Dkt. No. 537] ..... A-4754

Transcript of Sale and Settlement Proceedings, dated November 21, 2023 ..... A-4771

Supplemental Letter Brief from Gregory M. Juell to the Honorable Alan S. Trust, dated November 27, 2023 [Dkt. No. 544] ..... A-4889

Supplemental Letter Brief from Eric E. Walker to the Honorable Alan S. Trust, dated November 27, 2023 [Dkt. No. 545] ..... A-4894

Page

Kong-BP Amsterdam, LLC's Post-Trial Brief, dated November 27, 2023 [Dkt. No. 546] ....................... A-4898

Exhibit A to Post-Trial Brief - E-mail from Eileen M. Sethna to James Muenker and Rachel Nanes, dated November 21, 2023 ....... A-4904

Exhibit B to Post-Trial Brief - E-mail from Eileen M. Sethna to James Muenker, Rachel Nanes and Eric E. Walker, dated November 22, 2023, with Preceding E-mail Chain ............................................................ A-4906

Exhibit C to Post-Trial Brief - E-mail from Rachel Nanes to Eileen M. Sethna, James Muenker, and Eric E. Walker, dated November 22, 2023, with Preceding E-mail Chain ............................................................ A-4910

Letter Brief in Support of Sale Motion from Thomas R. Califano to the Honorable Alan S. Trust, dated November 27, 2023 [Dkt. No. 548] ... A-4915

Supplemental Letter Brief from Dallas G. Taylor to the Honorable Alan S. Trust, dated November 27, 2023 [Dkt. No. 549] ....................... A-4921

Exhibit A to Supplemental Letter Brief - Bondholder Letter from Robert Elliot, dated November 23, 2023 .............................................. A-4926

Exhibit B to Supplemental Letter Brief - Closure Business Plan ........................................... A-4929

Letter Regarding Status of Settlement Gregory M. Juell to the Honorable Alan S. Trust, dated November 28, 2023 [Dkt. No. 553] ....................... A-4935

| | Page |
|---|---|
| Proposed Stipulation Extending Investigation Period, dated November 29, 2023 [Dkt. No. 555]. | A-4936 |
| Letter Regarding Status of Settlement Gregory M. Juell to the Honorable Alan S. Trust, dated November 30, 2023 [Dkt. No. 558] | A-4941 |
| Transcript of Sale and Settlement Proceedings, dated December 1, 2023 | A-4942 |
| Docket Text Notification Regarding Adjournment of Hearing, dated December 1, 2023 | A-4996 |
| Proposed Stipulation Extending Investigation Period, dated October 25, 2023 [Dkt. No. 566] | A-5000 |
| Letter Regarding LCS Sale from Gregory M. Juell to the Honorable Alan S. Trust, dated December 6, 2023 [Dkt. No. 568] | A-5006 |
| Letter Regarding Relationship between ACCHS, the Debtor and Amsterdam Nursing Home Corporation (1992) from Melanie L. Cyganowski to the Honorable Alan S. Trust, dated December 6, 2023 [Dkt. No. 569] | A-5008 |
| Letter in Response to the Debtor's Letter Regarding the LCS Sale from Dallas G. Taylor to the Honorable Alan S. Trust, dated December 7, 2023 [Dkt. No. 572] | A-5009 |
| Transcript of Sale and Settlement Proceedings, dated December 8, 2023 | A-5011 |
| Bond Trustee's Notice of Appeal, dated December 15, 2023 [Dkt. No. 587] | A-5037 |

| | Page |
|---|---|
| Exhibit A to Notice of Appeal - Transcript of Sale and Settlement Proceedings, dated December 1, 2023 (Reproduced herein at pp. A-4942-A-4995) | |
| Exhibit B to Notice of Appeal - Transcript of Sale and Settlement Proceedings, dated December 8, 2023 (Reproduced herein at pp. A-5011-A-5036) | |
| Exhibit C to Notice of Appeal - Bankruptcy Court Docket Entries.......................... | A-5041 |
| Letter Regarding Resolution of IDA Objection Gregory M. Juell to the Honorable Alan S. Trust, dated December 15, 2023 [Dkt. No. 589]............. | A-5131 |
| Attachment 1 to Letter - Revised IDA Language......................................... | A-5133 |
| Attachment 2 to Letter - Redline of Revised IDA Language........................ | A-5137 |
| Notice to Parties Concerning Appeal (ECF Case), dated December 18, 2023 [Dkt. No. 591]............. | A-5143 |
| Transmittal of Notice of Appeal to District Court, dated December 18, 2023 [Dkt. No. 592]............. | A-5145 |
| Annexed to Transmittal - (i) Bond Trustee's Notice of Appeal, dated December 15, 2023, with Exhibits A though C (Reproduced herein at pp. A-5037-A-5130) | |
| (ii) Bankruptcy Court Docket Entries.................... | A-5147 |
| Proposed Stipulation Extending Investigation Period, dated December 18, 2023 [Dkt. No. 593] . | A-5250 |

Page

Civil Cover Sheet, dated December 15, 2023 [Dkt. No. 594] ........ A-5255

Notice of Docketing Record on Appeal to District Court, dated December 19, 2023 [Dkt. No. 595] ... A-5263

Transmittal of Additional Record on Appeal to District Court in Reference to Civil Case Number: 23-cv-09226, dated December 15, 2023 [Dkt. No. 596] ........ A-5267

Annexed to Transmittal - Bankruptcy Court Docket Entries ........ A-5275

Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, dated December 27, 2023 [Dkt. No. 606] ........ A-5378

Exhibit 1 to Order - Revised Settlement Agreement ........ A-5382

Order (I) Approving the Amended And Restated Asset Purchase Agreement Between the Debtor and Life Care Services Communities LLC d/b/a Lcs Real Estate; (II) Authorizing the Sale of Substantially All of the Debtor’s Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief, dated December 27, 2023 [Dkt. No. 607] ........ A-5389

Exhibit 1 to Order - Amended and Restated Asset Purchase Agreement, dated December 20, 2023 ........ A-5415

**Page**

Summary of Second Interim Application of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtor for the Period from July 1, 2023 through September 30, 2023, dated December 22, 2023 [Dkt. No. 608] ........ A-5493

Exhibit A to Summary - Certification of Rachel Nanes, dated December 22, 2023 ........ A-5516

Exhibit B to Summary - Order Granting Debtor's Application for Entry of an Order Authorizing the Retention and Employment of DLA Piper LLP (US) as Counsel to the Debtor Effective as of the Petition Date, dated June 15, 2023 ........ A-5518

Exhibit C to Summary - DLA Piper Fee Statements........ A-5522

Exhibit D to Summary - Proposed Order ........ A-5610

Bond Trustee's Statement of Issues on Appeal, Designation of Record on Appeal, and Certificate Regarding Transcripts Pursuant to Federal Rule of Bankruptcy Procedure 8009, dated December 29, 2023 [Dkt. No. 614] ........ A-5613

Bond Trustee's Supplemental Notice of Appeal, dated January 10, 2024 [Dkt. No. 626]........ A-5671

**Page**

Exhibit A to Supplemental Notice of Appeal - Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, dated December 27, 2023, with Exhibit 1
(Reproduced herein at pp. A-5378-A-5388)

Exhibit B to Supplemental Notice of Appeal - Order (I) Approving the Amended And Restated Asset Purchase Agreement Between the Debtor and Life Care Services Communities LLC d/b/a Lcs Real Estate; (II) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief, dated December 27, 2023, with Exhibit 1
(Reproduced herein at pp. A-5389-A-5492)

**Confidential Volume**

Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 24, 2023 [Dkt. No. 273] ........ A-5674

Exhibit 1 to Objection - Agreement for the Sale of Real Property, dated December 18, 2020 ........ A-5690

| | Page |
|---|---|
| Response of Amsterdam Continuing Care Health System, Inc. to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder, dated July 25, 2023 [Dkt. No. 291] | A-5740 |
| Exhibit A to Response - Corporate Structure of ACCHS and ANH | A-5744 |
| Transcript of Proceedings, dated July 26, 2023 | A-5746 |
| The Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief, dated August 15, 2023 [Dkt. No. 336] | A-5796 |
| The Bond Trustee's Initial Objection to the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, dated September 18, 2023 [Dkt. No. 400.1] | A-5803 |
| Exhibit A to Objection - Deposition Transcript of James Davis, dated September 8, 2023 | A-5824 |
| Exhibit B to Objection - E-mail from R. Scott Edmonds to Pamela Landman, dated April 26, 2023, with Preceding E-mail Chain | A-5898 |
| Exhibit C to Objection - Agreement for the Sale of Real Property, dated December 18, 2020 | A-5901 |

**Page**

Exhibit D to Objection -
E-mail from Rachel Nanes to Emily Kanstroom Musgrave, dated September 9, 2023, with Preceding E-mail Chain ........................................ A-5951

Exhibit E to Objection -
The Amsterdam at Harborside Residency Agreement, dated January 1, 2018 ........................ A-5957

**PlnDue, DsclsDue, HCB, Repeat, ProHacVice, MEGA, ClaimsAgent, APPEAL**

**U.S. Bankruptcy Court**
**Eastern District of New York (Central Islip)**
**Bankruptcy Petition #: 8-23-70989-ast**

*Date filed:* 03/22/2023
*341 meeting:* 04/24/2023
*Deadline for filing claims:* 10/13/2023
*Deadline for filing claims (govt.):* 10/13/2023

*Assigned to:* Judge Alan S. Trust
Chapter 11
Voluntary
Asset

***Debtor***
**Amsterdam House Continuing Care Retirement Community, Inc.**
300 E. Overlook
Port Washington, NY 10050
NASSAU-NY
Tax ID / EIN: 11-3711764
***dba* The Harborside**

represented by **Jason Hopkins**
DLA PIPER LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
(214) 743-4500
Email: jason.hopkins@us.dlapiper.com

**Gregory Juell**
DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
212-335-4608
Email: gregory.juell@us.dlapiper.com

**James P. Muenker**
DLA PIPER LLP (US
1900 North Pearl Street, Suite 2200
Dallas, TX 75201
(214) 743-4500
Email: james.muenker@us.dlapiper.com

**Rachel Nanes**
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
Email: rachel.nanes@dlapiper.com

**Benjamin D. Schuman**
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
Email: benjamin.schuman@us.dlapiper.com

***U.S. Trustee***
**United States Trustee**
Long Island Federal Courthouse
560 Federal Plaza - Room 560

Central Islip, NY 11722-4437
(631) 715-7800

*US Trustee Trial Attorney*
**Stan Y Yang**
Office of the United States Trustee
Central Islip Office
Alfonse M D'Amato US Courthouse
560 Federal Plaza
Central Islip, NY 11722
(631) 715-7800 Ext. 225

*Cred Committee Aty*
**Official Committee of Unsecured Creditors**
*TERMINATED: 09/06/2023*

*Cred Committee Aty*
**Cooley LLP**
55 Hudson Yards
New York, NY 10001
(212) 479-6000
*TERMINATED: 09/06/2023*

*Creditor Committee*
**Official Committee of Unsecured Creditors**

represented by **Samuel R. Rabuck**
Cooley LLP - Library
110 N. Wacker
Suite 4200
Chicago, IL 60606
312-881-6683
Email: srabuck@cooley.com

**Paul J. Springer**
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
Email: pspringer@cooley.com

**Eric E. Walker**
Cooley LLP
110 North Wacker Drive
Suite 4200
Chicago, IL 60606-1511
312-881-6375
Fax : 312-881-6598
Email: ewalker@cooley.com

| Filing Date | # | Docket Text |
|---|---|---|
| 03/22/2023 | 1 (20 pgs) | Chapter 11 Voluntary Petition for Non-Individuals. Fee Amount $ 1738. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. Chapter 11 Plan due by 07/20/2023. |

| | | |
|---|---|---|
| | | Disclosure Statement due by 07/20/2023. (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | | Receipt of Voluntary Petition (Chapter 11)( 8-23-70989) [misc,volp11a] (1738.00) Filing Fee. Receipt number A21495210. Fee amount 1738.00. (re: Doc# 1) (U.S. Treasury) (Entered: 03/22/2023) |
| 03/22/2023 | 2 (52 pgs; 3 docs) | Motion to Authorize/Direct / *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 3 (43 pgs; 3 docs) | Motion to Pay / *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 4 (29 pgs; 4 docs) | Motion to Pay / *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fess, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 5 (37 pgs; 4 docs) | Motion to Prohibit/Enjoin/Restrain / *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 6 (25 pgs; 4 docs) | Motion to Pay / *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 7 (13 pgs; 2 docs) | Motion to Authorize/Direct / *Debtor's Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and* |

| | | |
|---|---|---|
| | | *Protect Confidential Resident Information* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 8 (40 pgs; 4 docs) | Application to Employ / *Debtor's Application for Entry of an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. 156(c), 11 U.S.C. 105(a). and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 03/22/2023) |
| 03/22/2023 | 11 (3 pgs; 2 docs) | Deficient Filing Chapter 11 Mailing Matrix / List of Creditors Pursuant to E.D.N.Y. LBR 1007-3 due by 3/22/2023. Corporate Disclosure Statement Pursuant to FBR 1073-3 due 3/22/2023. Disclosure of Compensation of Attorney for Debtor. 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b) (Official Form 2030) due 4/5/2023. Summary of Assets and Liabilities for Non-Individuals Official Form 206Sum due by 4/5/2023. Schedule A/B due 4/5/2023. Schedule D due 4/5/2023. Schedule E/F due 4/5/2023. Schedule G due 4/5/2023. Schedule H due 4/5/2023. Statement of Financial Affairs Non-Ind Form 207 due 4/5/2023. Incomplete Filings due by 4/5/2023. (ylr) Modified on 3/23/2023 (ylr). Modified on 3/23/2023 Notice not generated. (Moffett, Christine). (Entered: 03/23/2023) |
| 03/22/2023 | | Appointment of Patient Care Ombudsmandue by 4/24/2023 (RE: related document(s)1 Voluntary Petition (Chapter 11) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (dnb) (Entered: 03/24/2023) |
| 03/23/2023 | 9 (20 pgs; 2 docs) | Motion to Authorize/Direct / *Debtor's Emergency Motion for Entry of an Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 10 (10 pgs; 2 docs) | Motion to Extend Deadline to File Schedules or Provide Required Information / *Debtor's Motion for Entry of an Order Extending the Deadline to File Schedules of Assets and Liabilitites and Statement of Financial Affairs* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)2 Motion to Authorize/Direct / Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)3 Motion to Pay/ Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, |

| | | |
|---|---|---|
| | | Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)4 Motion to Pay / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fess, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)5 Motion to Prohibit/Enjoin/Restrain / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)6 Motion to Pay / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)7 Motion to Authorize/Direct / Debtor's Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)8 Application to Employ / Debtor's Application for Entry of an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. 156(c), 11 U.S.C. 105(a), and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)9 Motion to Authorize/Direct / Debtor's Emergency Motion for Entry of an Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus |

| | | |
|---|---|---|
| | | Hearing Dates. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Hearing scheduled for 3/24/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)10 Motion to Extend Deadline to File Schedules / Debtor's Motion for Entry of an Order Extending the Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/23/2023) |
| 03/23/2023 | | Prior Filing Case Number(s): 14-73348-ast terminated on 01/30/2015; 21-71095-ast Terminated on 04/15/2022 (drk) (Entered: 03/23/2023) |
| 03/23/2023 | 12 (86 pgs; 3 docs) | Motion to Use Cash Collateral , Motion to Borrow / *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 13 (66 pgs; 15 docs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)1 Voluntary Petition (Chapter 11) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Automatic docket of credit card/debit card, 2 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 3 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 4 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 5 Motion to Prohibit/Enjoin/Restrain filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 6 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 7 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 8 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 9 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 10 Motion to Extend Deadline to File Schedules filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit N) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 14 (4 pgs) | Statement / *Notice of Commencement of Chapter 11 Case and Hearing to Consider "First Day" Motions* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 15 (59 pgs) | List of Creditors Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 03/23/2023) |

| | | |
|---|---|---|
| 03/23/2023 | 16 (2 pgs) | Verification of List of Creditors Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 17 | Entered in Error. Meeting of Creditors 341(a) meeting to be held on 4/24/2023 at 01:00 PM at Room 562, 560 Federal Plaza, CI, NY. (dnb) Modified on 3/23/2023 Notice deleted. (Moffett, Christine). (Entered: 03/23/2023) |
| 03/23/2023 | 18 (3 pgs) | Notice of Appearance and Request for Notice Filed by Christopher Giaimo on behalf of New England Life Plan Communities Corp. (Giaimo, Christopher) (Entered: 03/23/2023) |
| 03/23/2023 | 19 (7 pgs; 4 docs) | Motion for Rachel Nanes to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Declaration # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 20 (7 pgs; 4 docs) | Motion for James P. Muenker to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Declaration # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 21 (7 pgs; 4 docs) | Motion for Nicole McLemore to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Declaration # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21498548. Fee amount 150.00. (re: Doc# 19) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21498548. Fee amount 150.00. (re: Doc# 20) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21498548. Fee amount 150.00. (re: Doc# 21) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | 22 (6 pgs) | Statement / *Agenda of Matters Scheduled for Hearing Via Zoom on March 24, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 03/23/2023) |
| 03/23/2023 | 23 (3 pgs) | Notice of Appearance and Request for Notice Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 03/23/2023) |

| | | |
|---|---|---|
| 03/23/2023 | 24 (4 pgs; 3 docs) | Motion for Daniel S. Bleck to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee. Fee Amount $150. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. (Attachments: # 1 Affidavit # 2 Proposed Order) (Taylor, Dallas) Modified on 3/24/2023 [Attorney to file Certificate of Good Standing] (dnb). (Entered: 03/23/2023) |
| 03/23/2023 | 25 (4 pgs; 3 docs) | Motion for Emily Kanstroom Musgrave to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee. Fee Amount $150. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. (Attachments: # 1 Affidavit # 2 Proposed Order) (Taylor, Dallas) Modified on 3/24/2023 [Attorney to file Certificate of Good Standing] (dnb). (Entered: 03/23/2023) |
| 03/23/2023 | 26 (4 pgs; 3 docs) | Motion for Eric R. Blythe to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee. Fee Amount $150. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. (Attachments: # 1 Affidavit # 2 Proposed Order) (Taylor, Dallas) Modified on 3/24/2023 [Attorney to file Certificate of Good Standing] (dnb). (Entered: 03/23/2023) |
| 03/23/2023 | 27 (4 pgs; 3 docs) | Motion for Aaron M. Williams to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee. Fee Amount $150. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. (Attachments: # 1 Affidavit # 2 Proposed Order) (Taylor, Dallas) Modified on 3/24/2023 [Attorney to file Certificate of Good Standing] (dnb). (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21499007. Fee amount 150.00. (re: Doc# 24) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21499007. Fee amount 150.00. (re: Doc# 25) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21499007. Fee amount 150.00. (re: Doc# 26) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21499007. Fee amount 150.00. (re: Doc# 27) (U.S. Treasury) (Entered: 03/23/2023) |
| 03/23/2023 | 28 (45 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)2 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 3 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 4 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 5 Motion to Prohibit/Enjoin/Restrain filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 6 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 7 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 8 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 9 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 10 Motion to Extend Deadline to File Schedules filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 12 Motion to Use |

| | | |
|---|---|---|
| | | Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 13 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 14 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 22 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 03/23/2023) |
| 03/23/2023 | 29 (2 pgs) | Notice of Appearance and Request for Notice Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender (Cyganowski, Melanie) (Entered: 03/23/2023) |
| 03/24/2023 | 30 (6 pgs; 4 docs) | Motion for Nadia B. Saleem to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Declaration # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory). Modified on 3/24/2023 [Attorney to file Certificate of Good Standing] (dnb). (Entered: 03/24/2023) |
| 03/24/2023 | 31 (1 pg) | Request to Chambers Re: Appointment of Patient Care Ombudsman (dnb) (Entered: 03/24/2023) |
| 03/24/2023 | 32 (58 pgs; 4 docs) | Meeting of Creditors 341(a) meeting to be held on 4/24/2023 at 01:00 PM at Room 562, 560 Federal Plaza, CI, NY. (dnb) (Entered: 03/24/2023) |
| 03/24/2023 | 33 (59 pgs; 3 docs) | Letter *regarding Revised Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Gregory Juell and Christine Black. 'Hearing (Hybrid; in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s)2 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtors Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED IN PART AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) Modified on 3/24/2023 (ymm). (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Gregory Juell. Christine Black, Rachel Nanes. 'Hearing (Hybrid (in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 3 Motion to Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay |

| | | |
|---|---|---|
| | | Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED IN PART AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Nadia Saleem and Christine Black. 'Hearing (Hybrid (in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 4 Motion to Pay Certain Prepetition Taxes and Fess, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED IN PART AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes and Christine Black. 'Hearing (Hybrid (in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 5 Motion to Prohibit/Enjoin/Restrain / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Rachcel Nanes and Christine Black. 'Hearing (Hybrid (in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 6 Motion to Pay / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes and Christine Black. 'Hearing (Hybrid (in person/zoom) scheduled for 04/05/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 7 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED IN PART AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |

| | | |
|---|---|---|
| 03/24/2023 | | Hearing Held; Appearances: Nicole McLemore and Christine Black. (RE: related document(s) 8 Application to Employ / Debtors Application for Entry of an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. 156(c), 11 U.S.C. 105(a), and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held; Appearances: Nicole McLemore and Christine Black. (RE: related document(s) 9 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of an Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED AS PER TERMS STATED ON THE RECORD - SUBMIT MODIFIED ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Hearing Held; Appearances: Nicole McLemore and Christine Black (RE: related document(s) 10 Motion to Extend Deadline to File Schedules Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 03/24/2023) |
| 03/24/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21501603. Fee amount 150.00. (re: Doc# 30) (U.S. Treasury) (Entered: 03/24/2023) |
| 03/24/2023 | 34 (3 pgs) | Letter / *Notice of Second Day Hearing on April 5, 2023 at 11:00 a.m. (E1)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)2 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 3 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 4 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 5 Motion to Prohibit/Enjoin/Restrain filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 6 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 7 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Juell, Gregory) (Entered: 03/24/2023) |
| 03/27/2023 | 35 (2 pgs) | Notice of Appearance and Request for Notice Filed by Lee E Woodard on behalf of Nassau County Industrial Development Agency (Woodard, Lee) (Entered: 03/27/2023) |

| | | |
|---|---|---|
| 03/27/2023 | 36<br>(2 pgs) | Order extending the time for the Debtor to file Schedules and Statement of Financial Affairs (Related Doc # 10) Signed on 3/27/2023. The Debtor shall have thirty (30) days from the Petition Date, through and includingApril 21, 2023, to file its Schedules and Statement with the Court without prejudice. (dnb) (Entered: 03/27/2023) |
| 03/27/2023 | 37<br>(1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:19 Motion for Rachel Nanes to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 3/27/2023. (dnb) (Entered: 03/27/2023) |
| 03/27/2023 | 38<br>(1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:20 Motion for James P. Muenker to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 3/27/2023. (dnb) (Entered: 03/27/2023) |
| 03/27/2023 | 39<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Stephen D Lerner on behalf of New England Life Plan Communities Corp. (Lerner, Stephen) (Entered: 03/27/2023) |
| 03/27/2023 | 40<br>(1 pg) | Notice of Appearance and Request for Notice Filed by Lee Evan Riger on behalf of Nancy Sakas (Riger, Lee) (Entered: 03/27/2023) |
| 03/27/2023 | 41<br>(35 pgs; 3 docs) | Letter *Regarding Revised Cash Collateral Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 03/27/2023) |
| 03/27/2023 | 42<br>(5 pgs) | Order Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date. The Application is APPROVED solely as set forth in this Order. Debtor is authorized to retain Epiq as claims and noticing agent effective as of the Petition Date under the terms of the Engagement Agreement, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case and all related tasks, all as described in the Application. Epiq is authorized and directed to obtain a post office box or address for the receiptof proofs of claim and maintain an electronic platform for purposes of filing proofs of claim (Related Doc # 8). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | | Claims Agent Flag Set (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | 43 | Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. The Final Hearing on the Motion shall be held on April 5, 2023, at 11:00 a.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed by 4:00 p.m. prevailing Eastern Time, on March 29, 2023 (Related Doc # 2). Signed on 3/27/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 03/28/2023) |

| | | |
|---|---|---|
| 03/27/2023 | 44 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:21 Motion for Nicole McLemore to Appear Pro Hac Vice). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | 45 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:27 Motion for Aaron M. Williams to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | 46 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:30 Motion for Nadia B. Saleem to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | 47 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:26 Motion for Eric R. Blythe to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | 48 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:25 Motion for Emily Kanstroom Musgrave to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee). Signed on 3/27/2023. (dnb) (Entered: 03/28/2023) |
| 03/27/2023 | | Claims Agent appointed: Epiq Corporate Restructuring, LLC ; Claim's Agent URL: https://dm.epiq11.com/case/harborside/info (dnb) (Entered: 03/28/2023) |
| 03/28/2023 | 49 (13 pgs; 2 docs) | Amended Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. The Final Hearing on the Motion shall be held on April 5, 2023, at 11:00 a.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed by 4:00 p.m. prevailing Eastern Time, on March 29, 2023 (RE: related document(s)43 Order). Signed on 3/28/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 03/29/2023) |
| 03/28/2023 | 50 (16 pgs; 2 docs) | Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Further Interim Hearing and (IV) Granting Related Relief. A further interim hearing to consider the Motion will be held on April 5, 2023 at 11:00 a.m. (EST); written objection with the Court on or before April 3, 2023 at 4:00 p.m. (EST) and serve that objection on the Notice Parties so as to be received by such parties on or before such date (Related Doc # 12). Signed on 3/28/2023. (Attachments: # 1 Exhibit) (dnb) (Entered: 03/29/2023) |
| 03/29/2023 | 51 (5 pgs; 3 docs) | Motion for Catherine S. Lombardo to Appear Pro Hac Vice for UMB Bank, N.A.. Fee Amount $150. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. (Attachments: # 1 Affidavit # 2 Proposed Order) (Taylor, Dallas) (Entered: 03/29/2023) |
| 03/29/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21512303. Fee amount 150.00. (re: Doc# 51) (U.S. Treasury) (Entered: 03/29/2023) |

| | | |
|---|---|---|
| 03/30/2023 | 52<br>(3 pgs; 2 docs) | Exhibit - *Emily Musgrave Certificate of Good Standing MA* - Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)25 Motion to Appear Pro Hac Vice filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Emily Musgrave - Certificate of Good Standing RI) (Taylor, Dallas) (Entered: 03/30/2023) |
| 03/30/2023 | 53<br>(1 pg) | Exhibit - *Eric Blythe Certificate of Good Standing - MA* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)26 Motion to Appear Pro Hac Vice filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 03/30/2023) |
| 03/31/2023 | 54<br>(58 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 03/24/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held (Document BK & AP), Hearing Held (Document BK & AP), Hearing Held (Document BK & AP)). Notice of Intent to Request Redaction Due By 04/7/2023. Redaction Request Due By 04/21/2023. Redacted Transcript Submission Due By 05/1/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 06/29/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 03/31/2023) |
| 03/31/2023 | 55<br>(10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)50 Order on Motion to Use Cash Collateral, Order on Motion to Borrow). (Amporfro, Regina) (Entered: 03/31/2023) |
| 04/02/2023 | 56<br>(3 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 04/02/2023. (Admin.) (Entered: 04/03/2023) |
| 04/03/2023 | 57<br>(31 pgs; 2 docs) | Motion to Authorize/Direct / *Debtor's Motion for Entry of an Order, Pursuant to Section 333(a) of the Bankruptcy Code and Bankruptcy Rule 2007.2, (I) Waiving the Appointment of a Patient Care Ombudsman and (II) Allowing the Debtor to Self-Report* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 04/03/2023) |
| 04/04/2023 | 58<br>(37 pgs; 3 docs) | Letter *Submitting Second Interim Cash Collateral Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 04/04/2023) |
| 04/04/2023 | 59<br>(6 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on April 5, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/04/2023) |

| | | |
|---|---|---|
| 04/04/2023 | 60<br>(2 pgs; 2 docs) | Exhibit *Aaron Williams Cert.ficate cf Good Standing MA* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)27 Motion to Appear Pro Hac Vice filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Aaron Williams - Certificate of Good Standing NH) (Taylor, Dallas) (Entered: 04/04/2023) |
| 04/04/2023 | 61<br>(5 pgs) | Notice of Appearance and Request for Notice Filed by Leslie S Barr on behalf of Rocco Totino, Executor of the Estate of Ko Ushiyama (Barr, Leslie) (Entered: 04/04/2023) |
| 04/05/2023 | | Hearing Held and Adjourned; Appearances: Stan Y Yang, Gregory Juell. In person - Zoom Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 2 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtors Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) SECOND INTERIM REVISED ORDER TO BE SUBMITTED; LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | | Hearing Held and Adjourned; Appearances: Stan Y Yang, Gregory Juell. In person - Zoom Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 3 Motion to Pay / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) SECOND INTERIN ORDER TO BE SUBMITTED; LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | | Hearing Held and Adjourned; Appearances: Nadia Saleem, Stan Yang, Rachel Nanes. In person - Zoom Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 4 Motion to Pay / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fess, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) SECOND INTERIM ORDER TO BE SUBMITTED; LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | | Hearing Held and Adjourned; Appearances: Nadia Saleem, Stan Yang. In person - Zoom Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 5 Motion to Prohibit/Enjoin/Restrain / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) |

| | | |
|---|---|---|
| | | Establishing Procedures for Determining Requests for Additional Adequate Assurance. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) SECOND INTERIM ORDER TO BE SUBMITTED; LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | | Adjourned Without Hearing 'Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 6 Motion to Pay / Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | | Hearing Held and Adjourned; Appearances: Nadia Saleem, Stan Yang. In person - Zoom Hearing scheduled for 04/17/2023 at 01:30 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 7 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) SECOND INTERIM ORDER TO BE SUBMITTED; LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 04/05/2023) |
| 04/05/2023 | 62<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Michael S Amato on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Amato, Michael) (Entered: 04/05/2023) |
| 04/06/2023 | 63<br>(1 pg) | Order Directing Clerk's Office to restrict access to the document. The filer is ordered to re-file the document together with all attachments, redacted as required by Bankruptcy Rule 9037, on or before 4/10/2023. (RE: related document(s)43 Order on Motion to Authorize/Direct). Signed on 4/6/2023 (ymm) (Entered: 04/06/2023) |
| 04/06/2023 | 64<br>(2 pgs) | Letter *Confirming UST Review and Approval of Proposed Orders* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/06/2023) |
| 04/06/2023 | 65<br>(2 pgs; 2 docs) | Exhibit *Daniel S. Bleck - Certificate of Good Standing MA* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)24 Motion to Appear Pro Hac Vice filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Daniel S. Bleck - Certificate of Good Standing NH) (Taylor, Dallas) (Entered: 04/06/2023) |
| 04/06/2023 | 66<br>(12 pgs; 2 docs) | Second Interim Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order. The Final Hearing on the Motion shall be held on April 17, 2023, at 1:30 p.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time on April 13, 2023 (RE: related document(s)2 Motion). |

| | | |
|---|---|---|
| | | Signed on 4/6/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 67 (17 pgs; 2 docs) | Second Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Further Interim Hearing and (IV) Granting Related Relief. The Motion is GRANTED on a second interim basis solely as set forth herein and is otherwise adjourned with respect to all other relief sought therein. A further interim hearing to consider the Motion will be held on April 17, 2023 at 1:30 p.m. (ET) before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April 13, 2023 at 4:00 p.m. (ET) and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date (RE: related document(s)12 Motion). Signed on 4/6/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 68 (4 pgs) | Interim Order Authorizing the Debtor to Pay Certain Prepetition Taxes and Fess, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order. (Related Doc # 4) Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 69 (4 pgs) | Second Interim Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. The Motion is GRANTED, on an interim basis, as set forth in this Second Interim Order.The Final Hearing on the Motion shall be held on April 17, 2023 at 1:30 p.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time on April 13, 2023 (Related Doc # 7) Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 70 (4 pgs) | Interim Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order (RE: related document(s)7 Motion). Signed on 4/6/2023 (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 71 (5 pgs) | Interim Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order. (Related Doc # 3) Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 72 (5 pgs) | Second Interim Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order. The Final Hearing on the Motion shall be held on April 17, 2023 at 1:30 p.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the |

| | | |
|---|---|---|
| | | Motion shall be filed on or before 4:00 p.m. (ET) on April 13, 2023 (RE: related document(s)3 Motion). Signed on 4/6/2023 (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 73 (10 pgs) | Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates. The Motion is GRANTED as set forth in this Order. The Noticing and Claims Agent shall serve this Order upon all parties on the MasterService List within three (3) business days after entry of this Order and post the Order on the Case Website. The following Case Management Procedures are approved and shall govern all applicable aspects of this chapter 11 case, except as otherwise ordered by this Court: Filing and Notice Procedures; Deadlines for Filing Responsive Pleadings. Procedures Established for Filing Court Papers. All Court Papers filed in this chapter 11 case shall be filed electronically with the Court on the docket of In re Amsterdam House Continuing Care Retirement Community, Inc., Case No. 23-70989 by registered users of this Courts electronic case filing system. Master Service List. The Noticing and Claims Agent shall maintain a master service list, which shall include the mailing address information (and e-mail address, where available) (Related Doc # 9). Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 74 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:51 Motion for Catherine S. Lombardo to Appear Pro Hac Vice for UMB Bank, N.A.). Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 75 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:24 Motion for Daniel S. Bleck to Appear Pro Hac Vice for UMB Bank, N.A., as Bond Trustee). Signed on 4/6/2023. (dnb) (Entered: 04/06/2023) |
| 04/06/2023 | 76 (4 pgs) | Letter / *Noticed of Omnibus Hearing on April 17, 2023 at 1:30 p.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/06/2023) |
| 04/06/2023 | 77 (3 pgs) | Letter / *Notice of Omnibus Hearing on May 17, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/06/2023) |
| 04/06/2023 | 78 (16 pgs; 2 docs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. in Support of the Debtor's Motion for Entry of an Order, Pursuant to Section 333(a) of the Bankruptcy Code and Bankruptcy Rule 2007.2 (RE: related document(s)57 Motion) (Attachments: # 1 Exhibit A) (Juell, Gregory) Modified on 4/7/2023 (dnb). (Entered: 04/06/2023) |
| 04/09/2023 | 79 (73 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)32 Meeting of Creditors Chapter 11, 33 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 34 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/09/2023) |
| 04/09/2023 | 80 (11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)36 Order on Motion to Extend Deadline to File Schedules or Provide Required Information, 41 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/09/2023) |

| | | |
|---|---|---|
| 04/09/2023 | 81<br>(11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)42 Order on Application to Employ, 43 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 04/09/2023) |
| 04/11/2023 | 82<br>(1 pg) | Notice of Appearance and Request for Notice Filed by Stuart P Gelberg on behalf of Margaret A Dildilian (Gelberg, Stuart) (Entered: 04/11/2023) |
| 04/12/2023 | 83<br>(38 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 04/05/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP), Hearing Adjourned Without Hearing (Document BK & AP), Hearing Held and Adjourned (Document BK & AP)). Notice of Intent to Request Redaction Due By 04/19/2023. Redaction Request Due By 05/3/2023. Redacted Transcript Submission Due By 05/15/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 07/11/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 04/12/2023) |
| 04/12/2023 | 84<br>(15 pgs; 2 docs) | Objection *to the debtor's motion seeking entry of an order waiving the appointment of a patient care ombudsman* Filed by United States Trustee (RE: related document(s)57 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A) (Yang, Stan) (Entered: 04/12/2023) |
| 04/12/2023 | 85<br>(3 pgs) | Affidavit/Certificate of Service *of The United States Trustees Objection to Debtors Motion seeking entry of an order waiving the appointment of a Patient Care Ombudsman.* Filed by Stan Y Yang (RE: related document(s)84 Objection filed by U.S. Trustee United States Trustee) (Yang, Stan) (Entered: 04/12/2023) |
| 04/12/2023 | 86<br>(4 pgs) | Second Interim Order (I) Authorizing the Debtor to pay certain prepetition taxes and fees, (II) Authorizing financial institutions to honor and process related checks and transfers, and (III) Granting related relief. It is hereby Ordered that; The Final Hearing on the Motion shall be held on April 17, 2023 at 1:30 p.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time on April 13, 2023. (RE: related document(s)4 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 4/12/2023 (alh) (Entered: 04/12/2023) |
| 04/12/2023 | 87<br>(8 pgs) | Interim Order (I) Prohibiting utility providers from altering, refusing or discontinuing service (II) Deeming the utility providers adequately assured of future performance, and (III) Establishing procedures for determining requests for additional adequate assurance. It is hereby Ordered that: The Final Hearing on the Motion shall be held on April 17, 2023 at 1:30 p.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time on April 13, 2023. (RE: related document(s)5 Motion to Prohibit/Enjoin/Restrain filed by Debtor |

| | | |
|---|---|---|
| | | Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 4/12/2023 (alh) (Entered: 04/12/2023) |
| 04/13/2023 | 88 (1 pg) | Withdrawal of Claim Nos. 3 (PSEG LI) (webclaimusr) (Entered: 04/13/2023) |
| 04/13/2023 | 89 (1 pg) | Letter *Regarding Agreed-To Objection Deadline Extension* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Taylor, Dallas) (Entered: 04/13/2023) |
| 04/13/2023 | 90 (2 pgs) | Letter of Adjournment: Hearing rescheduled from 04/05/2023 at 11:00 a.m. to 04/17/2023 at 1:30 p.m. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)2 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 3 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 4 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 5 Motion to Prohibit/Enjoin/Restrain filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 6 Motion to Pay filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 7 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Juell, Gregory) (Entered: 04/13/2023) |
| 04/13/2023 | 91 (4 pgs; 2 docs) | Notice of Appointment of Creditors' Committee *Janice Grubin, as Executrix of the Estate of Robert Grubin; Dr. Constance Miceli; and Irwin W. Silverberg* Filed by United States Trustee. (Attachments: # 1 Certification of Service of Notice of Appointment)(Black, Christine) (Entered: 04/13/2023) |
| 04/13/2023 | 92 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)57 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/13/2023) |
| 04/14/2023 | 93 (7 pgs) | Statement */ Agenda of Matters Scheduled for Hearing on April 17, 2023 at 1:30 p.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/14/2023) |
| 04/14/2023 | 94 (30 pgs; 2 docs) | Objection *Preliminary Objection of the Trustee to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit) (Taylor, Dallas) (Entered: 04/14/2023) |

| | | |
|---|---|---|
| 04/14/2023 | 95<br>(11 pgs) | Reply / *Debtor's Reply in Support of Motion for Entry of an Order, Pursuant to Section 333(a) of the Bankruptcy Code and Bankruptcy Rule 2007.2, (i) Waiving the Appointment of a Patient Care Ombudsman and (ii) Allowing the Debtor to Self-Report* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)57 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 04/14/2023) |
| 04/14/2023 | 96<br>(3 pgs) | Statement *UMB Bank N.A.'s Witness and Exhibit List for the April 17, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Taylor, Dallas) (Entered: 04/14/2023) |
| 04/14/2023 | 97<br>(3 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (AP) Notice Date 04/14/2023. (Admin.) (Entered: 04/15/2023) |
| 04/17/2023 | 98<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Jeremiah Paul Ledwidge on behalf of Official Committee of Unsecured Creditors (Ledwidge, Jeremiah) (Entered: 04/17/2023) |
| 04/17/2023 | 99<br>(7 pgs; 5 docs) | Motion for Eric E. Walker to Appear Pro Hac Vice for Official Committee of Unsecured Creditors. Fee Amount $150. Filed by Jeremiah Paul Ledwidge on behalf of Official Committee of Unsecured Creditors. (Attachments: # 1 Affidavit # 2 Exhibit A: Certificate of Good Standing # 3 Certificate of Service # 4 Proposed Order) (Ledwidge, Jeremiah) (Entered: 04/17/2023) |
| 04/17/2023 | 100<br>(8 pgs; 5 docs) | Motion for Paul J. Springer to Appear Pro Hac Vice for Official Committee of Unsecured Creditors. Fee Amount $150. Filed by Jeremiah Paul Ledwidge on behalf of Official Committee of Unsecured Creditors. (Attachments: # 1 Affidavit # 2 Exhibit A: Certificate of Good Standing # 3 Certificate of Service # 4 Proposed Order) (Ledwidge, Jeremiah) (Entered: 04/17/2023) |
| 04/17/2023 | 101<br>(7 pgs; 5 docs) | Motion for Samuel R. Rabuck to Appear Pro Hac Vice for Official Committee of Unsecured Creditors. Fee Amount $150. Filed by Jeremiah Paul Ledwidge on behalf of Official Committee of Unsecured Creditors. (Attachments: # 1 Affidavit # 2 Exhibit A: Certificate of Good Standing # 3 Certificate of Service # 4 Proposed Order) (Ledwidge, Jeremiah) (Entered: 04/17/2023) |
| 04/17/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21558506. Fee amount 150.00. (re: Doc# 99) (U.S. Treasury) (Entered: 04/17/2023) |
| 04/17/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21558506. Fee amount 150.00. (re: Doc# 100) (U.S. Treasury) (Entered: 04/17/2023) |
| 04/17/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21558506. Fee amount 150.00. (re: Doc# 101) (U.S. Treasury) (Entered: 04/17/2023) |

| | | |
|---|---|---|
| 04/17/2023 | | Hearing Held; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin. (RE: related document(s) 2 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED; SUBMIT FINAL ORDER. IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin (RE: related document(s)3 Motion to Pay Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED; SUBMIT FINAL ORDER. IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) Modified on 4/19/2023 (alh). (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin. (RE: related document(s) 4 Motion to Pay Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT FINAL ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin (RE: related document(s) 5 Motion to Prohibit/Enjoin/Restrain Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT FINAL ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin (RE: related document(s) 6 Motion to Pay Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED ON FINAL BASIS - SUBMIT FINAL ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held; Appearance(s) by Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin. (RE: related document(s)57 Motion to |

| | | |
|---|---|---|
| | | Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED AS PER TERMS ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held and Adjourned; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin. Hearing scheduled for 5/2/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) DIP FINANCE GRANTED IN PART AND ADJOURNED IN PART AS PER TERMS ON THE RECORD. (alh) (Entered: 04/18/2023) |
| 04/17/2023 | | Hearing Held on Final Basis; Appearances: Eric Blythe, Rachel Nanes, James Muenker, Gregory Juell, Brooke Navarre, Eric Walker, Pamela Landman, Stan Yang, Christine Black, Jonathan Helfat, Nadia Saleem, Chris Giaimo, Janice Grubin. (RE: related document(s)7 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT FINAL ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) Modified on 4/19/2023 (alh). (Entered: 04/18/2023) |
| 04/18/2023 | 102 (17 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)58 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 59 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/18/2023) |
| 04/18/2023 | 103 (16 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)66 Generic Order, 67 Generic Order, 68 Order on Motion to Pay, 69 Order on Motion to Authorize/Direct, 70 Generic Order, 71 Order on Motion to Pay, 72 Generic Order, 73 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 04/18/2023) |
| 04/18/2023 | 104 (18 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)90 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/18/2023) |
| 04/19/2023 | 105 (1 pg) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)94 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 04/19/2023) |
| 04/19/2023 | | Status hearing to be held on 5/17/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY (RE: related document(s)77 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (alh) (Entered: 04/19/2023) |

| | | |
|---|---|---|
| 04/20/2023 | 106 (71 pgs; 2 docs) | Motion to Authorize/Direct / *Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | 107 (79 pgs; 6 docs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | 108 (11 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | 109 (6 pgs) | Notice of Appearance and Request for Notice Filed by Leslie S Barr on behalf of Rocco Totino, Executor of the Estate of Ko Ushiyama, and Executor of the Estate of Mariko Ushiyama (Barr, Leslie) (Entered: 04/20/2023) |
| 04/20/2023 | 110 (1 pg) | Letter of Adjournment: Hearing rescheduled from 04/17/2023 at 1:30 p.m. (ET) to 05/02/2023 at 11:00 a.m. (ET) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | 111 (3 pgs) | Statement / *Notice of Hearing on May 2, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | 112 (79 pgs; 15 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 03/31/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Cash Activity # 2 Exhibit B - Bank Reconciliations # 3 Exhibit C - Bank Statements (Part 1) # 4 Exhibit C - Bank Statements (Part 2) # 5 Exhibit 3 - Bank Statements (Part 3) # 6 Exhibit D - Disbursement Journal # 7 Exhibit E - Balance Sheet # 8 Exhibit F - Statement of Operations # 9 Exhibit G - Accounts Receivable Aging # 10 Exhibit H - Payment to Insiders # 11 Exhibit I - Post-Petition Accounts Payable Aging # 12 Exhibit J - Post |

| | | |
|---|---|---|
| | | Petition Liabilities Aging # 13 Exhibit K - Prepetition Payments # 14 Exhibit L - Statement of Capital Assets) (Juell, Gregory) (Entered: 04/20/2023) |
| 04/20/2023 | | Hearing scheduled for 5/2/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s)106 Motion to Authorize/Direct / Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 04/26/2023) |
| 04/21/2023 | 113<br>(11 pgs; 2 docs) | Final Order Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S.Trustee Guidelines. The Motion is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)2 Motion). Signed on 4/21/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 114<br>(17 pgs; 2 docs) | Third Interim Order (I) Authorizing the Debtor to Use Cash Collateral;; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing and (IV) Granting Related Relief. A final hearing to consider the Motion will be heldon May 2, 2023 at 11:00 a.m. (EST) before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a final basis shall file a written objection with the Court on or before April 25, 2023 at 5:00 p.m. (EST) and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date (RE: related document(s)12 Motion). Signed on 4/21/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 115<br>(3 pgs) | Final Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. The Motion is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)4 Motion). Signed on 4/21/2023 (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 116<br>(7 pgs) | Final Order (I) Prohibiting utility providers from altering, refusing or discontinuing service (II) Deeming the utility providers adequately assured of future performance, and (III) Establishing procedures for determining requests for additional adequate assurance. The Motion is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)5 Motion ). Signed on 4/21/2023 (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 117<br>(3 pgs) | Final Order (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay all Obligations Arising Thereunder, and (B) Renew, Revise, Extend, Supplement, Change, or Enter Into New Insurance Policies, and (II) Granting Certain Related Relief. The Motion |

| | | |
|---|---|---|
| | | is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)6 Motion). Signed on 4/21/2023 (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 118 (5 pgs) | Final Order Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. The Motion is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)3 Motion). Signed on 4/21/2023 (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 119 (4 pgs) | Final Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. The Motion is GRANTED, on a final basis, as set forth in this Final Order (RE: related document(s)7 Motion). Signed on 4/21/2023 (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 120 (4 pgs) | Order, Pursuant to Section 333(a) of the Bankruptcy Code and Bankruptcy Rule 2007.2, (I) Waiving the Appointment of a Patient Care Ombudsman and (II) Allowing the Debtor to Self-Report. The appointment of a patient care ombudsman under section 333 of the Bankruptcy Code is not necessary for the protection of Residents under the specific facts of this chapter 11 case at this time. The U.S. Trustee is directed not to appoint a patient care ombudsman in this caseat this time. Within fourteen (14) days of entry of this Order, and every fourteen (14) days thereafter until the effective date of the Debtors confirmed plan of reorganization, or as otherwise may be ordered by this Court, the Debtor shall file with the Court a verified affidavit reporting the following information (the Self Report). The Debtor will mail (by U.S. first class mail), e-mail, or fax a copy of each Self Report to: (a) the U.S. Trustee, (b) the DOH, and (c) any Residents or family members thereof who specifically request a copy of such affidavit. Moreover, the Self-Reports will also be available on the website of Debtors noticing and claims agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/TheHarborside or by accessing the Courts website at www.nyeb.uscourts.gov. A PACER password is needed to access documents on the Courts website. The Court, on motion of the U.S. Trustee or any party in interest, may order the appointment of a patient care ombudsman at any time during the pendency of this case if the Court finds a change in circumstances or newly discovered evidence that demonstrates the necessity ofan ombudsman to monitor the quality of Resident care and to protect the interests of Residents (Related Doc # 57). Signed on 4/21/2023. (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 121 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:99 Motion for Eric E. Walker to Appear Pro Hac Vice for Official Committee of Unsecured Creditors). Signed on 4/21/2023. (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 122 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:100 Motion for Paul J. Springer to Appear Pro Hac Vice for Official Committee of Unsecured Creditors). Signed on 4/21/2023. (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 123 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:101 Motion for Samuel R. Rabuck to Appear Pro Hac Vice for Official |

| | | |
|---|---|---|
| | | Committee of Unsecured Creditors). Signed on 4/21/2023. (dnb) (Entered: 04/21/2023) |
| 04/21/2023 | 124 (2 pgs) | Notice of Appearance and Request for Notice Filed by Paul Rachmuth on behalf of Barbara and Richard Newman (Rachmuth, Paul) (Entered: 04/21/2023) |
| 04/21/2023 | 125 (28 pgs; 2 docs) | Notice of Rescheduled Telephonic 341 Meeting with Instructions. Meeting scheduled for April 24, 2023 @ 1:00 pm Filed by United States Trustee (RE: related document(s)32 Meeting of Creditors Chapter 11). (Yang, Stan) (Entered: 04/21/2023) |
| 04/21/2023 | 126 (140 pgs) | Schedule(s), Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1007-1(b) Schedule A/B, Schedule D, Schedule E/F, Schedule G, Schedule H, Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 04/21/2023) |
| 04/21/2023 | 127 (33 pgs) | Statement of Financial Affairs for Non-Individuals (Form 207) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)11 Deficient Filing Chapter 11) (Juell, Gregory) (Entered: 04/21/2023) |
| 04/23/2023 | 128 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 76 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 77 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 78 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/23/2023) |
| 04/24/2023 | 129 (59 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 04/17/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 2 Motion to Authorize/Direct, 4 Motion to Pay, 5 Motion to Prohibit/Enjoin/Restrain, 6 Motion to Pay). Notice of Intent to Request Redaction Due By 05/1/2023. Redaction Request Due By 05/15/2023. Redacted Transcript Submission Due By 05/25/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 07/24/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 04/24/2023) |
| 04/24/2023 | 130 (2 pgs) | Notice of Appearance and Request for Notice Filed by Robert A. Wolf on behalf of Mary Garrett (Wolf, Robert) (Entered: 04/24/2023) |
| 04/24/2023 | 131 (77 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 4/17/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 99 Motion to Appear Pro Hac Vice, 100 Motion to Appear Pro Hac Vice, 101 Motion to Appear Pro Hac Vice). Notice of Intent to Request Redaction Due By 05/1/2023. Redaction Request Due By 05/15/2023. Redacted Transcript Submission Due By 05/25/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY |

| | | |
|---|---|---|
| | | RESTRICTED THROUGH 07/24/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (Veritext) (Entered: 04/24/2023) |
| 04/25/2023 | 132 (11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)93 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 95 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/25/2023) |
| 04/25/2023 | 133 (1 pg) | Notice of Appearance and Request for Notice Filed by Mark P Getzoni on behalf of Jose A Tejeda (Getzoni, Mark) (Entered: 04/25/2023) |
| 04/25/2023 | 134 (13 pgs) | Objection *Supplemental Objection of the Trustee to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Taylor, Dallas) (Entered: 04/25/2023) |
| 04/25/2023 | 135 (10 pgs) | Declaration Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)94 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 134 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 04/25/2023) |
| 04/25/2023 | 136 (35 pgs; 2 docs) | Objection *Objection of the Trustee to Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit Exhibit 1) (Taylor, Dallas) (Entered: 04/25/2023) |
| 04/25/2023 | 137 (9 pgs) | Declaration Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)136 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 04/25/2023) |
| 04/25/2023 | 138 (4 pgs) | Declaration Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Cyganowski, Melanie) (Entered: 04/25/2023) |
| 04/25/2023 | 139 (13 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., |

| | | |
|---|---|---|
| | | 107 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 108 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 110 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 111 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 112 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/25/2023) |
| 04/25/2023 | 140 (26 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)113 Generic Order, 114 Generic Order, 115 Generic Order, 116 Generic Order, 117 Generic Order, 118 Generic Order, 119 Generic Order, 120 Order on Motion to Authorize/Direct, 121 Order on Motion to Appear Pro Hac Vice, 122 Order on Motion to Appear Pro Hac Vice, 123 Order on Motion to Appear Pro Hac Vice, 126 Schedule(s), Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1007-1(b) (No Fee) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 127 Statement of Financial Affairs for Non-Individuals (Form 207) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 04/25/2023) |
| 04/26/2023 | 141 (5 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)134 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 136 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 04/26/2023) |
| 04/26/2023 | 142 (9 pgs; 4 docs) | Motion for Benjamin D. Schuman to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Affidavit # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory) (Entered: 04/26/2023) |
| 04/26/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21584726. Fee amount 150.00. (re: Doc# 142) (U.S. Treasury) (Entered: 04/26/2023) |
| 04/26/2023 | 143 (3 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | 144 (33 pgs) | BNC Certificate of Mailing with Notice of Reset of Section 341 Meeting of Creditors Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/27/2023 | 145 (3 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 04/27/2023. (Admin.) (Entered: 04/28/2023) |
| 04/28/2023 | 146 (8 pgs) | Objection Filed by United States Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Yang, Stan) (Entered: 04/28/2023) |
| 04/28/2023 | 147 (7 pgs; 4 docs) | Motion for Russell R. Johnson, III to Appear Pro Hac Vice for PSEG Long Island. Fee Amount $150. Filed by Michael Kwiatkowski on behalf |

| | | |
|---|---|---|
| | | of PSEG Long Island. (Attachments: # 1 Exhibit 1 # 2 Proposed Order # 3 Notice of Motion) (Kwiatkowski, Michael) (Entered: 04/28/2023) |
| 04/28/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21590585. Fee amount 150.00. (re: Doc# 147) (U.S. Treasury) (Entered: 04/28/2023) |
| 04/28/2023 | 148 (3 pgs) | Statement *UMB Bank, N.A.'s Witness and Exhibit List for the May 2, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 04/28/2023) |
| 04/28/2023 | 149 (9 pgs) | Response *of Amsterdam Continuing Care Health System, Inc. to Bond Trustee Objections to Proposed Debtor-in-Possession Financing* Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 94 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 134 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 138 Declaration filed by Interested Party Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender) (Cyganowski, Melanie) (Entered: 04/28/2023) |
| 04/28/2023 | 150 (41 pgs; 3 docs) | Reply *Debtor's Reply in Support of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Autorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 04/28/2023) |
| 04/28/2023 | 151 (11 pgs) | Reply */ Debtor's Reply in Support of Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 04/29/2023) |
| 05/01/2023 | 152 (12 pgs) | Statement of Undisputed Facts */ Joint Stipulation Regarding (I) Undisputed Facts and (II) Disputes in Connection with the Debtor's Bid Procedures Motion and DIP Financing Motion* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 05/01/2023) |
| 05/01/2023 | 153 (3 pgs) | Affidavit/Certificate of Service *of The United States Trustees Objection to Debtors Motion seeking entry of orders (i) approving bidding procedures, (ii) authorizing the debtor to designate a stalking horse* |

| | | |
|---|---|---|
| | | *bidder, (iii) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases; (iv) authorizing (a) the sale of the debtors assets free and clear of all liens, claims, interests and encumbrances, and (b) the assumption and assignment of certain executory contracts and unexpired leases, (v) approving the form of notice related to the sale, and (vi) granting related relief.* Filed by Stan Y Yang (RE: related document(s)146 Objection filed by U.S. Trustee United States Trustee) (Yang, Stan) (Entered: 05/01/2023) |
| 05/01/2023 | 154 (3 pgs) | Notice of Appearance and Request for Notice Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (Califano, Thomas) (Entered: 05/01/2023) |
| 05/01/2023 | 155 (54 pgs; 3 docs) | Letter *Regarding Revised Final DIP Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 05/01/2023) |
| 05/01/2023 | 156 (103 pgs; 5 docs) | Letter *Regarding Revised Proposed Bidding Procedures and Bidding Procedures Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Juell, Gregory) (Entered: 05/01/2023) |
| 05/01/2023 | 157 (6 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on May 2, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 05/01/2023) |
| 05/01/2023 | 158 (5 pgs) | Statement *of the Official Committee of Unsecured Creditors in Support of the Debtor's Emergency Motions to Obtain Post-Petition Financing and Establish Bidding Procedures* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow, 106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Walker, Eric) (Entered: 05/01/2023) |
| 05/01/2023 | 159 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:142 Motion for Benjamin D. Schuman to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.) Signed on 5/1/2023. (dnb) (Entered: 05/02/2023) |
| 05/01/2023 | 160 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:147 Motion for Russell R. Johnson, III to Appear Pro Hac Vice for PSEG Long Island). Signed on 5/1/2023. (dnb) (Entered: 05/02/2023) |
| 05/02/2023 | 161 (3 pgs) | Affidavit/Certificate of Service Filed by Michael Kwiatkowski on behalf of PSEG Long Island (RE: related document(s)160 Order on Motion to Appear Pro Hac Vice) (Kwiatkowski, Michael) (Entered: 05/02/2023) |

| | | |
|---|---|---|
| 05/02/2023 | | Hearing Held; Appearances: Eric E. Walker, Daniel S Bleck, Rachel Nanes, James P. Muenker. (RE: related document(s) 12 Motion to Use Cash Collateral,Motion to Borrow Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION APPROVED AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 05/02/2023) |
| 05/02/2023 | | Hearing Held and Adjourned; Appearances: Eric E. Walker, Stephen Lerner, Daniel S Bleck, Rachel Nanes, James P. Muenker. 'Hearing scheduled for 08/29/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 106 Motion to Authorize/Direct / Debtors Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 05/02/2023) |
| 05/02/2023 | 162<br>(16 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)76 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 77 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 78 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/02/2023) |
| 05/04/2023 | 163<br>(49 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 05/02/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held and Adjourned (Document BK & AP)). Notice of Intent to Request Redaction Due By 05/11/2023. Redaction Request Due By 05/25/2023. Redacted Transcript Submission Due By 06/5/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 08/2/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 05/04/2023) |
| 05/04/2023 | 164<br>(3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)14 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/04/2023) |
| 05/05/2023 | 165<br>(1 pg) | Notice of Appearance and Request for Notice Filed by Michael G McAuliffe on behalf of David A Poses (McAuliffe, Michael) (Entered: 05/05/2023) |
| 05/05/2023 | 166<br>(1 pg) | Letter of Adjournment: Hearing rescheduled from 05/17/20023 at 11:00 a.m. (ET) to 06/06/2023 at 11:00 a.m. (ET) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 05/05/2023) |

| | | |
|---|---|---|
| 05/05/2023 | 167 (3 pgs) | Statement / *Notice of Omnibus Hearing on June 6, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 05/05/2023) |
| 05/05/2023 | 168 (10 pgs; 2 docs) | Notice of Filing of Initial Self-Reporting Affidavit in Lieu of Appointment of Omnbudsman Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 05/05/2023) |
| 05/08/2023 | 169 (25 pgs; 4 docs) | Motion for 2004 Examination *Motion of UMB Bank, N.A. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents By and Other Discovery Of Amsterdam Continuing Care Health System, Inc.*. Objections to be filed on 5/23/2023 by 5:00 p.m. (EST). Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 5/30/2023. (Attachments: # 1 Exhibit A - Document Requests # 2 Exhibit B - Deposition Topics # 3 Exhibit C - Proposed Order) (Taylor, Dallas). Modified on 5/9/2023 [to correct objection's date] (dnb). (Entered: 05/08/2023) |
| 05/09/2023 | 170 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 05/09/2023) |
| 05/09/2023 | 171 (6 pgs) | Notice of Appearance and Request for Notice Filed by Howard L Simon on behalf of Joan B. Simon, Administrator of the Estate of Pauline Blum a/k/a Pauline Luban Blum (Simon, Howard) (Entered: 05/09/2023) |
| 05/10/2023 | 172 (47 pgs; 2 docs) | Letter *Regarding Bidding Procedures Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 05/10/2023) |
| 05/10/2023 | 173 (3 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 05/10/2023. (Admin.) (Entered: 05/11/2023) |
| 05/11/2023 | 174 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)5 Motion to Prohibit/Enjoin/Restrain filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 87 Generic Order). (Amporfro, Regina) (Entered: 05/11/2023) |
| 05/11/2023 | 175 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)138 Declaration filed by Interested Party Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender, 149 Response filed by Interested Party Counsel to Amsterdam Continuing Care Health System, Inc., as proposed DIP lender). (Amporfro, Regina) (Entered: 05/11/2023) |
| 05/11/2023 | 176 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)150 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 151 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 155 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 156 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 157 Statement filed |

| | | |
|---|---|---|
| | | by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 158 Statement filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors). (Amporfro, Regina) (Entered: 05/11/2023) |
| 05/15/2023 | 177 (18 pgs; 3 docs) | Motion to Authorize/Direct / *Motion cf PSEG Long Island to Determine Adequate Assurance cf Payment Pursuant to Section 366(c) cf the Bankruptcy Code* Filed by Michael Kwiatkowski on behalf of PSEG Long Island. Hearing scheduled for 6/6/2023 at 11:00 AM Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Proposed Order Granting Motion of PSEG Long Island to Determine Adequate Assurance of Payment Pursuant to Section 366(c) of the Bankruptcy Code # 2 Notice of Hearing on Motion of PSEG Long Island to Determine Adequate Assurance of Payment Pursuant to Section 366(c) of the Bankruptcy Code) (Kwiatkowski, Michael) Modified on 5/16/2023 (ymm). (Entered: 05/15/2023) |
| 05/15/2023 | 178 (5 pgs) | Affidavit/Certificate of Service Filed by Michael Kwiatkowski on behalf of PSEG Long Island (RE: related document(s)177 Motion to Authorize/Direct filed by Creditor PSEG Long Island) (Kwiatkowski, Michael) (Entered: 05/15/2023) |
| 05/17/2023 | 179 (45 pgs; 2 docs) | Order Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief. The Motion is GRANTED as set forth herein, and any objections, responses and reservations of rights to the Motion or to the relief requested therein that have not been withdrawn,waived, settled or resolved are hereby overruled in all respects on the merits with prejudice. Objections, if any, to any contemplated Transaction must be made by August 25, 2023, at 12:00 p.m. (prevailing Eastern Time). If necessary, the Court shall conduct the Sale Hearing and consider any unresolvedobjections to any Asset Sale on August 29, 2023 at 11:00 a.m. (prevailing Eastern Time) or at such other time ordered by the Court. Any Sale Hearing may be adjourned or rescheduled by the Debtor without further notice other than an announcement of the adjourned date at the Sale Hearing or in a notice filed with the Court. The Bidding Procedures attached hereto as Exhibit 1 are approved in all respects and shall govern all bids and bid proceedings relating to any Transaction. The Debtor is authorized to pay NELP the sum of up to $100,000 (Related Doc # 106). Signed on 5/17/2023. (Attachments: # 1 Exhibit) (dnb) (Entered: 05/17/2023) |
| 05/17/2023 | 180 (3 pgs) | Order pursuant to Bankruptcy Rule 2004 Directing the Production of Documents By and Other Discovery Of New England Life Plan Communities Corp. The Motion is GRANTED to the extent set forth herein (Related Doc # 169). Signed on 5/17/2023. (dnb) (Entered: 05/17/2023) |
| 05/17/2023 | | Adjourned Without Hearing Status hearing to be held on 06/06/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (ymm) (Entered: 05/17/2023) |

| | | |
|---|---|---|
| 05/17/2023 | 181 (29 pgs; 2 docs) | Letter *Regarding Final DIP Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 05/17/2023) |
| 05/17/2023 | 182 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)32 Meeting of Creditors Chapter 11). (Amporfro, Regina) (Entered: 05/17/2023) |
| 05/18/2023 | 183 (3 pgs) | Notice of Appearance and Request for Notice Filed by Jami B Nimeroff on behalf of Sodexo (sxl) (Entered: 05/18/2023) |
| 05/18/2023 | 184 (27 pgs; 2 docs) | Final Order (I) Authorizing the Debtor to Obtain Dip Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Granting Related Relief (RE: related document(s)12 Motion). Signed on 5/18/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 05/18/2023) |
| 05/18/2023 | 185 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)179 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 05/18/2023) |
| 05/19/2023 | 186 (12 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)166 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 167 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 168 Affidavit filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/19/2023) |
| 05/19/2023 | 187 (10 pgs; 2 docs) | Statement / *Notice of Filing of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 05/19/2023) |
| 05/19/2023 | 188 (44 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 04/30/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 05/19/2023) |
| 05/23/2023 | 189 (4 pgs) | Response *The Official Committee of Unsecured Creditors Response to Motion of UMB Bank, N.A. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents By and Other Discovery Of Amsterdam Continuing Care Health System, Inc.* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Walker, Eric) (Entered: 05/23/2023) |
| 05/23/2023 | 190 (5 pgs) | Objection *Debtor's Limited Objection and Reservation of Rights Regarding Motion of UMB Bank, N.A., for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents By and* |

| | | |
|---|---|---|
| | | *Other Discovery of Amsterdam Continuing Care Health System, Inc.* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/23/2023 | 191 (7 pgs) | Objection *of Amsterdam Continuing Care Health System, Inc. to Motion of UMB Bank, N.A. for Entry of Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc.* Filed by Erik B Weinick on behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Weinick, Erik) (Entered: 05/23/2023) |
| 05/23/2023 | 192 (61 pgs; 4 docs) | Application to Employ Ankura Consulting Group, LLC as (i) to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (ii) the Designation of Michael W. Morton as the Debtor's Chief Restructuring Officer, Effective as of the Petition Date . Objections to be filed on 05/30/2023 at 4:00 p.m. (ET). Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/23/2023 | 193 (36 pgs; 4 docs) | Application to Employ Grandbridge Real Estate Capital LLC as Real Estate Broker for the Debtor Effective as of the Petition Date . Objections to be filed on 05/30/2023 at 4:00 p.m. (ET). Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/23/2023 | 194 (43 pgs; 4 docs) | Application to Employ Cooley LLP as Counsel to the Official Committee of Unsecured Creditors *Application of the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of Cooley LLP as Counsel Effective as of April 15, 2023.* Objections to be filed on 5/30/2023 at 4:00 p.m. (ET). Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A: Proposed Order # 2 Exhibit B: Walker Declaration, together with Schedules A and B # 3 Exhibit C: Grubin Declaration) (Walker, Eric) (Entered: 05/23/2023) |
| 05/23/2023 | 195 (32 pgs; 3 docs) | Application to Employ GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor to the Official Committee of Unsecured Creditors *Application of the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor Effective as of April 21, 2023.* Objections to be filed on 5/30/2023 at 4:00 p.m. (ET). Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A: Proposed Order # 2 Exhibit B: Buck Declaration, together with Schedules A and B) (Walker, Eric) (Entered: 05/23/2023) |

| | | |
|---|---|---|
| 05/23/2023 | 196 (39 pgs; 6 docs) | Application to Employ DLA Piper LLP (US) as Counsel to the Debtor Effective as of the Petition Date . Objections to be filed on 05/30/2023 at 4:00 p.m. (ET). Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/23/2023 | 197 (16 pgs; 2 docs) | Motion to Authorize/Direct / *Debtor's Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals*. Objections to be filed on 05/30/2023 at 4:00 p.m. (ET). Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/23/2023 | 198 (4 pgs) | Statement / *Notice of Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)192 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 193 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 196 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 197 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 05/23/2023) |
| 05/24/2023 | 199 (51 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)179 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 05/24/2023) |
| 05/24/2023 | 200 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)184 Generic Order, 188 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/24/2023) |
| 05/24/2023 | 201 (51 pgs; 3 docs) | Letter *Regarding Revised Final DIP Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)12 Motion to Use Cash Collateral filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., Motion to Borrow) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Juell, Gregory) (Entered: 05/24/2023) |
| 05/24/2023 | 202 (31 pgs; 2 docs) | Order to Vacate. Upon consideration of the record as a whole, the Court hereby ORDERS that the order at docket item #180 be VACATED as improvidently entered in administrative error. It is hereby Ordered, Adjudged, and Decreed that: The Trustee is authorized under Bankruptcy Rules 2004 and 9016, to issue such subpoenas as may be necessary to compel the production of documents and the testimony of the ACCHS in connection with the administration of this Chapter 11 Case. (RE: related document(s)180 Order on Motion for Examination). Signed on 5/24/2023 (alh) (Entered: 05/25/2023) |
| 05/25/2023 | 203 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)187 Statement filed by Debtor Amsterdam |

| | | |
|---|---|---|
| | | House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/25/2023) |
| 05/25/2023 | 204 (1 pg) | Letter Providing Notice of Court Hearing Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) Hearing scheduled for 6/6/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Taylor, Dallas) (Entered: 05/25/2023) |
| 05/26/2023 | 205 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)204 Letter Providing Notice of Court Hearing filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 05/26/2023) |
| 05/26/2023 | 206 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)192 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 193 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 194 Application to Employ filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 195 Application to Employ filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 196 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 197 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 198 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 05/26/2023) |
| 05/30/2023 | 207 (1 pg) | Letter *Regarding June 6, 2023 Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 05/30/2023) |
| 05/30/2023 | 208 (1 pg) | Notice of Appearance and Request for Notice Filed by Lon J Seidman on behalf of Barby Geffner (Seidman, Lon) (Entered: 05/30/2023) |
| 05/30/2023 | 209 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)189 Response filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 190 Objection filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 191 Objection filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.). (Amporfro, Regina) (Entered: 05/30/2023) |
| 06/01/2023 | 210 (8 pgs; 2 docs) | Statement *Certificate of No Objection Regarding Application of the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of Cooley LLP as Counsel Effective as of April 15, 2023* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)194 Application to Employ filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 206 Affidavit/Certificate of Service filed by Claims Agent Epiq Corporate Restructuring, LLC) (Attachments: # 1 Exhibit A: Proposed Order) (Walker, Eric) (Entered: 06/01/2023) |

| | | |
|---|---|---|
| 06/01/2023 | 211<br>(7 pgs; 2 docs) | Statement *Certificate of No Objection Regarding Application of the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor Effective as of April 21, 2023* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)195 Application to Employ filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 206 Affidavit/Certificate of Service filed by Claims Agent Epiq Corporate Restructuring, LLC) (Attachments: # 1 Exhibit A: Proposed Order) (Walker, Eric) (Entered: 06/01/2023) |
| 06/02/2023 | 212<br>(2 pgs) | Statement / *Notice of Withdrawal of Motion of PSEG Long Island to Determine Adequate Assurance of Payment Pursuant to Section 366(c) of the Bankruptcy Code* Filed by Michael Kwiatkowski on behalf of PSEG Long Island (RE: related document(s)177 Motion to Authorize/Direct filed by Creditor PSEG Long Island) (Kwiatkowski, Michael) (Entered: 06/02/2023) |
| 06/02/2023 | 213<br>(2 pgs) | Affidavit/Certificate of Service Filed by Michael Kwiatkowski on behalf of PSEG Long Island (RE: related document(s)212 Statement filed by Creditor PSEG Long Island) (Kwiatkowski, Michael) (Entered: 06/02/2023) |
| 06/02/2023 | 214<br>(10 pgs; 2 docs) | Statement / *Notice of Filing of [Third] Self-Reporting Affidavit in Lieu of Appointment of an Omnbudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 06/02/2023) |
| 06/02/2023 | 215<br>(9 pgs) | Omnibus Reply *Omnibus Reply in Support of UMB Bank, N.A.'s Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by and Other Discovery of Amsterdam Continuing Care Health System, Inc.* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 06/02/2023) |
| 06/05/2023 | 216<br>(4 pgs) | Statement / *Stipulation and Agreed Order Amending Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)184 Generic Order) (Juell, Gregory). Modified on 6/15/2023 (dnb). (Entered: 06/05/2023) |
| 06/05/2023 | 217<br>(4 pgs) | Notice of Proposed Stipulation By and Between the Debtor, Amsterdam Continuing Care Health System, Inc., as Member, UMB Bank, N.A., as Bond Trustee, and the Official Committee of Unsecured Creditors to Amending Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)184 Generic Order) (Juell, Gregory) (Entered: 06/05/2023) |

| | | |
|---|---|---|
| 06/05/2023 | 218 (5 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on June 6, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 06/05/2023) |
| 06/05/2023 | 219 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)207 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 06/05/2023) |
| 06/05/2023 | 220 (4 pgs) | Affidavit/Certificate of Service *of Dallas G. Taylor* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)215 Reply filed by Creditor UMB Bank, N.A., as Bond Trustee. Modified on 6/6/2023 to correct the linkage; Attorney called. (ssw). (Entered: 06/05/2023) |
| 06/06/2023 | | Hearing Held and Adjourned; Appearances: Erik B Weinick, Stan Y Yang, Eric E. Walker, Gregory Juell, Rachel Nanes, Melanie L Cyganowski, Bill Curtain, Eric Blythe. Status hearing to be held on 08/29/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Erik B Weinick, Eric E. Walker, Dallas Taylor, Rachel Nanes, James P. Muenker, Emily Musgrave. (RE: related document(s) 169 Motion for 2004 Examination of UMB Bank, N.A.. Filed by Creditor UMB Bank, N.A., as Bond Trustee) MOTION GRANTED AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Stan Y Yang, Rachel Nanes. (RE: related document(s) 192 Application to Employ Ankura Consulting Group, LLC as (i) to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (ii) the Designation of Michael W. Morton as the Debtors Chief Restructuring Officer, Effective as of the Petition Date . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Stan Y Yang, Gregory Juell, Rachel Nanes. (RE: related document(s) 193 Application to Employ Grandbridge Real Estate Capital LLC as Real Estate Broker for the Debtor Effective as of the Petition Date . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Eric E. Walker, Stan Y Yang, Rachel Nanes. (RE: related document(s) 194 Application to Employ Cooley LLP as Counsel to the Official Committee of Unsecured Creditors Application of the Official Committee of Unsecured Creditors of Amsterdam House |

| | | |
|---|---|---|
| | | Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of Cooley LLP as Counsel Effective as of April 15, 2023. Filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Eric E. Walker, Stan Y Yang. (RE: related document(s) 195 Application to Employ GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor to the Official Committee of Unsecured Creditors Application of the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc. for Entry of an Order Authorizing the Employment and Retention of GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor Effective as of April 21, 2023. Filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Stan Y Yang, Rachel Nanes. (RE: related document(s) 196 Application to Employ DLA Piper LLP (US) as Counsel to the Debtor Effective as of the Petition Date . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/06/2023 | | Hearing Held; Appearances: Stan Y Yang, Gregory Juell, Rachel Nanes. (RE: related document(s) 197 Motion to Authorize/Direct / Debtors Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 06/06/2023) |
| 06/08/2023 | 221 (55 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 06/06/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency].. Notice of Intent to Request Redaction Due By 06/15/2023. Redaction Request Due By 06/29/2023. Redacted Transcript Submission Due By 07/10/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 09/6/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 06/08/2023) |

| | | |
|---|---|---|
| 06/08/2023 | 222 (11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)216 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 218 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 06/08/2023) |
| 06/08/2023 | 223 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)179 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 06/08/2023) |
| 06/09/2023 | 224 (6 pgs; 2 docs) | Letter *Regarding Proposed Form of Order* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)169 Motion for 2004 Examination filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Exhibit A - Proposed Order) (Taylor, Dallas) (Entered: 06/09/2023) |
| 06/11/2023 | 225 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 06/11/2023. (Admin.) (Entered: 06/12/2023) |
| 06/12/2023 | 226 (1 pg) | Notice of Change of Address of Harbor View at Port Washington Home Owners Association Inc. from Harbor View at Port Washington Home Owners, CO MGRE MGMT, 1981 Marcus Ave., Ste C131, Lake Success, NY 11042 to Harbor View at Port Washington Homeowner's Association, Inc., c/o Total Community Management Corp., 2375 Bedford Ave., Bellmore, NY 11710, Attn.: David Goldstein. Filed by Michael S Amato on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Amato, Michael) (Entered: 06/12/2023) |
| 06/12/2023 | 227 (1 pg) | Notice of Change of Address of Harbor View of Port Washington Home Owners Assocociation Inc. from Harbor View at Port Washington CO Total Community Management PO Box 67062, Newark, NJ 07101 to Harbor View at Port Washington Homeowner's Association, Inc., C/O David Wollin, President, 162 Harbor View Drive, Port Washington, NY 11050. Filed by Michael S Amato on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Amato, Michael) (Entered: 06/12/2023) |
| 06/12/2023 | 228 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)214 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 06/12/2023) |
| 06/12/2023 | 229 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)224 Letter filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 06/12/2023) |
| 06/12/2023 | 230 (2 pgs) | VERIFICATION OF PUBLICATION Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)179 Order on Motion to Authorize/Direct). (Amporfro, Regina) Modified on 6/13/2023 (dnb). (Entered: 06/12/2023) |
| 06/15/2023 | 231 (4 pgs) | Stipulation and Agreed Order By and Between the Undersigned Parties Amending Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief. The DIP Order shall be amended to strike Footnote 4 in |

| | | |
|---|---|---|
| | | its entirety. Except as specifically amended by this Stipulation and Agreed Order, the DIP Order remains effective in accordance with its terms from its date of entry (RE: related document(s)216). Signed on 6/15/2023 (dnb) (Entered: 06/15/2023) |
| 06/15/2023 | 232 (4 pgs) | Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents By and Other Discovery Of Amsterdam Continuing Care Health System, Inc. The Motion is GRANTED to the extent set forth herein. The Trustee is authorized under Bankruptcy Rules 2004 and 9016, to issue such subpoenas as may be necessary to compel the production of documents and the testimony of the ACCHS in connection with the administration of this Chapter 11 Case. The Trustee shall file with the Court an affidavit or declaration of service for eachsubpoena Trustee serves (Related Doc # 169). Signed on 6/15/2023. (dnb) (Entered: 06/15/2023) |
| 06/15/2023 | 233 (4 pgs) | Order Granting Application to Employ Cooley LLP as Counsel for the Official Committee of Unsecured Creditors Application of the Official Committee of Unsecured Creditors to the extent set forth herein. In accordance with section 1103(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, the Committee is authorized to employ and to retain Cooley LLP as its counsel, on the terms and conditions set forth in the Application and in the Walker Declaration (Related Doc # 194). Signed on 6/15/2023. (dnb) (Entered: 06/15/2023) |
| 06/15/2023 | 234 (3 pgs) | Order Authorizing Retention of Chapter 11 Attorney DLA Piper LLP (US) Effective as of the Petition Date. The Debtor is authorized to retain and employ DLA Piper as its counsel in this chapter 11 case, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, on the terms and conditions set forth in the Application, effective as of the Petition Date (RE: related document(s)196 Application to Employ). Signed on 6/15/2023 (dnb) (Entered: 06/15/2023) |
| 06/15/2023 | 236 (4 pgs) | Order Granting Application to Employ GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor to the Official Committee of Unsecured Creditors Application of the Official Committee of Unsecured Creditors to the extent set forth herein. (Related Doc # 195) Signed on 6/15/2023. (dnb) (Entered: 06/16/2023) |
| 06/15/2023 | 237 (4 pgs) | Order Granting Application to Employ Ankura Consulting Group, LLC as (i) to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel, and (ii) the Designation of Michael W. Morton as the Debtor's Chief Restructuring Officer, Effective as of the Petition Date as set forth herein (Related Doc # 192) Signed on 6/15/2023. (dnb) (Entered: 06/16/2023) |
| 06/15/2023 | 238 (3 pgs) | Order Granting Application to Employ Grandbridge Real Estate Capital LLC as Real Estate Broker for the Debtor Effective as of the Petition Date as set forth herein (Related Doc # 193) Signed on 6/15/2023. (dnb) (Entered: 06/16/2023) |
| 06/16/2023 | 235 (3 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)232 Order on Motion for Examination) (Taylor, Dallas) (Entered: 06/16/2023) |
| 06/16/2023 | 239 (10 pgs; 2 docs) | Statement // *Notice of Filing of Self-Reporting Affidavit (Fourth) in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A - Fourth Affidavit of Brooke Navarre) (Juell, Gregory) (Entered: 06/16/2023) |
| 06/20/2023 | 240<br>(43 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 05/31/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 06/20/2023) |
| 06/20/2023 | 241<br>(7 pgs; 2 docs) | Letter *Regarding Redline Comparison of Proposed Interim Compensation Order to Monthly Fee Order Adopted Pursuant to Administrative Order No. 538* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)197 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 06/20/2023) |
| 06/22/2023 | 242<br>(16 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)231 Stipulation and Order, 232 Order on Motion for Examination, 233 Order on Application to Employ, 234 Order on Authorizing Retention of Chapter 11 Attorney, 236 Order on Application to Employ, 237 Order on Application to Employ, 238 Order on Application to Employ, 239 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 06/22/2023) |
| 06/23/2023 | 243<br>(6 pgs) | Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals. The Motion is GRANTED as set forth in this Order (Related Doc # 197). Signed on 6/23/2023. (dnb) (Entered: 06/23/2023) |
| 06/23/2023 | 244<br>(1 pg) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)240 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 06/23/2023) |
| 06/27/2023 | 245<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Marc A Pergament on behalf of Mary Tomasino (Pergament, Marc) (Entered: 06/27/2023) |
| 06/27/2023 | 246<br>(5 pgs) | Affidavit/Certificate of Service *Declaration of Service* Filed by Marc A Pergament on behalf of Mary Tomasino (RE: related document(s)245 Notice of Appearance filed by Interested Party Mary Tomasino) (Pergament, Marc) (Entered: 06/27/2023) |
| 06/28/2023 | 247<br>(6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)243 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 06/28/2023) |
| 06/30/2023 | 248<br>(8 pgs) | Notice of Proposed Stipulation By and Between (a) Amsterdam Continuing Care Health System, Inc. (ACCHS or Member), (b) UMB Bank, N.A. (the Trustee), (c) the Official Committee of Unsecured Creditors (the Committee), and (d) Amsterdam House Continuing Care Retirement Community, Inc. (d/b/a The Harborside) (The Harborside or the Debtor) (collectively, the Parties) to Stipulation Extending Discovery and Deadlines and Investigation Period Filed by Erik B Weinick on |

| | | |
|---|---|---|
| | | behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (Weinick, Erik) (Entered: 06/30/2023) |
| 06/30/2023 | 249 (18 pgs) | Notice of Proposed Stipulation By and Between (a) Amsterdam Continuing Care Health System, Inc. (ACCHS or Member), (b) UMB Bank, N.A. (as bond trustee for certain Series 2021 Bonds) and those bondholders represented by the undersigned counsel (Bond Trustee), (c) the Official Committee of Unsecured Creditors (the Committee), and (d) Amsterdam House Continuing Care Retirement Community, Inc. (d/b/a The Harborside) (The Harborside or the Debtor) (collectively, the Parties) to Stipulation Governing the Production of Confidential Materials Filed by Erik B Weinick on behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (Weinick, Erik) (Entered: 06/30/2023) |
| 06/30/2023 | 250 (43 pgs) | Statement *Combined First Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period April 15, 2023 Through May 31, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 06/30/2023) |
| 06/30/2023 | 251 (10 pgs) | Statement *First Monthly Fee and Expense Statement of GlassRatner Advisory and Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period April 21, 2023 Through May 31, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 06/30/2023) |
| 06/30/2023 | 252 (22 pgs; 6 docs) | Statement */ Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period From March 22, 2023 to May 31, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (RE: related document(s)237 Order on Application to Employ) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 06/30/2023) |
| 06/30/2023 | 253 (10 pgs; 2 docs) | Statement */ Notice of Filing of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 06/30/2023) |
| 06/30/2023 | 254 (92 pgs; 2 docs) | Application for Compensation. for DLA Piper LLP (US) as Debtor's Counsel; Fees: $ $907,535.65 Expenses: $ $30,495.53. Objections to be filed on 07/15/2023. Filed by Gregory Juell on behalf of DLA Piper LLP (US). (Attachments: # 1 Exhibit 1) (Juell, Gregory) (Entered: 06/30/2023) |
| 07/10/2023 | 255 (11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)250 Statement filed by Cred Committee Aty Cooley LLP, 251 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 252 Statement filed by Other Prof. Ankura Consulting Group, LLC, 253 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 254 Application for Compensation filed by Attorney DLA Piper LLP (US)). (Amporfro, Regina) (Entered: 07/10/2023) |

| | | |
|---|---|---|
| 07/11/2023 | 256 (130 pgs; 6 docs) | Motion to Compel /*Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to Dip Order.* Objections to be filed on July 19, 2023. Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc.. Hearing scheduled for 7/26/2023 at 11:00 AM at Courtroom 960 (Judge Trust), CI, NY. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Copy of Otterbourg Invoice # 3 Exhibit C - Committee Objection to Otterbourg Invoice # 4 Exhibit D - Bond Trustee Objection to Otterbourg Invoice # 5 Notice of Hearing re Motion to Enforce DIP Order re Otterbourg Invoice) (Cyganowski, Melanie) (Entered: 07/11/2023) |
| 07/13/2023 | 257 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)179 Order on Motion to Authorize/Direct). (Amporfro, Regina) (Entered: 07/13/2023) |
| 07/14/2023 | 258 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)256 Motion to Compel filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.). (Amporfro, Regina) (Entered: 07/14/2023) |
| 07/14/2023 | 259 (10 pgs; 2 docs) | Statement / *Notice of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Revision A) (Juell, Gregory) (Entered: 07/14/2023) |
| 07/18/2023 | 260 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)259 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 07/18/2023) |
| 07/19/2023 | 261 (3 pgs) | Bond Trustee's Reservation of Rights Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)179 Order on Motion to Authorize/Direct) (Taylor, Dallas) Modified on 7/20/2023 (dnb). (Entered: 07/19/2023) |
| 07/19/2023 | 262 (81 pgs; 2 docs) | Notice of Designation of Stalking Horse Bidder Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)179 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) Modified on 7/20/2023 (dnb). (Entered: 07/19/2023) |
| 07/19/2023 | 263 (20 pgs; 2 docs) | Bond Trustee's Objection to the Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)256 Motion to Compel filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) (Attachments: # 1 Exhibit A) (Taylor, Dallas) Modified on 7/20/2023 (dnb). (Entered: 07/19/2023) |
| 07/19/2023 | 264 (34 pgs; 3 docs) | Objection *The Official Committee of Unsecured Creditors' Objection to Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to DIP Order* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)256 Motion to Compel filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit 1: Spreadsheet # 2 Exhibit 2: Redline) (Walker, Eric) (Entered: 07/19/2023) |
| 07/19/2023 | 265 (18 pgs; 2 docs) | Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement / *Debtor's Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 07/19/2023) |
| 07/20/2023 | 266 (2 pgs) | Notice of Appearance and Request for Notice Filed by Justin Slade Krell on behalf of Sima Katz (Krell, Justin) (Entered: 07/20/2023) |
| 07/20/2023 | 267 (48 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 06/30/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 07/20/2023) |
| 07/20/2023 | 268 (1 pg) | Letter *Regarding July 26, 2023 Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 07/20/2023) |
| 07/20/2023 | 269 (25 pgs) | Statement *Second Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period June 1, 2023 Through June 30, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 07/20/2023) |
| 07/20/2023 | 270 (9 pgs) | Statement *Second Monthly Fee and Expense Statement of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period June 1, 2023 Through June 30, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 07/20/2023) |
| 07/24/2023 | 271 (9 pgs; 2 docs) | Ex Parte Motion to Seal Document(s) *Ex Parte Motion of the Bond Trustee for Leave to File Under Seal Its Objection to the Debtors Stalking Horse Designation* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 7/24/2023. (Attachments: # 1 Proposed Order) (Taylor, Dallas) (Entered: 07/24/2023) |
| 07/24/2023 | 272 (6 pgs) | Affidavit/Certificate of Service *of (i) Ex Parte Motion of the Bond Trustee for Leave to File Under Seal Its Objection to the Debtors Stalking Horse Designation and (ii) the Bond Trustee's Stalking Horse Objection* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)271 Motion to Seal Document(s) filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 07/24/2023) |
| 07/24/2023 | 273 | Document Sealed - Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder (related document(s): 271 Ex Parte Motion to Seal Document(s) filed by Creditor |

| | | |
|---|---|---|
| | | UMB Bank, N.A., as Bond Trustee) (Moffett, Christine) (Entered: 07/24/2023) |
| 07/24/2023 | 274 (59 pgs; 8 docs) | Emergency Motion to Compel *Emergency Motion of the Bond Trustee (i) to Compel Production of Documents of Amsterdam Continuing Care Health System, Inc. Pursuant to Bankruptcy Rule 2004(c) and (ii) for Entry of an Order Extending the Challenge Period* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 7/26/2023. (Attachments: # 1 Exhibit Exhibit A # 2 Exhibit Exhibit B # 3 Exhibit Exhibit C # 4 Exhibit Exhibit D # 5 Exhibit Exhibit E # 6 Exhibit Exhibit F # 7 Exhibit Exhibit G) (Taylor, Dallas) (Entered: 07/24/2023) |
| 07/24/2023 | 275 (11 pgs; 3 docs) | Motion to Limit Notice *Motion to Shorten Notice on Emergency Motion of the Bond Trustee (i) to Compel Production of Documents of Amsterdam Continuing Care Health System, Inc. Pursuant to Bankruptcy Rule 2004(c) and (ii) for Entry of an Order Extending the Challenge Period* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 7/24/2023. (Attachments: # 1 Proposed Order # 2 Local Rule 9077-1 Affirmation) (Taylor, Dallas) (Entered: 07/24/2023) |
| 07/24/2023 | 276 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)274 Motion to Compel filed by Creditor UMB Bank, N.A., as Bond Trustee, 275 Motion to Limit Notice filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 07/24/2023) |
| 07/24/2023 | 277 (7 pgs; 2 docs) | Motion for Eileen M. Sethna to Appear Pro Hac Vice for Kong Capital LLC.. Fee Amount $150. Filed by Eileen M Sethna on behalf of LEVENFELD PEARLSTEIN, LLC, Counsel to Kong Capital LLC. (Attachments: # 1 Proposed Order Proposed Order) (Sethna, Eileen) (Entered: 07/24/2023) |
| 07/24/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21817101. Fee amount 150.00. (re: Doc# 277) (U.S. Treasury) (Entered: 07/24/2023) |
| 07/24/2023 | 278 (7 pgs; 2 docs) | Motion for Heidi M. Hockberger to Appear Pro Hac Vice for Kong Capital LLC. Fee Amount $150. Filed by Heidi M Hockberger on behalf of LEVENFELD PEARLSTEIN, LLC, Counsel to Kong Capital LLC. (Attachments: # 1 Proposed Order Proposed Order) (Hockberger, Heidi) (Entered: 07/24/2023) |
| 07/24/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A21817114. Fee amount 150.00. (re: Doc# 278) (U.S. Treasury) (Entered: 07/24/2023) |
| 07/25/2023 | 279 (8 pgs; 2 docs) | Motion to Seal Document(s) *Debtor's Ex Parte Motion to Seal Reply in Support of Designation of Stalking Horse Bidder* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Proposed Order) (Juell, Gregory) (Entered: 07/25/2023) |
| 07/25/2023 | 280 (10 pgs) | Statement *of Life Care Services Communities LLC, d/b/a LCS Real Estate in Support of the Debtor's Designation of a Stalking Horse Bidder* Filed by Thomas Robert Califano on behalf of Life Care Services Communities |

| | | |
|---|---|---|
| | | LLC, dba LCS Real Estate (RE: related document(s)262 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Califano, Thomas) (Entered: 07/25/2023) |
| 07/25/2023 | 281 (8 pgs; 2 docs) | Ex Parte Motion to Seal Document(s) *Ex Parte Motion of the Official Committee of Unsecured Creditors for Leave to File Under Seal Its Response to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit A: Proposed Order) (Walker, Eric) (Entered: 07/25/2023) |
| 07/25/2023 | 282 (8 pgs; 2 docs) | Motion to Seal Document(s) *Ex Parte Motion* Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc.. (Attachments: # 1 Exhibit A-Proposed Order) (Cyganowski, Melanie) (Entered: 07/25/2023) |
| 07/25/2023 | 283 (4 pgs) | Statement / *Debtor's Statement With Respect to the Motion of Amsterdam Continuing Care Health System, Inc. to Compel Payment of Fees Pursuant to DIP Order* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)256 Motion to Compel filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) (Juell, Gregory) (Entered: 07/25/2023) |
| 07/25/2023 | 284 (5 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on July 26, 2023 at 11:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 07/25/2023) |
| 07/25/2023 | 285 (9 pgs) | Objection *of Amsterdam Continuing Care Health System, Inc. to the Emergency Motion of the Bond Trustee (i) to Compel Production of Documents and (ii) for Entry of an Order Extending the Challenge Period Under Bankruptcy Rule 2004(c)* Filed by Erik B Weinick on behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (RE: related document(s)274 Motion to Compel filed by Creditor UMB Bank, N.A., as Bond Trustee) (Weinick, Erik) (Entered: 07/25/2023) |
| 07/25/2023 | 286 (8 pgs) | Affidavit/Certificate of Service Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)281 Motion to Seal Document(s) filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors) (Walker, Eric) (Entered: 07/25/2023) |
| 07/26/2023 | 287 | Document Sealed - Debtor's Reply to the Bond Trustee's Objection to the Debtor's Designation of Life Care Services Communities, LLC as Proposed Stalking Horse Bidder (RE: related document(s)279 Motion to Seal Document(s) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (mem) (Entered: 07/26/2023) |
| 07/26/2023 | 288 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)261 Statement filed by Creditor UMB Bank, N.A., as Bond Trustee, 262 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 263 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 264 Objection filed by Cred Committee Aty Official Committee of Unsecured Creditors, |

| | | |
|---|---|---|
| | | Creditor Committee Official Committee of Unsecured Creditors). (Amporfro, Regina) (Entered: 07/26/2023) |
| 07/26/2023 | | Hearing Held; Appearances: Eric Walker, Eric Blythe, James Drew, Rachel Nanes, James Meunker, Thomas Califano, Emily Musgrave, Eric Weiner, Stan Yang, Connie Miceli. (RE: related document(s) 256 Motion to Compel Filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) MOTION GRANTED AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (alh) (Entered: 07/27/2023) |
| 07/27/2023 | 289 (62 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 07/26/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 288 Affidavit/Certificate of Service, Hearing Held (Document BK & AP)). Notice of Intent to Request Redaction Due By 08/3/2023. Redaction Request Due By 08/17/2023. Redacted Transcript Submission Due By 08/28/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 10/25/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 07/27/2023) |
| 07/27/2023 | 290 (1 pg) | Letter Motion Requesting Sealed Transcript of July 26, 2023 Hearing Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)289 Transcript (Attorney Ordered)) (Taylor, Dallas) (Entered: 07/27/2023) |
| 07/28/2023 | 291 | Document Sealed - Response of Amsterdam Continuing Care Health System, Inc. to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder (related document(s): 282 Motion to Seal Document(s) *Ex Parte Motion* filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) (RE: related document(s)282 Motion to Seal Document(s) filed by Other Prof. Counsel to Amsterdam Continuing Care Health System, Inc.) (srm) (Entered: 07/28/2023) |
| 07/28/2023 | 292 (10 pgs; 2 docs) | Statement // *Notice of Filing of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Seventh Affidavit of Brooke Navarre In Lieu of a Patient Care Ombudsman Report) (Juell, Gregory) (Entered: 07/28/2023) |
| 07/30/2023 | 293 (13 pgs; 4 docs) | Statement / *Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period from June 1, 2023 to June 30, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (RE: related document(s)237 Order on Application to Employ) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Juell, Gregory) (Entered: 07/30/2023) |
| 07/30/2023 | 294 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 07/30/2023. (Admin.) (Entered: 07/31/2023) |

| | | |
|---|---|---|
| 07/31/2023 | 295 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)265 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 267 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 268 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 269 Statement filed by Cred Committee Aty Cooley LLP, 270 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS")). (Amporfro, Regina) (Entered: 07/31/2023) |
| 07/31/2023 | 296 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)283 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 284 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 07/31/2023) |
| 07/31/2023 | 297 (4 pgs) | Affidavit/Certificate of Service *of Statement of Life Care Services Communities LLC, d/b/a LCS Real Estate in Support of the Debtor's Designation of a Stalking Horse Bidder* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)280 Statement filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 07/31/2023) |
| 08/01/2023 | 298 (20 pgs; 2 docs) | Application to Employ */Debtor's Motion for Entry of an Order Authorizing the Debtor to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 8/29/2023 at 11:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 08/01/2023) |
| 08/01/2023 | 299 (36 pgs; 2 docs) | Motion to Set Last Day to File Proofs of Claim */ Debtor's Application for Entry of an Order (i) Establishing Bar Dates Pursuant to Bankruptcy Rule 3003(c) and (ii) Approving the Form and Manner of Notice Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 08/01/2023) |
| 08/01/2023 | 300 (2 pgs) | Letter *Regarding Debtor's Application for Entry of an Order (i) Establishing Bar Dates Pursuant to Bankruptcy Rule 3003(c) and (ii) Approving the Form and Manner of Notice Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)299 Motion to Set Last Day to File Proofs of Claim filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 08/01/2023) |
| 08/01/2023 | 301 (39 pgs; 4 docs) | First Motion for Relief from Stay as to the Personal Injury Claim of the Creditor Jose A Tejeda. Fee Amount $188. Filed by Mark P Getzoni on behalf of Jose A Tejeda. (Attachments: # 1 Exhibit # 2 Exhibit Exhibit "B" # 3 Exhibit Exhibit "C") (Getzoni, Mark). Modified on 8/2/2023 to clarify docket text (dnb). (Entered: 08/01/2023) |
| 08/01/2023 | | Receipt of Motion for Relief From Stay( 8-23-70989-ast) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A21841264. Fee |

| | | |
|---|---|---|
| | | amount 188.00. (re: Doc# 301) (U.S. Treasury) (Entered: 08/01/2023) |
| 08/02/2023 | 302 (8 pgs) | Notice of Proposed Stipulation By and Between to Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)184 Generic Order, 232 Order on Motion for Examination) (Taylor, Dallas) (Entered: 08/02/2023) |
| 08/02/2023 | 303 (3 pgs) | Affidavit/Certificate of Service *of the Letter Motion Requesting Sealed Transcript of July 26, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)290 Letter filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 08/02/2023) |
| 08/03/2023 | 304 (8 pgs) | Stipulation by and between the Undersigned Parties Extending Discovery Deadlines and Investigation to September 11, 2023 (RE: related document(s)302 Notice of Proposed Stipulation). SO ORDERED on 8/3/2023 (dnb) (Entered: 08/03/2023) |
| 08/03/2023 | 305 (2 pgs) | Order Granting the Debtor's Motion to Seal Reply in Support of Designation of Stalking Horse Bidder. The Motion is GRANTED as set forth herein. Pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule9018, and Local Rule 9018-1, the Debtor is authorized to file the Reply under seal by delivering such document to Chambers and to the Clerk of the Courts attention with a letter referencing this Order. The Reply shall remain under seal and confidential and shall not be made available to any party other than the Court, the Bond Trustee, the Member, and the Committee, except asthe Debtor may otherwise agree or as otherwise ordered by this Court. To the extent that any party provided copies of the Reply files any responsivepleadings or other pleadings relating to the Reply, such party shall redact from its pleadings any confidential or identifying information related to the Reply (Related Doc # 279). Signed on 8/3/2023. (dnb) (Entered: 08/03/2023) |
| 08/03/2023 | 306 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)298 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 299 Motion to Set Last Day to File Proofs of Claim filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 300 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/03/2023) |
| 08/03/2023 | 307 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)293 Statement filed by Other Prof. Ankura Consulting Group, LLC). (Amporfro, Regina) (Entered: 08/03/2023) |
| 08/03/2023 | 308 (2 pgs) | Order Granting Ex Parte Motion of the Official Committee of Unsecured Creditors for Leave to File Under Seal Its Response to Bond Trustee's Objection to Designation of Life Care Services Communities LLC as Proposed Stalking Horse Bidder. The Motion is GRANTED as set forth herein. Pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9018-1, the Committee is authorized to file the Response under seal by delivering such document to Chambers and to the Clerk of the Courts attention with a letterreferencing this Order. The Response shall remain under seal and confidential and shall not be made available to any party other than the Court, the Debtor, the Parent and UMB Bank, N.A., in its capacity as bond trustee, except as the Committee may otherwise agree or as otherwise ordered by this |

| | | |
|---|---|---|
| | | Court. To the extent that any party provided copies of the Response files any responsivepleadings or other pleadings relating to the Response, such party shall redact from its pleadings any confidential or identifying information related to the Response (RE: related document(s)281 Motion to Seal). Signed on 8/3/2023 (dnb) (Entered: 08/03/2023) |
| 08/03/2023 | 309 (2 pgs) | Letter *Regarding August 29, 2023 Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 08/03/2023) |
| 08/04/2023 | 310 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)292 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/04/2023) |
| 08/04/2023 | 311 (30 pgs; 2 docs) | Order Granting Motion To Set Last Day To File Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof (Related Doc # 299). Signed on 8/4/2023. Proofs of Claims due by 10/13/2023 at 5:00 p.m. (ET). Government Proof of Claim due by 10/13/2023 at 5:00 p.m. (ET). (Attachments: # 1 Exhibit) (dnb) (Entered: 08/04/2023) |
| 08/04/2023 | 312 (2 pgs) | Order Granting Motion of Amsterdam Continuing Care Health Systems, Inc. to Compel Payment of Fees Pursuant to Dip Order. The Motion is GRANTED to the extent set forth herein. Objections to the relief requested in the Motion that have not been withdrawn or resolved by this Order are overruled in all respects. Debtor is directed to pay ACCHS the amount of $500,000 on account of the Invoice within one business day hereof. This order is without prejudice to ACCHSs right to reimbursement for any other amounts sought in the Invoice in excess of $500,000, and without prejudice to the Committees, the Debtors and the Bond Trustees objections thereto. Further consideration by the Court of the Motion is adjourned to a date to be determined (Related Doc # 256). Signed on 8/4/2023. (dnb) (Entered: 08/04/2023) |
| 08/04/2023 | 313 (2 pgs) | Order Granting The Bond Trustee's Request for Sealed Transcript of July 26, 2023 Hearing as set forth in this Order. The transcript of the Stalking Horse Designation Hearing including the sealed portion, shall be released to the Bond Trustee, the Debtor, the Official Committee of Unsecured Creditors and the United States Trustee. Notwithstanding anything else in this Order, the sealed portion of the transcript of the Stalking Horse Designation Hearing shall remain sealed as to parties other than the Bond Trustee, the Debtor, the Official Committee of Unsecured Creditors, and the United States Trustee, absent further leave of the Court (RE: related document(s)290 Letter filed by Creditor UMB Bank, N.A., as Bond Trustee). Signed on 8/4/2023 (dnb) (Entered: 08/04/2023) |
| 08/04/2023 | 314 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:277 Motion for Eileen M. Sethna to Appear Pro Hac Vice for Kong Capital LLC. (Attachments: # 1 Proposed Order Proposed Order)). Signed on 8/4/2023. (dnb) (Entered: 08/04/2023) |
| 08/04/2023 | 315 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:278 Motion for Heidi M. Hockberger to Appear Pro Hac Vice for Kong Capital LLC. (Attachments: # 1 Proposed Order Proposed Order)). Signed on 8/4/2023. (dnb) (Entered: 08/04/2023) |
| | | |

| | | |
|---|---|---|
| 08/07/2023 | 316 (2 pgs) | Order Approving designation of Life Care Services Communities LLC d/b/a LCS Real Estate as the Stalking Horse Bidder. On or before August 14, 2023, LCS shall file a letter on the docket indicating whether all Open Diligence Items have been satisfied. In the event LCS files a letter on or before August 14, 2023 indicating that the Open Diligence Items have not been satisfied and, as a result, it intends to terminate the APA, LCS shall not be entitled to the Bid Protections (RE: related document(s)262). Signed on 8/7/2023 (dnb) (Entered: 08/07/2023) |
| 08/08/2023 | 318 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)311 Order on Motion To Set Last Day to File Proofs of Claim, 312 Order on Motion to Compel). (Amporfro, Regina) (Entered: 08/08/2023) |
| 08/09/2023 | 319 (132 pgs; 5 docs) | Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) Schedule E/F, Schedule G, Fee Amount $32 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Affidavit # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C) (Juell, Gregory). Modified on 8/10/2023 [Attorney to file a Supplemental List of Creditors with added creditors only] (dnb). (Entered: 08/09/2023) |
| 08/09/2023 | | Receipt of Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) (Fee Due)( 8-23-70989-ast) [misc,aschsfa] ( 32.00) Filing Fee. Receipt number A21864920. Fee amount 32.00. (re: Doc# 319) (U.S. Treasury) (Entered: 08/09/2023) |
| 08/10/2023 | 320 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)316 Generic Order). (Amporfro, Regina) (Entered: 08/10/2023) |
| 08/11/2023 | 321 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)14 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/11/2023) |
| 08/11/2023 | 322 (2 pgs) | Notice of Appearance and Request for Notice Filed by Stuart I Gordon on behalf of Michel Sherman, as Executor of the Will of Claude Sherman; Michel Sherman, as Trustee of the Claude Sherman 2009 Revocable Trust (Gordon, Stuart) (Entered: 08/11/2023) |
| 08/11/2023 | 323 (2 pgs) | Notice of Appearance and Request for Notice Filed by Matthew V Spero on behalf of Michel Sherman, as Executor of the Will of Claude Sherman; Michel Sherman, as Trustee of the Claude Sherman 2009 Revocable Trust (Spero, Matthew) (Entered: 08/11/2023) |
| 08/11/2023 | 324 (10 pgs; 2 docs) | Statement // *Notice of Filing of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Eighth Affidavit of Brooke Navarre In Lieu of a Patient Care Ombudsman Report) (Juell, Gregory) (Entered: 08/11/2023) |
| 08/11/2023 | 325 (15 pgs; 3 docs) | Notice of potential assumption and assignment of certain executory contracts and unexpired leases filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Assignment Procedures # 2 Exhibit B - |

| | | |
|---|---|---|
| | | Cure Costs) (Juell, Gregory) Modified on 8/14/2023 (dnb). (Entered: 08/11/2023) |
| 08/14/2023 | 326 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)319 Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) (Fee Due) filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/14/2023) |
| 08/14/2023 | 327 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)309 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/14/2023) |
| 08/14/2023 | 328 (12 pgs; 2 docs) | Motion to Extend Time -- *Debtors Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A - Proposed Order) (Juell, Gregory) (Entered: 08/14/2023) |
| 08/14/2023 | 329 (11 pgs; 3 docs) | Motion to Limit Notice // *Motion to Shorten Notice on Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Attachments: # 1 Proposed Order # 2 Affirmation) (Juell, Gregory) (Entered: 08/14/2023) |
| 08/15/2023 | 330 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)324 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/15/2023) |
| 08/15/2023 | 331 (7 pgs) | Objection *The Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Taylor, Dallas) (Entered: 08/15/2023) |
| 08/15/2023 | 332 (8 pgs; 2 docs) | Ex Parte Motion to Seal Document(s) *Ex Parte Motion of the Bond Trustee for Leave to File Under Seal the Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 8/15/2023. (Attachments: # 1 Proposed Order) (Taylor, Dallas) (Entered: 08/15/2023) |

| | | |
|---|---|---|
| 08/16/2023 | 333 (2 pgs) | Order Approving motion to shorten notice on Debtor's emergency motion for entry of an order (I) Extending Diligence deadline for Life Care Services Communities LLC d/b/a LCS Real Estatel (II) Extending certain deadlines established by the bidding procedures Order; (III) Granting related relief. Ordered; The hearing to consider the relief requested in the Motion to Extend Sale Deadlines shall be held on August 23, 2023 at 2:00 p.m. (prevailing Eastern Time) (the Hearing Date), and will be held via ZoomGov only. All parties shall register viaeCourt Appearances as required; see https://www.nyeb.uscourts.gov/node/2126; and Any objections to the relief requested in the Motion to Extend Sale Deadlines must be filed and served so as to be received no later August 22, 2023 at 10:00 a.m. (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 329 Motion to Limit Notice filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 8/16/2023. Hearing scheduled for 8/23/2023 at 02:00 PM at Courtroom 960 (Judge Trust), CI, NY. (alh) (Entered: 08/16/2023) |
| 08/16/2023 | 334 (2 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)311 Order on Motion To Set Last Day to File Proofs of Claim). (Amporfro, Regina) (Entered: 08/16/2023) |
| 08/16/2023 | 335 (5 pgs) | Order Assigning Matters to Mediation. Ordered; that pursuant to E.D.N.Y. LBR 9019-1, all disputes by and among the Mediation Parties are hereby referred to mediation; that the Honorable Robert D. Drain is hereby designated as mediator with respect to the foregoing disputes (the Mediator); that the mediation shall be concluded, whether by separate or joint sessions, by August 22, 2023; that by three (3) days after the conclusion of the mediation, and the Mediator shall file a status letter as to whether the mediation resulted in a settlement. Honorable Robert D. Drain added to case (RE: related document(s)179 Order on Motion to Authorize/Direct). Signed on 8/16/2023 (alh) (Entered: 08/16/2023) |
| 08/16/2023 | 336 | Document Sealed. The Bond Trustee's Limited Objection to the Debtor's Emergency Motion (related document(s): 332 Ex Parte Motion to Seal Document(s) *Ex Parte Motion of the Bond Trustee for Leave to File Under Seal the Bond Trustee's Limited Objection to the Debtor's Emergency Motion for Entry of an Order (i) Extending Diligence Deadline for Life Care filed by Creditor UMB Bank, N.A., as Bond Trustee) (RE: related document(s)332 Motion to Seal Document(s) filed by Creditor UMB Bank, N.A., as Bond Trustee) (Moffett, Christine) (Entered: 08/16/2023)* |
| 08/16/2023 | 337 (15 pgs) | Limited Objection Filed by Christopher Giaimo on behalf of New England Life Plan Communities Corp. (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Giaimo, Christopher) (Entered: 08/16/2023) |
| 08/17/2023 | 338 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)325 Notice to Cure filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/17/2023) |
| 08/17/2023 | 339 (3 pgs) | Notice of Appearance and Request for Notice Filed by Eileen M Sethna, Heidi M Hockberger on behalf of LEVENFELD PEARLSTEIN, LLC, Counsel to Kong Capital LLC (Hockberger, Heidi) (Entered: 08/17/2023) |

| | | |
|---|---|---|
| 08/18/2023 | 340 (2 pgs) | Order Granting the Ex Parte Motion of the Bond Trustee for leave to file under seal the Bond Trustee's Limited Objection to the Debtor's emergency motion for entry of an order (I) extending diligence deadline for life care services communities LLC d/b/a LCS Real Estate; (II) extending certain deadlines established by the bidding procedures order; and (III) granting related relief. It is hereby Ordered, Adjudged, and Decreed that; Pursuant to section 105(a) of the Bankruptcy Code and the Transcript Sealing Order, the Bond Trustee is authorized to file the Objection under seal by delivering such document to Chambers and to the Clerk of the Courts attention with a letter referencing this Order; and The Objection shall remain under seal and confidential and shall not be made available to any party other than the Court, the Debtor, the Committee, and the United States Trustee, except as otherwise ordered by this Court. (Related Doc # 332) Signed on 8/18/2023. (alh) (Entered: 08/18/2023) |
| 08/18/2023 | 341 (89 pgs; 3 docs) | First Application for Compensation. for Cooley LLP as Counsel to the Official Committee of Unsecured Creditors; Fees: $ $451,590.97 Expenses: $ $8,196.01 Filed by Eric E. Walker on behalf of Cooley LLP. (Attachments: # 1 Exhibit A: Monthly Statements # 2 Walker Certification) (Walker, Eric) (Entered: 08/18/2023) |
| 08/18/2023 | 342 (38 pgs; 3 docs) | First Application for Compensation. for GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors; Fees: $ 59,187.37 Expenses: $ 619.53 Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"). (Attachments: # 1 Exhibit A: Monthly Statements # 2 Buck Certification) (Walker, Eric) (Entered: 08/18/2023) |
| 08/18/2023 | 343 (76 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)311 Order on Motion To Set Last Day to File Proofs of Claim). (Amporfro, Regina) (Entered: 08/18/2023) |
| 08/18/2023 | 344 (36 pgs; 2 docs) | Statement / *Second Monthly Statement of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtor for the Period From June 1, 2023 Through June 30, 2023* Filed by Gregory Juell on behalf of DLA Piper LLP (US) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 08/18/2023) |
| 08/19/2023 | 345 (134 pgs; 5 docs) | Application for Compensation. for DLA Piper LLP as Counsel to the Debtor and Debtor in Possession; Fees: $ 1,413,671.33 Expenses: $ 35,218.25 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Juell, Gregory) (Entered: 08/19/2023) |
| 08/20/2023 | 346 (48 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 07/31/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 08/20/2023) |
| 08/21/2023 | 347 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., |

| | | |
|---|---|---|
| | | 329 Motion to Limit Notice filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/21/2023) |
| 08/22/2023 | 348 (7 pgs) | Omnibus Reply *in Support of Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 08/22/2023) |
| 08/22/2023 | 349 (3 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on August 23, 2023 at 2:00 p.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 08/22/2023) |
| 08/22/2023 | 350 (8 pgs) | Omnibus Reply *of Life Care Services Communities LLC d/b/a LCS Real Estate, in Support of Debtor's Emergency Motion for Entry of an Order (I) Extending Diligence Deadline for Life Care Services Communities LLC d/ba LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)328 Motion to Extend Time filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 331 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 337 Objection filed by Interested Party New England Life Plan Communities Corp., 348 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Califano, Thomas) (Entered: 08/22/2023) |
| 08/22/2023 | 351 (12 pgs) | Objection *The Bond Trustee's Objection to the Debtor's Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)265 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Taylor, Dallas) (Entered: 08/22/2023) |
| 08/22/2023 | 352 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)351 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 08/22/2023) |
| 08/23/2023 | 353 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)333 Order to Schedule Hearing (Generic), 335 Order Assigning Matter to Mediation, Order Appointing Mediator). (Amporfro, Regina) (Entered: 08/23/2023) |
| 08/23/2023 | 354 (18 pgs) | Supplemental Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)32 Meeting of Creditors Chapter 11, 179 Order Approving Bidding Procedures, 311 Order on Motion To Set Last Day to File Proofs of Claim). (Amporfro, Regina). Modified on 8/24/2023 [to link to doc. 179] (dnb). (Entered: 08/23/2023) |

| | | |
|---|---|---|
| 08/23/2023 | | Hearing Held; Appearance: Rachel Nanes, Brooke Navarre, Eric Blythe, Stan Yang, Melanie Cyganowski, Chris Giaimo, Eric Walker, Paul Springer, William Curtin, Eileen Sethna. (RE: related document(s) 333 Order to Schedule Hearing (Generic)) MOTION GRANTED; COURT TO AMEND ORDER. (alh) (Entered: 08/25/2023) |
| 08/24/2023 | 355 (2 pgs) | ENTERED IN ERROR; DOCKETED INCORRECTLY AS PER ATTORNEY'S OFFICE PHONE CALL. ATTORNEY TO REFILE. Notice of Proposed Stipulation By and Between Rivkin Radler LLP and Ruskin Moscou Faltischek, PC to Substitution of Counsel Filed by Stuart I Gordon on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Gordon, Stuart) Modified on 8/24/2023 (alh). (Entered: 08/24/2023) |
| 08/24/2023 | 356 (2 pgs) | Stipulation to Substitute Attorney Rivkin Radler LLP for Attorney Ruskin Moscou Faltischek, P.C. Filed by Stuart I Gordon on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Gordon, Stuart). Modified on 8/24/2023 to clarify docket text (dnb). (Entered: 08/24/2023) |
| 08/24/2023 | 357 (2 pgs) | Notice of Appearance and Request for Notice Filed by Stuart I Gordon on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Gordon, Stuart) (Entered: 08/24/2023) |
| 08/24/2023 | 358 (2 pgs) | Notice of Appearance and Request for Notice Filed by Matthew V Spero on behalf of Harbor View at Port Washington Homeowners Association, Inc. (Spero, Matthew) (Entered: 08/24/2023) |
| 08/24/2023 | 359 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)341 Application for Compensation filed by Cred Committee Aty Cooley LLP, 342 Application for Compensation filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 344 Statement filed by Attorney DLA Piper LLP (US)). (Amporfro, Regina) (Entered: 08/24/2023) |
| 08/25/2023 | 360 (48 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 08/23/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency].. Notice of Intent to Request Redaction Due By 09/1/2023. Redaction Request Due By 09/15/2023. Redacted Transcript Submission Due By 09/25/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 11/24/2023 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 08/25/2023) |
| 08/25/2023 | 361 (2 pgs) | Letter *Rescheduling Hearing on August 29, 2023 to September 28, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 08/25/2023) |
| 08/25/2023 | 362 (10 pgs; 2 docs) | Statement / *Notice of Filing of Self-Reporting Affidavit (Ninth) in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 08/25/2023) |

| | | |
|---|---|---|
| 08/25/2023 | 363 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)348 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 349 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/25/2023) |
| 08/27/2023 | 364 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 08/27/2023. (Admin.) (Entered: 08/28/2023) |
| 08/28/2023 | 365 (2 pgs) | Notice of Appearance and Request for Notice Filed by Maureen T Bass on behalf of Robert Tischler (Bass, Maureen) (Entered: 08/28/2023) |
| 08/29/2023 | 366 (5 pgs) | Affidavit/Certificate of Service *cf Omnibus Reply in Support cf Debtor's Emergency Motion for Entry cf an Order (i) Extending Diligence Deadline for L.fe Care Services Communities LLC d/b/a LCS Real Estate; (Ii) Extending Certain Deadlines Established by Bidding Procedures Order; and (IIi) Granting Related Relicf* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)350 Reply filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 08/29/2023) |
| 08/29/2023 | 367 (1 pg) | Notice of Appearance and Request for Notice Filed by Michael G McAuliffe on behalf of Tracy Yngstrom (McAuliffe, Michael) (Entered: 08/29/2023) |
| 08/29/2023 | | Hearing Held; (RE: related document(s) 298 Application to Employ Debtors Motion for Entry of an Order Authorizing the Debtor to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION MARKED SUBMITTED; UPLOAD CONSENT ORDER (ymm) (Entered: 08/31/2023) |
| 08/29/2023 | | Hearing Held and Adjourned; Status hearing to be held on 09/28/2023 at 02:00 PM at Courtroom 3554 (Judge Trust), Brooklyn, NY. LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 08/31/2023) |
| 08/29/2023 | | Adjourned Without Hearing 'Hearing scheduled for 09/28/2023 at 02:00 PM at Courtroom 3554 (Judge Trust), Brooklyn, NY.(RE: related document(s) 106 Motion to Authorize/Direct / Debtors Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 08/31/2023) |
| 08/30/2023 | 368 (2 pgs) | Statement *cf Rivkin Radler LLP pursuant to Federal Rule cf Bankruptcy Procedure 2019* Filed by Matthew V Spero on behalf of Harbor View at Port Washington Homeowners Association, Inc., Michel Sherman, as Executor of the Will of Claude Sherman; Michel Sherman, as Trustee of |

| | | |
|---|---|---|
| | | the Claude Sherman 2009 Revocable Trust (Spero, Matthew) (Entered: 08/30/2023) |
| 08/30/2023 | 369 (101 pgs; 7 docs) | Limited Objection *to Cure Cost and Reservation of Rights* Filed by Matthew V Spero on behalf of Harbor View at Port Washington Homeowners Association, Inc. (RE: related document(s)325 Notice to Cure filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Ex A-1 - Reciprocal Easement Agr # 2 Exh A-2 # 3 Exh A-3 # 4 Exh A-4 # 5 Exh B - Front Apron Invoice # 6 Exh C - Entrance Pavers Invoice) (Spero, Matthew) (Entered: 08/30/2023) |
| 08/30/2023 | 370 (5 pgs; 2 docs) | Letter *regarding Proposed Order Extending Mediation* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)335 Order Assigning Matter to Mediation, Order Appointing Mediator) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 08/30/2023) |
| 08/30/2023 | 371 (13 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)361 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 362 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/30/2023) |
| 08/30/2023 | 372 (16 pgs; 6 docs) | Statement *// Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period July 1, 2023 to July 31, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 08/30/2023) |
| 08/31/2023 | 373 (3 pgs; 2 docs) | Order Extending Mediation. The mediation is extended such that it shall be concluded, whether by separate or joint sessions, by September 6, 2023; by three (3) days after the conclusion of the mediation, the Mediator shall file a status letter as to whether the mediation resulted in a settlement (RE: related document(s)335 Order Assigning Matter to Mediation). Signed on 8/31/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 08/31/2023) |
| 08/31/2023 | 374 (10 pgs; 2 docs) | Order Authorizing Debtor to Retain and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course of Business. The Motion is GRANTED as set forth in this Order. The Debtor is authorized, but not directed, in its discretion, to retain and compensate the professionals identified on the OCP List, attached hereto as Exhibit 1, for post-petition services in the ordinary course of business, in accordance with the following approved procedures. (Related Doc # 298). Signed on 8/31/2023. (Attachments: # 1 Exhibit) (dnb) (Entered: 08/31/2023) |
| 08/31/2023 | 375 (3 pgs) | Order (I) Extending Diligence Deadline for Life Care Services Communities LLC D/B/A LCS Real Estate; (II) Extending Certain Deadlines Established by the Bidding Procedures Order; and (III) Granting Related Relief. The relief requested in the Motion is GRANTED as set forth herein. The Sale Deadlines shall be extended as set forth herein. The LCS Diligence Deadline is hereby extended to and including September 11, 2023. All deadlines in the Stalking Horse APA related to the Open Diligence Items, including without limitation the August 21, 2023 Review Period Expiration Date set forth in Section 2.09 of the Stalking Horse APA, are extended to and including September 11, |

| | | |
|---|---|---|
| | | 2023 (Related Doc # 328). Signed on 8/31/2023. (dnb) (Entered: 08/31/2023) |
| 08/31/2023 | 376 (13 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)361 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 362 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 08/31/2023) |
| 09/05/2023 | 377 (27 pgs) | Statement *Third Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period July 1, 2023 Through July 31, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 09/05/2023) |
| 09/05/2023 | 378 (10 pgs) | Statement *Third Monthly Fee and Expense Statement of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period July 1, 2023 Through July 31, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 09/05/2023) |
| 09/06/2023 | 379 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)370 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/06/2023) |
| 09/06/2023 | 380 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)373 Generic Order, 374 Order on Application to Employ, 375 Order on Motion to Extend Time). (Amporfro, Regina) (Entered: 09/06/2023) |
| 09/07/2023 | 381 (3 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)374 Order on Application to Employ) (Juell, Gregory) (Entered: 09/07/2023) |
| 09/07/2023 | 382 (3 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)374 Order on Application to Employ) (Juell, Gregory) (Entered: 09/07/2023) |
| 09/07/2023 | 383 (3 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)374 Order on Application to Employ) (Juell, Gregory) (Entered: 09/07/2023) |
| 09/07/2023 | 384 (3 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)374 Order on Application to Employ) (Juell, Gregory) (Entered: 09/07/2023) |
| 09/08/2023 | 385 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Tenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: |

| | | |
|---|---|---|
| | | related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 09/08/2023) |
| 09/08/2023 | 386 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)377 Statement filed by Cred Committee Aty Cooley LLP, 378 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS")). (Amporfro, Regina) (Entered: 09/08/2023) |
| 09/09/2023 | 387 (5 pgs; 2 docs) | Letter *Regarding Proposed Order Extending Mediation* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)335 Order Assigning Matter to Mediation, Order Appointing Mediator, 373 Generic Order) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 09/09/2023) |
| 09/11/2023 | 388 (1 pg) | Letter *re Stalking Horse Designation* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)316 Generic Order, 375 Order on Motion to Extend Time) (Califano, Thomas) (Entered: 09/11/2023) |
| 09/12/2023 | 389 (8 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A., Amsterdam Continuing Care Health System, Inc., the Official Committee of Unsecured Creditors, and Amsterdam House Continuing Care Retirement Community, Inc. to Extend Discovery Deadlines and Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)304 Stipulation and Order) (Taylor, Dallas) (Entered: 09/12/2023) |
| 09/13/2023 | 390 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)372 Statement filed by Other Prof. Ankura Consulting Group, LLC). (Amporfro, Regina) (Entered: 09/13/2023) |
| 09/13/2023 | 391 (4 pgs) | Incorrect event docketed, attorney contacted to refile - Statement */ Notice of Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)341 Application for Compensation filed by Cred Committee Aty Cooley LLP, 342 Application for Compensation filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 345 Application for Compensation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory). Modified on 9/14/2023 (dnb). (Entered: 09/13/2023) |
| 09/14/2023 | 392 (1 pg) | Letter *Regarding Agreed-To Sale Objection Deadline Extension* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)375 Order on Motion to Extend Time) (Taylor, Dallas) (Entered: 09/14/2023) |
| 09/14/2023 | 393 (4 pgs) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)341 Application for Compensation filed by Cred Committee Aty Cooley LLP, 342 Application for Compensation filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 345 Application for Compensation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Juell, Gregory) (Entered: 09/14/2023) |

| | | |
|---|---|---|
| 09/14/2023 | 394 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)385 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/14/2023) |
| 09/14/2023 | 395 (4 pgs) | Statement *Reservation of Rights Regarding Sale Motion* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Sethna, Eileen) (Entered: 09/14/2023) |
| 09/14/2023 | 396 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)387 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/14/2023) |
| 09/14/2023 | 397 (5 pgs) | Affidavit/Certificate of Service *of Letter re Stalking Horse Designation* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)388 Letter filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 09/14/2023) |
| 09/14/2023 | 398 (91 pgs; 6 docs) | First Motion for Relief from Stay Fee Amount $188. Filed by Mark P Getzoni on behalf of Jose A Tejeda. Hearing scheduled for 9/28/2023 at 02:00 PM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Attachments: # 1 Motion to lift stay # 2 Exhibit Exhibit "A" Proposed Order # 3 Exhibit Exhibit B Pleadings from tort action. # 4 Exhibit Exhibit C # 5 Exhibit Exhibit D Prior proceedings Order) (Getzoni, Mark) (Entered: 09/14/2023) |
| 09/14/2023 | | Receipt of Motion for Relief From Stay( 8-23-70989-ast) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A21962472. Fee amount 188.00. (re: Doc# 398) (U.S. Treasury) (Entered: 09/14/2023) |
| 09/14/2023 | | Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s)341 First Application for Compensation. for Cooley LLP as Counsel to the Official Committee of Unsecured Creditors; Fees: $ $451,590.97 Expenses: $ $8,196.01. Filed by Eric E. Walker on behalf of Cooley LLP. filed by Cred Committee Aty Cooley LLP) (ymm) (Entered: 09/15/2023) |
| 09/14/2023 | | Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s)342 First Application for Compensation. for GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors; Fees: $ 59,187.37 Expenses: $ 619.53 Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"). (ymm) (Entered: 09/15/2023) |
| 09/14/2023 | | Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s)345 Application for Compensation. for DLA Piper LLP as Counsel to the Debtor and Debtor in Possession; Fees: $ 1,413,671.33 Expenses: $ 35,218.25 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (ymm) (Entered: 09/15/2023) |

| | | |
|---|---|---|
| 09/15/2023 | 399 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)345 Application for Compensation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/15/2023) |
| 09/18/2023 | 400 (11 pgs; 2 docs) | Ex Parte Motion to Seal Document(s) *Motion of the Bond Trustee for Leave to File Under Seal The Bond Trustee's Initial Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Order to be presented for signature on 9/18/2023. (Attachments: # 1 Proposed Order) (Taylor, Dallas) (Entered: 09/18/2023) |
| 09/18/2023 | 401 (6 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 400 Motion to Seal Document(s) filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 09/18/2023) |
| 09/19/2023 | 402 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)391 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/19/2023) |
| 09/19/2023 | 403 (3 pgs) | Second Order Extending Mediation; the mediation is further extended such that it shall be concluded, whether by separate or joint sessions, by September 14, 2023; three (3) days after the conclusion of the mediation, the Mediator shallfile a status letter as to whether the mediation resulted in a settlement (RE: related document(s)335 Order). Signed on 9/19/2023 (dnb) (Entered: 09/19/2023) |
| 09/20/2023 | 404 (3 pgs) | Letter *objecting to the Ex Parte motion filed by UMB Bank, N.A., seeking leave to file under seal the initial objection to the proposed sale of the debtor's assets* Filed by United States Trustee (RE: related document(s)400 Motion to Seal Document(s) filed by Creditor UMB Bank, N.A., as Bond Trustee) (Yang, Stan) (Entered: 09/20/2023) |
| 09/20/2023 | 405 (5 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 09/20/2023) |
| 09/20/2023 | 406 (48 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 08/31/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 09/20/2023) |
| 09/21/2023 | 407 (2 pgs) | Notice of Appearance and Request for Notice Filed by Richard Paul Kaye on behalf of Estate of Violet Ajamian (Kaye, Richard) (Entered: 09/21/2023) |
| 09/22/2023 | 408 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)403 Order Assigning Matter to Mediation). |

| | | |
|---|---|---|
| | | (Amporfro, Regina) (Entered: 09/22/2023) |
| 09/22/2023 | 409 (10 pgs; 2 docs) | Statement // *Notice of Filing of Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Eleventh Affidavit of Brooke Navarre in Lieu of a Patient Care Ombudsman Report) (Juell, Gregory) (Entered: 09/22/2023) |
| 09/22/2023 | 410 (31 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)32 Meeting of Creditors Chapter 11, 179 Order on Motion to Authorize/Direct, 311 Order on Motion To Set Last Day to File Proofs of Claim). (Amporfro, Regina) (Entered: 09/22/2023) |
| 09/25/2023 | 411 (1 pg) | Letter *Regarding Adjournment of Auction and Sale Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)375 Order on Motion to Extend Time) (Juell, Gregory) (Entered: 09/25/2023) |
| 09/25/2023 | 412 (8 pgs) | Reply *in Support of Debtor's Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)265 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 09/25/2023) |
| 09/26/2023 | 413 (3 pgs) | Statement *Reservation of Rights* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Sethna, Eileen) (Entered: 09/26/2023) |
| 09/26/2023 | 414 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)381 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 382 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 383 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 384 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/26/2023) |
| 09/26/2023 | 415 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)406 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/26/2023) |
| 09/26/2023 | 416 (2 pgs) | Letter *Regarding September 28, 2023 Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 09/26/2023) |
| 09/27/2023 | 417 (3 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on September 28, 2023 at 2:00 p.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 09/27/2023) |

| | | |
|---|---|---|
| 09/28/2023 | 418 (6 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A., Amsterdam Continuing Care Health System, Inc., and the Official Committee of Unsecured Creditors to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 09/28/2023) |
| 09/28/2023 | | Hearing Held and Adjourned; Appearances: Eileen M Sethna, Gregory Juell, Stephen D Lerner, Robert A. Wolf, Matthew V Spero, Rachel Nanes, Stan Yang, Eric Blythe, Eric Walker, James Drew, Mark Getzoni, William Curtain. Status hearing to be held on 10/26/2023 at 10:30 AM at Courtroom 3554 (In Person) (Judge Feller), Brooklyn, NY. LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 09/29/2023) |
| 09/28/2023 | | Hearing Held and Adjourned; Appearances: Eileen M Sethna, Gregory Juell, Stephen D Lerner, Robert A. Wolf, Matthew V Spero, Rachel Nanes, Stan Yang, Eric Blythe, Eric Walker, James Drew, Mark Getzoni, William Curtain. 'Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (In Person) (Judge Feller), Brooklyn, NY. (RE: related document(s) 106 Motion to Authorize/Direct / Debtors Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 09/29/2023) |
| 09/28/2023 | | Hearing Held; Appearances: Mark P Getzoni and Rachel Nanes. (RE: related document(s) 398 Motion for Relief From Stay Filed by Claimant Jose A Tejeda) SETTLED; STIPULATION & ORDER TO BE SUBMITTED (ymm) (Entered: 09/29/2023) |
| 09/29/2023 | 419 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)411 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 412 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 09/29/2023) |
| 09/30/2023 | 420 (18 pgs; 6 docs) | Statement -- *Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the period from August 1, 2023 to August 31, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 09/30/2023) |
| 09/30/2023 | 421 (44 pgs; 2 docs) | Statement -- *Third Monthly Statement of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtor for the period from July 1, 2023 through July 31, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit 1) (Juell, Gregory) (Entered: 09/30/2023) |
| 10/02/2023 | 422 (32 pgs; 3 docs) | Transcript & Notice regarding the hearing held on 09/28/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be |

| | | |
|---|---|---|
| | | purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held (Document BK & AP)). Notice of Intent to Request Redaction Due By 10/10/2023. Redaction Request Due By 10/23/2023. Redacted Transcript Submission Due By 11/2/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 01/2/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 10/02/2023) |
| 10/02/2023 | 423 (9 pgs; 2 docs) | Order Approving Stipulation By and Between the Debtor and Jose A. Tejeda (I) Modifying the Automatic Stay and (II) Limiting Recovery on Personal Injury Action to Available Insurance Proceeds. The Stipulation is hereby approved and the Motion is deemed resolved. The automatic stay is hereby modified solely to the extent necessary to permit the Movant to seek recovery on account of his alleged claims against and solely from the proceeds, if any, of general and professional liability insurance policy number NSC100971 issued to the Debtorby MedPro Group for the period of October 24, 2020 through October 24, 2021, orof any other applicable insurance policies. The Debtor shall not be required to satisfy any applicable deductibles or self-insured retentions that are or may be required under the Policy, or of any other applicable insurance policies. (RE: related document(s)398 Motion for Relief From Stay). Signed on 10/2/2023 (Attachments: # 1 Exhibit) (dnb) (Entered: 10/02/2023) |
| 10/02/2023 | 424 (5 pgs) | Stipulation between undersigned Parties Extending Investigation Period, Section 5.6 of the DIP Order shall be amended, with respect to the Bond Trustee and the Committee only, to delete one hundred thirty-seven (137) days and insert in its place one hundred fifty-one (151) days. For the avoidance of doubt, such change shall result in an extension of the expiration of the Investigation Period, with respect to the Bond Trustee and the Committee only, to October 16, 2023. (RE: related document(s)418 Notice of Proposed Stipulation). SO ORDERED on 10/2/2023 (dnb) (Entered: 10/02/2023) |
| 10/02/2023 | 425 (4 pgs) | Stipulation between undersigned Parties Extending Investigation Period. Section 5.6 of the DIP Order shall be amended, with respect to the Bond Trusteeand the Official Committee of Unsecured Creditors (the Committee) only, to delete one hundred twenty-seven (127) days and insert in its place one hundred thirty-seven (137) days. For the avoidance of doubt, such change shall result in an extension of the expiration of the Investigation Period, with respect to the Trustee and the Committee only, to October 2, 2023 (RE: related document(s)405 Notice of Proposed Stipulation filed by Creditor UMB Bank, N.A., as Bond Trustee). SO ORDERED on 10/2/2023 (dnb) (Entered: 10/02/2023) |
| 10/02/2023 | 426 (8 pgs) | Stipulation between undersigned Parties Extending Discovery Deadlines and Investigation Period. Section 5.6 of the DIP Order shall be amended, with respect to the Bond Trusteeand the Committee only, to delete ninety-nine (99) days and insert in its place one hundred twenty-seven (127) days. For the avoidance of doubt, such change shall result in an extension of the expiration of the Investigation Period, with respect to the Bond Trustee and the Committee only, to September 22, 2023 (RE: related document(s)389 Notice of Proposed Stipulation). SO ORDERED on 10/2/2023 (dnb) (Entered: 10/02/2023) |

| | | |
|---|---|---|
| 10/03/2023 | 427 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)416 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/03/2023) |
| 10/03/2023 | 428 (9 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)409 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/03/2023) |
| 10/03/2023 | 429 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)417 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/03/2023) |
| 10/03/2023 | 430 (18 pgs; 2 docs) | Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement / *Debtor's Second Motion for Entry of an Order Extending the Debtor's Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 10/03/2023) |
| 10/04/2023 | 431 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 10/04/2023. (Admin.) (Entered: 10/05/2023) |
| 10/06/2023 | 432 (1 pg) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)430 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) Hearing scheduled for 10/26/2023 at 10:30 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Juell, Gregory) (Entered: 10/06/2023) |
| 10/06/2023 | 433 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Twelfth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 10/06/2023) |
| 10/06/2023 | 434 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)420 Statement filed by Other Prof. Ankura Consulting Group, LLC, 421 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/06/2023) |
| 10/09/2023 | 435 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)430 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/09/2023) |
| 10/10/2023 | 436 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)432 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 433 Statement filed by Debtor |

| | | |
|---|---|---|
| | | Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/10/2023) |
| 10/13/2023 | 437 (5 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 10/13/2023) |
| 10/16/2023 | 438 (8 pgs) | Statement *Fourth Monthly Fee and Expense Statement of GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period August 1, 2023 Through August 31, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 10/16/2023) |
| 10/16/2023 | 439 (25 pgs) | Statement *Fourth Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period August 1, 2023 Through August 31, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 10/16/2023) |
| 10/16/2023 | 440 (188 pgs; 2 docs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Permit the Filing of the Bond Trustee's Redacted Sale Objection Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Attachments: # 1 Exhibit A) (Taylor, Dallas) (Entered: 10/16/2023) |
| 10/18/2023 | 441 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)438 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 439 Statement filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP). (Amporfro, Regina) (Entered: 10/18/2023) |
| 10/20/2023 | 442 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Thirteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 10/20/2023) |
| 10/20/2023 | 443 (51 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 09/30/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Cash Activity # 2 Exhibit B - Bank Reconciliations # 3 Exhibit C - Bank Statements # 4 Exhibit D - Disbursements Journal # 5 Exhibit E - Balance Sheet # 6 Exhibit F - Statement of Operations # 7 Exhibit G - AR AP Aging # 8 Exhibit H - Payments to Insiders # 9 Exhibit I - Prepetition Payments # 10 Exhibit J - Statement of Capital Assets) (Juell, Gregory) (Entered: 10/20/2023) |
| 10/20/2023 | 444 (48 pgs; 2 docs) | Fourth Statement // *Fourth Monthly Statement of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and Reimbursement of Expenses incurred as Counsel to the Debtor for the Period from August 1, 2023 through August 31, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement |

| | | |
|---|---|---|
| | | Community, Inc. (Attachments: # 1 Exhibit 1 - Invoice) (Juell, Gregory) (Entered: 10/20/2023) |
| 10/23/2023 | 445 (2 pgs) | Letter *Regarding Matters to be Heard on October 26, 2023 and November 15, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 10/23/2023) |
| 10/24/2023 | 446 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)443 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 444 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/24/2023) |
| 10/25/2023 | 447 (4 pgs) | Statement / *Agenda of Matters Scheduled for Hearing on October 26, 2023 at 10:30 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 10/25/2023) |
| 10/25/2023 | 448 (81 pgs; 2 docs) | Exhibit / *Notice of Auction Results* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)179 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 10/25/2023) |
| 10/25/2023 | 449 (6 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A., Amsterdam Continuing Care Health System, Inc., and the Official Committee of Unsecured Creditors to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 10/25/2023) |
| 10/25/2023 | 450 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)442 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/25/2023) |
| 10/26/2023 | | Hearing Held; Appearances: Rachel Nanes, James Muenker, Emily Musgrave, Eric Blythe, Daniel Bleck, Eileen Sethna, Erik Weinick, Stan Y Yang. (RE: related document(s) 341 Application for Compensation.for Cooley LLP as Counsel to the Official Committee of Unsecured Creditors; Fees: $451,590.97 Expenses: $8,196.01. Filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP) INTERIM APPLICATION APPROVED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 10/31/2023) |
| 10/26/2023 | | Hearing Held; Appearance(s): Rachel Nanes, James Muenker, Emily Musgrave, Eric Blythe, Daniel Bleck, Eileen Sethna, Erik Weinick, Stan Y Yang (RE: related document(s) 342 Application for Compensation. for GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors; Fees: 59,187.37 Expenses: 619.53. Filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS")) INTERIM APPLICATION APPROVED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS |

| | | |
|---|---|---|
| | | DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 10/31/2023) |
| 10/26/2023 | | Hearing Held and Adjourned; Appearance: Rachel Nanes, James Muenker, Emily Musgrave, Eileen Sethna, Erick Weinick, Eric Blythe, Daniel Bleck, Stan Yang. Status hearing (in person & by zoom by request) to be held on 01/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s) Hearing Sched/Resched(Case Owned)) (ymm) (Entered: 10/31/2023) |
| 10/26/2023 | | Hearing Held; Appearances: Rachel Nanes and Stan Yang. (RE: related document(s) 345 Application for Compensation. for DLA Piper LLP as Counsel to the Debtor and Debtor in Possession; Fees: 1,413,671.33 Expenses: 35,218.25. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) INTERIM APPLICATION APPROVED - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 10/31/2023) |
| 10/26/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes. 'Hearing scheduled for 01/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY.(RE: related document(s) 430 Motion to Extend/Limit Exclusivity Period Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED IN PART AS PER TERMS STATED ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 10/31/2023) |
| 10/26/2023 | | Adjourned Without Hearing 'Hearing (in person) cheduled for 11/15/2023 at 10:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 106 Motion to Authorize/Direct / Debtors Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief . Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (ymm) (Entered: 10/31/2023) |
| 10/27/2023 | 451<br>(7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)447 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 448 Exhibit filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 10/27/2023) |
| 10/30/2023 | 452<br>(2 pgs; 2 docs) | Transcript & Notice regarding the hearing held on 10/26/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency].. Notice of Intent to Request Redaction Due By 11/6/2023. Redaction Request |

| | | |
|---|---|---|
| | | Due By 11/20/2023. Redacted Transcript Submission Due By 11/30/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 01/29/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 10/30/2023) |
| 10/30/2023 | 453 (5 pgs) | Notice of Proposed Stipulation By and Between (1) UMB Bank, N.A., in its capacity as Bond Trustee, (2) Amsterdam House Continuing Care Retirement Community, Inc., and (3) the Official Committee of Unsecured Creditors to Limit the Scope of Pamela Landman's Deposition Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 10/30/2023) |
| 10/30/2023 | 454 (17 pgs; 6 docs) | Statement *Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period September 1, 2023 through September 30, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 10/30/2023) |
| 10/31/2023 | 455 (35 pgs; 5 docs) | Motion to Approve Stipulation *//Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. Hearing scheduled for 11/15/2023 at 10:00 AM Courtroom 960 (Judge Trust), CI, NY . (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Juell, Gregory) Modified on 11/1/2023 (ymm). (Entered: 10/31/2023) |
| 10/31/2023 | 456 (7 pgs; 4 docs) | Motion for Jason Hopkins to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc.. Fee Amount $150. Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Affidavit # 2 Certificate of Service # 3 Proposed Order) (Juell, Gregory) (Entered: 10/31/2023) |
| 10/31/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A22088840. Fee amount 150.00. (re: Doc# 456) (U.S. Treasury) (Entered: 10/31/2023) |
| 10/31/2023 | 457 (1 pg) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 10/31/2023) |
| 10/31/2023 | 458 (1 pg) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. Hearing scheduled for 1/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Juell, Gregory) (Entered: 10/31/2023) |
| 10/31/2023 | 459 (2 pgs) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. Hearing scheduled for 11/15/2023 at 10:00 AM at Courtroom 960 (Judge Trust), CI, NY. (Juell, Gregory) (Entered: 10/31/2023) |

| | | |
|---|---|---|
| 11/02/2023 | 460 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (AP) Notice Date 11/02/2023. (Admin.) (Entered: 11/03/2023) |
| 11/03/2023 | 461 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/03/2023) |
| 11/03/2023 | 462 (10 pgs; 2 docs) | Objection *to Cure Amount and Limited Objection and Reservation of Rights to Proposed Sale* Filed by Edward E Neiger on behalf of Sodexo (RE: related document(s)325 Notice to Cure filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A) (Neiger, Edward) (Entered: 11/03/2023) |
| 11/03/2023 | 463 (4 pgs; 2 docs) | (FILED IN ERROR - SEE DOCUMENT #464)Statement *// Notice of Filing of (Fourteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A) (Juell, Gregory) Modified on 11/6/2023 (jag). (Entered: 11/03/2023) |
| 11/03/2023 | 464 (10 pgs; 2 docs) | Statement *// Notice of Filing of (Fourteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 11/03/2023) |
| 11/04/2023 | 465 (281 pgs; 10 docs) | Objection Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I) (Sethna, Eileen) (Entered: 11/04/2023) |
| 11/04/2023 | 466 (13 pgs) | Declaration Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (Walker, Eric) (Entered: 11/04/2023) |
| 11/04/2023 | 467 (31 pgs; 5 docs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Minimum Qualified Bid Memo # 2 Exhibit B- Email and Attachments to all Biddders # 3 Exhibit C- Information Sent to Kong # 4 Exhibit D-Updated Information Sent to King on Oct 23, 2023) (Juell, Gregory) (Entered: 11/04/2023) |
| 11/04/2023 | 468 (10 pgs) | Declaration Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Califano, Thomas) (Entered: 11/04/2023) |
| 11/04/2023 | 469 (11 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/04/2023) |
| 11/04/2023 | 470 (158 pgs; 13 docs) | Objection *The Bond Trustee's Supplemental Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and* |

| | | |
|---|---|---|
| | | *Encumbrances* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Exhibit) (Taylor, Dallas) (Entered: 11/04/2023) |
| 11/04/2023 | 471 (61 pgs; 3 docs) | Objection *The Bond Trustee's Preliminary Objection to the Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit Exhibit A - Morton Dep. Transcript # 2 Exhibit Exhibit B - Landman Correspondence) (Taylor, Dallas) (Entered: 11/04/2023) |
| 11/06/2023 | 472 | [ATTORNEY ADVISED TO REDACT AND REFILE USING THE CORRECT EVENT] Amended Notice of Motion/Presentment */Notice of Presentment of Mediator's Motion for Payment of Fees and Costs of Mediation to Date*. Objections to be filed on 11/20/23. Filed by Jason Neil Kestecher on behalf of Robert D. Drain, Mediator (Kestecher, Jason) Modified to include remark on 11/7/2023 (caf). (Entered: 11/06/2023) |
| 11/07/2023 | 473 (31 pgs) | Application for Compensation. for Robert D. Drain as Mediator;. Objections to be filed on 11/20/2023. Filed by Jason Neil Kestecher on behalf of Robert D. Drain, Mediator. Order to be presented for signature on 11/27/2023. (Kestecher, Jason) (Entered: 11/07/2023) |
| 11/07/2023 | 474 (5 pgs) | Affidavit/Certificate of Service *of Declaration of Daniel L. Lahey in Support of Sale Motion* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)468 Declaration filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 11/07/2023) |
| 11/07/2023 | 475 (9 pgs) | Statement */ Joint Stipulation Regarding Undisputed Facts In Connection with the Debtor's Sale Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/07/2023) |
| 11/08/2023 | 476 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)470 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 471 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 11/08/2023) |
| 11/08/2023 | 477 (2 pgs) | Reply Filed by Jeff Rowland (RE: related document(s)455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (hrm) (Entered: 11/08/2023) |
| 11/08/2023 | 478 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)464 Statement filed by Debtor |

| | | |
|---|---|---|
| | | Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/08/2023) |
| 11/08/2023 | 479 (9 pgs) | Declaration Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/08/2023) |
| 11/09/2023 | 480 (2 pgs) | Notice of Appearance and Request for Notice Filed by Brian Roy on behalf of Nassau County Industrial Development Agency (Roy, Brian) (Entered: 11/09/2023) |
| 11/09/2023 | 481 (48 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 457 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 458 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 459 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/09/2023) |
| 11/10/2023 | 482 (6 pgs; 5 docs) | Motion for Jami B. Nimeroff to Appear Pro Hac Vice for Sodexo, Inc. & Affiliates. Fee Amount $150. Filed by Edward E Neiger on behalf of Sodexo. (Attachments: # 1 Affidavit # 2 Cert. of Good Standing # 3 Proposed Order # 4 Certificate of Service) (Neiger, Edward) (Entered: 11/10/2023) |
| 11/10/2023 | | Receipt of Motion to Appear Pro Hac Vice( 8-23-70989-ast) [motion,mprohac] ( 150.00) Filing Fee. Receipt number A22120872. Fee amount 150.00. (re: Doc# 482) (U.S. Treasury) (Entered: 11/10/2023) |
| 11/10/2023 | 483 (193 pgs; 5 docs) | Omnibus Reply *of Life Care Services Communities LLC, d/b/a LCS Real Estate, in Support of Debtor's Motion for Entry of Orders (I) Approving Bidding Procedures, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder, (III) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) Sale of Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Forms of Notices Related to Sale, and (VI) Granting Related Relief* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 440 Notice of Proposed Stipulation filed by Creditor UMB Bank, N.A., as Bond Trustee, 465 Objection filed by Interested Party Kong-BP Amsterdam, LLC, 468 Declaration filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate, 470 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Exhibit A - Harborside -IDA Resolution # 2 Exhibit B - Excerpt of Certificate of Incorporation # 3 Exhibit C - Schlicher Deposition # 4 Exhibit D - Edgemere Complaint) (Califano, Thomas) (Entered: 11/10/2023) |
| 11/10/2023 | 484 (11 pgs; 3 docs) | Letter *Regarding Resident Letters* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Attachment 1 # 2 Attachment 2) (Juell, Gregory) (Entered: 11/10/2023) |
| 11/10/2023 | 485 (4 pgs) | Statement *The Bond Trustee's Witness and Exhibit List for the November 15, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 11/10/2023) |
| 11/10/2023 | 486 (4 pgs) | Statement *The Bond Trustee's Amended Witness and Exhibit List for the November 15, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)485 Statement filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 11/10/2023) |
| 11/10/2023 | 487 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)466 Declaration filed by Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 467 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 469 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 472 Amended Notice of Motion/Presentment filed by Mediator Robert D. Drain, Mediator). (Amporfro, Regina) (Entered: 11/10/2023) |
| 11/10/2023 | 488 (1238 pgs; 44 docs) | Statement *Witness and Exhibit List (11.15 Hearing)* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34 # 35 Exhibit 35 # 36 Exhibit 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42 # 43 Exhibit 43) (Sethna, Eileen) (Entered: 11/10/2023) |
| 11/10/2023 | 489 (118 pgs; 2 docs) | Supplemental Objection *The Bond Trustee's Second Supplemental Objection to the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interest and Encumbrances* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Exhibit Ex. A - Schlicher Deposition) (Taylor, Dallas) (Entered: 11/10/2023) |
| 11/10/2023 | 490 (4 pgs) | Amended Statement *Witness and Exhibit List (11.15 Hearing)* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Sethna, Eileen) (Entered: 11/10/2023) |
| 11/10/2023 | 491 (369 pgs; 4 docs) | Statement *of the Official Committee of Unsecured Creditors in Support of (I) The Debtor's Proposed Sale to Life Care Services Communities LLC d/b/a LCS Real Estate and (II) The Joint 9019 Motion* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # |

| | | |
|---|---|---|
| | | 1 Exhibit A: 11/8/23 Transcript of Deposition of Coe Schlicher # 2 Exhibit B: 11/1/23 Transcript of Deposition of David Kliewer # 3 Exhibit C: 11/8/23 Transcript of Deposition of Andrew Turnbull) (Walker, Eric) (Entered: 11/10/2023) |
| 11/10/2023 | 492 (175 pgs; 4 docs) | Reply *Debtors Omnibus Reply to the Objections of UMB Bank, N.A. and Kong-BP Amsterdam. LLC to the Debtors Sale Motion* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A - Turnbull Deposition Transcript, November 8, 2023 # 2 Exhibit B - Shandler Deposition Transcript, November 8, 2023 # 3 Exhibit C - Schlicher Deposition Transcript, November 8, 2023) (Juell, Gregory) (Entered: 11/10/2023) |
| 11/10/2023 | 493 (8 pgs) | Reply *Debtors Reply to the Bond Trustees Preliminary Objection to the Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/10/2023) |
| 11/13/2023 | 494 (29 pgs) | Letters [Regarding Residency Agreement] Filed by Roseann LaManna. (dnb) (Entered: 11/13/2023) |
| 11/13/2023 | 495 (14 pgs) | Objection *and Reservation of Rights to the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Interests and Encumbrances* Filed by Brian Roy on behalf of Nassau County Industrial Development Agency (RE: related document(s)448 Exhibit filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Roy, Brian) (Entered: 11/13/2023) |
| 11/13/2023 | 496 (5 pgs) | Affidavit/Certificate of Service Filed by Brian Roy on behalf of Nassau County Industrial Development Agency (RE: related document(s)495 Objection filed by Creditor Nassau County Industrial Development Agency) (Roy, Brian) (Entered: 11/13/2023) |
| 11/13/2023 | 497 (2 pgs) | Affidavit/Certificate of Service *of Objection by Sodexo, Inc. & Affiliates to Proposed Cure Amount in Connection with Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Limited Objection and Reservation of Rights with Respect to the Proposed Sale* Filed by Edward E Neiger on behalf of Sodexo (RE: related document(s)462 Objection filed by Creditor Sodexo) (Neiger, Edward) (Entered: 11/13/2023) |
| 11/13/2023 | 498 (6 pgs) | Statement */ Joint Witness and Exhibit List of the Debtor. the Official Committee of Unsecured Creditors, and Life Care Services Communities LLC, d/b/a LCS Real Estate, for the Hearing Scheduled on November 15, 2023 at 10:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/13/2023) |
| 11/13/2023 | 499 (6 pgs) | Statement */ Amended Joint Witness and Exhibit List of the Debtor, the Official Committee of Unsecured Creditors, and Life Care Services Communities LLC, d/b/a LCS Real Estate, for the Hearing Scheduled on November 15. 2023 at 10:00 a.m. (ET)* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/13/2023) |

| | | |
|---|---|---|
| 11/13/2023 | 500<br>(87 pgs; 2 docs) | Statement *Second Amended Witness and Exhibit List* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Attachments: # 1 Exhibit 44) (Sethna, Eileen) (Entered: 11/13/2023) |
| 11/13/2023 | 501<br>(5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)475 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/13/2023) |
| 11/13/2023 | 502<br>(8 pgs) | Statement *The Bond Trustee's Second Amended Witness and Exhibit List for the November 15, 2023 Hearing* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 11/13/2023) |
| 11/13/2023 | 503<br>(9 pgs) | Statement *F.fth Monthly Fee and Expense Statement cf GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services as Financial Advisor for the C.ficial Committee cf Unsecured Creditors cf Amsterdam House Continuing Care Retirement Community, Inc., for the Period September 1, 2023 Through September 30, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 11/13/2023) |
| 11/13/2023 | 504<br>(24 pgs) | Statement *F.fth Monthly Fee and Expense Statement cf Cooley LLP, Counsel for the C.ficial Committee cf Unsecured Creditors cf Amsterdam House Continuing Care Retirement Community, Inc., for the Period September 1. 2023 Through September 30, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 11/13/2023) |
| 11/13/2023 | 505<br>(2 pgs) | Letter *Regarding Fee Schedule* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/13/2023) |
| 11/14/2023 | 506<br>(1 pg) | Letter regarding Harborside and Constance's credentials Filed by Constance Miceli (gmg) (Entered: 11/14/2023) |
| 11/14/2023 | 507<br>(5 pgs) | Letter regarding signatures for Harborside Filed by Harborside residents (gmg) (Entered: 11/14/2023) |
| 11/14/2023 | 508<br>(1 pg) | Letter regarding Amsterdam House Filed by Rochelle Dorfman (gmg) (Entered: 11/14/2023) |
| 11/14/2023 | 509<br>(2 pgs) | Letter regarding Harborside CCRC Filed by Marilyn Bromley (gmg) (Entered: 11/14/2023) |
| 11/14/2023 | 510<br>(3 pgs) | Statement *Nassau County Industrial Development Agency Witness and Exhibit List for the November 15, 2023 Hearing* Filed by Brian Roy on behalf of Nassau County Industrial Development Agency (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Roy, Brian) (Entered: 11/14/2023) |
| 11/14/2023 | 511<br>(7 pgs) | Statement */ Agenda cf Matters Scheduled for Hearing on November 15, 2023 at 10:00 a.m. (ET)* Filed by Gregory Juell on behalf of |

| | | |
|---|---|---|
| | | Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/14/2023) |
| 11/14/2023 | 512 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)485 Statement filed by Creditor UMB Bank, N.A., as Bond Trustee, 486 Statement filed by Creditor UMB Bank, N.A., as Bond Trustee, 489 Objection filed by Creditor UMB Bank, N.A., as Bond Trustee, 502 Statement filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 11/14/2023) |
| 11/14/2023 | 513 (9 pgs; 2 docs) | Statement *Third Amended Witness and Exhibit List* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Attachments: # 1 Exhibit 45) (Sethna, Eileen) (Entered: 11/14/2023) |
| 11/14/2023 | 514 (3 pgs) | Notice of Appearance and Request for Notice Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Sethna, Eileen) (Entered: 11/14/2023) |
| 11/14/2023 | 515 (6 pgs) | Affidavit/Certificate of Service *cf Omnibus Reply cf L.fe Care Services Communities LLC, d/b/a LCS Real Estate in Support cf Debtor's Sale Motion* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)483 Reply filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 11/14/2023) |
| 11/14/2023 | 516 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)479 Declaration filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/14/2023) |
| 11/15/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes, Melanie Cyganowski, Daniel Bleck, Emil Musgrave, Thomas Califano, Eric Walker Jason Hopskin, James Muenke, Erik Weinick, Brian Roy . 'Hearing scheduled for 11/21/2023 at 10:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 455 Motion to Approve Stipulation Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) LETTER OF ADJOURNMENT TO BE FILED (ymm) (Entered: 11/15/2023) |
| 11/15/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes, Emily Musgrave, Thomas Califano, Eric Walker, Jason Hopkins, James Muenke, Erik Weinick, Brian Roy Andrew Komaromi, William Curtain, Jami Nimeroff, Eric Blythe . 'Hearing (by Zoom) scheduled for 11/21/2023 at 10:00 AM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 106 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) Testimony taken of David Kliewer, Michael Morton, Daniel Lahey, Janice Grubin, Andrew Tumbull, Chad Shandler. LETTER OF ADJOURNMENT TO BE FILED (ymm)<br>Modified on 11/15/2023 (ymm). (Entered: 11/15/2023) |
| 11/15/2023 | 517 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)484 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 491 Statement filed by Cred Committee Aty Official Committee of Unsecured Creditors, |

| | | |
|---|---|---|
| | | Creditor Committee Official Committee of Unsecured Creditors). (Amporfro, Regina) (Entered: 11/15/2023) |
| 11/16/2023 | 518 (1 pg) | Letter Regarding Amsterdam House Continuing Care Retirement Community, Inc. Filed by Joan Rauch (hrm) (Entered: 11/16/2023) |
| 11/16/2023 | 519 (2 pgs) | Letter Regarding Amsterdam House Continuing Care Retirement Community, Inc. Filed by Robert Curtis (hrm) (Entered: 11/16/2023) |
| 11/16/2023 | 520 (2 pgs) | Letter Regarding Amsterdam House Continuing Care Retirement Community, Inc.Filed by Eileen J. Shaughnessy (hrm) (Entered: 11/16/2023) |
| 11/16/2023 | 521 (1 pg) | Letter of Adjournment: Hearing rescheduled from November 15, 2023 at 10:00 a.m. (ET) to November 21, 2023 at 10:00 a.m. (ET) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/16/2023) |
| 11/16/2023 | 522 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)492 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 493 Reply filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 499 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 505 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/16/2023) |
| 11/16/2023 | 523 | INCORRECT COURT LOCATION FOR HEARING ON NOTICE, TRANSCRIBER CONTACTED TO REFILE- Transcript & Notice regarding the hearing held on 11/15/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP)). Notice of Intent to Request Redaction Due By 11/27/2023. Redaction Request Due By 12/7/2023. Redacted Transcript Submission Due By 12/18/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/14/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) Modified on 11/17/2023 (dnb). (Entered: 11/16/2023) |
| 11/16/2023 | 524 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)511 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/16/2023) |
| 11/17/2023 | 525 | INCORRECT COURT LOCATION FOR HEARING ON NOTICE, TRANSCRIBER CONTACTED TO REFILE- Transcript & Notice regarding the hearing held on 11/15/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 523 Transcript (Attorney Ordered)). Notice of Intent to Request Redaction Due By 11/27/2023. Redaction Request Due By 12/8/2023. Redacted Transcript Submission Due By 12/18/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/15/2024 |

| | | |
|---|---|---|
| | | AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) Modified on 11/17/2023 (dnb). (Entered: 11/17/2023) |
| 11/17/2023 | 526 (1 pg) | Letter *Regarding Exhibits at November 15, 2023 Hearing* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | 527 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)521 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/17/2023) |
| 11/17/2023 | 528 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Fifteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | 529 (18 pgs; 2 docs) | Third Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement // *Debtor's Third Motion for Entry of an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A - Proposed Order) (Juell, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | 530 (5 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 11/17/2023) |
| 11/20/2023 | 531 (1 pg) | Letter *to Judge Trust Dated November 20, 2023* Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (Cyganowski, Melanie) (Entered: 11/20/2023) |
| 11/20/2023 | 532 (2 pgs; 2 docs) | Transcript & Notice regarding the hearing held on 11/15/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 525 Transcript (Attorney Ordered)). Notice of Intent to Request Redaction Due By 11/27/2023. Redaction Request Due By 12/11/2023. Redacted Transcript Submission Due By 12/21/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/20/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 11/20/2023) |
| 11/20/2023 | 533 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)445 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/20/2023) |
| 11/20/2023 | 534 (51 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 10/31/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 11/20/2023) |

| | | |
|---|---|---|
| 11/21/2023 | 535 (12 pgs) | Exhibit *Bond Trustee Closing Demonstratives* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 11/21/2023) |
| 11/21/2023 | 536 (11 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)526 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 528 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 529 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/21/2023) |
| 11/21/2023 | 537 (17 pgs) | Exhibit *Debtor Closing Demonstratives* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/21/2023) |
| 11/21/2023 | 538 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)534 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/21/2023) |
| 11/21/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes Eric Walker, Thomas Calaifan, Stan Yang, Daniel Bleck, Elizabeth Vandesteeg, Brian Roy, Melanie Cyganowski, Robert Wolf. Ruling Conference by Zoom scheduled for 11/29/2023 at 01:30 PM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 455 Motion to Approve Stipulation Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) BRIEFING OR LETTER BY 11/27/23 AT 4:00 PM (ymm) (Entered: 11/22/2023) |
| 11/21/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes Eric Walker, Thomas Calaifan, Stan Yang, Daniel Bleck, Elizabeth Vandesteeg, Brian Roy, Melanie Cyganowski, Robert Wolf. Ruling Conference by Zoom scheduled for 11/29/2023 at 01:30 PM at Courtroom 960 (Judge Trust), CI, NY.(RE: related document(s) 106 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) BRIEFING OR LETTER BY 11/27/23 AT 4:00 PM. (ymm) (Entered: 11/22/2023) |
| 11/22/2023 | 539 (2 pgs; 2 docs) | Transcript & Notice regarding the hearing held on 11/21/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 455 Motion to Approve Stipulation). Notice of Intent to Request Redaction Due By 11/29/2023. Redaction Request Due By 12/13/2023. Redacted Transcript Submission Due By 12/26/2023. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/20/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 11/22/2023) |
| 11/22/2023 | 540 (1 pg) | Letter *to the Honorable Alan S. Trust from Gregory M. Juell regarding stipulation* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)369 Objection filed by Creditor Harbor View at Port Washington Homeowners Association, Inc.) (Juell, Gregory) (Entered: 11/22/2023) |

| | | |
|---|---|---|
| 11/22/2023 | 541 (2 pgs) | Letter *to The Honorable Alan S. Trust from Gregory M. Juell regarding stipulation* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)462 Objection filed by Creditor Sodexo) (Juell, Gregory) (Entered: 11/22/2023) |
| 11/22/2023 | 542 (1 pg) | Letter *to the Honorable Alan S. Trust from Gregory M. Juell regarding Notice of Ruling Conference and Related Deadlines* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/22/2023) |
| 11/22/2023 | 543 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 11/22/2023. (Admin.) (Entered: 11/23/2023) |
| 11/27/2023 | 544 (5 pgs) | Letter *regarding Supplemental Brief* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Juell, Gregory) (Entered: 11/27/2023) |
| 11/27/2023 | 545 (4 pgs) | Letter *to the Honorable Alan S. Trust, dated November 27, 2023, from Eric E. Walker on behalf of the Official Committee of Unsecured Creditors* Filed by Eric E. Walker on behalf of Official Committee of Unsecured Creditors (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 455 Motion to Approve Stipulation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 542 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Walker, Eric) (Entered: 11/27/2023) |
| 11/27/2023 | 546 (17 pgs) | Statement *Kong-BP Amsterdam LLC's Post-Trial Brief* Filed by Eileen M Sethna on behalf of Kong-BP Amsterdam, LLC (Sethna, Eileen) (Entered: 11/27/2023) |
| 11/27/2023 | 547 (5 pgs) | Statement */Certificate of No Objection With Respect to Motion of the Mediator for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From August 16, 2023 Through October 31, 2023* Filed by Jason Neil Kestecher on behalf of Robert D. Drain, Mediator (RE: related document(s)473 Application for Compensation filed by Mediator Robert D. Drain, Mediator) (Kestecher, Jason) (Entered: 11/27/2023) |
| 11/27/2023 | 548 (6 pgs) | Letter *Brief in Support of Sale Motion* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 483 Reply filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 11/27/2023) |
| 11/27/2023 | 549 (14 pgs) | Letter *Dated November 27, 2023* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Taylor, Dallas) (Entered: 11/27/2023) |
| 11/28/2023 | 550 (10 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)544 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 545 Letter filed by |

| | | |
|---|---|---|
| | | Cred Committee Aty Official Committee of Unsecured Creditors, Creditor Committee Official Committee of Unsecured Creditors, 547 Statement filed by Mediator Robert D. Drain, Mediator). (Amporfro, Regina) (Entered: 11/28/2023) |
| 11/28/2023 | 551 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)549 Letter filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 11/28/2023) |
| 11/28/2023 | 552 (1 pg) | Letter of Adjournment: Hearing rescheduled from November 29, 2023 at 1:30 p.m. (ET) to December 1, 2023 at 9:15 a.m. (ET) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/28/2023) |
| 11/28/2023 | 553 (1 pg) | Letter *Regarding Status of Settlement* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/28/2023) |
| 11/29/2023 | | Adjourned Without Hearing. Hearing scheduled for 12/01/2023 at 09:15 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s) 455 Motion to Approve Stipulation Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (alh) (Entered: 11/29/2023) |
| 11/29/2023 | | Adjourned Without Hearing. Hearing scheduled for 12/01/2023 at 09:15 AM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s) 106 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (alh) (Entered: 11/29/2023) |
| 11/29/2023 | 554 (5 pgs) | Affidavit/Certificate of Service *of Letter Brief in Support of Sale Motion* Filed by Thomas Robert Califano on behalf of Life Care Services Communities LLC, dba LCS Real Estate (RE: related document(s)548 Letter filed by Interested Party Life Care Services Communities LLC, dba LCS Real Estate) (Califano, Thomas) (Entered: 11/29/2023) |
| 11/29/2023 | 555 (5 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 11/29/2023) |
| 11/29/2023 | 556 (8 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)552 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 553 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 11/29/2023) |
| 11/29/2023 | 557 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 11/29/2023. (Admin.) (Entered: 11/30/2023) |
| 11/30/2023 | 558 (1 pg) | Letter *Regarding Status of Settlement* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 11/30/2023) |

| | | |
|---|---|---|
| 11/30/2023 | 559 (15 pgs; 6 docs) | Statement // *Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period from October 1, 2023 to October 31, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 11/30/2023) |
| 11/30/2023 | 560 (36 pgs; 2 docs) | Fifth Statement // *Fifth Monthly Statement of DLA Piper LLP (US) For Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtor for the Period from September 1, 2023 through September 30, 2023* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit 1 - Invoice) (Juell, Gregory) (Entered: 11/30/2023) |
| 12/01/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes, Eric Walker, Stan Yang, Eric Blythe, William Curtin, Melanie Cyganowski, Brian Roy, Eileen Sethna. Status Conference by Zoom scheduled for 12/08/2023 at 02:00 PM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s) 455 Motion to Approve Stipulation Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION DENIED AS PER TERMS STATED ON THE RECORD. LETTER TO BE FILED BY 12/6 BY 4 PM SETTING OUT WHETHER OR NOT THE PARTIES CONSENT TO THE PROPOSED TRANSACTION OR ALTERNATIVELY DOCKET A LETTER BY 12/6 BY 4 PM AS FOR AN ALTERNATIVE TRANSACTION. (alh) (Entered: 12/01/2023) |
| 12/01/2023 | | Hearing Held and Adjourned; Appearances: Rachel Nanes, Eric Walker, Stan Yang, Eric Blythe, William Curtin, Melanie Cyganowski, Brian Roy, Eileen Sethna. Status Conference by Zoom scheduled for 12/08/2023 at 02:00 PM at Courtroom 960 (Judge Trust), CI, NY. (RE: related document(s) 106 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION DENIED AS PER TERMS STATED ON THE RECORD. LETTER TO BE FILED BY 12/6 BY 4 PM SETTING OUT WHETHER OR NOT THE PARTIES CONSENT TO THE PROPOSED TRANSACTION OR ALTERNATIVELY DOCKET A LETTER BY 12/6 BY 4 PM AS FOR AN ALTERNATIVE TRANSACTION. (alh) (Entered: 12/01/2023) |
| 12/01/2023 | 561 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)558 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 559 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 560 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/01/2023) |
| 12/01/2023 | 562 (1 pg) | Letter of Adjournment: Hearing rescheduled from December 1, 2023 at 9:15 a.m. (ET) to December 8, 2023 at 2:00 a.m. (ET) Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 12/01/2023) |
| 12/01/2023 | 563 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Sixteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 12/01/2023) |

| | | |
|---|---|---|
| 12/02/2023 | 564 (2 pgs; 2 docs) | Transcript & Notice regarding the hearing held on 12/01/23. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) Hearing Held and Adjourned (Document BK & AP), Hearing Held and Adjourned (Document BK & AP)). Notice of Intent to Request Redaction Due By 12/11/2023. Redaction Request Due By 12/26/2023. Redacted Transcript Submission Due By 01/2/2024. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 03/1/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 12/02/2023) |
| 12/05/2023 | 565 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)540 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 542 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/05/2023) |
| 12/06/2023 | 566 (6 pgs) | Stipulation and Order by and between UMB Bank, N.A., Amsterdam Continuing Care Health System, Inc., and the Official Committee of Unsecured Creditors to Extend Investigation Period to November 20,2023. Section 5.6 of the DIP Order shall be amended, with respect to the Bond Trustee and Committee only, to delete one hundred fifty-one (151) days and insert in its place one hundred eighty-six (186) days. For the avoidance of doubt, such change shall result in an extension of the expiration of the Investigation Period, with respect to the Bond Trustee and the Committee only, to November 20, 2023. (RE: related document(s)449 Notice of Proposed Stipulation filed by Creditor UMB Bank, N.A., as Bond Trustee). Signed on 12/6/2023 (ssw) (Entered: 12/06/2023) |
| 12/06/2023 | 567 (5 pgs) | Supplemental Objection *to Cure Cost and Reservation cf Rights cf Harbor View cf Port Washington Home Owners Association, Inc.* Filed by Matthew V Spero on behalf of Harbor View at Port Washington Homeowners Association, Inc. (RE: related document(s)369 Objection filed by Creditor Harbor View at Port Washington Homeowners Association, Inc.) (Spero, Matthew) (Entered: 12/06/2023) |
| 12/06/2023 | 568 (2 pgs) | Letter *Regarding LCS Sale* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Juell, Gregory) (Entered: 12/06/2023) |
| 12/06/2023 | 569 (1 pg) | Letter *to Judge Trust Dated December 6, 2023 Re: relationship between ACCHS, the Debtor and Amsterdam Nursing Home Corporation (1992) ("ANH")* Filed by Melanie L Cyganowski on behalf of Counsel to Amsterdam Continuing Care Health System, Inc. (Cyganowski, Melanie) (Entered: 12/06/2023) |
| 12/06/2023 | 570 (13 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)562 Letter of Adjournment filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 563 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/06/2023) |
| 12/06/2023 | 571 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 12/06/2023. (Admin.) (Entered: 12/07/2023) |

| | | |
|---|---|---|
| 12/07/2023 | 572 (2 pgs) | Letter *in Response to the Debtor's Letter Regarding the LCS Sale* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)568 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Taylor, Dallas) (Entered: 12/07/2023) |
| 12/08/2023 | 573 (4 pgs) | Affidavit/Certificate of Service Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)572 Letter filed by Creditor UMB Bank, N.A., as Bond Trustee) (Taylor, Dallas) (Entered: 12/08/2023) |
| 12/08/2023 | 574 (4 pgs; 2 docs) | Letter *Regarding Resolution cf Cure Objection* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)495 Objection filed by Creditor Nassau County Industrial Development Agency) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 12/08/2023) |
| 12/08/2023 | 575 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)568 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/08/2023) |
| 12/08/2023 | | Hearing Held; Appearances: Rachel Nanes, Eric Walker, James Drew, Bill Curtain, Stan Yang, Daniel Bleck, Eileen Sethna, Brian Roy, Matthew Spero. (RE: related document(s) 455 Motion to Approve Stipulation Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED AS PER TERMS STATED ON THE RECOD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 12/08/2023) |
| 12/08/2023 | | Hearing Held; Appearances: Rachel Nanes, Eric Walker, James Drew, Bill Curtain, Stan Yang, Daniel Bleck, Eileen Sethna, Brian Roy, Matthew Spero. (RE: related document(s) 106 Motion to Authorize/Direct Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) MOTION GRANTED AS PER TERMS STATE ON THE RECORD - SUBMIT ORDER; IF THE PROPOSED ORDER IS NOT SUBMITTED OR SETTLED AS DIRECTED WITHIN 14 DAYS, THE MATTER MAY BE DEEMED ABANDONED PURSUANT TO E.D.N.Y. L.B.R. 9072-1. (ymm) (Entered: 12/08/2023) |
| 12/09/2023 | 576 (2 pgs; 2 docs) | Transcript & Notice regarding the hearing held on 12/08/2023. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency].. Notice of Intent to Request Redaction Due By 12/18/2023. Redaction Request Due By 01/2/2024. Redacted Transcript Submission Due By 01/9/2024. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 03/8/2024 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 12/09/2023) |
| 12/12/2023 | 577 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)574 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/12/2023) |

| | | |
|---|---|---|
| 12/12/2023 | 578 (1 pg) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. Hearing scheduled for 1/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Juell, Gregory) (Entered: 12/12/2023) |
| 12/12/2023 | 579 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:456 Motion for Jason Hopkins to Appear Pro Hac Vice for Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Affidavit # 2 Certificate of Service # 3 Proposed Order)). Signed on 12/12/2023. (dnb) (Entered: 12/13/2023) |
| 12/12/2023 | 580 (1 pg) | Order Granting Motion To Appear Pro Hac Vice (Related Doc:482 Motion for Jami B. Nimeroff to Appear Pro Hac Vice for Sodexo, Inc. & Affiliates (Attachments: # 1 Affidavit # 2 Cert. of Good Standing # 3 Proposed Order # 4 Certificate of Service)). Signed on 12/12/2023. (dnb) (Entered: 12/13/2023) |
| 12/13/2023 | 581 (4 pgs) | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 12/13/2023. (Admin.) (Entered: 12/14/2023) |
| 12/14/2023 | 582 (1 pg) | Order Directing Clerk's Office to restrict access to the document. The filer is ordered to re-file the document together with all attachments, redacted as required by Bankruptcy Rule 9037, on or before 12/20/2023. (RE: related document(s)472 Amended Notice of Motion/Presentment filed by Mediator Robert D. Drain, Mediator). Signed on 12/14/2023 (ymm) (Entered: 12/14/2023) |
| 12/14/2023 | 583 (1 pg) | Letter Providing Notice of Court Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)529 Motion to Extend/Limit Exclusivity Period filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) Hearing scheduled for 1/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (Juell, Gregory) (Entered: 12/14/2023) |
| 12/14/2023 | 584 (24 pgs) | Statement *Sixth Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Care Retirement Community, Inc., for the Period October 1, 2023 Through October 31, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 12/14/2023) |
| 12/14/2023 | 585 (9 pgs) | Statement *Sixth Monthly Fee and Expense Statement of GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services as Financial Advisor for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period October 1, 2023 Through October 31, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 12/14/2023) |
| 12/15/2023 | 586 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Seventeenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 12/15/2023) |

| | | |
|---|---|---|
| 12/15/2023 | 587 (177 pgs; 5 docs) | Notice of Appeal to District Court. . Fee Amount $298 Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee. Appellant Designation due by 01/2/2024. Transmission of Designation to District Court Due by 01/16/2024. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C)(Taylor, Dallas) (Entered: 12/15/2023) |
| 12/15/2023 | | Receipt of Notice of Appeal( 8-23-70989-ast) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A22223535. Fee amount 298.00. (re: Doc# 587) (U.S. Treasury) (Entered: 12/15/2023) |
| 12/15/2023 | 588 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)578 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/15/2023) |
| 12/15/2023 | 589 (12 pgs; 3 docs) | Letter *Regarding Resolution of IDA Objection* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)495 Objection filed by Creditor Nassau County Industrial Development Agency) (Attachments: # 1 Attachment 1 # 2 Attachment 2) (Juell, Gregory) (Entered: 12/15/2023) |
| 12/18/2023 | 590 (2 pgs; 2 docs) | Appeal Deficiency Notice (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee) (one) (Entered: 12/18/2023) |
| 12/18/2023 | 591 (2 pgs; 2 docs) | Notice to Parties of Requirements, Deadlines (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee) (one) (Entered: 12/18/2023) |
| 12/18/2023 | 592 (286 pgs; 4 docs) | Transmittal of Notice of Appeal to District Court (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Bankruptcy Docket Sheet) (one) (Entered: 12/18/2023) |
| 12/18/2023 | 593 (5 pgs) | Notice of Proposed Stipulation By and Between UMB Bank, N.A. and Amsterdam Continuing Care Health System, Inc. to Extend Investigation Period Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Taylor, Dallas) (Entered: 12/18/2023) |
| 12/18/2023 | 594 (8 pgs) | Civil Cover Sheet Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (Related document(s) 587 Notice of Appeal). (Taylor, Dallas). Modified on 12/18/2023 to add linkage (drk). (Entered: 12/18/2023) |
| 12/19/2023 | 595 (4 pgs) | Notice of Docketing Record on Appeal to District Court. Civil Action Number: 23-cv-09226 District Court Judge Gary R. Brown assigned. (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee) (one) (Entered: 12/19/2023) |
| 12/19/2023 | 596 (111 pgs; 4 docs) | Transmittal of Additional Record on Appeal to District Court in reference to Civil Case Number: 23-cv-09226 (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee, 594 Civil Cover Sheet filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Bankruptcy Court Docket Sheet) (one) (Entered: 12/19/2023) |

| | | |
|---|---|---|
| 12/19/2023 | 597 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)589 Letter filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/19/2023) |
| 12/19/2023 | 598 (7 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)583 Letter Providing Notice of Court Hearing filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/19/2023) |
| 12/20/2023 | 599 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)586 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 12/20/2023) |
| 12/20/2023 | 600 (51 pgs; 11 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 11/30/2023 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J) (Juell, Gregory) (Entered: 12/20/2023) |
| 12/20/2023 | 601 (4 pgs) | BNC Certificate of Mailing with Notice/Order Notice Date 12/20/2023. (Admin.) (Entered: 12/21/2023) |
| 12/20/2023 | 602 (7 pgs) | BNC Certificate of Mailing with Application/Notice/Order Notice Date 12/20/2023. (Admin.) (Entered: 12/21/2023) |
| 12/21/2023 | 603 (3 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)584 Statement filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP, 585 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS")). (Amporfro, Regina) (Entered: 12/21/2023) |
| 12/22/2023 | 604 | [REDACTION REQUIRED - ATTORNEY ADVISED TO REDACT AND REFILE] Interim Application for Compensation. for DLA Piper LLP (US) as Counsel to the Debtor; Fees: $ 1,466,666.49 Expenses: $ 58,969.74 Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A - Certification of Rachel Nanes # 2 Exhibit B - Retention Order # 3 Exhibit C - Fee Statements # 4 Exhibit D - Proposed Order) (Juell, Gregory) Modified to include remark on 12/27/2023 (caf). (Entered: 12/22/2023) |
| 12/22/2023 | 605 (39 pgs; 5 docs) | Application to Employ Continuum Advisors LLC as Real Estate Broker // *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Continuum Advisors LLC as Real Estate Broker* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Engagement Agreement # 3 Exhibit C - Kliewer Declaration # 4 Exhibit D - Assignment Agreement) (Juell, Gregory) (Entered: 12/22/2023) |
| 12/27/2023 | 606 (11 pgs; 2 docs) | Order Approving Settlement and Compromise pursuant to Federal Rule of Bankruptcy Procedure 9019. It is hereby Ordered that; Pursuant to Bankruptcy Rule 9019, the Revised Settlement Agreement |

| | | |
|---|---|---|
| | | is hereby approved in all respects as fair and equitable and in the best interests of the estate and all parties in interest. (Related Doc # 455) Signed on 12/27/2023. (Attachments: # 1 Exhibit) (alh) (Entered: 12/27/2023) |
| 12/27/2023 | 607 (104 pgs; 2 docs) | Order (I) Approving the amended and restated asset purchase agreement between the Debtor and Life Care Services Communities LLC d/b/a LCS Real Estate; (II) Authorizing the sale of substantially all of the Debtor's assets free and clear of liens, claims, interests and encumbrances, except for certain assumed liabilities; (III) Authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith; and (IV) grating related relief. (RE: related document(s)106 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 12/27/2023 (Attachments: # 1 Exhibit) (alh) (Entered: 12/27/2023) |
| 12/27/2023 | 608 (120 pgs; 5 docs) | Second Application for Compensation. for DLA Piper LLP (US) as Counsel to the Debtor; Fees: $ 1,466,666.49 Expenses: $ 58,969.74 Filed by Gregory Juell on behalf of DLA Piper LLP (US). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Juell, Gregory) (Entered: 12/27/2023) |
| 12/28/2023 | 609 (98 pgs; 3 docs) | Interim Application for Compensation. for Cooley LLP as Counsel to the Official Committee of Unsecured Creditors; Fees: $ 528,569.95 Expenses: $ 12,103.13 Filed by Eric E. Walker on behalf of Cooley LLP. (Attachments: # 1 Exhibit A: Monthly Statements # 2 Walker Certification) (Walker, Eric) (Entered: 12/28/2023) |
| 12/28/2023 | 610 (46 pgs; 3 docs) | Interim Application for Compensation. for GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services as Financial Advisor to the Official Committee of Unsecured Creditors; Fees: $ 80,624.13 Expenses: $ 933.21 Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"). (Attachments: # 1 Exhibit A: Monthly Statements # 2 Buck Certification) (Walker, Eric) (Entered: 12/28/2023) |
| 12/29/2023 | 611 (3 pgs) | Notice of Hearing Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)608 Application for Compensation filed by Attorney DLA Piper LLP (US), 609 Application for Compensation filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP, 610 Application for Compensation filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS")) (Juell, Gregory) Modified on 1/2/2024 for clarification.(ssw). (Entered: 12/29/2023) |
| 12/29/2023 | 612 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Eighteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 12/29/2023) |
| 12/29/2023 | 613 (35 pgs; 2 docs) | Statement / *Sixth Monthly Statement of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Debtor for the Period From October 1, 2023 Through October 31, 2023* Filed by Gregory Juell on |

| | | |
|---|---|---|
| | | behalf of DLA Piper LLP (US) (Attachments: # 1 Exhibit 1) (Juell, Gregory) (Entered: 12/29/2023) |
| 12/29/2023 | 614 (58 pgs; 2 docs) | Appellant Designation of Contents For Inclusion in Record On Appeal & Statement of Issues *Bond Trustee's Statement of Issues on Appeal, Designation of Record on Appeal, and Certificate Regarding Transcripts Pursuant to Federal Rule of Bankruptcy Procedure 8009* Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee, 594 Civil Cover Sheet filed by Creditor UMB Bank, N.A., as Bond Trustee). Appellee designation due by 01/12/2024. (Attachments: # 1 Certificate of Service)(Taylor, Dallas) (Entered: 12/29/2023) |
| 12/29/2023 | 615 (15 pgs; 6 docs) | Statement / *Monthly Staffing and Compensation Report of Ankura Consulting Group, LLC for the Period From November 1, 2023 to November 30, 2023* Filed by Gregory Juell on behalf of Ankura Consulting Group, LLC (RE: related document(s)237 Order on Application to Employ) (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Juell, Gregory) (Entered: 12/29/2023) |
| 12/29/2023 | | Hearing scheduled for 1/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s)608 Second Application for Compensation. for DLA Piper LLP (US) as Counsel to the Debtor; Fees: $ 1,466,666.49 Expenses: $ 58,969.74. filed by Attorney DLA Piper LLP (US)) (ymm) (Entered: 01/16/2024) |
| 12/29/2023 | | Hearing scheduled for 1/31/2024 at 10:00 AM at Courtroom 3554 (Judge Feller), Brooklyn, NY. (RE: related document(s)609 Interim Application for Compensation. for Cooley LLP as Counsel to the Official Committee of Unsecured Creditors; Fees: $ 528,569.95 Expenses: $ 12,103.13. filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP) (ymm) (Entered: 01/16/2024) |
| 01/02/2024 | 616 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)604 Application for Compensation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 605 Application to Employ filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 01/02/2024) |
| 01/02/2024 | 617 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)606 Order on Motion to Approve Stipulation, 607 Generic Order). (Amporfro, Regina) (Entered: 01/02/2024) |
| 01/02/2024 | 618 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)612 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 01/02/2024) |
| 01/04/2024 | 619 (1 pg) | Order Directing Clerk's Office to restrict access to the document. The filer is ordered to re-file the document together with all attachments, redacted as required by Bankruptcy Rule 9037, on or before 1/10/2024. (RE: related document(s)604 Application for Compensation filed by |

| | | |
|---|---|---|
| | | Debtor Amsterdam House Continuing Care Retirement Community, Inc.). Signed on 1/4/2024 (ymm) (Entered: 01/04/2024) |
| 01/04/2024 | 620 (18 pgs) | Entered in error; See corrected entry below (Attorney called) - Application for Compensation. for Robert D. Drain as Mediator; Fees: $ 12,019.89. Objections to be filed on 1/25/2024. Filed by Robert Drain on behalf of Robert D. Drain, Mediator. Order to be presented for signature on 2/1/2024. (Drain, Robert) Modified on 1/4/2024 (ssw). (Entered: 01/04/2024) |
| 01/04/2024 | 621 (19 pgs) | Amended Application for Compensation. for Robert D. Drain as Mediator; Fees: $ 11,957.97 Expenses: $ 61.92. Objections to be filed on 1/25/2024. Filed by Robert Drain on behalf of Robert D. Drain, Mediator. Order to be presented for signature on 2/1/2024. (Drain, Robert) (Entered: 01/04/2024) |
| 01/04/2024 | 622 (1 pg) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)600 Chapter 11 Monthly Operating Report UST Form 11-MOR filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.). (Amporfro, Regina) (Entered: 01/04/2024) |
| 01/05/2024 | 623 (2 pgs) | Order for Compensation Granting for Robert D. Drain, fees and expenses of: $63,116.05, Through October 31, 2023 (RE: related document(s)473 Application for Compensation filed by Mediator Robert D. Drain, Mediator). Signed on 1/5/2024 (dnb) (Entered: 01/05/2024) |
| 01/05/2024 | 624 (8 pgs) | Affidavit/Certificate of Service Filed by Leslie S Barr, Maureen T Bass, Daniel S Bleck, Thomas Robert Califano, Melanie L Cyganowski, Robert Drain, Stuart P Gelberg, Mark P Getzoni, Christopher Giaimo, Stuart I Gordon, Heidi M Hockberger, Jason Hopkins, Russell R Johnson III, Gregory Juell, Richard Paul Kaye, Justin Slade Krell, Michael Kwiatkowski, Stephen D Lerner, Catherine S. Lombardo, Michael G McAuliffe, James P. Muenker, Rachel Nanes, Edward E Neiger, Jami B Nimeroff, Marc A Pergament, Samuel R. Rabuck, Paul Rachmuth, Lee Evan Riger, Brian Roy, Benjamin D. Schuman, Lon J Seidman, Eileen M Sethna, Howard L Simon, Matthew V Spero, Paul J. Springer, Dallas Taylor, Eric E. Walker, Erik B Weinick, Robert A. Wolf, Lee E Woodard on behalf of Epiq Corporate Restructuring, LLC (RE: related document(s)608 Application for Compensation filed by Attorney DLA Piper LLP (US), 609 Application for Compensation filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP, 611 Statement filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc., 613 Statement filed by Attorney DLA Piper LLP (US), 615 Statement filed by Other Prof. Ankura Consulting Group, LLC). (Amporfro, Regina) (Entered: 01/05/2024) |
| 01/08/2024 | 625 (5 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)621 Application for Compensation filed by Mediator Robert D. Drain, Mediator). (Amporfro, Regina) (Entered: 01/08/2024) |
| 01/10/2024 | 626 (120 pgs; 3 docs) | Amended Notice of Appeal to District Court: This filing is a supplement to the initial Notice of Appeal filed at Bankruptcy Docket No. 587. Filed by Dallas Taylor on behalf of UMB Bank, N.A., as Bond Trustee (RE: related document(s)587 Notice of Appeal filed by |

| | | |
|---|---|---|
| | | Creditor UMB Bank, N.A., as Bond Trustee). (Attachments: # 1 Exhibit A # 2 Exhibit B)(Taylor, Dallas) (Entered: 01/10/2024) |
| 01/10/2024 | 627 (10 pgs) | Statement *Seventh Monthly Fee and Expense Statement of GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services as Financial Advisor for the the Official Committee of Unsecured Creditors of Amsterdam House Continuing Care Retirement Community, Inc., for the Period November 1, 2023 Through November 30, 2023* Filed by Eric E. Walker on behalf of GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS") (Walker, Eric) (Entered: 01/10/2024) |
| 01/10/2024 | 628 (26 pgs) | Statement *Seventh Monthly Fee and Expense Statement of Cooley LLP, Counsel for the Official Committee of Unsecured Creditors of Amsterdam House Continuing Continuing Care Retirement Community, Inc., for the Period November 1, 2023 Through November 30, 2023* Filed by Eric E. Walker on behalf of Cooley LLP (Walker, Eric) (Entered: 01/10/2024) |
| 01/11/2024 | 629 (333 pgs; 4 docs) | Transmittal of Additional Record on Appeal to District Court in reference to Civil Case Number: 23-cv-09226-GRB (RE: related document(s)606 Order on Motion to Approve Stipulation, 607 Generic Order, 626 Amended Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee) (Attachments: # 1 Docket Sheet) (one) (Entered: 01/11/2024) |
| 01/12/2024 | 630 (10 pgs; 2 docs) | Statement / *Notice of Filing of (Nineteenth) Self-Reporting Affidavit in Lieu of Appointment of an Ombudsman* Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)120 Order on Motion to Authorize/Direct) (Attachments: # 1 Exhibit A) (Juell, Gregory) (Entered: 01/12/2024) |
| 01/12/2024 | 631 (5 pgs) | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc. (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee, 594 Civil Cover Sheet filed by Creditor UMB Bank, N.A., as Bond Trustee). (Juell, Gregory) (Entered: 01/12/2024) |
| 01/16/2024 | 632 (6903 pgs; 31 docs) | Transmittal of Additional Record on Appeal to District Court in reference to Civil Case Number: 23-cv-09226 (RE: related document(s)587 Notice of Appeal filed by Creditor UMB Bank, N.A., as Bond Trustee, 614 Appellant Designation & Statement of Issues filed by Creditor UMB Bank, N.A., as Bond Trustee, 631 Appellee Designation filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.) (Attachments: # 1 Designations Part 2 # 2 Designations Part 3 # 3 Designations Part 4 # 4 Designations Part 5 # 5 Designations Part 6 # 6 Designations Part 7 # 7 Designations Part 8 # 8 Designations Part 9 # 9 Designations Part 10 # 10 Designations Part 11 # 11 Designations Part 12 # 12 Designations Part 13 # 13 Designations Part 14 # 14 Designations Part 15 # 15 Designations Part 16 # 16 Designations Part 17 # 17 Designations Part 18-1 # 18 Designations Part 18-2 # 19 Designations Part 19 # 20 Designations Part 20 # 21 Designations Part 21 # 22 Designations Part 22 # 23 Designations Part 23 # 24 Designations Part 24 # 25 Designations Part 25 # 26 Designations Part 26 # 27 Designations Part 27 # 28 Bankruptcy Court Docket Sheet) (one) (Entered: 01/16/2024) |

| | | |
|---|---|---|
| 01/16/2024 | 633 (6 pgs) | Affidavit/Certificate of Service Filed by Epiq Corporate Restructuring, LLC (RE: related document(s)627 Statement filed by Financial Advisor GlassRatner Advisory & Capital Group, LLC DBA B. Riley Advisory Services ("BRAS"), 628 Statement filed by Attorney Cooley LLP, Cred Committee Aty Cooley LLP). (Amporfro, Regina) (Entered: 01/16/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/16/2024 15:33:58 | | | |
| **PACER Login:** | cpwashington16 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8-23-70989-ast Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern District of New York (State)

Case number (*If known*): ____________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Amsterdam House Continuing Care Retirement Community, Inc. |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names, and *doing business as* names | The Harborside |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 11-3711764 |
| 4. | **Debtor's address** | **Principal place of business**<br>300 E. Overlook<br>Number Street<br>Port Washington NY 11050<br>City State ZIP Code<br>Nassau<br>County<br><br>**Mailing address, if different from principal place of business**<br>Number Street<br>P.O. Box<br>City State ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br>Number Street<br>City State ZIP Code |
| 5. | **Debtor's website** (URL) | https://theharborside.org |

Debtor Amsterdam House Continuing Care Retirement Community, Inc. Case number (if known)_____
Name

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☑ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☐ None of the above

B. *Check all that apply:*

☑ Tax-exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

6 2 3 3

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7
☐ Chapter 9
☑ Chapter 11. *Check **all** that apply*:

- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor Amsterdam House Continuing Care Retirement Community, Inc. Case number (if known) ____________
Name

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☐ No
☑ Yes. District E.D.N.Y. When 06/14/2021 (MM / DD / YYYY) Case number 21-71095
District ________ When ________ (MM / DD / YYYY) Case number ________

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No
☐ Yes. Debtor ________ Relationship ________
District ________ When ________ (MM / DD / YYYY)
Case number, if known ________

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? ________

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ________

**Where is the property?** ________
Number Street
________
City State ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency ________
Contact name ________
Phone ________

## Statistical and administrative information

Debtor Amsterdam House Continuing Care Retirement Community, Inc. Case number (if known) ____
Name

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☑ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☑ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☑ $100,000,001-$500 million | ☐ More than $50 billion |

**Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/22/2023
MM / DD / YYYY

✘ ____
Signature of authorized representative of debtor

Brooke Navarre
Printed name

Title President & CEO

Debtor Amsterdam House Continuing Care Retirement Community, Inc.
Name

Case number (if known)

**18. Signature of attorney**

X [signature]
Signature of attorney for debtor

Date 03/22/2023
MM / DD / YYYY

Gregory M. Juell
Printed name

DLA Piper LLP (US)
Firm name

1251 Avenue of the Americas
Number Street

New York | NY | 10020
City | State | ZIP Code

(212) 335-4500
Contact phone

gregory.juell@us.dlapiper.com
Email address

5420120 | NY
Bar number | State

OFFICER'S CERTIFICATE
March 22, 2023

I, Brooke Navarre, being the duly appointed President & CEO of Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Harborside ("The Harborside"), hereby certify as follows:

1. I am the duly qualified and elected President & CEO of The Harborside and, as such, I am familiar with the facts certified herein and I am duly authorized to certify the same on behalf of The Harborside;

2. Attached hereto is a true, correct, and complete copy of the resolutions of the Board of Directors of The Harborside, duly adopted and approved on March 21, 2023, in accordance with The Harborside's corporate organizational documents; and

3. Such resolutions have not been amended, altered, annulled, rescinded, modified or revoked since their adoption and remain in full force and effect as of the date hereof. There exist no subsequent resolutions relating to the matters set forth in the resolutions attached hereto.

**IN WITNESS WHEREOF**, the undersigned has executed this certificate as of the 22 day of March, 2023.

Name: Brooke Navarre, President & CEO of
Amsterdam House Continuing Care
Retirement Community, Inc.

**RESOLUTIONS OF THE BOARD OF DIRECTORS OF AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.**

Effective as of this 21st day of March, 2023, pursuant to a special meeting of the board of directors (the "Board")[1] of Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Harborside, a New York not-for-profit corporation ("The Harborside"), on the same date, at which a quorum was present, upon a motion duly made and seconded and acting pursuant to The Harborside's organizational documents, the members of the Board took the following actions and adopted the following recitals and resolutions:

**WHEREAS,** after conducting a robust marketing process for the affiliation or sale of The Harborside, The Harborside's senior management ("Management") and legal, financial and other advisors (collectively, the "Advisors") engaged in arm's length, good faith negotiations with New England Life Plan Communities Corp., a not-for-profit corporation organized and existing under the laws of Massachusetts ("NELP"), resulting in a proposed stalking horse term sheet (the "Stalking Horse Term Sheet") that provided for the following alternative transactions (together, the "Restructuring Transactions"): (i) the acquisition of the sole corporate membership interest or, alternatively, substantially all of the assets of The Harborside pursuant to a sale under a plan of reorganization and/or sections 363 and 365 of the title 11 of the United States Code (the "Bankruptcy Code"), subject to an auction process and bidding procedures, or (ii) the acquisition of the sole corporate membership interest in The Harborside and the tax-exempt bonds issued pursuant to that certain Master Trust Indenture, dated as of September 1, 2021, between Nassau County Industrial Development Agency and UMB Bank, N.A., as Trustee, all on the terms and conditions set forth in the Stalking Horse Term Sheet;

**WHEREAS,** in light of The Harborside's financial condition, The Harborside's Management and Advisors engaged in arm's length, good faith negotiations with Amsterdam Continuing Care Health System, Inc., The Harborside's sole member (the "Member"), resulting in a proposed debtor-in-possession loan term sheet (the "DIP Loan Term Sheet"), pursuant to which the Member has agreed to loan up to $9,000,000 (the "DIP Loan") to The Harborside on a non-priming basis to support The Harborside's operations and restructuring efforts during its chapter 11 case (the "Chapter 11 Case"), all on the terms and conditions set forth in the DIP Loan Term Sheet;

**WHEREAS,** the Board established an independent restructuring committee (the "Independent Restructuring Committee") to evaluate possible restructuring transactions, including the Stalking Horse Term Sheet and DIP Loan Term Sheet;

**WHEREAS,** the Board and the Independent Restructuring Committee have considered the current and prospective financial and operational aspects of The Harborside's business, including The Harborside's historical performance, assets, current and long-term liabilities;

**WHEREAS,** the Board and the Independent Restructuring Committee have considered presentations made by, and have reviewed and had the opportunity to ask questions about the materials presented by, The Harborside's Management and Advisors regarding, among other

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stalking Horse Term Sheet and DIP Loan Term Sheet (as defined below).

things, the liabilities, liquidity and prospects of The Harborside, the relative risks and benefits of the strategic alternatives available to The Harborside, and the impact of the foregoing on The Harborside's business, creditors, residents and other interested parties;

**WHEREAS**, the Board and Independent Restructuring Committee have received, reviewed and evaluated the Stalking Horse Term Sheet, the DIP Loan Term Sheet, and the term sheets submitted by all others parties, and have considered, among other things, general market conditions, the various strategic opportunities available to The Harborside, and the advantages and effects of the transactions proposed in the Stalking Horse Term Sheet and DIP Loan Term Sheet on The Harborside and its creditors, residents and other interested parties;

**WHEREAS**, the Board and the Independent Restructuring Committee have unanimously determined that it is advisable and in the best interests of The Harborside and its creditors, residents and other interested parties to pursue the transactions contemplated in the Stalking Horse Term Sheet and DIP Loan Term Sheet;

**WHEREAS**, the Board has unanimously determined that it is in the best interests of The Harborside and its creditors, residents and other interested parties that a petition be filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") by The Harborside seeking relief under chapter 11 of title 11 of the Bankruptcy Code;

**WHEREAS,** pursuant to New York Not-for-Profit Corporation Law and the Amended and Restated By-laws of The Harborside, certain actions taken by the Board with respect to, among other things, a sale of The Harborside's assets is subject to the express approval of the Member, and such approval has been obtained;

**WHEREAS,** the Board has determined that it is in the best interests of The Harborside and its creditors, residents, and other interested parties to approve the following resolutions; and

**NOW, THEREFORE, IT IS HEREBY:**

***Commencement of the Chapter 11 Case***

**RESOLVED,** that the Board has determined, after consultation with The Harborside's Management and Advisors, that it is advisable and in the best interests of The Harborside and its creditors, residents and other interested parties that The Harborside is authorized to file or cause to be filed a voluntary petition under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and it is further

**RESOLVED,** that Brooke Navarre, Michael Morton and such other individuals as The Harborside shall from time to time designate (each, an "Authorized Person" and collectively, the "Authorized Persons"), are hereby authorized, empowered and instructed to cause preparation of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on behalf of The Harborside; and it is further

**RESOLVED**, that, upon preparation, such Authorized Persons are hereby authorized, on behalf of and in the name of The Harborside, to cause such voluntary petition to be executed, and verified in such form as such Authorized Persons, with advice of counsel, deem appropriate and

that upon execution such Authorized Persons, with advice of counsel, are hereby authorized to cause such petition to be filed with the Bankruptcy Court to commence the Chapter 11 Case; and it is further

**RESOLVED**, that the Authorized Persons are authorized to negotiate, execute, deliver and file with the Bankruptcy Court (or direct others to do so on behalf of The Harborside) all necessary documents, including, without limitation, all petitions, affidavits, schedules, motions, lists, applications, pleadings, orders and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, financial advisors, or other professionals and to take any and all actions that they deem necessary and proper in connection with the Chapter 11 Case; and it is further

***Retention of Advisors***

**RESOLVED**, that the Authorized Persons are hereby authorized and directed to retain on behalf of The Harborside, upon such terms and conditions as the Authorized Persons shall approve, subject to Bankruptcy Court approval, the following professionals (collectively, the "Professionals") to represent The Harborside in connection with the Chapter 11 Case:

- DLA Piper LLP (US), as The Harborside's bankruptcy counsel;
- Ankura Consulting Group, LLC, as The Harborside's financial advisor and to provide a chief restructuring officer and certain additional personnel, as needed;
- Grandbridge Real Estate Capital, LLC, as The Harborside's real estate broker; and
- Epiq Corporate Restructuring, LLC, as The Harborside's noticing, claims, and solicitation agent.

**RESOLVED**, that with respect to the Professionals, the Authorized Persons are hereby authorized and directed to (i) execute retention agreements and pay retainers prior to and immediately upon the filing of the Chapter 11 Case, (ii) continue to periodically replenish, as required, the retainers previously paid by The Harborside to the Professionals on account of the services rendered or to be rendered by them, and (iii) cause to be filed applications of authority to retain the Professionals; and it is further

**RESOLVED**, that the Authorized Persons are authorized and directed to employ any other firms as professionals or consultants to The Harborside that are deemed necessary to represent and assist The Harborside in carrying out the duties under the Bankruptcy Code and, in connection therewith, the Authorized Persons of The Harborside are hereby authorized and directed to execute and deliver appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case and cause to be filed appropriate applications for authority to retain the services of such firms; and it is further

***Debtor in Possession Financing***

**RESOLVED**, that in connection with the Chapter 11 Case, the Board authorizes and approves negotiation of the DIP Loan and any other agreements, consents, certificates, amendments, assignments, and instruments in connection therewith (collectively, the "DIP Loan Documents") consistent with the DIP Loan Term Sheet, which has been provided to the Board, and with such changes as the Authorized Persons shall approve, and the Authorized Persons shall be, and hereby are, authorized and empowered, in the name and on behalf of The Harborside, to negotiate, execute, deliver, and perform or cause the performance of the DIP Loan Documents, as such Authorized Persons consider necessary, appropriate, proper, or desirable to effectuate the transactions contemplated by the DIP Loan Documents and other arrangements necessary, proper, or desirable in the interest of The Harborside in connection with the Chapter 11 Case, such determination to be conclusively evidenced by such execution or taking of such action; and it is further

**RESOLVED**, that, upon execution of the DIP Loan Documents, The Harborside is hereby authorized to grant (i) the DIP Liens on the DIP Collateral; (ii) the waiver and release of the Member's obligations under or related to the LSA; (iii) the Administrative Expense Claims and DIP Superpriority Claims; (iv) the releases of the DIP Lender Protected Parties; and (v) such other liens, claims, release, waivers and relief, all on the terms and conditions set forth in the DIP Loan Term Sheet; and it is further

**RESOLVED**, that the Authorized Persons be, and hereby are, authorized and empowered to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of any of the DIP Loan Documents or any revised budgets in connection with the DIP Loan Documents, and to execute and file on behalf of The Harborside all schedules, lists, motions, budgets, papers, or documents, which shall in their sole judgment be necessary, proper, or advisable, which determination shall be conclusively evidenced by their execution thereof; and it is further

***The Restructuring Transactions***

**RESOLVED**, after careful consideration, the Board has determined that it is advisable and in the best interests of The Harborside and its creditors, residents and interested parties to enter into the Stalking Horse Term Sheet, pursue the Restructuring Transactions, negotiate and execute definitive documentation relating thereto (the "Transaction Documents") and to consummate the Restructuring Transactions consistent with the Stalking Horse Term Sheet; and it is further

**RESOLVED**, that the Authorized Persons are each authorized and directed, for and on behalf of The Harborside, to execute and deliver the Stalking Horse Term Sheet and to subsequently negotiate and enter into Transaction Documents as may be necessary or desirable, consistent with the Stalking Horse Term Sheet, in each case together with such modifications and amendments thereto as the Authorized Persons may, in their discretion, deem necessary or desirable, such approval to be conclusively established by the execution of the Stalking Horse Term Sheet and the Transaction Documents; and it is further

**RESOLVED**, that the Authorized Persons are each authorized and directed, for and on behalf of The Harborside, to take any other actions as may be necessary or appropriate, in the judgment of such individuals, to consummate the Stalking Horse Term Sheet and the Restructuring Transactions; and it is further

***General Authorization and Ratification***

**RESOLVED,** that any and all past actions heretofore taken by the Authorized Persons, any director or officer of The Harborside in the name and on behalf of The Harborside in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects; and it is further

**RESOLVED,** that the Authorized Persons are authorized and directed, in the name of and on behalf of The Harborside, under The Harborside's corporate seal or otherwise, to make, enter into, execute, deliver and file any and all other or further agreements, documents, certificates, materials and instruments, to disburse funds of The Harborside, to take or cause to be taken any and all other actions, and to incur all such fees and expenses as any such Authorized Person deems to be necessary, appropriate or advisable to carry out the purposes of the foregoing resolutions, the Stalking Horse Term Sheet, DIP Loan Term Sheet, and the transactions contemplated thereunder and/or to successfully complete the Chapter 11 Case, the taking of any such action or execution of any such documents and/or agreements to constitute conclusive evidence and the exercise of such discretionary authority; and it is further

**RESOLVED,** that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as required by the governance documents of The Harborside, or hereby waives any right to have received such notice.

* * * * *

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
www.nyeb.uscourts.gov

**STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 1073-2(b)**

**DEBTOR(S):** Amsterdam House Continuing Care Retirement Community, Inc. **CASE NO.:** 23-

Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor (or any other petitioner) hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[**NOTE:** Cases shall be deemed "Related Cases" for purposes E.D.N.Y LBR 1073-1 and E.D.N.Y LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

☐ **NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.**

☑ **THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:**

1. **CASE NO.:** 21-71095 **JUDGE:** Alan S. Trust **DISTRICT/DIVISION:** E.D.N.Y.

**CASE PENDING: (YES/NO):** No [*If closed*] **Date of Closing:** April 15, 2022

**CURRENT STATUS OF RELATED CASE:** Confirmed
**(Discharged/awaiting discharge, confirmed, dismissed, etc.**

**MANNER IN WHICH CASES ARE RELATED:** (*Refer to NOTE above*): Debtor is the same

- **SCHEDULE A/B: PROPERTY "OFFICIAL FORM 106A/B - INDIVIDUAL" PART 1 (REAL PROPERTY):** REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 1" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES: ______

- **SCHEDULE A/B: ASSETS – REAL PROPERTY "OFFICIAL FORM 206A/B - NON-INDIVIDUAL" PART 9 (REAL PROPERTY):** REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 9" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES:
Land, buildings, and improvements affiliated with the property located at 300 E. Overlook, Port Washington, New York 11050

2. **CASE NO.:** ______ **JUDGE:** ______ **DISTRICT/DIVISION:** ______

**CASE PENDING: (YES/NO):** ______ [*If closed*] **Date of Closing:** ______

**CURRENT STATUS OF RELATED CASE:** ______
**(Discharged/awaiting discharge, confirmed, dismissed, etc.**

**MANNER IN WHICH CASES ARE RELATED:** (*Refer to NOTE above*): ______

- **SCHEDULE A/B: PROPERTY "OFFICIAL FORM 106A/B - INDIVIDUAL" PART 1 (REAL PROPERTY):** REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 1" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES: ______

- **SCHEDULE A/B: ASSETS – REAL PROPERTY "OFFICIAL FORM 206A/B - NON-INDIVIDUAL" PART 9 (REAL PROPERTY):** REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 9" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES: ______

[OVER]

**DISCLOSURE OF RELATED CASES (cont'd)**

3. **CASE NO.:** ____________________ **JUDGE:** ____________________ **DISTRICT/DIVISION:** ____________________

**CASE PENDING: (YES/NO):** ___________ **[*If closed*] Date of Closing:** ______________________________

**CURRENT STATUS OF RELATED CASE:** ______________________________________________
**(Discharged/awaiting discharge, confirmed, dismissed, etc.**

**MANNER IN WHICH CASES ARE RELATED:** (*Refer to NOTE above*): ______________________________

- **SCHEDULE A/B: PROPERTY "OFFICIAL FORM 106A/B - INDIVIDUAL" PART 1 (REAL PROPERTY):**
REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 1" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES: ______________________________________________

- **SCHEDULE A/B: ASSETS – REAL PROPERTY "OFFICIAL FORM 206A/B - NON-INDIVIDUAL" PART 9 (REAL PROPERTY):** REAL PROPERTY AS LISTED IN DEBTOR'S SCHEDULE "A/B – PART 9" WHICH WAS ALSO LISTED IN SCHEDULE "A/B" OF RELATED CASES:

______________________________________________

**NOTE: Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.**

**TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:**

**I am admitted to practice in the Eastern District of New York (Y/N):** Yes

**CERTIFICATION (to be signed by pro-se debtor/petitioner or debtor/petitioner's attorney, as applicable):**

**I certify under penalty of perjury that the within bankruptcy case is not related to any case pending or pending at any time, except as indicated elsewhere on this form.**

[signature]
**Signature of Debtor's Attorney**

______________________________
**Signature of Pro-se Debtor/Petitioner**

300 E. Overlook
**Mailing Address of Debtor/Petitioner**

Port Washington, New York 11050
**City, State, Zip Code**

bnavarre@theharborside.org
**Email Address**

(516) 472-6620
**Area Code and Telephone Number**

**Failure to fully and truthfully provide all information required by the E.D.N.Y LBR 1073-2 Statement may subject the debtor or any other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the dismissal of the case with prejudice.**

**NOTE: Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise result.**

**Fill in this information to identify the case:**

Debtor name Amsterdam House Continuing Care Retirement Community, Inc.

United States Bankruptcy Court for the: Eastern District of New York (State)

Case number (if known): ________________________

☐ Check if this is an amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders, On a Consolidated Basis 12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Resident #00069-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,364,633.00 |
| 2 | Resident #00070-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,285,200.00 |
| 3 | Resident #00190-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,248,615.00 |
| 4 | Resident #00309-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,240,359.20 |
| 5 | Resident #00280-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,133,482.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 | Resident #00212-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,116,077.69 |
| 7 | Resident #00030-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,079,094.93 |
| 8 | Resident #00111-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,075,613.00 |
| 9 | Resident #00242-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,061,650.00 |
| 10 | Resident #00126-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,023,779.20 |
| 11 | Resident #00314-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,015,987.20 |
| 12 | Resident #00173-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,003,666.50 |
| 13 | Resident #00141-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $988,631.00 |
| 14 | Resident #00088-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $950,300.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 15 | Resident #00258-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $918,355.30 |
| 16 | Resident #00122-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $904,370.00 |
| 17 | Resident #00145-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $902,116.00 |
| 18 | Resident #00060-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $895,281.00 |
| 19 | Resident #00220-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $883,709.00 |
| 20 | Resident #00144-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $878,138.00 |
| 21 | Resident #00179-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $859,763.25 |
| 22 | Resident #00203-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $853,906.56 |
| 23 | Resident #00034-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $850,712.80 |
| 24 | Resident #00214-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $845,720.33 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 25 | Resident #00200-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $842,959.04 |
| 26 | Resident #00010-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,735.00 |
| 27 | Resident #00036-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,735.00 |
| 28 | Resident #00124-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,224.00 |
| 29 | Resident #00211-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $836,426.70 |
| 30 | Resident 00223-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $835,808.00 |

Fill in this information to identify the case and this filing

Debtor Name Amsterdam House Continuing Care Retirement Community, Inc.

United States Bankruptcy Court for the: Eastern District of New York
(State)

Case number (*If known*): ____________

Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets Real and Personal Property (Official Form 206A/B)*
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☐ *Schedule H: Codebtors (Official Form 206H)*
- ☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ *Amended Schedule* ____________
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☐ *Other document that requires a declaration* ____________

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/22/2023

× /s/
Signature of individual signing on behalf of debtor

Brooke Navarre
Printed name

President & CEO
Position or relationship to debtor

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-_____ (AST) |

**LIST OF EQUITY SECURITY HOLDERS**
**AND CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(3) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following is a list of holders of equity securities of Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and a statement regarding its corporate ownership.

1. The Debtor is a not-for-profit corporation that is exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

2. The Debtor has no outstanding "equity securities" as defined in section 101(6) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), no "equity security holders" as defined in section 101(17) of the Bankruptcy Code, and no equity interests for purposes of Federal Rules of Bankruptcy Procedure 1007 and 7007.1 and Rule 1073-3 of the Local Bankruptcy Rules for the Eastern District of New York; however, Amsterdam Continuing Care Health System, Inc., a New York not-for-profit corporation, is the sole member of the Debtor under the New York Not-for-Profit Corporation Law.

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

Debtor Name Amsterdam House Continuing Care Retirement Community, Inc.

United States Bankruptcy Court for the: Eastern District of New York
(State)

Case number (*If known*): ____________________

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets Real and Personal Property (Official Form 206A/B)*
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☐ *Schedule H: Codebtors (Official Form 206H)*
- ☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ *Amended Schedule* ______________
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☒ *Other document that requires a declaration:* List of Equity Security Holders and Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/22/2023

× /s/
Signature of individual signing on behalf of debtor

Brooke Navarre
Printed name

President & CEO
Position or relationship to debtor

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

Rachel Nanes (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5341
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Email: rachel.nanes@us.dlapiper.com

James P. Muenker (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED NON-PRIMING POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY CLAIMS AND (B) ADEQUATE PROTECTION; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

The debtor and debtor-in-possession in the above-captioned chapter 11 (the "Debtor"), by and through its proposed counsel, DLA Piper LLP (US), hereby submits this emergency motion (this "Motion"), for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

"Interim Order"), and a final order to be filed with the Court (the "Final Order" and together with the Interim Order, the "DIP Orders"): (i) authorizing the Debtor to obtain secured non-priming postpetition financing; (ii) granting (a) liens and superpriority administrative expense claims, and (b) adequate protection; (iii) authorizing use of cash collateral; (iv) modifying the automatic stay; (v) scheduling a final hearing to consider approval of this Motion on a final basis (the "Final Hearing"); and (vi) granting related relief. In support of this Motion, the Debtor relies on the *Declaration of Michael Morton in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), which was filed contemporaneously with this Motion and is incorporated herein by reference. In further support of the Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**[2]

1. The Debtor, d/b/a The Harborside ("The Harborside"), is a New York not-for-profit corporation that built and operates a best-in-class senior living community situated on approximately 8.9 acres in Port Washington, New York. The Harborside offers approximately three hundred twenty-nine (329) units of varying sizes for independent, enriched, and skilled nursing care to residents ("Residents"), providing a continuum of care to a target market of seniors aged sixty-two (62) and older. The Debtor's sole corporate member is Amsterdam Continuing Care Health System, Inc. (the "Member"), which is also a New York not-for-profit corporation.

2. As set forth more fully in the First Day Declaration, the Debtor relies on revenue generated by existing and new Residents to, among other things, maintain its day-to-day operations, service its debt obligations, and honor its Resident refund obligations. However, the Debtor has struggled to attract new Residents at the budgeted pace due in part to a negative stigma resulting from its prior bankruptcy filings in 2014 (the "2014 Chapter 11 Case") and 2021 (the

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to them below.

"2021 Chapter 11 Case"). This has caused a shortfall in liquidity, which has been exacerbated by an occupancy decline resulting from the continuing effect of COVID-19 on the ability to attract new Residents. To address these challenges, the Debtor and its advisors undertook an extensive prepetition marketing process to seek a potential buyer of the Debtor's assets, while simultaneously engaging in discussions with the Debtor's major stakeholders, including the Member and bondholders.

3. This marketing process was successful and the Debtor has identified New England Life Plan Communities Corp. (together with its designee, if any, the "Plan Sponsor") as a potential stalking horse, pursuant to which the Plan Sponsor is prepared (subject to a diligence period and Court approval) to act as the sponsor for a plan of reorganization (the "Proposed Plan") to be filed by the Debtor in this Chapter 11 Case. The Proposed Plan will provide for either (i) the Plan Sponsor to acquire the sole corporate member interest in the reorganized Debtor or, alternatively, substantially all of the Debtor's assets pursuant to a sale under the Proposed Plan and/or sections 363 and 365 of the Bankruptcy Code, subject to an auction process and bidding procedures or (ii) the Plan Sponsor to acquire the sole corporate member interest in the Debtor and all of the Series 2021 Bonds.

4. The Plan Sponsor intends to continue operating The Harborside as a best-in-class senior living community, assume all residency agreements of the Residents (the "Residency Agreements"), and fund state-required, operating, debt service and capital expenditure reserves.

5. In this Chapter 11 Case, the Debtor intends to commence a postpetition marketing and overbid process to find potentially higher and better offers for the sale of its business under section 363 of the Bankruptcy Code, thus maximizing the return to creditors and other parties in interest. To preserve the value of The Harborside during this process and to facilitate a smooth

transition into this Chapter 11 Case, the Member has agreed to provide postpetition financing (in such capacity, the "DIP Lender") to the Debtor of up to nine million dollars ($9,000,000) in accordance with the DIP Term Sheet (as defined below) in exchange for a release of its obligations under the LSA, among other things, as described in detail herein. The Debtor requires postpetition financing to administer this Chapter 11 Case and pay necessary operation and maintenance costs associated with The Harborside. Accordingly, the Debtor requests authority to obtain postpetition financing on the terms set out in the Interim Order, as discussed below.

6. In addition to postpetition financing, the Debtor has a need for use of the cash collateral (as defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral") of UMB Bank, N.A., in its capacity as trustee for the Series 2021 Bonds (the "Bond Trustee"), without which the Debtor would be unable to operate its business during the pendency of this Chapter 11 Case. Access to the Cash Collateral will allow the Debtor to continue its operations, preserve value for the benefit of the estate and pay critical expenses.

7. Without the relief requested herein, the Debtor would be forced to cease operations, which would result in significant harm to the Residents who depend on the Debtor for their living accommodations, continuum of care and necessary services. The DIP Financing and use of Cash Collateral, each on the terms set forth in the Interim Order, are necessary to avoid immediate and irreparable harm to the estate and are in the best interest of the Debtor, its estate, and its stakeholders.

**RELIEF REQUESTED**

8. By this Motion, and pursuant to sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-5 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), the Debtor seeks entry

of an Interim Order, substantially in the form attached hereto as **Exhibit A,** granting, among other things, the following relief:

(a) authorizing the Debtor to obtain postpetition financing (the "DIP Financing") on a senior secured non-priming superpriority basis, consisting of a new money term loan facility (the "DIP Facility") in an aggregate principal amount of up to $9,000,000 pursuant to the terms and conditions set forth in the Interim Order and that certain term sheet annexed thereto as Exhibit 1 (as may be amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Term Sheet"), executed by the Debtor and the DIP Lender (collectively, the "DIP Loan Parties");

(b) approving the terms of and authorizing the Debtor to execute and deliver the DIP Term Sheet and any other agreements, instruments and documents related thereto (the "DIP Loan Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(c) authorizing the Debtor to enter into the DIP Facility and to incur all obligations owing thereunder and under the DIP Loan Documents to the DIP Lender (collectively, the "DIP Obligations"), and granting the DIP Lender the DIP Superpriority Claims, subject to payment of the Carve-Out and the Adequate Protection Superpriority Claim (each as defined below);

(d) authorizing the DIP Loan Parties to perform such other and further acts as may be necessary or desirable in connection with the Interim Order, the DIP Loan Documents, including the DIP Term Sheet, and the transactions contemplated hereby and thereby;

(e) granting to the DIP Lender automatically perfected security interests in, and liens on, all of the DIP Collateral (as defined below) which liens shall be subject to the priorities set forth in the Interim Order;

(f) authorizing and directing the Debtor to use the proceeds of the DIP Facility and Cash Collateral to fund the operational, employee, and other costs of the Debtor, including, without limitation, payments authorized to be made under "first day" or "second day" orders, and payments related to the working capital and other general corporate purposes of the Debtor, including the payment of professional fees and expenses, and in each case, consistent with, subject to, and within the categories and limitations contained in the Approved Budget (as defined in the DIP Term Sheet);

(g) authorizing the Debtor to use the Cash Collateral on an interim basis, and providing, among other things, adequate protection to the Bond Trustee for any diminution of value in the Cash Collateral;

(h) authorizing the DIP Lender to (1) terminate the funding obligations under the DIP Loan Documents in accordance with their terms; (2) declare the DIP Obligations to be immediately due and payable in full, to the extent permitted by the terms thereof; and (3) subject to the Interim Order, be granted relief from the automatic stay to foreclose on the DIP Liens (as defined below); and

(i) scheduling a Final Hearing to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

**SUMMARY OF PRINCIPAL TERMS**[3]

9. The following is a concise statement of the relief requested as required by Bankruptcy Rules 4001(b) and (c), Local Rule 4001-5, and Administrative Order No. 558 of the United States Bankruptcy Court for the Eastern District of New York dated April 15, 2010 ("Order 558").

10. The material terms of the use of Cash Collateral are as follows:

| Required Disclosure | Summary of Material Terms of Cash Collateral Use | Location |
|---|---|---|
| **Amount of Cash Collateral Debtor Seeks to Use**<br><br>*Local Rule 4001-5(a)(i)*<br><br>*Order 558, ¶1(a)* | All Cash Collateral in the Debtor's accounts as of the Petition Date, plus any postpetition Cash Collateral generated by the Debtor. | Interim Order, ¶ 2.5(a) |
| **Parties with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | UMB Bank, N.A. | Interim Order, ¶ F.(i) |
| **Purposes of the Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Cash Collateral shall be used for the necessary operations and maintenance costs associated with The Harborside. | Interim Order, ¶ F.(ii) |

[3] Capitalized terms used in this summary but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Term Sheet or Interim Order, as applicable. This statement is qualified in its entirety by reference to the applicable provisions of the DIP Term Sheet or DIP Orders. To the extent of any inconsistency between this concise statement and the provisions of the DIP Term Sheet or DIP Orders, the provisions of the DIP Term Sheet or DIP Orders, as applicable, shall control.

| | | |
|---|---|---|
| **Material Terms of the Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Subject to the terms and conditions of the Interim Order and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtor seeks authority to use Cash Collateral on an interim basis until the earlier of (i) the Final Hearing, and (ii) the date on which the Bond Trustee obtains an order of Court directing termination of the Debtor's use of the Cash Collateral. | Interim Order, ¶ 2.5(a) |
| **Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)* | Solely to the extent that the Debtor is permitted to use the Cash Collateral, then the Bond Trustee shall be granted customary superpriority claims that are senior to the DIP Superpriority Claims to the extent of any diminution in value of the Cash Collateral.<br><br>Such adequate protection, under the Interim Order, shall include, without limitation: (i) the Replacement Liens; and (ii) the Adequate Protection Superpriority Claim (each as defined in the Interim Order). | Interim Order, ¶ ¶ 2.5(b) and (c) |

11. The material terms of the proposed postpetition financing, as set forth more fully in the DIP Term Sheet, are as follows:

| **Required Disclosure** | **Summary of Material Terms of Postpetition Financing** | **Location** |
|---|---|---|
| **Borrower**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | Amsterdam House Continuing Care Retirement Community, Inc., a New York not-for-profit corporation that operates as a continuing care retirement community (the "**Debtor**"). | DIP Term Sheet, p.1 |
| **Lender**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | Amsterdam Continuing Care Health System, Inc., a New York not-for-profit organization (the "**DIP Lender**"). | DIP Term Sheet, p.1 |
| **Borrowing Limit**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Order 558, ¶1(a)* | Up to $9.0 million in debtor-in-possession financing (the "**DIP Financing**") in the form of advances under a term loan facility (collectively, the "**DIP Facility**"), to be funded as set forth below under the headings "Borrowing Conditions" and "Draw Procedures".<br><br>All of the Debtor's obligations to the DIP Lender arising under or related to the DIP Facility shall be referred to herein as the "**DIP Obligations**". | DIP Term Sheet, p.1 |
| **Borrowing Conditions**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-5(a)(ii)*<br><br>*Order 558, ¶1(b)* | Any advances under the DIP Facility shall be conditioned upon entry of a final and non-appealable order of the Court (as defined below) approving the DIP Financing in form and substance acceptable to DIP Lender in its sole discretion (the "**Final Order**"), provided, however, that up to $4.8 million will be advanced on an interim basis upon entry of an interim order of the Court approving the DIP Financing in form and substance acceptable to DIP Lender in its sole discretion (the "**Interim Order**" and together with the Final Order, the "**DIP Orders**"). The DIP Orders each shall include, among other things, (i) approval of the Debtor's waiver and release in favor of the DIP Lender with respect to obligations arising under or related to that certain Liquidity Support Agreement between Borrower and DIP Lender dated as of June 14, 2021 (the "**LSA**") up to the total amount advanced to the Debtor under the DIP Financing on a "dollar for dollar" basis, and (ii) a determination that the LSA shall be deemed terminated and of no further force and effect upon | DIP Term Sheet, p.1 |

| | | |
|---|---|---|
| | the DIP Lender's funding of the full amount of the DIP Financing, which shall be binding on all third parties including a Committee or trustee. | |
| **Draw Procedure** | The DIP Financing shall be made available for purposes set forth below under the heading "Use of DIP Proceeds" and funded as follows: (i) in the principal amount of $2 million on the first business day following entry of the Interim Order (the "**Initial Draw**"), (2) subsequent draws up to an additional aggregate principal amount of $2.8 million pursuant the Interim Order, and (3) subsequent draws in an additional aggregate principal amount of $4.2 million following the entry of the Final Order (each such draw after the Initial Draw, a "**Subsequent Draw**" and together with the Initial Draw, collectively the "**Draws**").<br><br>Requests for Draws by the Debtor shall be honored by the DIP Lender in accordance with the following procedures:<br><br>a. *Written Request.* Other than with respect to the Initial Draw, the Debtor shall have delivered to the DIP Lender a written request for a Draw at least two (2) business days prior to the date that the Draw will be transferred to the Debtor. The request shall (i) specify the amount of the Draw, (ii) state the date that the Draw is requested, (iii) provide wiring instructions for the Draw; (iv) certify the Draw is consistent with the categories, amounts and timing of the Approved Budget, and (v) certify that all conditions set forth above with respect to the Draw is and will be satisfied as of the date of the request and the date of Draw.<br><br>b. *Amount.* All Draws shall be either in the amount of $500,000 or in multiples of $500,000 unless the remaining availability under the DIP Facility is less than such amounts, in which case the Draw may equal the amount of the remaining availability under the DIP Facility. | DIP Term Sheet, p.1 |
| **Use of DIP Proceeds**<br><br>*Bankruptcy Rules 4001(b)(1)(B)(ii) and (c)(1)(B)* | Proceeds of the DIP Financing shall be used exclusively, consistent with an Approved Budget (as defined below) to: (i) pay Allowed Professional Fees (as defined below), (ii) fund ordinary course operational expenses of the Debtor, (iii) fund the Carve-Out (as defined below), and (iv) pay costs, fees and expenses of DIP Lender as set forth herein. | Interim Order, ¶¶F(iv); 1.2; |
| **Approved Budget** | An "**Approved Budget**" shall mean: the initial budget attached to the Interim Order as Exhibit 2 or any subsequent version thereof that is proposed by the Debtor and agreed to in writing by DIP Lender.<br><br>The Approved Budget shall be updated prior to the Final Hearing and shall show projected expenditures by the Debtor on a line-item basis (the "**Projected Expenditures**") for a period of not less than 13 weeks, and shall be further updated from time to time not less than every four weeks. The Approved Budget shall also show projected receipts by the Debtor on a line-item basis ("**Projected Receipts**") for the same periods. | Interim Order, ¶ 1.2 |
| **Milestones**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(vi)* | The Debtor shall comply with following deadlines ("**Milestones**"), unless otherwise waived by DIP Lender in its sole discretion:<br><br>(a) the Debtor shall commence a chapter 11 case (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the | Interim Order, ¶5.5; DIP Term Sheet, p.3 |

| | | |
|---|---|---|
| *Local Rule 4001-5(a)(xii)*<br><br>*Order 558, ¶1(k)* | Eastern District of New York (the "**Court**") or before March 22, 2023 (the date of such filing, the "**Petition Date**");<br><br>(b) the Court shall have entered the Interim Order, in a form and substance acceptable to DIP Lender in its sole discretion, no later than five (5) days after the Petition Date;<br><br>(c) the Court shall have entered the Final Order, in form and substance acceptable to DIP Lender in its sole discretion, no later than thirty (30) days after the Petition Date;<br><br>(d) any auction of the Debtor's assets and determination of the proposed successful bidder for such assets shall be completed by no later than June 30, 2023;<br><br>(e) the Debtor shall file a Chapter 11 Plan, in form and substance acceptable to DIP Lender in its sole discretion (an "**Acceptable Plan**"), no later than August 1, 2023;<br><br>(f) the Court shall have entered an order confirming such Acceptable Plan no later than October 1, 2023; and<br><br>(g) the effective date of an Acceptable Plan shall have occurred by no later than November 30, 2023. | |
| **Forgiveness Conditions** | Upon the closing of a Sale (as defined below), the DIP Obligations (other than Debtor's indemnification obligations as described herein) shall be forgiven by DIP Lender provided that no Event of Default has occurred.<br><br>A "**Sale**" shall mean the closing of a transaction providing for the sale of substantially all of the assets of the CCRC Facility (as defined below), or the sale of the equity/membership interests of the Debtor (or similar "affiliation transaction"), each pursuant to section 363 of the Bankruptcy Code in form and substance acceptable to DIP Lender in its sole discretion or pursuant to an Acceptable Plan. | Interim Order, ¶5.9 |
| **Interest Rate**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-5(a)(iii)*<br><br>*Order 558, ¶1(c)* | 8% per annum, plus additional 2% per annum during any period following an Event of Default (as defined below). Such amounts shall accrue during the term of DIP Facility but shall not be payable until the maturity of the DIP Facility. For the avoidance of doubt, DIP Lender shall be under no further obligation to make advances under the DIP Facility following an Event of Default. | Interim Order, ¶5.2; DIP Term Sheet, p. 4 |
| **Maturity Date**<br><br>*Bankruptcy Rules 4001(b)(1)(B)(ii) and (c)(1)(B)* | The earlier of (i) November 30, 2023 or (ii) the occurrence of an Event of Default (as defined below). | Interim Order, ¶5.6 |
| **Events of Default**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | As used herein, an "**Event of Default**" shall mean the occurrence of any of the following events, unless waived in writing by DIP Lender in its sole and absolute discretion: | Interim Order, ¶3.1; DIP Term Sheet p. 4 |

| | | | |
|---|---|---|---|
| *Local Rule 4001-5(a)(x)*<br><br>*Order 558, ¶1(i)* | (i) | any claim or cause of action is asserted against any DIP Lender Protected Parties (as defined below) related to the LSA or by the Debtor; | |
| | (ii) | the Debtor's continuing care retirement community currently known as The Harborside (the "**<u>CCRC Facility</u>**") shall cease operation as a continuing care retirement community; | |
| | (iii) | the Debtor shall fail to comply with any of the Milestones; | |
| | (iv) | the Debtor shall use any proceeds of the DIP Financing for items not reflected in the Approved Budget; | |
| | (v) | the total of the Debtor's expenditures after the Petition Date during any rolling two week period (the "**<u>Measuring Period</u>**") exceeds the total Projected Expenditures for the same period under the Approved Budget (as updated from time to time) by more than ten percent (10%) (the "**<u>Expenditure Variance</u>**"); | |
| | (vi) | the total of the Debtor's receipts after the Petition Date during any Measuring Period is less than the total Projected Receipts for the same period under the Approved Budget (as updated from time to time) by more than twenty percent (20%) (the "**<u>Receipt Variance</u>**" and together with the Expenditure Variance, the "**<u>Permitted Variances</u>**"); | |
| | (vii) | the Debtor's Chapter 11 Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise, or seeking the conversion of any its Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, without payment in full of all DIP Obligations and immediate termination of any further obligations of the DIP Lender to made advances under the DIP Financing; | |
| | (viii) | a trustee, interim receiver, receiver or manager shall be appointed in the Debtor's Chapter 11 Case, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104(b) of the Bankruptcy Code shall be appointed in the Debtor's Chapter 11 Case; | |
| | (ix) | any order of the Court shall be entered reversing, amending, supplementing, staying, vacating or otherwise amending, supplementing or modifying the Final Order or the Debtor shall apply for the authority to do so, in each case in a manner that is adverse in any respect to DIP Lender, without the prior written consent of the DIP Lender; | |
| | (x) | the Final Order shall cease to be in full force and effect; | |

| | | |
|---|---|---|
| | (xi) the Debtor shall fail to comply with the Final Order in any material respect;<br><br>(xii) the entry of an order in the Debtor's Chapter 11 Case with respect to the Debtor seeking to obtain financing pursuant to section 364 of the Bankruptcy Code (other than the DIP Financing);<br><br>(xiii) an order of the Court shall be entered avoiding or permitting recovery of any portion of the payments made on account of the DIP Obligations;<br><br>(xiv) an application shall be filed by the Debtor for the approval of, or an order of the Court shall be entered granting, any other liens in the Debtor's Chapter 11 Case that are *pari passu* with or senior to the DIP Liens on the DIP Collateral, other than the Carve-Out, the Bond Trustee Adequate Protection and the Prior Senior Liens (as defined below);<br><br>(xv) any claims (as such word is defined in the Bankruptcy Code) senior to or *pari passu* with the DIP Superpriority Claims (as defined below), other than the Carve-Out and the Bond Trustee Adequate Protection;<br><br>(xvi) the Debtor makes any payments of principal or interest or otherwise on account of any pre-petition claims other than payments authorized by the Approved Budget and/or the Court in respect of "first day orders" or other orders entered upon pleadings in form and substance reasonably satisfactory to DIP Lender;<br><br>(xvii) the Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any creditor or party in interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtor that has an aggregate value in excess of $250,000;<br><br>(xviii) an order shall be entered by the Court terminating any of the Debtor's exclusive periods for proposing a Chapter 11 plan;<br><br>(xix) an order shall be entered by the Court confirming a Chapter 11 plan other than an Acceptable Plan;<br><br>(xx) any interest of the DIP Lender in the DIP Collateral shall be subject to surcharge under section 506(c) of the Bankruptcy Code or otherwise; or<br><br>(xxi) the Debtor shall file or support any pleading seeking relief the grant of which would give rise to an Event of Default. | |
| **Costs, Fees and Expenses** | The Debtor shall satisfy in cash all reasonable and documented out-of-pocket costs, fees and expenses incurred by DIP Lender in connection with the DIP Financing (including without limitation professional fees | Interim Order, ¶6.7 |

| | | |
|---|---|---|
| *Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-5(a)(iii)*<br><br>*Order 558, ¶1(c)* | and expenses). Such costs, fees and expenses shall be paid from the proceeds of the DIP Financing without the need for approval of the Court. | |
| **Collateral; Liens on Avoidance Actions**<br><br>*Bankruptcy Rules 4001(c)(1)(B) and 4001(c)(1)(B)(xi)*<br><br>*Local Rule 4001-5(a)(iv)*<br><br>*Order 558, ¶1(a)* | As security for repayment of the DIP Obligations, DIP Lender shall be granted liens (the "**DIP Liens**") on all of Debtor's property, wherever located (collectively, the "**DIP Collateral**"), including without limitation any proceeds of claims or causes of action of the Debtor pursuant to sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code ("**Avoidance Actions**") and any proceeds of any of the DIP Collateral.<br><br>The DIP Liens shall be immediately junior in priority with respect to any DIP Collateral that is subject to any valid, perfected and non-avoidable liens existing as of the Petition Date (the "**Prior Senior Liens**"), and otherwise shall be a first priority senior lien with respect to any other DIP Collateral.<br><br>For the avoidance of doubt, the Prior Senior Liens shall include any valid, perfected and non-avoidable liens existing as of the Petition Date that secure any claims arising under the Continuing Care Retirement Community Taxable Revenue Bonds (Amsterdam at Harborside Project), Series 2021A (the "**Series 2021A Bonds**") and the Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (the "**Series 2021B Bonds**," and together with the Series 2021A Bonds, the "**Series 2021 Bonds**"). Furthermore, solely to the extent that the Debtor is permitted to use the cash collateral (the "**Bond Trustee Cash Collateral**") of UMB Bank, N.A., in its capacity as trustee for the Series 2021 Bonds (the "**Bond Trustee**"), then the Bond Trustee shall be granted customary replacement liens to the extent of any diminution in the value of the Bond Trustee Cash Collateral with the same priority and scope as the prepetition liens securing the Series 2021 Bonds (which for the avoidance of doubt are senior to the DIP Liens), subject to the Carve-Out (the "**Bond Trustee Adequate Protection Liens**").<br><br>For the avoidance of doubt, the DIP Liens shall be a first priority senior lien with respect to the proceeds of any Avoidance Actions.<br><br>Notwithstanding the foregoing or anything else contained herein, the DIP Liens and the Bond Trustee Adequate Protection Liens shall be subject to the Carve-Out (as defined below). | Interim Order, ¶2.1 |

| | | |
|---|---|---|
| **Superpriority Claims**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(i)* | Subject to the Carve-Out (as defined below), each of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim) with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims (the "**Administrative Expense Claims**") arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code (including adequate protection payments), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "**DIP Superpriority Claims**"). The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post- petition property of the Debtor and all proceeds thereof (including Avoidance Actions and any proceeds or property recovered, unencumbered, or otherwise, from Avoidance Actions, whether by judgment, settlement, or otherwise), subject only to the Carve-Out (as defined below). The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code if any order approving the DIP Financing or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.<br><br>Notwithstanding the foregoing, solely to the extent that the Debtor is permitted to use the Bond Trustee Cash Collateral, then the Bond Trustee shall be granted customary adequate protection claims that are senior to the DIP Superpriority Claims to the extent of any diminution in the value of the Bond Trustee Cash Collateral (the "**Bond Trustee Adequate Protection Claims**" and, together with the Bond Trustee Adequate Protection Liens, the "**Bond Trustee Adequate Protection**"). | Interim Order, ¶2.2 |
| **Carve-Out**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-5(a)(v)*<br><br>*Order 558, ¶1(e)* | The "**Carve-Out**" means the sum of<br><br>(i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below);<br><br>(ii) all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below);<br><br>(iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**" and such fees the "**Allowed Debtor Professional Fees**") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined | Interim Order, ¶2.3 |

| | | |
|---|---|---|
| | herein) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice;<br><br>(iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) incurred by persons or firms retained by any official committee of unsecured creditors duly appointed in the Debtor's case (the "**<u>Committee</u>**") pursuant to section 328 or 1103 of the Bankruptcy Code (the "**<u>Committee Professionals</u>**" and such fees the "**<u>Allowed Committee Professional Fees</u>**" and together with the Allowed Debtor Professional Fees, the "**<u>Allowed Professional Fees</u>**") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined herein) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice;<br><br>(v) Allowed Debtor Professional Fees incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $500,000; and<br><br>(vi) Allowed Committee Professional Fees incurred after the first business day following delivery by DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $25,000 (the amounts set forth in clauses (v and vi) being the "**<u>Post Carve-Out Trigger Notice Cap</u>**").<br><br>The DIP Orders shall provide that the Debtor is authorized to establish customary escrow(s) for the Carve-Out.<br><br>For purposes of the foregoing, "**<u>Carve-Out Trigger Notice</u>**" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor (with the Debtor to promptly provide a copy of such notice to counsel to the Committee (if any), the United States Trustee and counsel to any holder of Prior Senior Liens) (collectively, the "**<u>Notice Parties</u>**"), which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve-Out Trigger Notice Cap has been invoked. | |
| **Section 506(c) Waiver**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(x)* | The Debtor shall waive any right to surcharge the DIP Lender's interest in the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code. | Interim Order, ¶4.2 |
| **Waivers / Modification of Automatic Stay**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(iv)* | The automatic stay provisions of Bankruptcy Code section 362 or otherwise are vacated and modified to the extent necessary to permit the DIP Lender to exercise:<br><br>(i) immediately upon the Maturity Date, all rights and remedies under the Final Order; and | Interim Order, ¶3.4 |

| | | |
|---|---|---|
| | (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five (5) business days' prior written notice to the Debtor (with the Debtor to promptly provide a copy to the other Notice Parties) (the "**Remedies Notice Period**"), all rights and remedies against the DIP Collateral provided for in the Final Order, provided that, upon the receipt of any such notice, the Debtor may only make disbursements to (i) fund payment of the Carve-Out as provided in the Final Order; (ii) to pay costs, fees and expenses of the DIP Lender as set forth herein; and (iii) to pay any other amounts necessary to avoid immediate and irreparable harm (and solely to the extent provided in the Approved Budget), and may not disburse any other amounts. During the Remedies Notice Period, the Debtor, the Committee and/or any other party in interest shall be entitled to seek an emergency hearing with the Court with respect to any remedies sought to be exercised by the DIP Lender.<br><br>In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The delay or failure to exercise rights and remedies under the Final Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Final Order.<br><br>To the extent not otherwise provided, the automatic stay imposed under section 362(a)(2) of the Bankruptcy Code shall be modified pursuant to the Final Order as necessary for the relevant parties to effectuate all of the terms and provisions of the Final Order. | |
| **Releases**<br><br>*Bankruptcy Rule 4001(c)(1)(B) (viii)* | The Debtor shall grant DIP Lender and each of its Related Parties (collectively, "**DIP Lender Protected Parties**") a release of all claims and causes of action of any kind related to the Debtor arising at any time through and including the Petition Date, provided that such release shall not include any claims or causes of action against a DIP Lender Protected Party arising from such DIP Lender Protected Party's gross negligence, fraud or willful misconduct.<br><br>"**Related Parties**" shall mean each of the DIP Lender's affiliated entities including each of its subsidiaries, and each such entities' directors, officers, members, managers, agents, employees, accountants and attorneys, including each of their third-party professionals. | Interim Order, ¶5.7 |
| **Indemnification**<br><br>*Bankruptcy Rule 4001(c)(1)(B) (ix)* | The Debtor shall indemnify and hold harmless the DIP Lender Protected Parties from and against any and all losses, claims, damages, liabilities and related expenses of any kind (collectively, "**Losses**") arising out of or in connection with any claims or causes of action of any kind related to the Debtor arising at any time before, on or after the Petition Date, provided that such indemnification shall not include any Losses of a DIP Lender Protected Party arising out of or in connection with such DIP Lender Protected Party's gross negligence, fraud or willful misconduct. | Interim Order, ¶5.8 |

**JURISDICTION AND VENUE**

12. The United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this chapter 11 case (the "Chapter 11 Case"), the Debtor, its estate, and this Motion, under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

13. The Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

14. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, and 507(b) of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-5.

**BACKGROUND**

16. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.

17. The Debtor continues to be in possession of its assets and to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

18. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors have been appointed in the Chapter 11 Case.

19. Additional factual background regarding the Debtor, including its business operations, capital and debt structures, and the events leading to the filing of this Chapter 11 Case is set forth in detail in the First Day Declaration.

**A. The Debtor's Capital Structure**

**i. Bond Debt**

20. In connection with the plan of reorganization in the 2021 Chapter 11 Case (the "2021 Plan"),[4] the Debtor restructured its bond debt through new money bond financing (the "Series 2021A Bonds") and the exchange of its existing Series A bonds and Series B bonds for new Series 2021B Bonds (the Series 2021A Bonds and Series 2021B Bonds are together referred to as the "Series 2021 Bonds"), issued by the Nassau County Industrial Development Agency (in such capacity, the "2021 Issuer"). Specifically, certain holders of Series 2014 Bonds issued pursuant to the 2014 Chapter 11 Case purchased $40,710,000 in Series 2021A Bonds, which bear interest at 9% per annum and mature on January 1, 2041. Interest on the Series 2021A Bonds is payable semiannually on each January 1 and July 1. The principal amount of the Series 2021A Bonds is subject to mandatory sinking fund installments commencing January 1, 2027. The Series 2021A Bonds are subject to optional redemption at par on or after October 1, 2031 (the "Par Call Date") and optional redemption at a make-whole redemption price from year 5 to the Par Call Date. The Series 2021A Bonds are secured by a first priority lien on all assets of the Debtor, except those held under the Liquidity Support Agreement, dated as of June 14, 2021, between the Debtor and the Member (the "LSA"), a copy of which is attached hereto as **Exhibit B**.

21. Additionally, in connection with the 2021 Plan, the Series 2014 Bonds were exchanged for new Series 2021B Bonds in the aggregate principal amount of $127,327,200. The Series 2021B Bonds are subordinate in payment and security to the Series 2021A Bonds. The Series 2021B Bonds bear interest at (i) 5.00% per annum, provided that upon the earliest of (x) the incurrence of indebtedness by the Reorganized Debtor, the Sponsor or any affiliate thereof for

[4] Capitalized terms used but not defined in this section are defined as in the 2021 Plan.

Phase II, (y) twenty years after the Effective Date, and (z) the date on which the Reorganized Debtor has 150 days' cash on hand in excess of the MLRR, the interest rate on the Series 2021B Bonds shall increase to 5.25% per annum. Principal on the Series 2021B Bonds will amortize commencing January 1, 2042, as set forth in the Bond Documents (as defined below). The Series 2021B Bonds will not be subject to optional redemption prior to October 1, 2026. The Series 2021B Bonds are subject to optional redemption at the following prices:

| **Redemption Date** | **Redemption Price (%)** |
|---|---|
| October 1, 2026 – September 30, 2027 | 107 |
| October 1, 2027 – September 30, 2028 | 106 |
| October 1, 2028 – September 30, 2029 | 105 |
| October 1, 2029 – September 30, 2030 | 105 |
| October 1, 2030 – September 30, 2031 | 105 |
| October 1, 2031 – September 30, 2032 | 105 |
| October 1, 2032 – September 30, 2033 | 105 |
| October 1, 2033 – September 30, 2034 | 104 |
| October 1, 2034 – September 30, 2035 | 103 |
| October 1, 2035 – September 30, 2036 | 102 |
| October 1, 2036 – September 30, 2037 | 101 |
| October 1, 2037 and thereafter | 100 |

22. Contemporaneously with entry into that certain Indenture of Trust by and between the 2021 Issuer and the Bond Trustee (the "2021 Indenture"), the Debtor entered into that certain Installment Sale Agreement, dated as of September 21, 2021, with the 2021 Issuer (the "Installment Sale Agreement"), which provides for, among other things, payment of an installment purchase price for the acquisition of the facility by the Debtor.

23. The 2021 Indenture established various funds to be held by the Bond Trustee, including a Bond Fund, a Project Fund, a Rebate Fund, a Revenue Fund, a Debt Service Reserve Fund, an Operating Reserve Fund, and an Entrance Fee Fund (as each term is defined in the 2021 Indenture).

24. The Debtor has granted the Bond Trustee a mortgage and other liens on certain real and personal property pursuant to a Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of September 8, 2021 (the "Mortgage" and, together with the 2021 Indenture, the Installment Sale Agreement, and any other document or agreement delivered as security for, or in respect to, the Series 2021 Bonds or the Debtor's obligations under any of such documents, collectively, the "Bond Documents"). Under the 2021 Bond Documents, and subject only to the lien on the Debtor's real property securing the Debtor's obligations under that certain Payment in Lieu of Taxes Agreement, dated as of December 1, 2007, between the Debtor and the 2014 Issuer, as amended pursuant to that certain First Amendment to Payment in Lieu of Taxes Agreement dated as of June 1, 2014 between the 2014 Issuer and the Debtor, and as ratified by the Debtor in connection with the issuance of the Series 2021 Bonds pursuant to that certain Ratification dated September 8, 2021, the Bond Trustee holds first priority liens and security interests in substantially all of the Debtor's real and personal property as security for its obligations associated with the Series 2021 Bonds (the "Prepetition Bond Collateral").

25. As of the Petition Date, approximately $40,710,000 of the Series 2021A Bonds and $127,327,200 of the Series 2021B Bonds remains outstanding.

**ii. Unsecured Debt**

26. In addition to holders of Series 2021 Bonds, the Debtor's primary creditor group consists of general unsecured creditors, who are owed approximately $135.3 million as of the Petition Date. This group includes trade creditors and Residents who, pursuant to their Residency Agreements, are owed a refund of the entrance fees paid to the Debtor (the "Entrance Fee Refunds"). As of the Petition Date, the Debtor estimates that it owes approximately $3.5 million to Residents on account of Entrance Fee Refunds. The Debtor also has contingent liabilities to Residents in the amount of approximately $129.6 million, on account of Residents' Entrance Fee

Refunds that have not yet been triggered under Residency Agreement. Additionally, the Debtor owes approximately $2.5 million to trade creditors, which is largely due to the timing of the filing of this Chapter 11 Case.

**iii. Liquidity Support Agreement**

27. In connection with the 2021 Chapter 11 Case, the Debtor and the Member entered into the LSA. Pursuant to the LSA, the Member agreed, subject to certain conditions, to fund up to $9 million from the proceeds of the sale of substantially all of the assets of Amsterdam Nursing Home Corporation (1992) ("ANH") into a "Liquidity Reserve Account" to enable the Debtor to comply with "Regulatory Requirements" (as those terms are defined in the LSA and the 2021 Plan, respectively).

28. As of the Petition Date, the sale of ANH has not closed and, therefore, the conditions precedent to the Member's obligation to provide funds under the LSA have not been triggered.

29. As set forth herein, the Member has agreed to provide the DIP Financing up to $9 million (the amount of the Member's contingent obligation under the LSA) on the terms described herein, including a release of Member's obligations under the LSA.

**B. The Debtor-in-Possession Financing**

30. After carefully exploring and exhausting virtually all possibilities, the Debtor has determined, with the advice of its professional advisors, that it is necessary for it to obtain the proposed DIP Financing to administer this Chapter 11 Case and make payment of necessary operation and maintenance costs associated with The Harborside. The necessary payments include payments to allow the Debtor to continue to provide, among other services, high-quality nursing care and enriched housing services to Residents during this Chapter 11 Case, as well as payments for the benefit of the Debtor's employees, vendors, and other stakeholders. While the Debtor

anticipates having a certain amount of cash on hand during the Chapter 11 Case, it is unlikely that the Debtor will attract new Residents to The Harborside and generate significant revenue during the pendency of this case. The DIP Financing will ensure the Debtor's ability to make the numerous and time-sensitive payments necessary to operate in the ordinary course of business. The DIP Financing is also necessary to provide a positive message to the market that this Chapter 11 Case is sufficiently funded, which is critical to address any concerns raised by Residents, employees, and vendors. Thus, the DIP Financing and the use of Cash Collateral are necessary to avoid immediate and irreparable harm to the Debtor and the Residents and are crucial to the Debtor's efforts to maximize and preserve value for its stakeholders.

31. The DIP Lender and the Debtor, through their respective counsel and business representatives, heavily negotiated the DIP Term Sheet, a copy of which attached as Exhibit 1 to the Interim Order. Under the DIP Term Sheet, the DIP Facility is a new money term loan facility in an aggregate principal amount of up to $9,000,000 pursuant to the terms and conditions set forth in the Interim Order and the DIP Term Sheet. The proceeds of the DIP Facility will be used to pay operating expenses of The Harborside and the costs and expenses of administering this Chapter 11 Case, subject to and in accordance with the Approved Budget.

32. As collateral for the DIP Facility, the Debtor will grant the DIP Liens on the DIP Collateral, including without limitation any proceeds of claims or causes of action of the Debtor pursuant to sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code. The DIP Liens shall be immediately <u>junior</u> in priority with respect to any DIP Collateral that is Prepetition Bond Collateral, and otherwise shall be a first priority <u>senior</u> lien with respect to any <u>other</u> DIP Collateral.

33. The DIP Collateral shall include a first priority lien in the Debtor's rights and assets pursuant to the LSA. Pursuant to the 2021 Plan, the Debtor granted the Bond Trustee a "first priority lien on all assets of the Debtor, except the LSA." The DIP Lender will also be released with respect to obligations arising under the LSA up to the total amount advanced to the Debtor under the DIP Financing on a "dollar for dollar" basis.

34. The DIP Facility will bear interest at a rate of 8% per annum, plus additional 2% per annum during any period following an Event of Default.

35. The Debtor has been unable to obtain financing on better terms than those offered by the DIP Lender. Following market research and the advice of its advisors, the Debtor concluded that it would not be able to obtain financing on terms more favorable than those of the DIP Financing. Moreover, the proposed DIP Financing serves as an important component of the Debtor's overall chapter 11 efforts, providing the stability of adequate liquidity to pay the necessary operating expenses of The Harborside and consummate a sale of its assets in an expeditious manner.

**II. The Debtor's Need for Use of Cash Collateral.**

36. Use of the Cash Collateral is critical to the Debtor's ability to fund its postpetition operations in a manner that will permit the Debtor to continue to provide, among other services, high-quality nursing care and enriched housing services. Without access to the Cash Collateral, the Debtor, and the Residents, will suffer immediate and irreparable harm, as the Debtor will be unable to provide for the safety or care of its Residents or obtain goods and services needed to carry on its operations during this Chapter 11 Case.

**III. The Bond Trustee's Consent to the Debtor's Use of Cash Collateral.**

37. As of the filing of this Motion, the Debtor and the Bond Trustee continue to hold discussions regarding the terms and conditions under which the Bond Trustee may consent to the Debtor's use of its Cash Collateral. In the absence of the Bond Trustee's consent, the Court should authorize the Debtor's use of the Cash Collateral on the terms proposed herein.

**BASIS FOR RELIEF**

**I. The Debtor is Authorized to Procure the DIP Financing Under Section 364 of the Bankruptcy Code.**

38. As set forth above, the Debtor's ability to maximize the value of its estate and successfully reorganize through a sale of substantially all of its assets hinges upon its access postpetition financing. Thus, the Debtor proposes to obtain financing under the proposed DIP Financing by providing the DIP Lender with the security interest in the DIP Collateral, as set forth above, pursuant to sections 364(c) of the Bankruptcy Code.

39. Section 364 of the Bankruptcy Code generally permits debtors to obtain credit or incur debt by either: (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, or (c) obtaining credit with specialized priority or on a secured basis. *See* 11 U.S.C. § 364(a)-(c). The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that a debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. 11 U.S.C. § 364(c); *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 583 (S.D.N.Y. 2001) (holding that superpriority administrative expense was authorized where debtor could not obtain credit as an administrative expense); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that debtor must show that it made reasonable efforts to seek other sources of financing under § 364(a)-(b)).

### *1. The DIP Financing Represents the Best Financing Available*

40. A debtor seeking financing under section 364(c) of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit but is granted deference in acting in accordance with its business judgment and, indeed, is not required to seek credit from every possible source. *See, e.g., In re Ames*, 115 B.R. at 40 (approving financing facility and holding that debtor made reasonable efforts to satisfy the standards of section 364(c) to obtain less onerous terms where debtor approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders); *Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (holding that secured credit under section 364(c)(2) was authorized, after notice and a hearing, upon showing that unsecured credit was unobtainable); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (holding that bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met).

41. The Debtor, together with its advisors, evaluated alternative sources of postpetition financing to determine what options would be available. Despite reasonable efforts, the Debtor was unable to find any other lender willing to provide debtor-in-possession financing on terms better than those offered by the DIP Lender. The Debtor does not believe it can continue to provide

necessary care and services to its Residents, or adequately protect, preserve, and maximize the value of its estate without access to postpetition financing. The Debtor is unable to obtain the postpetition financing that it needs on terms more favorable than those provided by the DIP Financing. Accordingly, the Debtor's efforts to obtain postpetition financing satisfy the statutory requirements of section 364(c) of the Bankruptcy Code.

***2. Entry into the DIP Facility Is an Exercise of the Debtor's Sound Business Judgment***

42. A debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See In re Ames*, 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment"); *In re Barbara K. Enters., Inc.*, No. 08-11474 (MG), 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (stating that a bankruptcy court's "normal function in reviewing requests for postpetition financing is to defer to a debtor's own business judgment so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest.") (citation omitted); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivable facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment . . . [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors").

43. Bankruptcy courts will not challenge a debtor's decisions concerning the operation of its business when those decisions reflect a "good faith business judgment, [are] made on a reasonable basis, and [are] 'within the scope of [the trustee's] authority under the Code.'" *In re Taub*, 441 B.R. 211, 216 (Bankr. E.D.N.Y. 2010) (quotation marks and citation omitted); *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing.") (citations omitted). Further, as one court has noted, "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

44. Here, the Debtor's determination to obtain the DIP Financing represents an appropriate exercise of its sound business judgment and should be approved. The DIP Financing is essential to enable the Debtor to continue to operate during the course of this Chapter 11 Case and is in the best interest of the Debtor's estate, creditors and the Residents. Indeed, failure to obtain approval of the DIP Financing would lead to a wind-down of the Debtor's business operations which, in turn, threatens imminent and irreparable harm to the Residents and will adversely affect the value ultimately received by stakeholders. Accordingly, pursuant to subsections 364(c) of the Bankruptcy Code, the Debtor respectfully submits that it should be granted authority to obtain financing from the DIP Lender on the terms set forth in the DIP Term Sheet.

***3. The DIP Financing Is Necessary to Preserve Value***

45. As discussed above, the DIP Financing, if approved, will provide the necessary liquidity to administer this Chapter 11 Case and conduct a postpetition marketing and overbid process to find potentially higher and better offers for the sale of The Harborside. Additionally, the proceeds of the DIP Facility will provide essential working capital, allowing the Debtor, in addition to being able to provide necessary continued care and services to Residents, to maintain the value of its assets and its ongoing business operations while working toward a successful sale. Further, the DIP Financing will provide the Debtor's various constituencies, including Residents, employees, vendors, and service providers, with confidence in the Debtor's ability to maintain operations while in chapter 11. If the relief sought in this Motion is denied, the Debtor likely will experience business disruptions, its ability to provide continuous high-quality care and services to the Residents will be hindered, and the Debtor's ability to consummate a sale and maximize value for the estate may be irreparably damaged. Accordingly, the DIP Financing is necessary to maximize value for the Debtor's estate and inures to the benefit of creditors and all parties in interest.

***4. The Terms of the DIP Financing Are Fair, Reasonable and Appropriate***

46. In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (holding that a debtor may have to enter into hard bargains to acquire funds). The appropriateness of a proposed financing facility should also be considered in light of current market conditions. *See Transcript of Record* at 740:4–6, *In*

*re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 27, 2009) ("[B]y reason of present market conditions, as disappointing as the [DIP] pricing terms are, I find the provisions reasonable here and now.").

47. Section 364(e) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

The terms and conditions of the DIP Financing were negotiated in good faith and at arm's-length among the Debtor and Debtor's counsel, on one hand, and the DIP Lender, through its counsel, on the other, culminating in the DIP Term Sheet that is designed to provide the Debtor with essential working capital.[5] Indeed, when viewed in its totality, the DIP Financing reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and is supported by fair consideration. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of Bankruptcy Code section 364(e), and is entitled to all of the protections afforded by that section.

## II. The Debtor is Authorized to Use Cash Collateral Under Section 363 of the Bankruptcy Code.

48. The Debtor's use of property of its estate, including Cash Collateral, is governed by Bankruptcy Code Section 363, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise,

[5] As described in the First Day Declaration, the Debtor's decision to enter into the DIP Term Sheet was made by the independent members of the Debtor's board.

> the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

49. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

50. Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See, e.g., In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate protection is a fact-specific inquiry... left to the vagaries of each case"); *In re Realty Sw. Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of it collateral during the reorganization process") (citation omitted); *In re Satcon Tech. Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993)) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding" (citations omitted)).

51. Here, the Debtor proposes to provide the Bond Trustee with a variety of adequate protection to protect against any diminution in the value of the Cash Collateral as a result of the Debtor's use thereof. Specifically, the Debtor proposes to provide the Bond Trustee adequate

protection in the form of (a) postpetition replacement liens on the Prepetition Bond Collateral (the "Replacement Liens"), and (b) a superpriority claim allowed under section 507(b) of the Bankruptcy Code, junior only to the Carve-Out, to the extent of any diminution in value of the Bond Trustee's Cash Collateral (the "Adequate Protection Superpriority Claim").

52. The Debtor will also provide reasonable access to the Bond Trustee, upon the Bond Trustee's reasonable request, to reports, documents and other materials of the Debtor, including financial reports and the Debtor's books and records, and its advisors and professionals, in a manner similar to that provided to the DIP Lender. Further, the Bond Trustee's interest in the Cash Collateral is adequately protected by the substantial additional funding provided by the DIP Financing, which is designed to maximize the value of the Debtor's estate and result in a sale in a timely manner while conserving estate resources in accordance with the Approved Budget.

53. Courts look to the liquidation value of collateral to determine the value relevant for adequate protection purposes. *See In re Ralar Distribs., Inc.*, 166 B.R. 3, 7 (Bankr. D. Mass. 1994) ("The value relevant for adequate protection purposes . . . is liquidation value realizable by the creditor."), *aff'd*, 182 B.R. 81 (D. Mass. 1995), *aff'd*, 69 F.3d 1200 (1st Cir.1995); *Sharon Steel Corp. v. Citibank, N.A. (In re Sharon Steel Corp.)*, 159 B.R. 165, 169 (Bankr.W.D.Pa.1993) (using liquidation value for adequate protection purposes); *United States v. Case (In re Case)*, 115 B.R. 666, 670 (9th Cir. BAP 1990) ("If we were attempting to value [a secured creditor's] interest in the property for adequate protection purposes, the possibility of forced liquidation would be assumed . . . ."). The Debtor's proposed use of Cash Collateral will preserve (if not enhance) the Prepetition Bond Collateral, including the Cash Collateral. Courts have also held that adequate protection may be demonstrated by showing that the secured creditor's interest in the collateral is preserved by the debtor's use of the cash collateral in a manner that maintains or enhances the

collateral's value. *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a secured creditor was adequately protected when cash collateral was used to pay necessary operating expenses); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105–06 (Bankr. S.D.N.Y. 1991) (authorizing debtor to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral and existing equity cushion); *accord in re Atrium Dev. Co.*, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest."); *McCombs Props. VI, Ltd. V. First Tex. Sav. Ass'n (In re McCombs Props. VI, Ltd.)*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (holding that committing to use cash collateral for operating expenses substantially eliminated the risk of diminution in the secured creditor's interest in the collateral).

54. In this case, the proposed adequate protection is appropriate under the circumstances. Thus, the Debtor should be authorized to use Cash Collateral as set forth in this Motion.

### III. Modification of the Automatic Stay on a Limited Basis is Warranted.

55. The relief requested in this Motion contemplates a modification of the automatic stay pursuant to section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender to exercise, (i) upon the Maturity Date (as defined in the DIP Term Sheet), all rights and remedies under the Final Order, and (ii) upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Term Sheet, as supplemented by the Interim Order and the Final Order, after five (5) business days' notice thereof, and to take various actions without further order of or application to the Court. Stay modification provisions of this sort are ordinary and usual features of debtor-in-possession financing facilities and, in the

Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent proposed in the DIP Orders.

**IV. Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 6003(b) and Local Rule 4001-5(f)(2) Have Been Satisfied.**

56. Bankruptcy Rule 4001 provides that the Court may commence a final hearing on a motion to obtain postpetition financing and use cash collateral during the 14-day period after the service of a motion requesting such relief "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." *See* Fed. R. Bankr. P. 4001(b)(2), (c)(2). Similarly, under Local Rule 4001-5(f)(2), "the Court may grant interim relief on shortened notice" where "[s]uch relief is intended to avoid immediate and irreparable harm to the estate pending a final hearing." E.D.N.Y. LBR 4001-5(f)(2).

57. In addition, Bankruptcy Rule 6003 empowers the Court to issue an order, within 21 days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).

58. As described above, if the Debtor is unable to obtain the DIP Financing and utilize Cash Collateral, it will be unable to operate its business, thereby causing immediate and irreparable harm to the Debtor's estate and, consequently, other interested parties. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

59. The Debtor respectfully requests that the Court enter the proposed Interim Order, substantially in the form attached hereto as **Exhibit A**, at the "first day" hearing and that the Interim Order be made effective and enforceable, *nunc pro tunc*, to the Petition Date. This authority will permit the Debtor from and after the entry of the Interim Order until the Final Hearing to borrow

funds in the amount of $4,800,000 (and only upon the entry of the Final Order, to borrow the remaining balance of the DIP Facility), which the Debtor shall use to, among other things, provide working capital for the Debtor's ongoing business operations and pay expenses for this Chapter 11 Case. This authority will further allow the Debtor to maintain a stable business environment and avoid immediate and irreparable harm, pending the Court's final decision at the Final Hearing. Absent this Court's approval of the interim relief sought in this Motion, the Debtor faces a substantial risk of severe disruption to its business operations and irreparable damage to the Debtor's estate and, in turn, all parties in interest.

**FINAL HEARING ON THE RELIEF REQUESTED IN THE MOTION**

60. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable but in no event later than twenty-five (25) days following the Petition Date, and fix the time and date for the filing of objections to this Motion.

**WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H) REQUIREMENTS**

61. In addition, by this Motion, the Debtor requests a waiver of any notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the order(s) approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtor requires immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## RESERVATION OF RIGHTS

62. Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtor, (b) a waiver of the Debtor's rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion, the Interim Order, or the Final Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

63. Notice of this Motion will be provided to Office of the U.S. Trustee for the Eastern District of New York; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the DIP Lender, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) all other parties required to receive notice under Local Rule 2002-2. The Debtor submits that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed Interim Order, substantially in the form attached hereto as **Exhibit A**, and proposed Final Order, to be submitted to the Court in advance of the Final Hearing, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated: March 23, 2023
New York, New York

**DLA PIPER LLP (US)**

*/s/ Gregory M. Juell*

Gregory M. Juell
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

-and-

Rachel Nanes (*pro hac vice* admission pending)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Email: rachel.nanes@us.dlapiper.com

-and-

James P. Muenker (*pro hac vice* admission pending)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED NON-PRIMING POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY CLAIMS AND (B) ADEQUATE PROTECTION; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking entry of an interim order (this "Interim Order") and a final order, pursuant to sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code") rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-5 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), that, among other things:

(i) authorizes the Debtor to obtain postpetition financing (the "DIP Financing") on a secured non-priming basis, consisting of a new money term loan facility (the "DIP Facility" and the loans issued thereunder, the "DIP Loans") in an aggregate principal amount of up to

1 The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

2 Unless otherwise defined herein, all capitalized terms have the meaning given to such terms as in the Motion or the DIP Term Sheet (as defined herein).

$9,000,000 pursuant to the terms and conditions set forth in this Interim Order and that certain term sheet annexed hereto as **Exhibit 1** (as may be amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Term Sheet"), executed by the Debtor and the DIP Lender (collectively, the "DIP Loan Parties");

(ii) approves the terms of and authorizing the Debtor to execute and deliver the DIP Term Sheet and any other agreements, instruments, and documents related thereto (collectively, the "DIP Loan Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii) authorizes the Debtor to enter into the DIP Facility and to incur all obligations owing thereunder and under the DIP Loan Documents to the DIP Lender (collectively, the "DIP Obligations"), and granting the DIP Lender the DIP Superpriority Claims, subject to payment of the Carve-Out and the Adequate Protection Superpriority Claim (each as defined below);

(iv) authorizes the DIP Loan Parties to perform such other and further acts as may be necessary or desirable in connection with the Interim Order, the DIP Loan Documents, including the DIP Term Sheet, and the transactions contemplated hereby and thereby;

(v) grants to the DIP Lender automatically perfected security interests in, and liens on, all of the DIP Collateral (as defined below) which liens shall be subject to the priorities set forth in the Interim Order;

(vi) authorizes and directs the Debtor to use the proceeds of the DIP Facility and Cash Collateral to fund the operational, employee, and other costs of the Debtor, including, without limitation, payments authorized to be made under "first day" or "second day" orders, and payments related to the working capital and other general corporate purposes of the Debtor, including the payment of professional fees and expenses, and in each case, consistent with,

subject to, and within the categories and limitations contained in the Approved Budget (as defined in the DIP Term Sheet);

(vii) authorizes the Debtor to use the Bond Trustee's Cash Collateral, as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), on an interim basis, and providing, among other things, adequate protection to the Bond Trustee for any diminution in the value of its interest in the Cash Collateral;

(viii) authorizes the DIP Lender to (1) terminate the funding obligations under the DIP Loan Documents in accordance with their terms; (2) declare the DIP Obligations to be immediately due and payable in full, to the extent permitted by the terms thereof; and (3) subject to the Interim Order, be granted relief from the automatic stay to foreclose on the DIP Liens (as defined below); and

(ix) schedules a final hearing to consider approval of this Motion on a final basis (the "Final Hearing") and approves the form of notice with respect to the Final Hearing.

The Court, having considered the Motion, the DIP Term Sheet, the proposed Interim Order, the *Declaration of Michael Morton in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), the pleadings filed with the Court, the evidence submitted and arguments proffered or adduced at the hearing held before the Court on March [__], 2023 (the "Interim Hearing"), and upon the record of this Chapter 11 Case; and adequate notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Rules; and it appearing that no other or further notice need be provided; and all objections, responses and reservations of rights with respect to the entry of the Interim Order, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and

its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, represents a sound exercise of the Debtor's business judgment, and is necessary for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A. **Petition Date**. On March [__] 2023 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

B. **Debtor-in-Possession**. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. **Disposition**. The Motion is hereby granted in accordance with the terms of this Interim Order.

D. **Jurisdiction and Venue**. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E. **Notice**. Upon the record presented to the Court at the Interim Hearing, notice of the Motion and the relief requested thereby and this Interim Order has been provided to: (i) the Office of the U.S. Trustee for the Eastern District of New York (the "U.S. Trustee"); (ii) the

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the DIP Lender, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) all other parties required to receive notice under Local Rule 2002-2. Under the circumstances, and as immediate and irreparable loss would be caused to the estate if immediate financing were not obtained, the parties to which notice was given and the manner of notice was the best available under the circumstances and constitutes due and sufficient notice.

F. **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

(i) Request for Postpetition Financing and Use of Cash Collateral. The Debtor seeks authority to (a) enter into the DIP Term Sheet on the terms described herein and in the DIP Loan Documents, and (b) use the Bond Trustee's Cash Collateral on the terms described herein to administer this Chapter 11 Case and fund its operations in accordance with the budget attached as **Exhibit 2** hereto and the DIP Loan Documents. At the Final Hearing, the Debtor will seek final approval of the DIP Financing under the terms and conditions set forth in the DIP Loan Documents and use of Cash Collateral pursuant to a proposed final order (the "Final Order"). Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii) Immediate Need for Postpetition Financing and Use of Cash Collateral. The Debtor has an immediate and critical need to obtain financing pursuant to the DIP Financing and to continue to use the Cash Collateral in order to permit the orderly continuation of the operation of its business. The Debtor seeks to maximize the value of the assets of its estate for the benefit of its creditors. The incurrence of new debt under the DIP Loan Documents and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value

of the Debtor. Immediate and irreparable harm will be caused to the Debtor and its estate if immediate financing is not obtained and permission to use Cash Collateral is not granted. The extensions of credit under the DIP Financing are fair and reasonable, and the Debtor's incurrence of the DIP Financing reflects the Debtor's exercise of prudent business judgment. The adequate protection provided in this Interim Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(iii) No Credit Available on More Favorable Terms. The DIP Financing is the best source of debtor-in-possession financing available to the Debtor. The Debtor is unable to procure financing from sources other than the DIP Lender on terms more favorable than the DIP Financing. The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. Financing on a postpetition basis is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's property with the priorities set forth herein, (2) superpriority claims to the extent set forth herein, and (3) the other protections set forth in this Interim Order.

(iv) Budget. As a condition to the Debtor's entry into the DIP Loan Documents, the extension of credit thereunder, and the authorization to use Cash Collateral, the Debtor has agreed that Cash Collateral and the proceeds of the DIP Financing shall be used solely in accordance with the terms and conditions of this Interim Order, the DIP Loan Documents, and the Approved Budget (as defined below). The Debtor represents that the Approved Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby. The Debtor represents that the Approved Budget is achievable in accordance with the terms of this Interim Order and will allow the Debtor to operate at all times during the Chapter 11 Case. The

DIP Lender is relying upon the Debtor's compliance with the Approved Budget (subject to the Permitted Variances (as defined in the DIP Term Sheet)) in determining to enter into the postpetition financing arrangements provided for in the DIP Loan Documents.

G. **Adequate Protection**. In exchange for the use of Cash Collateral to the extent set forth in this Interim Order, the Bond Trustee shall receive, *inter alia*, adequate protection to the extent of any diminution in the value of the Cash Collateral, in the form of (i) the Adequate Protection Superpriority Claim, and (ii) the Replacement Liens (as defined below).

H. **Section 506(c) Waiver**. In light of (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to payment of the Carve-Out, the DIP Lender and has negotiated for, and the Debtor intend to seek in the Final Order, a waiver of any right to surcharge the DIP Collateral (as such term is defined in the DIP Term Sheet) under section 506(c) of the Bankruptcy Code.

I. **Release Under LSA**. As a condition of borrowing under the DIP Loan Documents, the Debtor has agreed to release the DIP Lender of its obligations arising under or related to the LSA up to the total amount advanced to the Debtor under the DIP Financing on a "dollar for dollar" basis. Such release by the Debtor is provided for good and valuable consideration.

J. **Business Judgment and Good Faith Pursuant to 364(e)**. The terms of this Interim Order and the other DIP Loan Documents are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents have been negotiated in good faith and at arms' length by and among the Debtor and the DIP Lender, with all parties being represented by counsel. Any

credit extended pursuant to this Interim Order shall be deemed to have been extended in good faith by the DIP Lender, as that term is used in § 364(e) of the Bankruptcy Code.

K. **Good Cause**. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and on-going operations, (2) preserve and maximize the value of the Debtor's estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets. The extensions of credit under the DIP Financing, the use of Cash Collateral and the proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment.

L. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1. **Authorization and Conditions to Financing.**

1.1 Motion Granted. The Motion is granted in accordance with Bankruptcy Rules 4001(b)(2) and 4001(c)(2) to the extent provided in this Interim Order. Entry into the DIP Term Sheet and other DIP Loan Documents is expressly and immediately authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case, subject to the terms and conditions set forth in this Interim Order and in the DIP Loan Documents. All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved, and all

reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

1.2 Authorization to Borrow and Use Loan Proceeds. To prevent immediate and irreparable harm to the Debtor's estates, and to enable the Debtor to continue to operate its business and preserve and maximize the value of its estate, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, the Debtor is hereby authorized to borrow under the DIP Facility in a principal amount of up to $4.8 million on or after the first business day following entry of the this Interim Order (the "Initial Advance"). Subject to the terms and conditions contained in the DIP Loan Documents, the Debtor shall use the proceeds of the Initial Advance solely for payment of expenses set forth in the Approved Budget (subject to the Permitted Variances) and amounts owing to the DIP Lender in accordance with the terms and conditions of the DIP Loan Documents.

1.3 DIP Obligations. The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, pursuant to the terms and conditions of the DIP Loan Documents, up to a maximum principal amount of $4.8 million. All DIP Obligations shall be enforceable against the Debtor, its estates, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case"). In the event of any inconsistencies between this Interim Order and the other DIP Loan Documents, this Interim Order shall control.

Section 2. **DIP Liens: Superpriority Administrative Claim Status.**

2.1 Postpetition Lien.

(a) Postpetition Lien Granting. To secure the prompt payment and performance of any and all DIP Obligations of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected security interests and liens (the "DIP Liens"), superior to all other liens, claims or security interests that any creditor of the Debtor's estate may have (but subject to the Carve-Out and the Adequate Protection Superpriority Claim (each as defined below) and the Permitted Liens), in and upon all of Debtor's property, wherever located (collectively, the "DIP Collateral"), and any proceeds of any of the DIP Collateral. In addition, subject to entry of the Final Order, the DIP Collateral shall include, and the DIP Liens shall be first priority senior liens with respect to, proceeds of any claims or causes of action of the Debtor pursuant to sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code ("Avoidance Actions"). Notwithstanding the foregoing, solely for purposes of this Interim Order, "DIP Collateral" does not include (i) any leasehold interest in real property, but shall instead include all proceeds of such leasehold interests; (ii) any executory contract or agreement to the extent the contract or agreement does not permit the grant of a lien thereon; and (iii) prior to the entry of the Final Order, DIP Collateral shall not include the Avoidance Actions or proceeds thereof. "Permitted Liens" shall include any valid, perfected and non-avoidable liens existing as of the Petition Date, which for the avoidance of doubt shall include any valid, perfected and non-avoidable liens existing as of the Petition Date that secure any claims arising under the Series 2021 Bonds.

(b) Lien Priority in DIP Collateral. The DIP Liens shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether

created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens shall be subject only to (a) Permitted Liens, (b) the Carve-Out (as defined below), and (c) the Adequate Protection Superpriority Claim.

(c) Postpetition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such DIP Liens, including without limitation, control agreements with any financial institution(s) party to a deposit account control agreement or other depository account consisting of DIP Collateral (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lender, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then the DIP Lender is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by the DIP Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Lender so choose and attempt to file, record or perform a

Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the DIP Liens.

2.2 Superpriority Administrative Expense Claims.

(a) DIP Loans. For each of the DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Lender is an granted allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all claims against the Debtor (other than the Carve-Out and the Adequate Protection Superpriority Claim (each as defined below)), whether now in existence or hereafter arising, including, without limitation, over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (the "DIP Superpriority Claims").

2.3 Carve-Out.

(a) Carve-Out. As used in this Interim Order, "Carve-Out" shall have the meaning set forth in the DIP Term Sheet. For the avoidance of doubt, nothing in the DIP Loan Documents shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in the definition of Carve-Out.

(b) Excluded Professional Fees. Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out nor the proceeds of DIP Collateral or any DIP Loan shall be used to pay any Allowed Professional Fees (as defined in the DIP Term Sheet) in connection with any of the following:

(i) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the DIP Obligations or the DIP Liens, (ii) invalidating the DIP Obligations or the DIP Liens, or (iii) preventing, hindering or delaying the DIP Lender's assertion or enforcement of the DIP Obligations or the DIP Liens or realization upon any DIP Collateral in accordance with the terms and conditions of this Interim Order;

(ii) a request to use Cash Collateral, except as set forth in this Interim Order, without the prior written consent of the DIP Lender in accordance with the terms and conditions of this Interim Order;

(iii) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in this Interim Order, without the prior written consent of the DIP Lender;

(iv) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Lender Protected Parties (defined below), including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Lender Protected Parties under chapter 5 of the Bankruptcy Code;

(v) the cost of investigation into any claims against the DIP Lender Protected Parties in excess of $10,000; or

(vi) any act which has or could directly, materially and adversely modify or compromise the rights and remedies of the DIP Lender under this Interim Order, or which directly results in the occurrence of an Event of Default under this Interim Order.

2.4 Payment of Carve-Out. Payment from the Carve-Out, whether by or on behalf of the DIP Lender, shall not and shall not be deemed to reduce the DIP Obligations, and

shall not and shall not be deemed to subordinate any of the DIP Liens or the DIP Superpriority Claim to any junior prepetition or postpetition lien, interest or claim in favor of any other party. The DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any Allowed Professional Fees, and nothing in Section 2.3 of this Interim Order shall be construed to obligate the DIP Lender in any way, to directly pay compensation to or to reimburse any Allowed Professional Fees, or to ensure that the Debtor has sufficient funds to pay such Allowed Professional Fees other than as required to fund the Carve-Out in accordance with the DIP Term Sheet.

2.5 Use of Cash Collateral; Adequate Protection.

(a) Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtor shall be and is hereby authorized to use the Cash Collateral for the period commencing on the date of this Interim Order and terminating upon the earlier of (i) the Final Hearing, and (ii) the date on which the Bond Trustee obtains an order of this court directing termination of the Debtor's use of the Cash Collateral. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, and in accordance with the Approved Budget.

(b) Section 507(b) Priority Claims. As adequate protection for any diminution in the value of the Cash Collateral after the Petition Date, the Bond Trustee is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case to the extent of any diminution in the value of Cash Collateral (the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim shall be junior only to the Carve-Out,

and shall otherwise have priority over all administrative expense claims and unsecured claims against the Debtor and its estate now existing or hereafter arising, of any kind or nature whatsoever.

(c) Replacement Liens. The Bond Trustee shall receive first-priority, valid, binding, enforceable and perfected replacement mortgages, pledges, liens and security interests in and upon all of the Debtor's property in which the Bond Trustee held a valid, perfected and non-avoidable lien as of the Petition Date, wherever located, and any proceeds thereof, to the extent of any diminution in the value of its Cash Collateral (collectively, the "Replacement Liens"). The Replacement Liens shall be junior only to the Carve-Out and the Permitted Liens.

Section 3. **Default; Rights and Remedies; Relief from Stay.**

3.1 Events of Default. The occurrence of any of the events identified in the DIP Term Sheet as an Event of Default shall constitute an "Event of Default".

3.2 Rights and Remedies upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order, including, without limitation, declaring all DIP Obligations immediately due and payable, accelerating the DIP Obligations, ceasing to provide DIP Loans, setting off any DIP Obligations with DIP Collateral or proceeds in the DIP Lender's possession (other than DIP Collateral subject to Permitted Liens), and enforcing any and all rights with respect to the DIP Collateral. The DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of the Debtor, or provide any other financial accommodations to the Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any

act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default, except as is necessary to fund the Carve-Out.

3.3 Expiration of Commitment. Upon the expiration of the Debtor's authority to borrow and obtain other credit accommodations from the DIP Lender pursuant to the terms of this Interim Order, unless an Event of Default occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the DIP Obligations shall immediately become due and payable and the DIP Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to the Debtor or permit the use of Cash Collateral, subject to the Carve-Out and the conditions set forth in Section 2.5(a) of this Interim Order.

3.4 Modification of Automatic Stay. Subject to entry of the Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Interim Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations, and apply such payments to the DIP Obligations pursuant to this Interim Order, and (d) to take any action and exercise all rights and remedies provided to it by this Interim Order or applicable law. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Remedies Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the official committee of unsecured creditors (the "Committee")

(if appointed), and (iii) the U.S. Trustee, the DIP Lender shall be entitled to take any action and exercise all rights and remedies provided to it by the Final Order or applicable law that the DIP Lender may deem appropriate in its sole discretion to proceed against and realize upon the DIP Collateral or any other assets or properties of Debtor's estate upon which the DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations. Upon the receipt of an Enforcement Notice, the Debtor may only make disbursements to (i) fund payment of the Carve-Out; (ii) to pay costs, fees and expenses of the DIP Lender as set forth herein; and (iii) to pay any other amounts necessary to avoid immediate and irreparable harm (and solely to the extent provided in the Approved Budget), and may not disburse any other amounts. During the Remedies Notice Period, the Debtor, the Committee and/or any other party in interest shall be entitled to seek an emergency hearing with the Court with respect to any remedies sought to be exercised by the DIP Lender. In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Remedies Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in the Final Order.

Section 4. **Representations; Covenants; and Waivers.**

4.1 Debtor's Waivers. At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek further authority (a) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order, (b) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Obligations

(other than unmatured indemnity obligations for which claims have not been asserted) on the effective date of such plan or (c) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Lender as provided in this Interim Order or the DIP Lender's exercise of such rights or remedies (other than to object to the exercise of the rights and remedies within the Remedies Notice Period on the grounds set forth in Section 3.4 of this Interim Order); provided, however, that the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

4.2 Section 506(c) Claims. Subject to entry of the Final Order, no costs or expenses of administration which have or may be incurred in the Chapter 11 Case shall be charged against the DIP Lender, its respective claims or the DIP Lender's interest in the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender.

4.3 Collateral Rights. Until all DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of this Interim Order, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in DIP Collateral.

Section 5. **Advances; Forgiveness Conditions.**

5.1 DIP Loan Mechanism. DIP Loans shall be made available to the Debtor in the manner described in the DIP Term Sheet. For the avoidance of doubt, the DIP Lender shall be under no further obligation to make DIP Loans following an Event of Default.

5.2 Interest Rate. The DIP Obligations shall bear interest at the rate set forth in the DIP Loan Documents. Such interest shall accrue but shall not be payable until the Maturity Date (defined below).

5.3 Approved Budget and Permitted Variances. The Debtor has prepared and delivered to the DIP Lender, and the DIP Lender has approved, an initial budget, a copy of which is annexed to this Interim Order as **Exhibit 2**. Prior to the Final Hearing, such budget shall be updated to cover a period of 13 weeks, and shall be further updated from time to time not less than every four weeks and shall show the Debtor's projected expenditures and receipts, each on a line-item basis, for a period not less than the following 13 weeks, and shall be in a form approved by the DIP Lender. The budget for a given period that has been approved by the DIP Lender shall be referred to herein as the "Approved Budget". The Debtor's expenditures and receipts shall be deemed in compliance with the Approved Budget provided that they are within the Permitted Variances as set forth in the DIP Term Sheet.

5.4 Financial Reports. The Debtor shall provide the Bond Trustee with all reports, documents and other materials, including financial reports and such other and further access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Bond Trustee from time to time; provided, however, that the Debtor shall have no obligation to provide the Bond Trustee with any information or access to any information that has not been provided to the DIP Lender.

5.5 Milestones. The Debtor shall comply with Milestones as set forth in the DIP Term Sheet.

5.6 Maturity Date. The DIP Obligations will become due and payable on the earlier of (i) November 30, 2023, or (ii) the occurrence of an Event of Default (the "Maturity Date").

5.7 Releases. The Debtor shall grant the DIP Lender and each of its Related Parties (as defined below) (collectively, "DIP Lender Protected Parties") a release from all claims and causes of action of any kind related to the Debtor arising at any time through and including the Petition Date, provided that such release shall not include any claims or causes of action against a DIP Lender Protected Party arising from such DIP Lender Protected Party's gross negligence, fraud or willful misconduct. "Related Parties" shall mean each of the DIP Lender's affiliated entities including each of its subsidiaries, and each such entities' directors, officers, members, managers, agents, employees, accountants and attorneys, including each of their third-party professionals.

5.8 Indemnification. The Debtor shall indemnify and hold harmless the DIP Lender Protected Parties from and against any and all losses, claims, damages, liabilities and related expenses of any kind ("Losses") arising out of or in connection with any claims or causes of action of any kind related to the Debtor arising at any time before, on or after the Petition Date, provided that such indemnification shall not include any Losses of a DIP Lender Protected Party arising out of or in connection with such DIP Lender Protected Party's gross negligence, fraud or willful misconduct.

5.9 Forgiveness. Upon the closing of a Sale (as defined below), the DIP Obligations (other than the Debtor's indemnification obligations as described herein) shall be forgiven by the DIP Lender provided that no Event of Default has occurred. A "Sale" shall mean the occurrence of the closing of a transaction providing for the sale of substantially all of the assets of the Debtor's continuing care retirement community currently known as The Harborside, or the sale of the equity/membership interests of the Debtor (or similar "affiliation transaction"), each pursuant to section 363 of the Bankruptcy Code in form and substance acceptable to the

DIP Lender in its sole discretion, or pursuant to a chapter 11 plan, in form and substance acceptable to the DIP Lender in its sole discretion.

Section 6. **Other Rights and Postpetition Obligations.**

6.1 No Modification or Stay of This Interim Order. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, or any term hereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of the Chapter 11 Case (each, a "Subject Event"), (x) the acts taken by the DIP Lender in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising prior to the DIP Lender's actual receipt of written notice from the Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be entitled to the protections set forth in section 364(e) of the Bankruptcy Code.

6.2 Power to Waive Rights; Duties to Third Parties. The DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lender (the "DIP Lender Rights") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights. Any waiver by the DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to the DIP Lender.

6.3 Disposition of Collateral. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than pursuant to the terms of the Approved Budget, without the prior written consent of the DIP Lender (and no such

consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender) and, in each case, an order of the Court.

6.4 Reservation of Rights. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the estate.

6.5 Binding Effect.

(a) The provisions of this Interim Order, the DIP Obligations, the DIP Superpriority Claims and any and all rights, remedies, privileges and benefits in favor of each of the DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall terminate upon entry of a Final Order.

(b) This Interim Order shall be binding upon the Debtor, all parties served with the Motion and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Case or any Successor Case. This Interim Order shall also inure to the benefit of the Debtor, the DIP Lender and each of their respective successors and assigns.

6.6 Restrictions on Additional Financing, Plan Treatment.

(a) All DIP Loans and other financial accommodations under this Interim Order are made in reliance on this Interim Order and there shall not at any time be entered in the Chapter 11 Case, or in any Successor Case, any order (other than the Final Order) which authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to the DIP Liens or which is entitled to priority administrative claim status which is equal or superior to the DIP Superpriority Claims; unless, in each instance (x) the DIP Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender, or (y) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of this Interim Order (other than unmatured indemnity obligations for which claims have not been asserted), on terms and conditions acceptable to the DIP Lender. The DIP Liens and the rights of the DIP Lender pursuant to this Interim Order with respect to the DIP Obligations and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of the Debtor and, if the DIP Lender shall expressly consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan (unless forgiven pursuant to Section 5.8 of this Interim Order).

6.7 Payment and Review of DIP Lender Fees and Expenses. The Debtor shall pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under this Interim Order, including, without limitation, the non-refundable payment to the DIP Lender of the reasonable fees and expenses (including without limitation professional fees and legal fees and expenses) of the DIP Lender's counsel or other professionals, whether

incurred before or after the Petition Date; provided, that the Debtor shall pay all such reasonable fees and expenses within five (5) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek the Court's approval of any such payments) to the Debtor, the U.S. Trustee and the Committee, unless, within such five (5) business day period, the Debtor, the U.S. Trustee or the Committee serve a written objection upon the requesting party, in which case, the Debtor shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the parties or ordered by the Court to be paid.

6.8 Term; Termination. Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtor and the DIP Lender authorized by this Interim Order may be terminated pursuant to the terms set forth herein.

6.9 Retention of Jurisdiction. The Court retains jurisdiction and power with respect to all matters arising from or related to the DIP Financing and/or this Interim Order.

Section 7. **Final Hearing and Response Dates.**

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for April __, 2023, at _____ before the Court. The Debtor shall promptly mail copies of this Interim Order to (a) the parties that were provided notice of the Interim Hearing; (b) any other party that has filed a request for notices with the Court; and (c) counsel for the Committee, if any appointed. The Debtor may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and shall be made available free of charge at the office of Debtor's counsel. Such notice is deemed good and sufficient and that no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve and

file written objections, which objections shall be served upon (a) proposed counsel to the Debtor, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020; Attn: Rachel Nanes, Esq., James P. Muenker, Esq. and Gregory M. Juell, Esq.; (b) counsel for the DIP Lender, Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Melanie L. Cyganowski, Esq. and Jonathan N. Helfat, Esq., Fax: (212) 682-6104; (c) counsel to any Committee (if appointed); and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m., prevailing Eastern time, on April __, 2023.

Dated: Central Islip, New York
March __, 2023

United States Bankruptcy Judge



EAST\201662278.5

# <u>Exhibit 1</u>

**DIP Term Sheet**

**DIP TERM SHEET**

| | |
|---|---|
| Borrower | Amsterdam House Continuing Care Retirement Community, Inc., a New York not-for-profit corporation that operates as a continuing care retirement community (the "**Debtor**") |
| Lender | Amsterdam Continuing Care Health System, Inc., a New York not-for-profit organization (the "**DIP Lender**") |
| Borrowing Limit | Up to $9.0 million in debtor-in-possession financing (the "**DIP Financing**") in the form of advances under a term loan facility (collectively, the "**DIP Term Loan**"), to be funded as set forth below under the headings "Borrowing Conditions" and "Draw Procedures".<br><br>All of the Debtor's obligations to the DIP Lender arising under or related to the DIP Term Loan shall be referred to herein as the "**DIP Obligations**". |
| Borrowing Conditions | Any advances under the DIP Term Loan shall be conditioned upon entry of a final and non-appealable order of the Court (as defined below) approving the DIP Financing in form and substance acceptable to DIP Lender in its sole discretion (the "**Final DIP Order**"), provided, however, that up to $4.8 million will be advanced on an interim basis upon entry of an interim order of the Court approving the DIP Financing in form and substance acceptable to DIP Lender in its sole discretion (the "**Interim DIP Order**" and together with the Final DIP Order, the "**DIP Orders**"). The DIP Orders each shall include, among other things, (i) approval of the Debtor's waiver and release in favor of the DIP Lender with respect to obligations arising under or related to that certain Liquidity Support Agreement between Borrower and DIP Lender dated as of June 14, 2021 (the "**LSA**") up to the total amount advanced to the Debtor under the DIP Financing on a "dollar for dollar" basis, and (ii) a determination that the LSA shall be deemed terminated and of no further force and effect upon the DIP Lender's funding of the full amount of the DIP Financing, which shall be binding on all third parties including a Committee or trustee. |
| Draw Procedure | The DIP Financing shall be made available for purposes set forth below under the heading "Use of DIP Proceeds" and funded as follows: (i) in the principal amount of $2 million on the first business day following entry of the Initial Interim DIP Order (the "**Initial Draw**"), (2) subsequent draws up to an additional aggregate principal amount of $2.8 million pursuant the Interim DIP Order, and (3) subsequent draws in an additional aggregate principal amount of $4.2 million following the entry of the Final DIP Order |



7370227.6
EAST\201794787.2

| | |
|---|---|
| | (each such draw after the Initial Draw, a "**Subsequent Draw**" and together with the Initial Draw, collectively the "**Draws**").<br><br>Requests for Draws by the Debtor shall be honored by the DIP Lender in accordance with the following procedures:<br><br>a. *Written Request*. Other than with respect to the Initial Draw, the Debtor shall have delivered to the DIP Lender a written request for a Draw at least two (2) business days prior to the date that the Draw will be transferred to the Debtor. The request shall (i) specify the amount of the Draw, (ii) state the date that the Draw is requested, (iii) provide wiring instructions for the Draw; (iv) certify the Draw is consistent with the categories, amounts and timing of the Approved Budget, and (v) certify that all conditions set forth above with respect to the Draw is and will be satisfied as of the date of the request and the date of Draw.<br><br>b. *Amount*. All Draws shall be either in the amount of $500,000 or in multiples of $500,000 unless the remaining availability under the DIP Term Loan is less than such amounts, in which case the Draw may equal the amount of the remaining availability under the DIP Term Loan. |
| Use of DIP Proceeds | Proceeds of the DIP Financing shall be used exclusively, consistent with an Approved Budget (as defined below) to: (i) pay Allowed Professional Fees (as defined below), (ii) fund ordinary course operational expenses of the Debtor, (iii) fund the Carve-Out (as defined below), and (iv) pay costs, fees and expenses of DIP Lender as set forth herein. |
| Approved Budget | An "**Approved Budget**" shall mean: the initial budget attached to the Interim Order as Exhibit 2 or any subsequent version thereof that is proposed by the Debtor and agreed to in writing by DIP Lender.<br><br>The Approved Budget shall be updated prior to the Final Hearing and shall show projected expenditures by the Debtor on a line-item basis (the "**Projected Expenditures**") for a period of not less than 13 weeks, and shall be further updated from time to time not less than every four weeks. The Approved Budget shall also show projected receipts by the Debtor on a line-item basis ("**Projected Receipts**") for the same periods. |

| | |
|---|---|
| Milestones | The Debtor shall comply with following deadlines ("**Milestones**"), unless otherwise waived by DIP Lender in its sole discretion:<br><br>(a) the Debtor shall commence a chapter 11 case (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**") or before March 22, 2023 (the date of such filing, the "**Petition Date**");<br><br>(b) the Court shall have entered the Interim DIP Order, in a form and substance acceptable to DIP Lender in its sole discretion, no later than five (5) days after the Petition Date;<br><br>(c) the Court shall have entered the Final DIP Order, in form and substance acceptable to DIP Lender in its sole discretion, no later than thirty (30) days after the Petition Date;<br><br>(d) any auction of the Debtor's assets and determination of the proposed successful bidder for such assets shall be completed by no later than June 30, 2023;<br><br>(e) the Debtor shall file a Chapter 11 Plan, in form and substance acceptable to DIP Lender in its sole discretion (an "**Acceptable Plan**"), no later than August 1, 2023;<br><br>(f) the Court shall have entered an order confirming such Acceptable Plan no later than October 1, 2023; and<br><br>(g) the effective date of an Acceptable Plan shall have occurred by no later than November 30, 2023. |
| Forgiveness Conditions | Upon the closing of a Sale (as defined below), the DIP Obligations (other than Debtor's indemnification obligations as described herein) shall be forgiven by DIP Lender provided that no Event of Default has occurred.<br><br>A "**Sale**" shall mean the closing of a transaction providing for the sale of substantially all of the assets of the CCRC Facility (as defined below), or the sale of the equity/membership interests of the Debtor (or similar "affiliation transaction"), each pursuant to section 363 of the Bankruptcy Code in form and substance acceptable to DIP Lender in its sole discretion or pursuant to an Acceptable Plan. |

| | |
|---|---|
| Interest Rate | 8% per annum, plus additional 2% per annum during any period following an Event of Default (as defined below). Such amounts shall accrue during the term of DIP Term Loan but shall not be payable until the maturity of the DIP Term Loan. For the avoidance of doubt, DIP Lender shall be under no further obligation to make advances under the DIP Term Loan following an Event of Default. |
| Maturity Date | The earlier of (i) November 30, 2023 or (ii) the occurrence of an Event of Default (as defined below). |
| Events of Default | As used herein, an "**<u>Event of Default</u>**" shall mean the occurrence of any of the following events, unless waived in writing by DIP Lender in its sole and absolute discretion:<br><br>(i) any claim or cause of action is asserted against any DIP Lender Protected Parties (as defined below) related to the LSA or by the Debtor;<br><br>(ii) the Debtor's continuing care retirement community currently known as The Harborside (the "**<u>CCRC Facility</u>**") shall cease operation as a continuing care retirement community;<br><br>(iii) the Debtor shall fail to comply with any of the Milestones;<br><br>(iv) the Debtor shall use any proceeds of the DIP Financing for items not reflected in the Approved Budget;<br><br>(v) the total of the Debtor's expenditures after the Petition Date during any rolling two week period (the "**<u>Measuring Period</u>**") exceeds the total Projected Expenditures for the same period under the Approved Budget (as updated from time to time) by more than ten percent (10%) (the "**<u>Expenditure Variance</u>**");<br><br>(vi) the total of the Debtor's receipts after the Petition Date during any Measuring Period is less than the total Projected Receipts for the same period under the Approved Budget (as updated from time to time) by more than twenty percent (20%) (the "**<u>Receipt Variance</u>**");<br><br>(vii) the Debtor's Chapter 11 Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case under |

| | |
|---|---|
| | section 1112 of the Bankruptcy Code or otherwise, or seeking the conversion of any its Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, without payment in full of all DIP Obligations and immediate termination of any further obligations of the DIP Lender to made advances under the DIP Financing;<br><br>(viii) a trustee, interim receiver, receiver or manager shall be appointed in the Debtor's Chapter 11 Case, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104(b) of the Bankruptcy Code shall be appointed in the Debtor's Chapter 11 Case;<br><br>(ix) any order of the Court shall be entered reversing, amending, supplementing, staying, vacating or otherwise amending, supplementing or modifying the Final DIP Order or the Debtor shall apply for the authority to do so, in each case in a manner that is adverse in any respect to DIP Lender, without the prior written consent of the DIP Lender;<br><br>(x) the Final DIP Order shall cease to be in full force and effect;<br><br>(xi) the Debtor shall fail to comply with the Final DIP Order in any material respect;<br><br>(xii) the entry of an order in the Debtor's Chapter 11 Case with respect to the Debtor seeking to obtain financing pursuant to section 364 of the Bankruptcy Code (other than the DIP Financing);<br><br>(xiii) an order of the Court shall be entered avoiding or permitting recovery of any portion of the payments made on account of the DIP Obligations;<br><br>(xiv) an application shall be filed by the Debtor for the approval of, or an order of the Court shall be entered granting, any other liens in the Debtor's Chapter 11 Case that are *pari passu* with or senior to the DIP Liens on the DIP Collateral, other than the Carve-Out, the Bond Trustee Adequate Protection and the Prior Senior Liens (as defined below); |

| | |
|---|---|
| | (xv) any claims (as such word is defined in the Bankruptcy Code) senior to or *pari passu* with the DIP Superpriority Claims (as defined below), other than the Carve-Out and the Bond Trustee Adequate Protection;<br><br>(xvi) the Debtor makes any payments of principal or interest or otherwise on account of any pre-petition claims other than payments authorized by the Approved Budget and/or the Court in respect of "first day orders" or other orders entered upon pleadings in form and substance reasonably satisfactory to DIP Lender;<br><br>(xvii) the Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any creditor or party in interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtor that has an aggregate value in excess of $250,000;<br><br>(xviii) an order shall be entered by the Court terminating any of the Debtor's exclusive periods for proposing a Chapter 11 plan;<br><br>(xix) an order shall be entered by the Court confirming a Chapter 11 plan other than an Acceptable Plan;<br><br>(xx) any interest of the DIP Lender in the DIP Collateral shall be subject to surcharge under section 506(c) of the Bankruptcy Code or otherwise; or<br><br>(xxi) the Debtor shall file or support any pleading seeking relief the grant of which would give rise to an Event of Default. |
| Costs, Fees and Expenses | The Debtor shall satisfy in cash all reasonable and documented out-of-pocket costs, fees and expenses incurred by DIP Lender in connection with the DIP Financing (including without limitation professional fees and expenses). Such costs, fees and expenses shall be paid from the proceeds of the DIP Financing without the need for approval of the Court. |
| Collateral; Liens on Avoidance Actions | As security for repayment of the DIP Obligations, DIP Lender shall be granted liens (the "**DIP Liens**") on all of Debtor's property, wherever located (collectively, the "**DIP Collateral**"), including without limitation any proceeds of claims or causes of action of the Debtor pursuant to sections 502(d), 544, 545, 547, 548, 549, 551, |

| | |
|---|---|
| | 553(b), 732(2) or 742(2) of the Bankruptcy Code ("**Avoidance Actions**") and any proceeds of any of the DIP Collateral.<br><br>The DIP Liens shall be immediately junior in priority with respect to any DIP Collateral that is subject to any valid, perfected and non-avoidable liens existing as of the Petition Date (the "**Prior Senior Liens**"), and otherwise shall be a first priority senior lien with respect to any other DIP Collateral.<br><br>For the avoidance of doubt, the Prior Senior Liens shall include any valid, perfected and non-avoidable liens existing as of the Petition Date that secure any claims arising under the Continuing Care Retirement Community Taxable Revenue Bonds (Amsterdam at Harborside Project), Series 2021A (the "**Series 2021A Bonds**") and the Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (the "**Series 2021B Bonds**," and together with the Series 2021A Bonds, the "**Series 2021 Bonds**"). Furthermore, solely to the extent that the Debtor is permitted to use the cash collateral (the "**Bond Trustee Cash Collateral**") of UMB Bank, N.A., in its capacity as trustee for the Series 2021 Bonds (the "**Bond Trustee**"), then the Bond Trustee shall be granted customary replacement liens to the extent of any diminution in the value of the Bond Trustee Cash Collateral with the same priority and scope as the prepetition liens securing the Series 2021 Bonds (which for the avoidance of doubt are senior to the DIP Liens), subject to the Carve-Out (the "**Bond Trustee Adequate Protection Liens**").<br><br>For the avoidance of doubt, the DIP Liens shall be a first priority senior lien with respect to the proceeds of any Avoidance Actions.<br><br>Notwithstanding the foregoing or anything else contained herein, the DIP Liens and the Bond Trustee Adequate Protection Liens shall be subject to the Carve-Out (as defined below). |

| | |
|---|---|
| Superpriority Claims | Subject to the Carve-Out (as defined below), each of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor (without the need to file any proof of claim) with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims (the "**Administrative Expense Claims**") arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code (including adequate protection payments), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "**DIP Superpriority Claims**"). The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post- petition property of the Debtor and all proceeds thereof (including Avoidance Actions and any proceeds or property recovered, unencumbered, or otherwise, from Avoidance Actions, whether by judgment, settlement, or otherwise), subject only to the Carve-Out (as defined below). The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code if any order approving the DIP Financing or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.<br><br>Notwithstanding the foregoing, solely to the extent that the Debtor is permitted to use the Bond Trustee Cash Collateral, then the Bond Trustee shall be granted customary adequate protection claims that are senior to the DIP Superpriority Claims to the extent of any diminution in the value of the Bond Trustee Cash Collateral (the "**Bond Trustee Adequate Protection Claims**" and, together with the Bond Trustee Adequate Protection Liens, the "**Bond Trustee Adequate Protection**"), subject to the Carve-Out. |

| | |
|---|---|
| Carve-out | The "**Carve-Out**" means the sum of<br><br>(i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below);<br><br>(ii) all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below);<br><br>(iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**" and such fees the "**Allowed Debtor Professional Fees**") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined herein) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice;<br><br>(iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) incurred by persons or firms retained by any official committee of unsecured creditors duly appointed in the Debtor's case (the "**Committee**") pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and such fees the "**Allowed Committee Professional Fees**" and together with the Allowed Debtor Professional Fees, the "**Allowed Professional Fees**") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined herein) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice;<br><br>(v) Allowed Debtor Professional Fees incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at |



7370227.6
EAST\201794787.2

| | |
|---|---|
| | any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $500,000; and<br><br>(vi) Allowed Committee Professional Fees incurred after the first business day following delivery by DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $25,000 (the amounts set forth in clauses (v and vi) being the "**<u>Post Carve-Out Trigger Notice Cap</u>**").<br><br>The DIP Orders shall provide that the Debtor is authorized to establish customary escrow(s) for the Carve-Out.<br><br>For purposes of the foregoing, "**<u>Carve-Out Trigger Notice</u>**" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor (with the Debtor to promptly provide a copy of such notice to counsel to the Committee (if any), the United States Trustee and counsel to any holder of Prior Senior Liens) (collectively, the "**<u>Notice Parties</u>**"), which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve-Out Trigger Notice Cap has been invoked. |
| Section 506(c) Waiver | The Debtor shall waive any right to surcharge the DIP Lender's interest in the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code. |
| Waivers / Modification of Automatic Stay | The automatic stay provisions of Bankruptcy Code section 362 or otherwise are vacated and modified to the extent necessary to permit the DIP Lender to exercise:<br><br>(i) immediately upon the Maturity Date, all rights and remedies under the Final DIP Order; and<br><br>(ii) upon the occurrence and during the continuance of an Event of Default and the giving of five (5) business days' prior written notice to the Debtor (with the Debtor to promptly provide a copy to the other Notice Parties) (the "**<u>Remedies Notice Period</u>**"), all rights and remedies against the DIP Collateral provided for in the Final DIP Order, provided that, upon the receipt of any such notice, the Debtor may only make disbursements to (i) fund payment of the Carve-Out as provided in the Final DIP Order; (ii) to pay costs, fees and expenses of the DIP Lender as set forth herein; and (iii) to pay any other amounts necessary to avoid immediate and irreparable harm (and solely to the extent provided in the Approved |



7370227.6
EAST\201794787.2

| | |
|---|---|
| | Budget), and may not disburse any other amounts. During the Remedies Notice Period, the Debtor, the Committee and/or any other party in interest shall be entitled to seek an emergency hearing with the Court with respect to any remedies sought to be exercised by the DIP Lender.<br><br>In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The delay or failure to exercise rights and remedies under the Final DIP Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Final DIP Order.<br><br>To the extent not otherwise provided, the automatic stay imposed under section 362(a)(2) of the Bankruptcy Code shall be modified pursuant to the Final DIP Order as necessary for the relevant parties to effectuate all of the terms and provisions of the Final DIP Order. |
| Releases | The Debtor shall grant DIP Lender and each of its Related Parties (collectively, "**<u>DIP Lender Protected Parties</u>**") a release of all claims and causes of action of any kind related to the Debtor arising at any time through and including the Petition Date, provided that such release shall not include any claims or causes of action against a DIP Lender Protected Party arising from such DIP Lender Protected Party's gross negligence, fraud or willful misconduct.<br><br>"**<u>Related Parties</u>**" shall mean each of the DIP Lender's affiliated entities including each of its subsidiaries, and each such entities' directors, officers, members, managers, agents, employees, accountants and attorneys, including each of their third-party professionals. |
| Indemnification | The Debtor shall indemnify and hold harmless the DIP Lender Protected Parties from and against any and all losses, claims, damages, liabilities and related expenses of any kind (collectively, "**<u>Losses</u>**") arising out of or in connection with any claims or causes of action of any kind related to the Debtor arising at any time before, on or after the Petition Date, provided that such indemnification shall not include any Losses of a DIP Lender Protected Party arising out of or in connection with such DIP Lender Protected Party's gross negligence, fraud or willful misconduct. |

**Exhibit 2**

**Approved Budget**

**Amsterdam House Continuing Care Retirement Community, Inc.**
Projected Weekly Cash Flows - Interim Period
*($ in thousands)*

| Proj / Act<br>Week Number<br>Week Ended | Proj.<br>-<br>25-Mar | Proj.<br>1<br>1-Apr | Proj.<br>2<br>8-Apr | Proj.<br>3<br>15-Apr | Proj.<br>4<br>22-Apr | Proj.<br>Total |
|---|---|---|---|---|---|---|
| 1. **Total Operating Receipts** | **$ -** | **$ 324** | **$ 3** | **$ 7** | **$ 841** | **$ 1,176** |
| 2. OPERATING DISBURSEMENTS | | | | | | |
| 3. Salaries and Wages | - | - | - | (210) | (4) | (214) |
| 4. Employee Benefits | - | - | (39) | (79) | (15) | (132) |
| 5. Contract Labor | - | (59) | (59) | (1,049) | (59) | (1,226) |
| 6. Food Purchases | - | (359) | - | - | - | (359) |
| 7. Medical Supplies | - | (23) | (23) | (259) | (25) | (331) |
| 8. General and Administrative | - | (58) | (66) | (188) | (5) | (317) |
| 9. Building and Maintenance | - | (62) | (15) | (109) | (72) | (258) |
| 10. Other Disbursements | - | (82) | (10) | (30) | (10) | (132) |
| 11. Capital Expenditures | - | (8) | (8) | (8) | (8) | (30) |
| 12. **Total Operating Disbursements** | **-** | **(650)** | **(219)** | **(1,933)** | **(198)** | **(3,000)** |
| 13. **Operating Cash Flow** | **-** | **(326)** | **(216)** | **(1,926)** | **644** | **(1,824)** |
| 14. RESTRUCTURING FEES | | | | | | |
| 15. Debtor Professional Fees [(1)] | - | (268) | (251) | (261) | (266) | (1,044) |
| 16. Creditor Committee Professional Fees [(1)] | - | (30) | (30) | (30) | (15) | (105) |
| 17. Filing / US Trustee Fees [(1)] | - | - | - | - | - | - |
| 18. Other Professional Fees [(2)] | - | (200) | - | - | - | (200) |
| 19. Process Costs [(3)] | - | (74) | - | - | - | (74) |
| 20. Total Restructuring Fees | - | (572) | (281) | (291) | (281) | (1,424) |
| 21. **Net Cash Flow** | **-** | **(898)** | **(496)** | **(2,216)** | **363** | **(3,247)** |
| 22. SUMMARY OF CASH ACTIVITY | | | | | | |
| 23. Beginning Cash | 1,132 | 1,132 | 2,234 | 1,738 | 1,522 | 1,132 |
| 24. (+) Net Cash Flow | - | (898) | (496) | (2,216) | 363 | (3,247) |
| 25. (+) DIP Borrowing | - | 2,000 | - | 2,000 | - | 4,000 |
| 26. **Ending Cash** | **$ 1,132** | **$ 2,234** | **$ 1,738** | **$ 1,522** | **$ 1,885** | **$ 1,885** |
| 27. Memo: Debtor In Possession Financing | | | | | | |
| 28. Beginning Balance | $ - | $ - | $ 2,000 | $ 2,000 | $ 4,000 | $ - |
| 29. (+) Draws | - | 2,000 | - | 2,000 | - | 4,000 |
| 30. Ending Balance | - | 2,000 | 2,000 | 4,000 | 4,000 | 4,000 |
| 31. DIP Availability | 9,000 | 7,000 | 7,000 | 5,000 | 5,000 | 5,000 |
| 32. Memo: Professional Fee Escrow | | | | | | |
| 33. Beginning Balance | $ - | $ - | $ 298 | $ 578 | $ 869 | $ - |
| 34. (+) Cash Receipts | - | 298 | 281 | 291 | 281 | 1,149 |
| 35. (-) Debtor Professional Fees | - | - | - | - | - | - |
| 36. (-) Creditor Committee Professional Fees | - | - | - | - | - | - |
| 37. (-) US Trustee Fees | - | - | - | - | - | - |
| 38. Ending Balance | - | 298 | 578 | 869 | 1,149 | 1,149 |

Notes:
(1) Postpetition professional fees deposited to professional fee escrow account as contemplated in DIP financing terms
(2) Other professional fees include DIP professional fees and stalking horse professional fees
(3) Includes adequate assurance utility deposit

**Exhibit B**

**Liquidity Support Agreement**

**EXECUTION COPY**

# LIQUIDITY SUPPORT AGREEMENT

This LIQUIDITY SUPPORT AGREEMENT, dated as of June 14, 2021 (this "Agreement"), is entered into by and between Amsterdam House Continuing Care Retirement Community, Inc., a New York not-for-profit corporation (the "Debtor") and Amsterdam Continuing Care Health System, Inc., a New York not-for-profit organization ("ACCHS" and, together with the Debtor, the "Parties").

## RECITALS

WHEREAS, ACCHS is a tax-exempt organization under section 501(c)(3) and a public charity under section 501(a)(3) of the Internal Revenue Code; and

WHEREAS, ACCHS is the sole member of the Debtor; and

WHEREAS, the Debtor operates a continuing care retirement community ("CCRC") licensed under Article 46 of the New York Public Health Law; and

WHEREAS, on June 14, 2021, the Debtor, ACCHS, and certain holders of bonds issued by the Debtor (collectively, the "PSA Parties") entered into that certain Plan Support Agreement, pursuant to which the PSA Parties have agreed to support the Debtor's restructuring on the terms and conditions set forth on the Term Sheet attached thereto as Exhibit 1 (the "Restructuring Term Sheet"); and

WHEREAS, as soon as reasonably practicable after the execution of this Agreement, the Debtor will file a voluntary petition for relief under chapter 11 of title 11 of the United States Code before the United States Bankruptcy Court for the Eastern District of New York; and

WHEREAS, as soon as reasonably practicable after the initiation of its chapter 11 bankruptcy case, the Debtor will file its Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, substantially in the form previously shared with ACCHS (as amended, modified, or supplemented from time to time) (the "Plan"); and

WHEREAS, contemporaneously and in connection with the consummation of the Plan, the Debtor will enter into the 2021 Bond Documents (as that term is defined in the Plan); and

WHEREAS, ACCHS has agreed to provide, or cause to be provided, liquidity support during the Support Period (defined below) in the amounts and subject to the terms of this Agreement; and

WHEREAS, the Liquidity Support (defined below) made available to the Debtor under this Agreement will mitigate the risk that the Debtor may fail to satisfy certain financial requirements applicable to CCRCs under New York law, including with respect to payments of unpaid entrance fee refunds and satisfaction of minimum liquidity reserve requirements under New York State DSF Insurance Regulation 140 (the "Regulatory Requirements").

NOW, THEREFORE, in consideration of the above recitals and for other good and

valuable consideration, the receipt and adequacy of which are hereby acknowledged, ACCHS and the Debtor hereby agree as follows:

## AGREEMENT

### I. Definitions.

All capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to them in the Plan.

"Liquidity Reserve Account" means an account held by the Debtor and to be funded by ACCHS in the Maximum Support Amount from the sale of substantially all of the assets of Amsterdam Nursing Home Corporation (1992) and is not collateral for the Series 2021 Bonds and not subject to the liens of the Trustee for such Series 2021 Bonds.

"Liquidity Support" means funds from the Liquidity Reserve Account that the Debtor may withdraw upon the occurrence of a Liquidity Support Event in the amount necessary to maintain compliance with Regulatory Requirements.

"Liquidity Support Event" means any date on which the Debtor lacks sufficient Cash on hand to comply with Regulatory Requirements absent Liquidity Support.

"Maximum Support Amount" means nine million dollars ($9,000,000).

"Support Period" means the period beginning on the LSA Effective Date and ending on the tenth anniversary of the LSA Effective Date.

### II. Liquidity Reserve Account

(a) Source of Funds. On or as soon as practicable after the LSA Effective Date (defined below), the Liquidity Reserve Account will be funded in the Maximum Support Amount from the proceeds of the sale (the "Nursing Home Sale") of substantially all of the assets of Amsterdam Nursing Home Corporation (1992) ("ANH"). Notwithstanding anything to the contrary herein, ACCHS shall have no obligation to perform any of its obligations under this Agreement, including without limitation its obligation to fund the Liquidity Reserve Account and provide Liquidity Support, unless and until the conditions precedent set forth in Section II(b)(i), (ii), (iii), and (iv) of this Agreement have been satisfied.

(b) LSA Effective Date: ACCHS' obligation to fund the Maximum Support Amount into the Liquidity Reserve Account (the "LSA Effective Date") shall occur on the date that each of the following conditions precedent have been satisfied:

(i) Any and all requisite state and local approvals, including without limitation, approval of the New York State Attorney General, if required, have been obtained with respect to the closing of the Nursing Home Sale.

(ii) The closing of the Nursing Home Sale has occurred.

(iii) Any and all requisite state and local approvals, including without limitation, approval of the New York State Attorney General, if required, have been obtained with respect to the use of the proceeds of the Nursing Home Sale to fund the Liquidity Support Account in accordance with this Agreement.

(iv) The Effective Date of the Plan has occurred.

**III. Liquidity Support**

(a) Notice of a Liquidity Support Event. During the Support Period, the Debtor may, upon obtaining knowledge that a Liquidity Support Event has occurred, deliver a written notice (the "Notice") to ACCHS advising of such Liquidity Support Event. The Notice shall state the reason for the Liquidity Support Event and include appropriate documentation, including without limitation, documentation as to the amount of Liquidity Support needed and requested.

(b) Consent. ACCHS shall have five (5) Business Days following receipt of a Notice to advise the Debtor whether it objects to Debtor's use of Liquidity Support from the Liquidity Reserve Account. ACCHS shall not unreasonably object to any such request in accordance with the terms of this Agreement, and if ACCHS provides no objection within such five (5) Business Day period ("Objection"), ACCHS shall be deemed to have consented to the Debtor's use of Liquidity Support as specified in the Notice. The Plan shall provide that the Bankruptcy Court shall retain jurisdiction to hear and determine any disputes between the Parties with respect to the Debtor's right to access Liquidity Support, and the Parties consent to the jurisdiction of the Bankruptcy Court to resolve any such disputes.

(c) Repayment. The Debtor shall not be obligated to repay any amounts of Liquidity Support provided by ACCHS pursuant to this Agreement.

(d) Effect of Liquidity Support Arrangements. In consideration of ACCHS entering into this Agreement, the Debtor acknowledges and agrees that: (i) all of its representations and warranties made herein and in the 2021 Bond Documents are true and correct; (ii) no Event of Default as defined in the 2021 Bond Documents has occurred and is continuing; (iii) it is or, upon emergence from chapter 11, will be in compliance with all Regulatory Requirements; and (iv) it will cooperate in good faith with ACCHS in its operations and dealing with ACCHS.

**IV. Termination.**

This Agreement shall terminate following the earliest to occur of: (a) the last day of the Support Period or (b) the institution by Debtor after the LSA Effective Date of chapter 7 bankruptcy proceedings or any other similar proceedings pursuant to which the Debtor seeks to liquidate its assets (and explicitly excluding any restructuring proceeding pursuant to which the Debtor seeks to reorganize its assets, debts, obligations, or operations). Upon termination of this Agreement, any and all funds in the Liquidity Reserve Account that have not been previously disbursed to the Debtor as Liquidity Support shall revert to ACCHS, and the Debtor shall have no interest in or claim to such funds; provided that any request for Liquidity Support pending at the time of such termination not subject to an Objection, shall be honored in accordance with this agreement as if such termination had not occurred.

**V. Scope of ACCHS Obligations; Indemnification.**

(a) Limitation on Liabilities of ACCHS. ACCHS' aggregate liability under this Agreement shall in no event exceed an amount equal to the Maximum Support Amount minus any Liquidity Support amounts previously paid, and in no event shall ACCHS be required to provide any amount of Liquidity Support at any time outside of the Support Period. Nothing in this Agreement shall make ACCHS liable for the Debtor's obligations under the 2021 Bond Documents, or for any other obligations of the Debtor.

(b) Indemnification. The Debtor shall indemnify, defend and hold ACCHS and its directors, officers, employees, officials, agents, and affiliates (collectively, the "Indemnified Parties") harmless for any and all claims, demands, actions, suits, liabilities, injuries, damages, losses, settlements, judgments, costs and expenses (including but not limited to reasonable attorney's fees and costs) (collectively, the "Claims"), whether or not involving a third party claim, arising out of or in connection with (1) any breach of any representation or warranty of the Debtor contained in this Agreement; or (2) any breach or violation of any covenant or other obligation or duty of the Debtor under this Agreement or under applicable law, in each case whether or not caused by the negligence of any Indemnified Party and whether or not the relevant Claim has merit.

**VI. Representations and Warranties.**

(a) The Debtor Representations and Warranties. On and as of the date of this Agreement, the Debtor represents and warrants to ACCHS that:

(i) Due Incorporation, Qualification, etc. The Debtor is a not-for-profit corporation duly organized, validly existing and in good standing under the laws of the State of New York and has the requisite corporate power and authority to conduct its business as it is presently being conducted.

(ii) Authority. The execution, delivery and performance by the Debtor of this Agreement and the consummation of the transactions contemplated hereby (A) are within the corporate power and authority of the Debtor; and (B) have been duly authorized by all necessary corporate actions on the part of the Debtor.

(iii) Enforceability. This Agreement has been duly executed and delivered by the Debtor and constitutes a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, except as may be limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(iv) Approvals. Other than those already obtained, no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or any other person or entity is required in connection with the execution and delivery by the Debtor of this Agreement or the performance and consummation by the Debtor of the transactions contemplated hereby.

(v) Litigation. There are no material actions, suits, proceedings or investigations pending against the Debtor or its properties, nor has the Debtor received notice of any threat thereof, and the Debtor is not a party or, to its knowledge, subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality, in each case which the Debtor has not previously disclosed to ACCHS.

(vi) Non-Contravention. The execution and delivery by the Debtor of this Agreement and the performance and consummation of the transactions contemplated hereby do not and will not (A) violate the articles or certificate of incorporation or bylaws of the Debtor; (B) violate any judgment, order, writ, decree, statute, rule or regulation applicable to the Debtor; (C) violate any provision of, or result in the breach or the acceleration of, or entitle any other person to accelerate (whether after the giving of notice or lapse of time or both), any material mortgage, indenture, agreement, instrument or contract to which the Debtor is a party or by which it is bound; or (D) result in the creation or imposition of any lien upon any property or asset of ACCHS.

(b) ACCHS Representations and Warranties. On and as of the date of this Agreement, ACCHS represents and warrants to the Debtor that:

(i) Due Incorporation, Qualification, etc. ACCHS is duly organized, validly existing and in good standing under the laws of the State of New York and has the requisite power and authority to conduct its business as it is presently being conducted.

(ii) Authority. The execution, delivery and performance by ACCHS of this Agreement and the consummation of the transactions contemplated hereby (A) are within the corporate power and authority of ACCHS; and (B) have been duly authorized by all necessary corporate actions on the part of ACCHS.

(iii) Enforceability. This Agreement has been duly executed and delivered by ACCHS and constitutes a legal, valid and binding obligation of ACCHS, enforceable against ACCHS in accordance with its terms, except as may be limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(iv) Approvals. Other than those already obtained or set forth herein, no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or any other person or entity is required in connection with the execution and delivery by ACCHS of this Agreement and the performance and consummation by ACCHS of the transactions contemplated hereby.

(v) Non-Contravention. The execution and delivery by ACCHS of this Agreement and the performance and consummation of the transactions contemplated hereby do not and will not (A) violate the articles or certificate of incorporation or bylaws (or equivalent governing documents) of ACCHS; (B) violate any judgment, order, writ, decree, statute, rule or regulation applicable to ACCHS; (C) violate any provision of, or result in the breach or the acceleration of, or entitle any other person to accelerate (whether after the giving of notice or lapse of time or both), any mortgage, indenture, agreement, instrument or contract

to which ACCHS is a party or by which it is bound; or (D) result in the creation or imposition of any lien upon any property or asset of ACCHS.

**VII. Miscellaneous.**

(a) Notices. Except as otherwise provided herein, all notices, requests, demands, consents, instructions or other communications to or upon ACCHS or the Debtor under this Agreement shall be in writing and delivered by electronic mail, facsimile, hand delivery, overnight courier service or certified mail, return receipt requested, to each party at the address set forth below (or to such other address most recently provided by such party to the other party). All such notices and communications shall be effective (i) when sent by Federal Express or other overnight service of recognized standing, on the Business Day following the deposit with such service, (ii) when mailed, by registered or certified mail, first class postage prepaid and addressed as aforesaid through the United States Postal Service, upon receipt, (iii) when delivered by hand, upon delivery, and (iv) when faxed or emailed, upon confirmation of receipt.

**If to Debtor:**

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: James Davis

**Copy to:**

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Pamela Landman

**And:**

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn: Thomas Califano

**If to ACCHS:**

Amsterdam Continuing Care Health System, Inc.
1060 Amsterdam Avenue
New York, NY 10025
Attn: James Davis

**Copy to:**

Amsterdam Continuing Care Health System, Inc.
1060 Amsterdam Avenue
New York, NY 10025
Attn: Pamela Landman

**And:**

Moritt Hock & Hamroff LLP
1407 Broadway, 39th Floor
New York, NY 10018
Attn: Ted A. Berkowitz

**And:**

Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, NY 11530
Attn: Allison Arotsky

(b) Nonwaiver. No failure or delay by any Party in exercising any right hereunder shall operate as a waiver of such right of such Party or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right by such Party or any other Party.

(c) Amendments and Waivers. This Agreement may not be amended or modified, nor may any of its terms be waived, except by a written instrument signed by the Debtor and ACCHS with the consent of the Trustee for the Series 2021 Bonds. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

(d) Assignments.

(i) Assignment by the Debtor. This Agreement may not be assigned by the Debtor except upon the prior written consent of ACCHS, which consent may be withheld in ACCHS' sole discretion.

(ii) Successors and Assigns. No assignment of this Agreement shall be valid until all of the obligations of the assignor hereunder shall have been assumed by the assignee by written agreement delivered to the other Parties. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

(e) Partial Invalidity; Reinstatement. If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor

the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(f) Applicable Law, Jurisdiction, etc.

(i) GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA, WITHOUT REFERENCE TO ITS CONFLICTS OF LAWS.

(ii) SUBMISSION TO JURISDICTION. EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL DISTRICT COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT ANY PARTY HERETO MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST ANY OTHER PARTY HERETO OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(iii) WAIVER OF VENUE. EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY COURT REFERRED TO HEREIN. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(iv) WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (i) CERTIFIES THAT NO

REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS AS SET FORTH HEREIN.

(g) Counterparts and Electronic Signatures. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The facsimile, email or other electronically delivered signatures of the Parties shall be deemed to constitute original signatures, and facsimile or electronic copies hereof shall be deemed to constitute duplicate originals.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**Amsterdam House Continuing Care Retirement Community, Inc.**

By:____________________________
Print Name: James Davis
Title: President and Chief Executive Officer

**Amsterdam Continuing Care Health System, Inc.**

By:____________________________
Print Name: Pamela Landman
Title: General Counsel

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**DECLARATION OF MICHAEL MORTON IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Michael Morton, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of Amsterdam House Continuing Care Retirement Community, Inc. (d/b/a The Harborside) ("The Harborside" or the "Debtor"), the debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case").

2. I am also a Senior Managing Director at Ankura Consulting Group LLC ("Ankura"). Ankura was retained by the Debtor in November 2022, and I was appointed to the role of CRO on March 21, 2023. I hold a bachelor's degree in business administration, a Master of Accounting degree from Southern Methodist University, and am a Certified Public Accountant. I have more than fourteen years of financial advisory, restructuring, and bankruptcy-related experience, with a focus on the U.S. healthcare market. During that time, I have advised and assisted distressed companies across various complex financial, operational, and strategic situations, including serving in interim management positions. My experience includes financial statement analysis, financial projection development, liquidity and cash management, M&A

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

support, stakeholder negotiations, balance sheet recapitalization and restructuring, postpetition financing and sourcing, and bankruptcy preparation and administration.

3. I have played a key role in many successful chapter 11 restructurings, including *In re SQLC Senior Living Ctr. at Corpus Christi Inc.*, Case No. 19-20063 (DRJ) (Bankr. S.D. Tex. 2019); *In re Mayflower Communities d/b/a The Barrington of Carmel*, No. 19-30283 (HDH) (Bankr. N.D. Tex. 2019); *In re Elk Petroleum, Inc.*, Case No. 19-11157 (LSS) (Bankr. D. Del. 2019); *In re Tarrant County Senior Living Ctr., Inc. d/b/a The Stayton at Museum Way*, No. 19-33756 (SGJ) (Bankr. N.D. Tex. 2019); *In re 4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. 2018); and *In re Gulf Coast Health Care, LLC*, Case No. 21-11336 (KBO) (Bankr. D. Del. Dec. 17, 2021). I have also served in interim management roles in other out-of-court matters.

4. The Debtor's Board of Directors (the "Board") oversees the Debtor's management and I report directly to the Board. In my capacity as CRO for the Debtor, I have personal knowledge of, and am familiar with, the business affairs, day-to-day operations, books and records, and financial condition of the Debtor, and I am authorized to submit this Declaration (the "Declaration") on behalf of the Debtor. I submit this Declaration to assist the Court and parties in interest in understanding the circumstances that led to the commencement of this Chapter 11 Case and in support of: (a) the Debtor's voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York, Central Islip Division (the "Court"), and (b) the following motions and application filed contemporaneously herewith or shortly thereafter (collectively, the "First Day Motions"):[2]

[2] Capitalized terms used but not defined in this Declaration are defined as in the relevant First Day Motion.

i. *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) a Waiver of Certain Deposit and Investment Requirements in 11 U.S.C. § 345(b) and the UST Guidelines* (the "Cash Management Motion");

ii. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief* (the "Employee Wages Motion");

iii. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fees, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief* (the "Taxes Motion");

iv. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* (the "Utilities Motion");

v. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief* (the "Insurance Motion");

vi. *Debtor's Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information* (the "Resident Confidentiality Motion");

vii. *Debtor's Application for Entry of an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date* (the "Epiq Retention Application");

viii. *Debtor's Emergency Motion for Entry of an Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates* (the "Case Management Motion");

ix. *Debtor's Motion for Entry of an Order Extending the Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "Schedules Extension Motion"); and

x. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "DIP Financing Motion").

5. I am generally familiar with the First Day Motions and believe that the relief sought therein allows the Debtor to fulfill its duties as debtor in possession and minimize any disruption to its business operations that may result from this Chapter 11 Case. Additionally, I believe that the relief requested in the First Day Motions is important to ensure that the Debtor can continue to deliver necessary care and services to its Residents (as defined below).

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and knowledge of the Debtor's operations and financial condition, and information provided to me by management, advisors, or other representatives of the Debtor. If called as a witness, I would testify consistently with this Declaration.

7. To familiarize the Court with the Debtor and the relief sought in the First Day Motions, this Declaration is organized into three sections. Section I provides an overview of the Debtor's operations and capital structure. Section II sets forth the events that led to this Chapter 11 Case. Section III sets forth facts in support of each of the First Day Motions, which the Debtor believes are critical to administering this Chapter 11 Case and preserving and maximizing the value of its estate. Additionally, this Declaration provides the information required by Rule 1007-4 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

## PRELIMINARY STATEMENT[3]

8. The Debtor is a New York not-for-profit corporation that developed and operates The Harborside, a best-in-class continuing care retirement community ("CCRC") in Port Washington, New York. As a CCRC, the Debtor offers its Residents a continuum of care in a campus-style setting, providing living accommodations and related health care and support services to a target market of seniors aged sixty-two (62) and older.

9. For many seniors, moving into a CCRC is an attractive option because it minimizes the burdens and costs associated with the aging process and ensures that they can remain in place if their medical needs change. These seniors will often sell their homes, liquidate significant assets and/or invest a significant portion of their life savings to become a part of a CCRC like The Harborside.

10. CCRCs, however, are operationally and financially complex. First, CCRCs must maintain a broad range of services for the benefit of their Residents in varying stages of the aging process. Second, CCRCs require significant capital investments to maintain the physical plant and amenities provided to Residents. Third, given that CCRCs are entrusted with the health and well-being of seniors, they must comply with state and federal regulations and are subject to oversight by several regulatory agencies. In particular, CCRCs in New York are required to, among other obligations, maintain a minimum liquid reserve (the "MLR") that is calculated based upon the CCRC's projected annual operating expenses, taxes and insurance expenses, Entrance Fee Refunds and annual debt service payments. In 2022, the Debtor was required to maintain an MLR totaling approximately $27.0 million. Finally, unlike in other parts of the country, CCRCs in New York are required to pay Entrance Fee Refunds upon the earlier of (a) thirty (30) days after a new resident

---

[3] All capitalized terms referenced in this Preliminary Statement and not otherwise defined shall have the meanings ascribed to them below.

executes a Residency Agreement and occupies a unit vacated by the resident entitled to a refund, or (b) one (1) year after termination of the former resident's Residency Agreement, regardless of whether the CCRC has received a corresponding Entrance Fee.[4]

11. To meet its operational, financial, and regulatory obligations, the Debtor relies on revenue generated by existing and new Residents. Any disruption to the Debtor's ability to attract new Residents has a significant and prolonged impact on the Debtor's liquidity, particularly given the Debtor's obligation to pay large Entrance Fee Refunds even in the absence of receiving an Entrance Fee from a new Resident. A myriad of factors can cause such a disruption, including general economic conditions, the real estate market and, most recently, a global pandemic.

12. As the Court likely recalls, the Debtor previously faced financial distress resulting from challenges with attracting new Residents. In 2014, the Debtor commenced the 2014 Chapter 11 Case as a result of financial distress precipitated by the recession and economic downturn experienced by the country as a whole following the 2008 real estate crisis.[5] Given that individuals interested in residing in a CCRC typically sell their existing home to fund the required Entrance Fee, the extended decline in the real estate market, combined with a decline in financial markets, left many individuals without the financial resources to pay the entrance fees for CCRCs, including The Harborside. As a result, the Debtor was unable to achieve stabilized occupancy levels and

---

4 CCRCs located in other states are not subject to many of the regulations imposed on CCRCs in New York. For example, CCRCs located in other states are only required to pay an Entrance Fee Refund once the CCRC receives a new Entrance Fee.

5 The Harborside was not the only CCRC to seek chapter 11 relief in and around 2014. Others include *In re Hebrew Hospital Senior Housing Inc.*, Case No. 15-13264 (MEW) (Bankr. S.D.N.Y. Dec. 9, 2015) (New York-based CCRC operator); *In re River Terrace Estates, Inc.*, Case No. 14-11829 (REG) (Bankr. N.D. Ind. July 22, 2014) (CCRC in Bluffton, Indiana); *In re Sears Methodist Retirement System, Inc. and Senior Dimensions, Inc.*, Case No. 14-32821 (SGJ) (Bankr. N.D. Tex. June 10, 2014) (Texas-based senior living operator); and *In re Life Care St. Johns, Inc.*, Case No. 13-04158 (JAF) (Bankr. M.D. Fla. July 3, 2013) (Jacksonville-based CCRC).

defaulted under the 2007 Bond Documents.[6] Thereafter, the Debtor, the 2007 Bond Trustee, and certain holders of the Series 2007 Bonds negotiated a consensual restructuring of the Debtor's bond obligations. The Harborside emerged from the 2014 Chapter 11 Case in November 2014.

13. In 2021, the Debtor again faced challenges with its occupancy that were exacerbated by the unprecedented impact of the COVID-19 pandemic. To preserve liquidity during the COVID-19 pandemic, the Debtor ceased making debt service payments and suspended payments of Entrance Fee Refunds.[7] The failure to pay Entrance Fee Refunds caused the Debtor to fall out of compliance with the terms of certain Residency Agreements and Section 4609 of New York Public Health Law ("PHL"). To address its financial condition, the Debtor engaged in extensive negotiations with Amsterdam Continuing Care Health System, Inc., its sole corporate member (the "Member" or "ACCHS"), the 2014 Bond Trustee, and certain holders of the 2014 Bonds, resulting in a consensual restructuring that was executed in the 2021 Chapter 11 Case. The plan of reorganization that was confirmed in the 2021 Chapter 11 Case provided for, among other things, additional liquidity from the Series 2021A Bonds and the Member. Upon emergence from the 2021 Chapter 11 Case, The Harborside, and presumably the 2021 Bond Trustee and holders of the Series 2021A Bonds, believed that The Harborside's post-restructuring cash flow would allow it to service its debt, timely pay Entrance Fee Refunds and remain in regulatory compliance.[8]

---

6 *See Declaration of James Davis in Support of the Chapter 11 Petition and First Day Motions*, Case No. 14-73348 (AST) (Bankr. E.D.N.Y. July 22, 2014) [Docket No. 12], ¶ 36.

7 *See Declaration of James Davis in Support of the Debtor's Chapter 11 Petition and First Day Pleadings*, Case No 21-71095 (AST) (Bankr. E.D.N.Y. June 14, 2021) [Docket No. 2], ¶ 18.

8 *See Declaration of David B. Fields in Support of the Revised First Amended Chapter 11 Plan of Reorganization for Amsterdam House Continuing Care Retirement Community, Inc.*, Case No. 21-71095 (AST) (Bankr. E.D.N.Y. Aug. 20, 2021) [Docket No. 196], ¶¶ 8, 18 (noting the consenting bondholders' support for the plan as "a testament to the Revised First Amended Plan's feasibility and likelihood of success.").

14. Nevertheless, after emerging from the 2021 Chapter 11 Case, the Debtor continued to face challenges attracting new Residents because of the lingering impact of the COVID-19 pandemic and the Debtor's prior restructurings. Additionally, as the Debtor struggled to stabilize following the 2021 Chapter 11 Case, the Debtor's financial condition was further strained by rising labor costs and inflationary pressure felt by CCRCs across the country.[9] Together, these challenges began to threaten the Debtor's ability service its debt obligations, honor Entrance Fee Refunds and remain in regulatory compliance.

15. Beginning in May 2022, representatives of the Debtor engaged in discussions with the 2021 Bond Trustee and certain holders of the Series 2021 Bonds (collectively, the "Bondholder Group") regarding its marketing, financial and regulatory challenges, and the steps being taken to address those challenges. Among such steps, in August 2022, the Debtor retained, with approval from the Bondholder Group, a consultant to provide strategic marketing services to improve the Debtor's marketing efforts and, ultimately, its occupancy levels.

16. In September 2022, after seeing little improvement in its occupancy levels and facing a deteriorating financial condition, the Debtor retained, with input from the Bondholder Group, Grandbridge Real Estate Capital LLC ("Grandbridge") to commence a marketing process for the sale or affiliation of The Harborside (the "Marketing Process").

17. Once engaged, Grandbridge prepared and distributed a marketing teaser to over 4,400 interested parties, including non-profit and for-profit operators located in New York and across the country. Subsequently, Grandbridge prepared and distributed an offering memorandum

---

[9] Other senior living facilities have cited similar circumstances in their first day declarations. *See, e.g., In re American Eagle Delaware Holding Company LLC*, Case No. 22-10028 (JKS) (Bankr. D. Del. Mar. 14, 2023) [Docket No. 4], ¶ 11 (describing "exponential increases in labor costs and other COVID-related operating expenses"); *In re Christian Care Centers, Inc.*, Case No. 22-80000 (SGJ) (Bankr. N.D. Tex. May 23, 2022) [Docket No. 3], ¶ 48 (citing "increasing labor costs" over the course of the COVID-19 pandemic); and *In re Northwest Senior Housing Corp.*, Case No. 22-30659 (MLV) (Bankr. N.D. Tex. Apr. 14, 2022) [Docket No. 7], ¶ 41 (noting "dramatically higher labor costs and costs for additional personal protective equipment").

and a detailed bid instruction letter to interested parties that signed non-disclosure agreements. On December 13, 2022, the Debtor received six letters of intent (the "LOIs"). All of the LOIs provided for, among other things, a recovery to the holders of the Series 2021 Bonds, the assumption of all Residency Agreements, and the continued operation of The Harborside as a CCRC.

18. Throughout the Marketing Process, the Debtor kept the Bondholder Group updated and solicited feedback from its members regarding the Debtor's proposed marketing timeline, marketing teaser, offering memorandum and bid instruction letter before sharing them with interested parties. Further, at the Bondholder Group's request, The Harborside provided weekly reports regarding the status of the Marketing Process that identified, among other things, the interested parties who engaged in the process. The Debtor also provided the Bondholder Group with copies of all indications of interest and LOIs, invited the Bondholder Group to join interviews of the three bidders that submitted the highest and best bids (the "Top Bidders") and made several requests for feedback on the LOIs.

19. Additionally, during the Marketing Process, the Debtor requested that the Bondholder Group forbear from exercising remedies and provide bridge funding to allow The Harborside to pursue the Top Bidders with the support of the Bondholder Group and maximize value for its stakeholders. To support its request, the Debtor provided the Bondholder Group with detailed projections that demonstrated The Harborside's declining liquidity.

20. Notwithstanding the Debtor's best efforts to garner the Bondholder Group's support and feedback, the Bondholder Group was unwilling to engage in discussions with the Debtor regarding the LOIs for reasons outside of the Debtor's control, despite knowing that the Top Bidders either (i) expressly required the support of the Bondholder Group or (ii) contemplated

obtaining significant financing in the bond market, including potentially from members of the Bondholder Group.

21. Additionally, in January 2023, the 2021 Bond Trustee sent a letter advising the Debtor of its acceleration of the 2021 Bond Obligations and swept over $15.0 million in cash held in reserve accounts, including funds held in an account intended to support The Harborside's operations. Not only did such actions signal the Bondholder Group's lack of support, but they caused several additional challenges for the Debtor, including with respect to its MLR compliance.

22. Given its deteriorating financial condition and the Debtor's concerns regarding the impact of the Bondholder Group's actions on the Marketing Process, the Debtor urged the Bondholder Group to reconsider its position so that the Debtor could maximize value for its stakeholders, including the Bondholder Group. In fact, the Debtor advised the Bondholder Group that its refusal to engage with Top Bidders would likely result in the Top Bidders either withdrawing or modifying their LOIs to the detriment of the Debtor's stakeholders. Despite such repeated efforts by the Debtor, the Bondholder Group refused to engage, leaving the Debtor with no choice but to proceed with its Marketing Process without the Bondholder Group's input or support.

23. In the interest of maximizing value for all of its constituents, the Debtor contacted the Top Bidders and requested they submit bids that did not require support from the Bondholder Group. Following extensive and arm's-length negotiations, the Debtor and New England Life Plan Communities Corp. (together with its designee, if any, the "Plan Sponsor") agreed upon a non-binding term sheet (the "Stalking Horse Term Sheet"), pursuant to which the Plan Sponsor is prepared (subject to a diligence period, definitive documentation, and Court approval) to act as the sponsor for a plan of reorganization (the "Proposed Plan") to be filed by the Debtor in this Chapter

11 Case. The Proposed Plan will provide for either (i) the Plan Sponsor to acquire the sole corporate membership interest in the reorganized Debtor or, alternatively, substantially all of the Debtor's assets pursuant to a sale under the Proposed Plan and/or sections 363 and 365 of the Bankruptcy Code, subject to an auction process and bidding procedures or (ii) the Plan Sponsor to acquire the sole corporate membership interest in the Debtor and all of the Series 2021 Bonds. These alternatives, which will be subject to additional marketing and an overbid process, are intended to provide for the greatest flexibility and value for the Debtor's constituents while providing the Debtor with an exit strategy for this Chapter 11 Case.

24. The Plan Sponsor is a not-for-profit entity that intends to work with OnePoint Partners, Senior Care Development, Fundamental Advisors, and Benchmark Senior Living to provide The Harborside with critical operational, financial and turnaround support needed to become a successful CCRC. The Plan Sponsor intends to, among other things, continue operating The Harborside as a best-in-class CCRC, assume all Residency Agreements and fund state-required, operating, debt service and capital expenditure reserves.

25. As discussed above, in this Chapter 11 Case, the Debtor intends to commence a postpetition marketing and overbid process to find potentially higher and better offers for the sale of its business under section 363 of the Bankruptcy Code, thus maximizing the return to creditors and other parties in interest. To preserve the value of The Harborside during this process and to facilitate a smooth transition into this Chapter 11 Case, the Member has agreed to provide postpetition financing (in such capacity, the "DIP Lender") to the Debtor in an aggregate principal amount of up to $9,000,000 in accordance with the DIP Term Sheet, as described in more detail in the DIP Financing Motion. The terms and conditions of the postpetition financing were negotiated in good faith and at arm's-length among the Debtor and Debtor's counsel, on one hand,

and the DIP Lender, through its counsel, on the other, culminating in the DIP Term Sheet that is designed to provide the Debtor with essential working capital. The Debtor requires postpetition financing to administer this Chapter 11 Case and fund The Harborside's day-to-day operations.

26. Among other terms and conditions, the Member has agreed to provide the DIP Loan on a non-priming basis and to forgive the DIP Loan upon execution of an acceptable restructuring transaction.

27. Despite its previous debt restructurings and the funding provided by the Series 2021A Bonds and the Member, the Debtor continues to face liquidity challenges as a result of declining occupancy levels and increased operating expenses. Given these difficult circumstances, the Debtor seeks to pursue an alternative restructuring path through the sale of its assets to, or an affiliation with, a skilled and well-funded CCRC operator. Immediately following commencement of this Chapter 11 Case, the Debtor and its advisors intend to, among other things: (i) engage in discussions with the Debtor's key constituents regarding the Proposed Plan; (ii) seek approval of the Plan Sponsor as the stalking horse; (iii) conduct a robust marketing and overbid process; and (iv) execute on a restructuring transaction that is in the best interest of the Debtor and its creditors, residents, employees and, to the extent feasible, perpetuates its not-for-profit mission to provide a CCRC that meets the special housing needs of elderly people.

## I. <u>OVERVIEW OF THE DEBTOR'S BUSINESS</u>

### A. Description of The Harborside's Continuing Care Retirement Community

28. As previously noted, the Debtor is a New York not-for-profit corporation that built and operates The Harborside, a best-in-class CCRC situated on approximately 8.9 acres in Port Washington, New York. The Harborside offers its senior residents (the "<u>Residents</u>") a continuum of care in a campus-style setting, providing living accommodations and related health care and support services to a target market of seniors aged sixty-two (62) and older.

29. Upon entering The Harborside, Residents are provided spacious apartments and a broad range of social and recreational activities to create an unmatched quality of life. As Residents require additional assistance with everyday activities or health care services, they have access to assisted living, memory support, skilled nursing facilities and rehabilitation located on the same campus. Residents of The Harborside have entrusted their health, safety, and well-being to the Debtor for the duration of their lives.

30. Specifically, The Harborside offers approximately 329 units of varying sizes for independent, enriched, and skilled nursing care. Notably, The Harborside has 229 independent living units, as well as 100 units in its Isaac H. Tuttle Health Center (the "Health Center"), comprised of 26 enriched housing units, 18 special needs assisted living residence units also licensed as enhanced assisted living residence units, and 56 skilled nursing beds. The Health Center provides short-term rehabilitation and long-term care to its Residents and to individuals living in the community who enter into an Admissions Agreement (as defined below) for the provision of services in the Health Center. The Health Center is certified for Medicare and Medicaid by the Department of Health and Human Services' Center for Medicare & Medicaid Services ("CMS") and is also licensed by the New York State Department of Health (the "DOH"). Approximately ten percent (10%) of Residents in the Health Center are covered by Medicaid.

**B. Residency and Admission Agreements**

31. Before occupying The Harborside, each Resident is required to execute with the Debtor a residency agreement (each, a "Residency Agreement"). The Residency Agreement provides the terms and conditions that each Resident living in an independent living unit must abide by while residing at The Harborside, and also outlines the Resident's obligations regarding the payment of entrance fees (the "Entrance Fees"), the Resident's rights to a refund of such

Entrance Fees (the "Entrance Fee Refunds"), and other monthly charges that may be due during the duration of the Resident's stay at The Harborside (the "Monthly Service Fees").[10]

32. The Debtor currently offers prospective independent living Residents the choice of three residency plans, each evidenced by a different Residency Agreement. The residency plans primarily differ with regard to the required Entrance Fees, the Monthly Service Fees, and the amount that potentially can be refunded thereunder. Generally, the purpose of the Entrance Fees is to pay refunds to Residents upon termination of a Residency Agreement in accordance with its terms, pay certain project costs, service debt obligations, cover operating expenses, and generate investment income for the benefit of The Harborside and its Residents. Prospective Residents typically pay ten percent (10%) of the Entrance Fee upon execution of a Residency Agreement, and the remaining balance prior to occupancy. Depending on the form of Residency Agreement selected and unit size, Entrance Fees in 2023 ranged from approximately $500,000 to $2,300,000. Under the Residency Agreements, prospective Residents are entitled to a full refund of any monies paid to the Debtor if they seek a refund prior to occupying a living unit at The Harborside. Once a Resident has occupied a unit at The Harborside for more than ninety (90) days[11] and their Residency Agreement has subsequently terminated, that Resident is entitled to a refund of a portion of the Entrance Fees paid by such Resident upon the earlier of (a) thirty (30) days after a new Resident executes a Residency Agreement and occupies the unit at The Harborside vacated by the Resident entitled to a refund, or (b) one (1) year after termination of the Residency Agreement. The terms of any refund rights are outlined in the Residency Agreements.

---

10 Under the terms of the Residency Agreement, independent living unit Residents are also eligible to receive treatment in the Health Center. Under this arrangement, such Residents continue paying Monthly Service Fees while receiving treatment in the Health Center.

11 Under each form of Residency Agreement, a Resident is entitled to a full refund of the Entrance Fee, less any actual cost of services or charges incurred to customize the residence, if the Residency Agreement is terminated within ninety (90) days of initial occupancy.

33. In addition to the Entrance Fees, the Debtor also charges Residents a Monthly Service Fee. For Residents under a Residency Agreement, the Monthly Service Fees in 2023 ranged from $3,378 to $8,916 per month, depending upon the Residency Agreement and unit selected. The Debtor reviews Monthly Service Fees periodically and adjusts them as necessary to meet The Harborside's financial requirements. The New York State Department of Financial Services (the "DFS") must approve changes in the Monthly Service Fees.

34. The terms of each form of Residency Agreement that the Debtor currently offers are summarized as follows:

- 75% Refundable Plan: This plan offers Residents a 75% refundable contract (without interest). The Entrance Fees under this plan amortize[12] at 1% per month over twenty-five months until the allowable Entrance Fee Refund amount is reached.
- 50% Refundable Plan: This plan offers Residents a 50% refundable contract (without interest). The Entrance Fees under this plan amortize at 2% per month over twenty-five months until the allowable Entrance Fee Refund amount is reached. The Monthly Service Fees under this plan are 20% lower than the Monthly Service Fees under the 75% Refundable Plan.
- 0% Refundable Plan: This plan offers Residents a traditionally amortizing 0% refundable contract. The Entrance Fees under this plan amortize at 2% per month over fifty months until no Entrance Fee Refund is due. The Entrance Fees under this plan are 40% lower than the Entrance Fees under the 75% Refundable Plan.

The Debtor has historically offered other Residency Agreements, different from the above, with different amortization rates and refund amounts (the "Prior Residency Agreements"), but any such agreements are no longer offered to new Residents. As of the Petition Date, approximately 114 Residents have Prior Residency Agreements.

[12] Under the Residency Agreements and consistent with Article 46 of the PHL, a certain percentage of the Entrance Fee, typically between 1%–2%, amortizes and becomes non-refundable each month on account of the Resident's occupancy at The Harborside, for the number of months specified under the Residency Agreement.

35. Historically, in certain circumstances and in the ordinary course of business, the Debtor has provided prospective Residents the option of deferring payment of up to fifty percent (50%) of their Entrance Fees for up to ninety (90) days to allow that Resident to obtain the funds necessary to pay the Entrance Fees. This optional deferral is offered where Residents are unable to sell their existing home or have not yet sold and require funds from the sale of such home to pay the Entrance Fees. Residents under the deferral program execute a promissory note requiring them to pay the Entrance Fees fourteen (14) days after the closing of the sale of their home or within ninety (90) days after occupying The Harborside, whichever is earlier.

36. Finally, for a limited period, the Debtor is permitted to admit certain individuals not residing in an independent living unit to the Health Center by entering into an admission agreement (each, an "Admission Agreement") with the Debtor. The Admission Agreement is a contract that provides the terms and conditions by which individuals must abide while admitted to the Health Center and outlines each individual's obligation to pay fees or charges for healthcare services[13] rendered by the Debtor.[14]

**C. The Harborside's Sole Corporate Member and Affiliations**

37. The Debtor's sole corporate member is ACCHS, which is also a New York not-for-profit corporation. ACCHS was established in 1997 with a stated mission "[t]o operate as a clearinghouse for information about the work and activities of various independent not-for-profit organizations that are devoted to the provision of health care, housing, and services to the ill, the impaired, the disabled, and the elderly, including, for such purpose, the provision of advisory

---

[13] Individuals entering the Health Center under an Admission Agreement do not pay Entrance Fees. Furthermore, the Admission Agreement does not contemplate continuum of care.

[14] As of the Petition Date, the Debtor believes that approximately thirty-five (35) Residents are parties to Admission Agreements.

services, so long as each organization so supported is an organization described in Section 501(c)(3) of the [Internal Revenue] Code."

38. The Debtor is also affiliated with the following New York entities:

- Amsterdam Nursing Home Corporation (1992), established in 1995, is a New York not-for-profit corporation that succeeded an organization established in 1872. It owns and operates a 409-bed skilled nursing facility and a 40-registrant adult day health care program in upper Manhattan, and maintains clinical and academic relationships with various hospitals; and

- Amsterdam 2012, Inc., established in 2012, is a New York not-for-profit corporation that was formed "[t]o acquire and develop real property to be used for healthcare, retirement and related services," and "[t]o meet the special housing needs of elderly persons by planning, developing, organization, constructing, requiring, altering, reconstructing, rehabilitating, owning, operating and maintaining housing for elderly individuals and families in order to promote their general welfare by providing them with safe, sanitary and independent living facilities."

**D. Financial Management of The Harborside**

39. On October 23, 2014, the Debtor entered into a Financial Services Advisory Agreement (the "FSAA") with GMSC New York, LLC ("Greystone"), a Texas limited liability company and a wholly owned subsidiary of GMSC, LLC, under which Greystone provides financial advisory services for the Debtor. The Debtor's contract with Greystone expires in October 2023.

40. Per the terms of the FSAA, Greystone advises the Debtor in the financial management of The Harborside including assisting with the annual plan and operating budget, financial analysis, and financial reporting. The FSAA specifies that Greystone's fees are $25,000 per month. Greystone acts as an independent contractor in the performance of its obligations under the agreement.

**E. Regulatory Agencies**

41. The CCRC industry nationwide is regulated by various state and federal agencies. As a CCRC operating in the State of New York pursuant to Article 46 of the PHL and Regulation 140 of the New York Insurance Regulations, the Debtor is regulated by the DFS and DOH. In addition, as a participant in the Medicare and Medicaid Programs, the Debtor is subject to certification by CMS.

**F. Prior Bankruptcy Filings**

42. On July 22, 2014, the Debtor commenced a chapter 11 case (Case No. 14-73348 (AST)) (the "2014 Chapter 11 Case") to implement a largely consensual balance sheet restructuring through a pre-negotiated chapter 11 plan (the "2014 Plan") that was agreed to by the Debtor, the trustee to the Debtor's then-outstanding bonds (the "Series 2007 Bonds") and the holders of approximately seventy-five percent (75%) of the aggregate principal amount of the Series 2007 Bonds. On October 23, 2014, the Court entered an order confirming the 2014 Plan. The 2014 Plan became effective on November 13, 2014. On that date, the Series 2007 Bonds (plus accrued and unpaid interest during the bankruptcy period) were exchanged for the Series 2014 Bonds (as defined in the 2014 Plan).

43. On June 14, 2021, the Debtor commenced a second chapter 11 case (the "2021 Chapter 11 Case") seeking to implement a refinancing of the Series 2014 Bonds that was agreed to among the Debtor, ACCHS, UMB Bank, N.A., as trustee for the Series 2014 Bonds (the "2014 Bond Trustee"), and certain holders of the Series 2014 Bonds. On August 26, 2021, the Court entered an order confirming the plan of reorganization in the 2021 Chapter 11 Case (the "2021 Plan"),[15] which provided, in pertinent part, as follows:

---

[15] Capitalized terms used in this section but not defined herein shall have the meanings ascribed to them in the 2021 Plan.

i. The funding of an additional $40,710,000 in new money bond financing (the "Series 2021A Bonds") to provide for among other things: (i) the payment of all outstanding Entrance Fee Refunds in full; (ii) partial funding of the Debtor's MLR; and (iii) a debt service reserve fund;

ii. The contribution of $9.0 million from the Member to the Debtor to fund the balance of the MLR (the "Initial Member Contribution");

iii. An exchange of the Series 2014 Bonds for a pro rata share of the new 2021B Bonds issued in the aggregate original principal amount of $127,327,200; and

iv. The provision of post-bankruptcy credit support from the Member to the Debtor in an amount not to exceed $9.0 million pursuant to a Liquidity Support Agreement, dated as of June 14, 2021, between the Debtor and the Member (the "LSA"), which established that the Member's obligations thereunder are conditioned on, and will be fully funded from, the closing of the sale of a not-for-profit nursing home operated by an affiliate of the Debtor and Member, to be used to support The Harborside's regulatory compliance, including the funding of future MLR and Entrance Fee Refunds. The funds provided under the LSA are not subject to the liens of the 2021 Bond Trustee (as defined below).

44. The 2021 Plan become effective on September 8, 2021.

## G. Capital Structure

### i. Bond Debt

45. In connection with the 2021 Plan,[16] the Nassau County Industrial Development Agency (in such capacity, the "2021 Issuer") issued the Series 2021A Bonds and Series 2021B Bonds (collectively, the "Series 2021 Bonds"). Specifically, certain holders of Series 2014 Bonds purchased $40,710,000 in Series 2021A Bonds, which bear interest at 9% per annum and mature on January 1, 2041. Interest on the Series 2021A Bonds is payable semiannually on each January 1 and July 1. The principal amount of the Series 2021A Bonds is subject to mandatory sinking fund installments commencing January 1, 2027. The Series 2021A Bonds are subject to optional redemption at par on or after October 1, 2031 (the "Par Call Date") and optional redemption at a

[16] Capitalized terms used but not defined in this section are defined as in the 2021 Plan.

make-whole redemption price from year 5 to the Par Call Date. The Series 2021A Bonds are secured by a first priority lien on substantially all of the Debtor's assets.

46. Additionally, in connection with the 2021 Plan, the Series 2014 Bonds were exchanged for Series 2021B Bonds in the aggregate principal amount of $127,327,200. The Series 2021B Bonds are subordinate in payment and security to the Series 2021A Bonds. The Series 2021B Bonds bear interest at (i) 5.00% per annum, provided that upon the earliest of (x) the incurrence of indebtedness by The Harborside, the Sponsor or any affiliate thereof for Phase II, (y) twenty years after the Effective Date, and (z) the date on which The Harborside has 150 days' cash on hand in excess of the MLR, the interest rate on the Series 2021B Bonds shall increase to 5.25% per annum. Principal on the Series 2021B Bonds will amortize commencing January 1, 2042, as set forth in 2021 Bond Documents. The Series 2021B Bonds will not be subject to optional redemption prior to October 1, 2026. The Series 2021B Bonds are subject to optional redemption at the following prices:

| **Redemption Date** | **Redemption Price (%)** |
|---|---|
| October 1, 2026 – September 30, 2027 | 107 |
| October 1, 2027 – September 30, 2028 | 106 |
| October 1, 2028 – September 30, 2029 | 105 |
| October 1, 2029 – September 30, 2030 | 105 |
| October 1, 2030 – September 30, 2031 | 105 |
| October 1, 2031 – September 30, 2032 | 105 |
| October 1, 2032 – September 30, 2033 | 105 |
| October 1, 2033 – September 30, 2034 | 104 |
| October 1, 2034 – September 30, 2035 | 103 |
| October 1, 2035 – September 30, 2036 | 102 |
| October 1, 2036 – September 30, 2037 | 101 |
| October 1, 2037 and thereafter | 100 |

47. Contemporaneously with entry into that certain Indenture of Trust, dated as of September 21, 2021 (the "2021 Indenture"), by and between the 2021 Issuer and UMB Bank, N.A. as trustee for the Series 2021 Bonds (the "2021 Bond Trustee"), the Debtor entered into that certain

Installment Sale Agreement, dated as of September 1, 2021, with the 2021 Issuer (the "Installment Sale Agreement"), which provides for, among other things, payment of an installment purchase price for the acquisition of the facility by the Debtor.

48. The 2021 Indenture established various funds to be held by the 2021 Bond Trustee, including a Bond Fund, a Project Fund, a Rebate Fund, a Revenue Fund, a Debt Service Reserve Fund, an Operating Reserve Fund, and an Entrance Fee Fund (as each term is defined in the 2021 Indenture).

49. The Debtor granted the 2021 Bond Trustee a mortgage and other liens on certain real and personal property pursuant to a Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of September 8, 2021 (the "Mortgage" and, together with the 2021 Indenture, the Installment Sale Agreement, and any other document or agreement delivered as security for, or in respect to, the Series 2021 Bonds or the Debtor's obligations under any of such documents, collectively, the "2021 Bond Documents" and obligations thereunder, the "2021 Bond Obligations"). Under the 2021 Bond Documents, and subject only to the lien on the Debtor's real property securing the Debtor's obligations under that certain Payment in Lieu of Taxes Agreement, dated as of December 1, 2007, between the Debtor and the 2014 Issuer, as amended pursuant to that certain First Amendment to Payment in Lieu of Taxes Agreement dated as of June 1, 2014 between the 2014 Issuer and the Debtor, and as ratified by the Debtor in connection with the issuance of the Series 2021 Bonds pursuant to that certain Ratification dated September 8, 2021, the 2021 Bond Trustee holds first priority liens and security interests in substantially all of the Debtor's real and personal property as security for its obligations associated with the Series 2021 Bonds.

50. As of the Petition Date, approximately $40,710,000 of the Series 2021A Bonds and $127,327,200 of the Series 2021B Bonds remains outstanding.

**ii. Unsecured Debt**

51. In addition to the 2021 Bond Obligations, the Debtor's primary creditor group consists of general unsecured creditors, who are owed approximately $135.3 million as of the Petition Date. This group includes trade creditors and Residents who are owed Entrance Fee Refunds. As of the Petition Date, the Debtor estimates that it owes approximately $3.5 million to Residents on account of Entrance Fee Refunds. The Debtor also has contingent liabilities to Residents in the amount of approximately $129.6 million, on account of Residents' Entrance Fee Refunds that have not yet been triggered under Residency Agreements. Additionally, the Debtor owes approximately $2.5 million to trade creditors, which is largely due to the timing of the filing of this Chapter 11 Case.

## II. <u>EVENTS LEADING TO BANKRUPTCY</u>

52. As discussed above, the Debtor relies on revenue generated by existing and new Residents to, among other things, maintain its day-to-day operations, service its debt obligations, and honor Entrance Fee Refunds. However, the Debtor has struggled to attract new Residents at the projected pace due in part to the lingering impact of COVID-19 and the prior restructurings.

53. Specifically, as a result of the 2021 Chapter 11 Case, the Debtor restructured its bond debt through new money bond financing and the exchange of its existing bonds for the Series 2021B Bonds. The Debtor also obtained a $18 million contribution from its Member, consisting of the Initial Member Contribution and the LSA. The hope after the 2021 restructuring was that the capital investment from the Debtor's key stakeholders would reassure prospective Residents that the Debtor's operations were stable and boost occupancy levels.

54. Unfortunately, the Debtor's 2021 restructuring efforts did not achieve the intended goal. As discussed above, commencing in May 2022, representatives of the Debtor informed the Bondholder Group of the Debtor's marketing, regulatory and financial challenges. To address those challenges, the Debtor retained a consultant to develop and implement a marketing strategy to attract new residents to The Harborside. After its marketing efforts failed to result in a meaningful improvement in its occupancy levels, the Debtor solicited feedback from the Bondholder Group regarding the retention of an advisor to assist in the evaluation of its strategic alternatives and ultimately selected Grandbridge, one of the Bondholder Group's approved advisors.

**A. Debtor's Prepetition Marketing Process**

55. In October 2022, Grandbridge commenced the Marketing Process. As previously discussed, Grandbridge circulated a marketing teaser to over 4,400 parties, including for-profit and non-profit operators in New York and around the country. Those interested parties who signed non-disclosure agreement were provided a detailed offering memorandum that provided extensive information about The Harborside. All interested parties were given an opportunity to submit nonbinding indications of interest ("IOIs"), and the Debtor received IOIs from eight (8) interested parties. Seven (7) of those parties then toured the Debtor's community and met with the Debtor's management team and six (6) of those parties submitted second round letters of intent ("LOIs"). All of the parties that submitted LOIs expressed an intent to continue operating The Harborside as a CCRC and assume Residency Agreements.

56. Throughout the Marketing Process, the Debtor kept the Bondholder Group updated and solicited feedback from its members on its proposed marketing timeline, marketing teaser, offering memorandum and bid instruction letter before sharing them with interested parties. Further, at the Bondholder Group's request, The Harborside provided weekly reports regarding

the status of the Marketing Process that identified, among other things, the interested parties who engaged in the process. The Debtor also provided the Bondholder Group with copies of all IOIs and LOIs, invited the Bondholder Group to join interviews of the Top Bidders and made several requests for feedback on the LOIs.

57. Unfortunately, the Bondholder Group was unwilling to engage in discussions with the Debtor regarding the LOIs, despite knowing that the Top Bidders either (i) expressly required the support of the Bondholder Group or (ii) contemplated obtaining significant financing in the bond market, including potentially from members of the Bondholder Group.

58. Given its deteriorating financial condition, the Debtor urged the Bondholder Group to reconsider its position so that the Debtor could maximize value for its stakeholders, including the Bondholder Group. In fact, the Debtor advised the Bondholder Group that its refusal to engage with Top Bidders would likely result in the Top Bidders either withdrawing or modifying their LOIs to the detriment of the Debtor's stakeholders. Despite such repeated efforts, the Bondholder Group refused to engage with the Top Bidders and the Debtor was left with no choice but to proceed with its Marketing Process without the Bondholder Group's support.

59. In the interest of maximizing value for all of its constituents, the Debtor contacted the Top Bidders and requested that they submit bids that did not require support from the Bondholder Group. Following extensive and arm's-length negotiations, the Debtor and the Plan Sponsor agreed upon the terms of the Stalking Horse Term Sheet, pursuant to which the Plan Sponsor is prepared to act as the sponsor for the Proposed Plan.

60. Shortly after the Petition Date, the Debtor intends to commence a postpetition marketing and overbid process to find potentially higher and better offers under section 363 of the Bankruptcy Code, thus maximizing the return to creditors and other parties in interest.

### B. Debtor's Default Under the 2021 Bond Documents

61. Given its liquidity position, around the time it commenced its Marketing Process, the Debtor began deferring its monthly installment payments due under the Installment Sale Agreement.

62. In connection with such deferrals, the Debtor engaged in discussions with the Bondholder Group regarding a forbearance agreement and bridge funding. To support such requests, the Debtor provided the Bondholder Group with detailed financial projections which demonstrated the Debtor's need for additional funding in March 2023.

63. In the interest of further preserving liquidity, the Debtor deferred its January 1, 2023 interest payment due under the Installment Sale Agreement.

64. On January 4, 2023, the Bond Trustee drew the full amount from the Operating Reserve Fund totaling $1,563,024.23 and $923,571.06 from the Debt Service Reserve Fund in order to pay the full amount of interest due on the Series 2021 Bonds on January 1, 2023, while declaring the principal of the Series 2021 Bonds immediately due and payable.

65. Then, on January 27, 2023, the Bond Trustee sent a notice of acceleration and declared immediately due and payable the payments due under the Installment Sale Agreement and Series 2021 Bonds. Additionally, the Bond Trustee withdrew over $13.5 million from the various reserve accounts established under the 2021 Bond Indenture.

66. Despite the Debtor's best efforts to work consensually with the Bondholder Group to find the best path forward for the Debtor and its stakeholders, the Bondholder Group was unwilling to engage with the Debtor for reasons outside of the Debtor's control and took steps to exercise its remedies, exacerbating the Debtor's financial condition and threatening its ability for provide for the Residents.

67. As discussed above, the Debtor commenced this Chapter 11 Case to pursue a secondary marketing process and overbid process to find potentially higher and better offers for the sale of its business under section 363 of the Bankruptcy Code, thus maximizing the return to creditors and other parties in interest.

## III. SUMMARY OF FIRST DAY MOTIONS

68. The Debtor has filed the First Day Motions[17] concurrently with the filing of its chapter 11 petition and this Declaration. The Debtor requests that each of the First Day Motions be granted to ensure the success of this Chapter 11 Case.

69. For more detailed information regarding each First Day Motion, the Debtor respectfully refers the Court to the respective First Day Motion. In the event that this Declaration and any provision of any First Day Motion are inconsistent, the terms of the First Day Motion shall control.

### A. Cash Management Motion

70. By the Cash Management Motion, the Debtor seeks entry of interim and final orders (i) authorizing the Debtor to (a) continue to use its existing cash management system (the "Cash Management System"), including existing bank accounts, (b) honor certain prepetition obligations related thereto, and (c) maintain its existing business forms, (ii) waiving certain requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines (defined below), and (iii) granting related relief.

71. As part of the relief requested in the Cash Management Motion, and to ensure that its transition into and out of chapter 11 is as smooth as possible, the Debtor seeks entry of orders

[17] The following motions contain requests for extraordinary relief as defined in E.D.N.Y. LBR 9077-1 and the Guidelines for First Day Motions adopted by the Board of Judges for the United States Bankruptcy Court for the Eastern District of New York (Administrative Order No. 565): the Cash Management Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, Insurance Motion, and DIP Financing Motion.

authorizing the Debtor to, among other things, (a) maintain and continue using in the ordinary course its Cash Management System, including the Bank Accounts, in the same manner and with the same account numbers as are currently employed, (b) treat the Bank Accounts for all purposes as accounts of the Debtor as a debtor in possession, (c) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, and other methods, (d) pay Bank Fees, including, without limitation, any prepetition Bank Fees and any other Bank Fees for prepetition transactions that are charged to the Debtor on or after the Petition Date, and (e) perform its obligations under the documents and agreements governing the Bank Accounts.

72. To the extent that the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code and related requirements of the U.S. Trustee, I believe that "cause" exists to waive the requirements of that section. The Debtor is a sophisticated company with a cash management system that has the capacity to move funds as necessary to ensure the Debtor's fiscal safety. Further, the majority of the Debtor's Bank Accounts are held at New York Community Bank ("NYCB"), an authorized depository, with the remaining two accounts being held at Amalgamated Bank, a bank chartered by the State of New York and regulated by the New York Department of Financial Services and Federal Depository Insurance Corporation ("FDIC"). By virtue of being FDIC-insured, the Debtor's accounts at Amalgamated Bank are insured for the first $250,000 per depositor. I believe that requiring the Debtor to be in strict compliance with section 345(b) of the Bankruptcy Code, to the extent it is not already in compliance, will unduly burden the Debtor with administrative expenses and difficulties.

73. The continued use of the Cash Management System and the Bank Accounts during the pendency of this Chapter 11 Case is essential to the Debtor's business operations. The Debtor employs the Cash Management System and Bank Accounts to maximize efficiencies and the value

of its business and to collect, transfer, and disburse the funds generated by its operations. Using the Cash Management System and Bank Accounts, the Debtor is able to collect and transfer cash efficiently to satisfy its financial obligations. The Cash Management System and Bank Accounts facilitate the Debtor's cash forecasting and reporting, enable the Debtor to monitor the collection and disbursement of funds, and maintain control over the administration of its accounts at the Banks. As a practical matter, it would be extremely burdensome and expensive to establish and maintain a different Cash Management System and different Bank Accounts. Accordingly, the Debtor requests to continue its existing Cash Management System and the Bank Accounts without disruption.

74. Without the relief requested, I believe the Debtor would be unable to effectively and efficiently maintain its financial operations. This would cause significant harm to the Debtor's business and the value of its estate. Accordingly, I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtor, its estate and creditors, and all parties in interest, and I respectfully ask this Court to grant the relief sought in the Cash Management Motion.

**B. Employee Wages Motion**

75. By the Employee Wages Motion, the Debtor seeks entry of interim and final orders (i) authorizing, but not directing, the Debtor to (a) pay all prepetition wages, salaries, commissions, certain other compensation, and related administration obligations to third parties in connection therewith and other costs incidental to the foregoing (collectively, the "Compensation Obligations"), (b) maintain all prepetition employee benefits, including paid time off, health and medical benefits and insurance, retirement savings accounts, workers' compensation, reimbursable business expenses, and other welfare benefits, and related administration obligations to third parties in connection therewith and other costs incidental to the foregoing (collectively, the

"Employee Benefit Obligations"), and (c) pay all employment, unemployment, social security, and similar federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations (collectively, the "Payroll Taxes"), whether withheld from wages or paid directly by the Debtor to governmental authorities, and make other payroll deductions, including retirement and other employee benefit plan contributions, garnishments, and child support (collectively, the "Payroll Deduction Obligations"), (ii) authorizing applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on and transfers made from the Debtor's accounts to the extent such checks or transfers relate to any of the foregoing, and (iii) granting related relief.

76. The Debtor provides Employee Benefit Obligations which include but are not limited PTO, health, dental, and vision insurance, COBRA benefits, the option of enrolling in a Life Insurance Plan, short-term disability insurance, and participation in a 403(b) savings and investment plan and 401(a) defined contribution plan.

77. For the reasons described below and as further detailed in the Employee Wages Motion, I believe that the Employee Obligations are entitled to priority treatment in accordance with section 507 of the Bankruptcy Code.

78. Currently, the Debtor directly employs approximately ninety-eight (98) employees (the "Employees") who perform a variety of functions ranging from providing nursing services, maintenance, dining services, and housekeeping to office administration. The Debtor also contracts with five (5) employment and staffing agencies to obtain the services of various nurses, licensed practitioners, certified nursing assistants, and other supplemental and temporary employees (collectively, the "Independent Contract Workers") to supplement the staffing at the Debtor's facility.

79. The Debtor cannot operate without the Employees and Independent Contract Workers. The Employees have familiarity with not only the Debtor's business operations, but also with each unique Resident's health and safety needs. The Independent Contract Workers work side-by-side with the Debtor's Employees and are critical to the health, security, safety, and well-being of the Residents by providing necessary staffing that is required to ensure an appropriate level of care for the Residents and maintain the requisite ratio of staff to residents pursuant to requirements established by Medicare and Medicaid. Failure to maintain the Employee Obligations will result in the loss of key Employees and Independent Contract Workers, which will negatively impact the quality and scope of services provided to current Residents and, in turn, could jeopardize their health and well-being. Furthermore, loss of Employees and Independent Contract Workers and their vital services could result in a loss of confidence from current and prospective Residents, leading to increased Resident turnover. Minimizing Resident turnover by maintaining Employees, Independent Contract Workers, and the services they provide is essential to preserving the Debtor's estate. I also believe that the Debtor's ability to maintain Employees and Independent Contract Workers in the ordinary course of business is vital to the ongoing reorganization efforts.

80. Furthermore, pursuant to state laws, the Debtor must maintain its workers' compensation obligations to ensure prompt and efficient payment and/or reimbursement of its Employees. If the Debtor fails to maintain such obligations, it will be prohibited by state law from operating in the state. As a result, I believe that payment of all amounts related to the Debtor's workers' compensation obligations is crucial to the continued operation of its business.

81. Therefore, I respectfully ask this Court to grant the relief sought in the Employee Wages Motion.

**C. Taxes Motion**

82. By the Taxes Motion, the Debtor seeks entry of interim and final orders (i) authorizing, but not directing, the Debtor to remit and pay (or use tax credits to offset) the Taxes and Fees in the ordinary course of business, (ii) authorizing financial institutions to receive, honor, process, and pay all checks or electronic transfers related to such payments and obligations to the extent directed by the Debtor in accordance with the Motion and to the extent the Debtor has sufficient funds available with such bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, (iii) authorizing all of the Debtor's banks to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to the Motion, without any duty of further inquiry, and without liability for following the Debtor's instructions, and (iv) granting related relief.

83. In the ordinary course of business, the Debtor is subject to certain Taxes and Fees payable to the Governmental Authorities. The Taxes and Fees have historically been approximately $650,000 per year. As of the Petition Date, I believe that the Debtor is current on all Taxes and Fees, and no amount is owed to the Governmental Authorities. During the Chapter 11 Case, I believe that approximately $450,000 in Taxes and Fees will become due and payable.

84. I believe that failure to pay certain of the Taxes and Fees as they become due could expose the Debtor and its officers or management to substantial civil and/or criminal liability. A lawsuit or criminal prosecution, and any potential liability, would distract the Debtor and its officers or managers from not only the Debtor's business operations, but also the ongoing administration of this Chapter 11 Case. I believe that any such lawsuit and its potential liabilities would be a detriment to the Debtor's estate, its Residents, and all parties in interest. Therefore, I respectfully ask this Court to grant the relief sought in the Taxes Motion.

**D. Utilities Motion**

85. By the Utilities Motion, the Debtor seeks entry of interim and final orders (i) prohibiting the Debtor's Utility Providers from altering, refusing, or discontinuing service, (ii) deeming the Debtor's Utility Providers adequately assured of future performance, (iii) establishing procedures for determining requests for additional adequate assurance by the Debtor's Utility Providers, and (iv) granting related relief.

86. In the ordinary course of business, the Debtor obtains electricity, natural gas, water, telephone services, internet, garbage collection, and other similar services (collectively, the "Utility Services") from several utility providers (the "Utility Providers"). A list of the names and addresses of the Utility Providers and the recent amounts owed per month over the previous calendar year is attached to the Utilities Motion as Exhibit C. On average, the Debtor pays approximately $148,900 each month on Utility Services. The Debtor has historically made full and timely payments for the Utility Services to Utility Providers.

87. During this case, the Debtor intends to pay all Utility Providers, subject to the granting of the DIP Financing Motion, in a timely manner consistent with the Debtor's ordinary course of business and customary payment terms.

88. Uninterrupted Utility Services are essential to the Debtor's continued business operations and successful reorganization and are especially important in light of the healthcare services the Debtor provides to its elderly Residents. If the Utility Providers are permitted to suspend or discontinue service to the Debtor, the Debtor will be unable to furnish the healthcare services necessary to ensure the safety and well-being of its elderly Residents. Furthermore, discontinuation of the Utility Services would hamper the Debtor's ability to generate revenues, which would hinder the Debtor's ability to reorganize and degrade the value of the Debtor's estate. Therefore, I believe that it is critical that this Court grant the relief sought in the Utilities Motion.

89. As adequate protection, the Debtor proposes depositing $74,450 (an "Adequate Assurance Deposit") into a separate Utility Deposit Account, which is equal to two (2) weeks' worth of payments for Utility Services. I believe that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future Utility Services, contingent on the granting of the DIP Financing Motion, constitutes adequate protection under the Bankruptcy Code.

90. Furthermore, the Debtor proposes certain procedures, discussed in detail in the Utilities Motion, which would allow a Utility Provider to request additional adequate protection if it believes that there are circumstances warranting greater protection.

91. I believe that the Utilities Motion is in the best interest of the Debtor, its estate, its Residents, and all parties in interest. Therefore, I respectfully ask this Court to grant the relief sought in the Utilities Motion.

**E. Insurance Motion**

92. By the Insurance Motion, the Debtor seeks interim and final orders (i) authorizing the Debtor to (a) maintain existing Insurance Policies and pay all obligations arising therefrom (collectively, the "Insurance Obligations"), and (b) renew, revise, extend, supplement, change, or enter into new insurance policies as needed in its business judgment, and (ii) granting certain related relief. Furthermore, the Debtor requests that all banks or financial institutions be authorized and directed to receive, process, or pay all requests for payment related to the Insurance Policies, whether submitted prior to or after the Petition Date. The Debtor also requests that all banks or financial institutions be authorized to rely upon the Debtor's designation of any particular check or electronic payment request as approved pursuant to the interim or final orders.

93. The Debtor incurs approximately $1,086,000 in annual premiums relating to the Insurance Policies, which are prepaid on either a monthly, quarterly or annual basis. None of the Insurance Policies are financed. As of the Petition Date, the Debtor is current on its payment

obligations on account of the Insurance Policies and the Debtor has historically made full and timely payments for the insurance premiums.

94. It is critical that the Debtor be authorized to maintain the prepetition Insurance Policies on an ongoing basis. Failure to maintain the Insurance Policies could result in Insurance Carriers cancelling the Insurance Policies, which would leave the Debtor exposed to substantial liability. I believe that being exposed to substantial liability is not in the best interest of the Debtor's estate, its Residents, or any party-in-interest. In addition, I understand that operating guidelines established by the U.S. Trustee for debtors in possession require the Debtor to maintain insurance coverage throughout a chapter 11 case. Therefore, I respectfully ask this Court to grant the relief sought in the Insurance Motion.

**F. Resident Confidentiality Motion**

95. By the Resident Confidentiality Motion, the Debtor seeks entry of an order (i) authorizing the implementation of procedures to protect confidential information of current and former Residents of the Debtor and (ii) granting related relief. In the ordinary course of providing care for its Residents, the Debtor is required to maintain the confidentiality of patient information pursuant to Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). However, the Debtor recognizes that such requirements, along with the Residents' privacy interests in their personal information, may conflict with the duty to disclose certain information under the Bankruptcy Code, including, without limitation, the duty to file a list of creditors under section 521(a)(1)(A) and, if necessary, a list of schedules of assets and liabilities under section 521(a)(1)(B)(i).

96. In an effort to comply with both federal statutes and to protect Resident privacy interests, the Debtor proposes certain procedures to maintain Resident confidentiality during the

pendency of this Chapter 11 Case (the "Resident Confidentiality Procedures"). The Resident Confidentiality Procedures provide that:

a. The Debtor, with the assistance of its professionals, is authorized to prepare and maintain (i) a separate creditor matrix of the Residents (the "Resident Matrix"), and, if necessary, (ii) separate schedules of claims that may be asserted by and against the Residents (the "Resident Schedules");

b. The Debtor is not required to file the Resident Matrix and the Resident Schedules, but is permitted to file a redacted version of the Resident Schedules that redacts the names and addresses of the Residents and assigns a unique identification number to each of the Residents, *provided however*, that the Residents Matrix and the Resident Schedules may be reviewed by (i) this Court, (ii) the Office of the United States Trustee of the Eastern District of New York, (iii) any applicable state regulatory agency (through the respective state attorney general), and (iv) any other party in interest that obtains, after notice and a hearing, an order directing the Debtor to disclose the Resident Matrix and Resident Schedules to such party;

c. To the extent the Debtor is required to list a Resident or Residents on any document filed with the Court, including the list of the top 30 unsecured creditors, the Debtor is authorized to list such Residents by their assigned unique identification number on such document;

d. If the Debtor's HIPAA-certified noticing and claims agent, Epiq, serves any document upon any person listed on the Resident Matrix, Epiq is authorized to note in the certificate of service that the parties served include individuals listed on the Resident Matrix;

e. Epiq shall process Residents' Proofs of Claim ("Proofs of Claim") and, upon request, make available a summary of the total number and amount of all claims filed by Residents against the Debtor, which summary shall exclude any information subject to HIPAA, its associated regulations, and other privacy requirements;

f. Epiq shall make copies of any Proofs of Claim filed by Residents available to the Court for in camera review, and any such Proofs of Claim shall otherwise be maintained by Epiq and the Debtor on a confidential basis and not subject to public dissemination or disclosure; and

g. To the extent any Resident discloses his or her own PHI (as such term is defined in HIPAA) in any Motion, proof of claim, notice, or other publicly available document, the Debtor and its professionals shall be permitted, and to the extent required by the Bankruptcy Code, the Bankruptcy Rules, or any other applicable law, rule, or court order, directed to include such PHI in any subsequent Motion, notice, document, list, or other public disclosure

> made in connection with this Chapter 11 Case, and such disclosure shall not be deemed to be a "wrongful disclosure" within the meaning of HIPAA or any regulation promulgated thereunder.

97. I believe that the relief requested in the Resident Confidentiality Motion appropriately balances the need to maintain confidential patient information under HIPAA and protect the privacy of Residents with the need for adequate disclosure under the Bankruptcy Code. Therefore, I respectfully ask this Court to grant the relief sought in the Resident Confidentiality Motion.

**G. Epiq Retention Application**

98. In the Epiq Retention Application, the Debtor seeks authorization to retain Epiq as its noticing and claims agent. It is my understanding that Epiq is an experienced noticing and claims agent and is frequently used by debtors in chapter 11 cases of comparable size and complexity. Furthermore, I believe that using Epiq will relieve this Court, its clerk, and the Debtor of administrative burdens and expenses. Therefore, I believe that using Epiq will benefit the Debtor, its estate, its creditors, and all parties in interest, and respectfully ask this Court to grant the Epiq Retention Application.

**H. Case Management Motion**

99. In the Case Management Motion, the Debtor seeks entry of an order authorizing the Debtor to implement the case management procedures set forth in the Proposed Order (the "Case Management Procedures"). The Case Management Procedures propose certain notice, case management, and administrative procedures, including: (a) establishing notice procedures; (b) authorizing procedures for the service of motions or other filings on the Residents; (c) directing that matters be heard at regularly scheduled omnibus hearings and approving certain filing procedures related thereto, (d) establishing filing procedures and objection deadlines, and (e) establishing procedures for filing the Debtor's monthly operating reports.

100. Additionally, and as discussed above, as part of its overall operations, The Harborside operates a nursing home that qualifies as a licensed healthcare provider. As a result, the Debtor is subject to HIPAA and other privacy requirements, which prevents disclosure of PHI. Accordingly, the Case Management Motion proposes certain procedures with respect to service of Motions and other filings during the Chapter 11 Case to prevent disclosure of PHI. I believe that the proposed procedures would adequately protect the rights of Residents while preserving the spirit of notice and disclosure under the Bankruptcy Code.

101. I believe the relief requested in the Case Management Motion would minimize the costs and burdens associated with running a chapter 11 process. For instance, the possibility of numerous, fragmented hearings, as well as the costs associated with mass copying and mailing or otherwise serving all filings on parties without such procedures, would impose an administrative and economic burden on the Debtor's estate, this Court, and the parties in interest, and require the Debtor to otherwise reallocate its limited resources to comply with administrative requirements. Therefore, I respectfully ask this Court to grant the relief sought in the Case Management Motion.

**I. Schedules Extension Motion**

102. In the Schedules Extension Motion, the Debtor seeks entry of an order extending the deadline by which the Debtor must file its schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and Statements") by 16 days, for a total of 30 days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions for cause shown.

103. An extension is appropriate because the scope of the Debtor's operation means that a significant amount of information must be accumulated, reviewed, and analyzed to properly prepare the Schedules and Statements. The Debtor and its professionals have been consumed with a multitude of critical administrative and operational decisions arising in conjunction with the

commencement of this chapter 11 case, including preparing for the Debtor's entry into chapter 11 and preparation of the First Day Motions.

104. The Debtor is working expeditiously to prepare and file the Schedules and Statements. However, for the reasons above, I believe that an extension of 16 days, without prejudice to the Debtor's ability to request further extensions, is appropriate under the circumstances.

**J. DIP Financing Motion**

105. Through the DIP Financing Motion, the Debtor seeks authorization to obtain the DIP Financing and use Cash Collateral (as that term is defined in section 363 of the Bankruptcy Code) to administer this Chapter 11 Case and to pay necessary operational and maintenance costs associated with The Harborside. The Debtor seeks entry of interim and final orders (i) authorizing the Debtor to obtain secured non-priming postpetition financing; (ii) granting (a) liens and superpriority claims, and (b) adequate protection; (iii) authorizing use of cash collateral; (iv) modifying the automatic stay; (v) scheduling a final hearing to consider approval of the DIP Financing Motion on a final basis; and (vi) granting related relief.

106. Absent the DIP Financing and use of Cash Collateral, the Debtor would be unable to fund its operations. I understand that the DIP Financing will provide the Debtor with sufficient liquidity to continue operating its business in the ordinary course while it conducts a postpetition marketing and overbid process to find potentially higher and better offers for the sale of its business under section 363 of the Bankruptcy Code, thus maximizing the return to creditors and other parties in interest.

107. Accordingly, I believe that the DIP Financing and the use of Cash Collateral are essential for the Debtor to be able to effectuate its goals in this Chapter 11 Case. Without the additional liquidity afforded by the DIP Financing and access to Cash Collateral, the Debtor does

not believe it can continue to provide necessary care and services to its Residents, or adequately protect, preserve, and maximize the value of its estate. For these reasons, I respectfully submit that the relief requested in the DIP Financing Motion should be granted.

**INFORMATION REQUIRED BY LOCAL RULE 1007-4**

108. It is my understanding that the Local Rules require the disclosure of certain information related to the Debtor. The applicable information required by Local Rule 1007-4 is set forth below and in the attached exhibits.

(i) I do not believe that the Debtor is a small business debtor within the meaning of section 101(51D) of the Bankruptcy Code.

(ii) The nature of the Debtor's business and the circumstances leading to the Debtor's Chapter 11 Case have been described above.

(iii) Exhibit A provides a list, to the extent available, regarding the committees that have been appointed or formed prior to the Petition Date and any committee professionals thereof.

(iv) Exhibit B provides a list, to the extent available, containing the following information with respect to the Debtor's thirty largest unsecured claims: (1) the creditor's name, address, and telephone number; (2) the person(s) familiar with the Debtor's account; and (3) the amount of the claim and whether the claim is contingent, unliquidated, disputed, or partially secured.

(v) Exhibit C provides a list, to the extent available, containing the following information with respect to the Debtor's five (5) largest secured claims: (1) the creditor's name, address, and telephone number; and (2) the amount of the

claim, estimated value of the collateral securing the claim, and whether the claim or lien is disputed.

(vi) Exhibit D provides an unaudited balance sheet, dated as of December 31, 2022, showing the Debtor's assets and liabilities as of that date.

(vii) The Debtor is a not-for-profit corporation. Therefore, there are no shares of stock in the Debtor that are publicly held. There are no debentures or securities that are publicly held.

(viii) None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, assignee, or secured creditor.

(ix) Exhibit E lists the premises owned or leased by the Debtor in which the Debtor operates its business.

(x) Exhibit F lists the location of the Debtor's significant assets and the location of the Debtor's books and records. The Debtor has no significant assets held outside the territorial limits of the United States.

(xi) Exhibit G lists the nature and status of each action pending or threatened against the Debtor or its property.

(xii) Exhibit H lists (1) the name of individuals who comprise the Debtor's senior management; (2) their tenure with the Debtor; and (3) a summary of their relevant responsibilities and experience.

(xiii) Exhibit I lists the estimated amount of weekly payroll to be paid to employees for the thirty (30) day period following the Petition Date.

(xiv) Exhibit J lists the amount proposed to be paid to officers and directors in the thirty (30) day period following the Petition Date.

(xv) Exhibit K provides a schedule of the estimated cash receipts, net gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees, for the thirty (30) day period following the Petition Date.

(xvi) Exhibit L is a list of the Debtor's current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed.

(xvii) Exhibit M is a list of the Debtor's bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed.

(xviii) Exhibit N is a simplified organization chart showing the Debtor and its affiliates.

[*Remainder of page intentionally blank*]

## CONCLUSION

The Debtor respectfully requests that the orders granting the relief requested in the First Day Motions be entered. I reserve the right to supplement and/or amend this Declaration with testimony and/or exhibits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 23, 2023

Amsterdam House Continuing Care
Retirement Community, Inc.

*Debtor and Debtor in Possession*

/s/ *Michael Morton*
Michael Morton
Chief Restructuring Officer

# EXHIBIT A

**Committees and Committees' Professionals**

| Committee | Advisors |
|---|---|
| Holders of 72% of the principal amount outstanding of Series 2021A and Series 2021B bonds issued under the 2021 Indenture | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>c/o Daniel S. Bleck, Esq.<br>One Financial Center<br>Boston, MA 0211 |
| Resident Advisory Committee of Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Harborside | N/A |

**EXHIBIT B**

**Debtor's Thirty Largest Unsecured Claims**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Resident #00069-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,364,633.00 |
| 2 | Resident #00070-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,285,200.00 |
| 3 | Resident #00190-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,248,615.00 |
| 4 | Resident #00309-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,240,359.20 |
| 5 | Resident #00280-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,133,482.00 |
| 6 | Resident #00212-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,116,077.69 |
| 7 | Resident #00030-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,079,094.93 |
| 8 | Resident #00111-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,075,613.00 |

| | **Name of creditor and complete mailing address, including zip code** | **Name, telephone number, and email address of creditor contact** | **Nature of the claim** (for example, trade debts, bank loans, professional services, and government contracts) | **Indicate if claim is contingent, unliquidated, or disputed** | **Amount of unsecured claim** If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 9 | Resident #00242-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,061,650.00 |
| 10 | Resident #00126-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,023,779.20 |
| 11 | Resident #00314-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,015,987.20 |
| 12 | Resident #00173-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,003,666.50 |
| 13 | Resident #00141-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $988,631.00 |
| 14 | Resident #00088-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $950,300.00 |
| 15 | Resident #00258-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $918,355.30 |
| 16 | Resident #00122-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $904,370.00 |
| 17 | Resident #00145-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $902,116.00 |
| 18 | Resident #00060-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $895,281.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 19 | Resident #00220-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $883,709.00 |
| 20 | Resident #00144-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $878,138.00 |
| 21 | Resident #00179-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $859,763.25 |
| 22 | Resident #00203-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $853,906.56 |
| 23 | Resident #00034-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $850,712.80 |
| 24 | Resident #00214-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $845,720.33 |
| 25 | Resident #00200-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $842,959.04 |
| 26 | Resident #00010-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,735.00 |
| 27 | Resident #00036-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,735.00 |
| 28 | Resident #00124-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $840,224.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 29 | Resident #00211-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $836,426.70 |
| 30 | Resident 00223-2023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $835,808.00 |

**EXHIBIT C**

**Top Five Largest Secured Claims**

| Creditor | Mailing Address & Phone Number | Counsel | Estimated Claim Balance as of February 28, 2023 | Description and Estimated Value of Collateral | Contingent, Unliquidated, Disputed |
|---|---|---|---|---|---|
| UMB Bank, N.A., as 2021 Bond Trustee | 1010 Grand Avenue, P.O. Box 419 226, Kansas City, MO 64106 800.860.3020 (Bondholder Relations) | Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial Center, Boston, MA 02111 | $168,037,200 | Substantially all of the Debtor's assets<br><br>Value: Unknown | N/A |

# EXHIBIT D

**Unaudited Balance Sheet, Dated December 31, 2022**

**The Harborside**
**Comparative Balance Sheet**
**As of December, 31, 2022**
**UNAUDITED**

| | Current Quarter | Prior Quarter | Variance |
|---|---|---|---|
| Cash | | | |
| Petty Cash | 1,200 | 1,200 | - |
| Utilities Holding Account - Roslyn | - | - | - |
| Operating Account - Roslyn | 34,372 | 103,817 | (69,445) |
| Cash - Employee Appreciation | 157,422 | 30 | 157,392 |
| Cash - Employee Benefits Debit | 2,968 | 8,152 | (5,185) |
| Disbursements Account - Roslyn | 1,230,586 | 2,501,392 | (1,270,806) |
| Cash - Security Deposits | 229,648 | 276,207 | (46,559) |
| Cash - Resident Trust Acct | 3,642 | 7,608 | (3,966) |
| Total Cash and Cash Deposits | 1,659,837 | 2,898,406 | (1,238,568) |
| A/R Residents | | | |
| Accounts Receivable | 695,764 | 581,158 | 114,606 |
| Allowance for Doubtful Accounts | (278,192) | (266,579) | (11,613) |
| Accounts Receivable - SN Private Pay | 114,989 | 101,175 | 13,814 |
| Accounts Receivable - Med A | 543,458 | 438,917 | 104,541 |
| Accounts Receivable - Med B | 7,975 | 7,156 | 819 |
| Accounts Receivable - Medicaid | 32,332 | 39,839 | (7,507) |
| Accounts Receivable - Medicaid Pending | 27,730 | 1,985 | 25,745 |
| Accounts Receivable - HMO/Insurance | 41,122 | 156,528 | (115,406) |
| Accounts Receivable - Hospice | 23,909 | 22,365 | 1,544 |
| Accounts Receivable - CoInsurance | 193,892 | 37,230 | 156,662 |
| Accounts Receivable - Gov't Receivable | - | - | - |
| Due From (To) Medicare | (41) | (41) | - |
| Net A/R Residents | 1,402,938 | 1,119,732 | 283,206 |
| Other Receivables | | | |
| Accounts Receivable - Other | (444) | 228,276 | (228,720) |
| Accounts Receivable - Entrance Fee Due F | (2) | (2) | - |
| Accounts Receivable - COBRA | - | - | - |
| Accounts Receivable Coinsurance Clearing | - | - | - |
| Accrued Int Receivable - 2021A DSRF | - | - | - |
| Accrued Int Receivable - 2021B DSRF | 1,985 | 10,902 | (8,917) |
| Accrued Int. - 2014 DSR Fund | - | - | - |
| Total Other Receivables | 1,539 | 239,176 | (237,637) |
| Total Receivables | 1,404,476 | 1,358,908 | 45,569 |
| Inventory | | | |
| Inventory | 38,811 | 39,165 | (353) |
| Total Inventory | 38,811 | 39,165 | (353) |
| Deposits | | | |
| Deposit - Utilities | 3,391 | 3,391 | - |
| Total Deposits | 3,391 | 3,391 | - |
| Prepaid Expenses | | | |
| Security Deposits | - | - | - |
| Prepaid Expense | 35,675 | 64,088 | (28,413) |
| Prepaid - Insurance | 117,365 | 126,120 | (8,755) |
| Prepaid Taxes | 66,374 | 105,912 | (39,538) |
| Total Prepaid Expenses | 219,414 | 296,120 | (76,706) |
| Total Current Assets | 3,325,930 | 4,595,989 | (1,270,059) |

**The Harborside**
**Comparative Balance Sheet**
**As of December, 31, 2022**
**UNAUDITED**

| | Current Quarter | Prior Quarter | Variance |
|---|---|---|---|
| Fixed Assets | | | |
| Construction In Progress | | | - |
| Construction In Progress | 349,554 | 377,931 | (28,377) |
| CIP - Deferred Financing Cost 2021 Restr | - | - | - |
| CIP Unit Renov | - | - | - |
| CIP Expansion Project-Architect | 253,016 | 253,016 | - |
| CIP Expansion Project-Legal | 29,896 | 29,896 | - |
| CIP Expansion Project-Owner's Rep | 290,424 | 290,424 | - |
| CIP Expansion Project-Engineering | 58,841 | 58,841 | - |
| CIP Expansion Project-Greystone | 356 | 356 | - |
| CIP Expansion Project | 9,715 | 9,715 | - |
| Total CIP | 991,802 | 1,020,179 | (28,377) |
| Land | 19,058,908 | 19,058,908 | - |
| Land - EH | 1,767,825 | 1,767,825 | - |
| Land - SN | 1,527,162 | 1,527,162 | - |
| Land Improvements | 7,403,217 | 7,368,027 | 35,190 |
| Land Improvements - EH | 671,590 | 671,590 | - |
| Land Improvements - SN | 580,163 | 580,163 | - |
| Buildings | 193,490,848 | 193,490,848 | - |
| Buildings - EH | 13,793,679 | 13,793,679 | - |
| Buildings - SN | 11,931,203 | 11,931,203 | - |
| Building Improvements | 1,605,416 | 1,583,936 | 21,480 |
| Building Improvements - EH | 459,336 | 459,336 | - |
| Builiding Improvments - SN | 259,947 | 259,947 | - |
| Equipment - Fixed | 1,327,009 | 1,278,396 | 48,613 |
| Equipment - Fixed - EH | 84,127 | 84,127 | - |
| Equipment - Fixed - SN | 96,629 | 96,629 | - |
| Equipment - Movable | 1,078,187 | 1,075,801 | 2,387 |
| Equipment - Movable - EH | 92,187 | 92,187 | - |
| Equipment - Movable - SN | 222,760 | 218,995 | 3,765 |
| IL Unit Upgrades | 1,142,586 | 1,142,586 | - |
| Computers - Hardware & Software | 574,178 | 572,919 | 1,259 |
| Computers - Hardware & Software | 48,162 | 48,162 | - |
| Computers - Hardware & Software - SN | 117,154 | 117,154 | - |
| Furniture & Fixtures | 2,325,608 | 2,325,608 | - |
| Furniture & Fixtures - EH | 396,149 | 396,149 | - |
| Furniture & Fixtures - SN | 490,619 | 490,619 | - |
| Vehicles | 202,055 | 202,055 | - |
| Vehicles - EH | 13,282 | 13,282 | - |
| Vehicles - SN | 16,904 | 16,904 | - |
| Total Fixed Assets | 261,768,692 | 261,684,376 | 112,693 |
| Accumulated Depreciation | | | |
| Accum Depr - Land Improvements | (4,527,259) | (4,434,029) | (93,229) |
| Accum Depr - Land Improvements EH | (414,261) | (405,789) | (8,472) |
| Accum Depr - Land Improvements SN | (357,866) | (350,547) | (7,319) |
| Accum Depr - Buildings | (59,619,008) | (58,398,856) | (1,220,152) |
| Accum Depr - Buildings EH | (4,253,447) | (4,166,462) | (86,986) |
| Accum Depr - Buildings - SN | (3,678,284) | (3,603,060) | (75,224) |
| Accum Depr - Bldg. Improvements | (462,205) | (440,142) | (22,063) |
| Accum Depr - Bldg. Improvements - EH | (223,183) | (212,910) | (10,273) |
| Accum Depr - Bldg. Improvements - SN | (151,114) | (145,153) | (5,961) |
| Accum Depr - Equipment Fixed | (704,939) | (672,093) | (32,845) |
| Accum Depr - Equipment Fixed - EH | (53,122) | (51,536) | (1,586) |
| Accum Depr - Equipment Fixed - SN | (62,009) | (60,099) | (1,909) |
| Accum Depr - Equipment Movable | (1,005,227) | (997,122) | (8,105) |
| Accum Depr - Equipment Movable - EH | (85,297) | (84,574) | (723) |
| Accum Depr - Equipment Movable - SN | (190,256) | (187,460) | (2,796) |
| Accum Depr - IL Unit Upgrades | (857,878) | (819,692) | (38,186) |
| Accum Depr - Computers | (510,603) | (503,860) | (6,743) |
| Accum Depr - Computers - EH | (48,162) | (47,968) | (194) |
| Accum Depr - Computers - SN | (116,003) | (115,369) | (634) |
| Accum Depr - Furn & Fixtures | (2,263,955) | (2,247,963) | (15,991) |
| Accum Depr - Furn & Fixtures - EH | (390,398) | (389,420) | (979) |
| Accum Depr - Furn & Fixtures - SN | (488,172) | (485,472) | (2,700) |
| Accum Depr - Vehicles | (200,899) | (200,835) | (64) |
| Accum Depr - Vehicles - EH | (13,282) | (13,282) | - |
| Accum Depr - Vehicles - SN | (16,904) | (16,904) | - |
| Total Accumulated Depreciation | (80,693,734) | (79,050,598) | (1,643,136) |
| Net Fixed Assets | 181,074,959 | 182,633,779 | (1,530,442) |
| Intangible Assets | | | |
| Capitalized Marketing | 12,262,091 | 12,212,841 | 49,250 |
| Total Intangible Assets | 12,262,091 | 12,212,841 | 49,250 |
| Accum Amort - Captzld Marketing | (12,032,477) | (12,005,171) | (27,306) |
| Total Accumulated Amortization | (12,032,477) | (12,005,171) | (27,306) |
| Net Intangible Assets | 229,614 | 207,669 | 21,944 |
| Restricted Assets | | | |
| Cash - Escrow Entrance Fees | 99,627 | 33,688 | 65,939 |
| Cash - Funds for Held Checks | - | - | - |
| Cash - Restricted Funds | 2,055 | 2,055 | - |
| Cash - Legacy Fund | 27,796 | 17,058 | 10,738 |
| Professional Fee Escrow - KCC | - | 90,023 | (90,023) |
| 2014 Series A Debt Service | - | - | - |
| 2014 Series A Redemption | - | 2 | (2) |
| 2014 Series B Debt Service | - | - | - |

**The Harborside**
**Comparative Balance Sheet**
**As of December, 31, 2022**
**UNAUDITED**

| | Current Quarter | Prior Quarter | Variance |
|---|---|---|---|
| 2014 Series B Redemption | - | - | - |
| 2014 Series C Debt Service | - | - | - |
| 2014 Series C Redemption | - | - | - |
| 2014 Project Fund | - | - | - |
| 2014 Revenue Fund | - | 3,331 | (3,331) |
| 2014 Debt Service Reserve Fund | - | 4,225 | (4,225) |
| 2014 Operating Reserve | - | 8 | (8) |
| 2014 Entrance Fee Fund | - | - | - |
| 2021 Series A Debt Serv | 923,601 | 918,148 | 5,452 |
| 2021 Series A Redemption | - | - | - |
| 2021 Series B Debt Serv | 1,604,934 | 1,595,460 | 9,475 |
| 2021 Series B Redemption | - | - | - |
| 2021 Costs of Issuance | 20,278 | 20,157 | 121 |
| 2021 Project Construction | - | - | - |
| 2021 Insurance Proceeds | - | - | - |
| 2021 A Debt Service Reserve Fund | 5,102,593 | 5,083,529 | 19,064 |
| 2021 B Debt Service Reserve Fund | 9,378,663 | 9,355,966 | 22,697 |
| 2021 Operating Reserve Fund | 1,558,519 | 1,548,849 | 9,670 |
| 2021 Entrance Fee Fund | 1 | 68 | (68) |
| 2021 Revenue Fund | 1,810,776 | 1,699,434 | 111,343 |
| 2021 Rebate Fund | - | - | - |
| Total Restricted Assets | 20,528,842 | 20,372,001 | 156,840 |
| Total Assets | 205,159,344 | 207,809,438 | (2,621,717) |

**The Harborside**
**Comparative Balance Sheet**
**As of December, 31, 2022**
**UNAUDITED**

| | Current Quarter | Prior Quarter | Variance |
|---|---|---|---|
| Accounts Payable | | | |
| Accounts Payable - Trade | 2,647,735 | 1,385,650 | 1,262,084 |
| Due to/from Amsterdam Consulting | - | (6,548) | 6,548 |
| Expansion due to/from Amsterdam | - | - | - |
| Employee Appreciation Fund Pay | 15,341 | 30 | 15,312 |
| Resident Events | - | - | - |
| Security Deposit - Non-Resident | 2,000 | 2,000 | - |
| State Sales Tax | - | - | - |
| Restricted Funds | 2,055 | 2,055 | - |
| Restricted Funds | 27,796 | 17,058 | 10,738 |
| Deferred CARES Act Revenue | - | - | - |
| Total Accounts Payable | 2,694,927 | 1,400,246 | 1,294,681 |
| Resident Current Liabilities | | | |
| Refund Checks Funded and Held | - | - | - |
| Pending Refunds Liability | 594,150 | - | 594,150 |
| Resident Refunds Due | (31,118) | (19,982) | (11,136) |
| Short Term EF Liability | - | - | - |
| Escrow 10% Deposit Liability | 65,944 | - | 65,944 |
| IL Wait List Deposit Liability | 30,000 | 30,000 | - |
| IL Wait List Deposit Interest Accrual | 1,810 | 1,782 | 28 |
| Escrow 10% Deposit Interest Accrual | (77) | (77) | - |
| Security Deposit Interest Accrual | 1,556 | 1,511 | 46 |
| Resident Trust Interest Liability | 13 | 13 | 0 |
| Resident Trust Account Liability | 3,629 | 7,596 | (3,966) |
| Refundable SN Deposit Liability | 248,369 | 188,799 | 59,570 |
| Total Resident Current Liabilities | 914,278 | 209,642 | 704,636 |
| Payroll Related Current Liabilities | | | |
| Accrued Payroll Costs | 208,058 | 90,372 | 117,686 |
| Accrued Employer Payroll Taxes | - | - | - |
| Accrued Employee Deductions | (12,443) | (6,105) | (6,338) |
| Accrued Pension Costs | 105,000 | 78,750 | 26,250 |
| Employee Federal Withholding Tax Liab | - | (1,028) | 1,028 |
| Accrued Flex Benefits | (6,635) | (6,558) | (78) |
| FICA Tax Liability | 16,311 | 121,925 | (105,614) |
| FMI A Liability | (140) | - | (140) |
| Abandoned Property Liability | 23,709 | 23,709 | - |
| Accrued PTO | 92,448 | 128,309 | (35,861) |
| Accrued Bonuses | - | - | - |
| Total Payroll Related Current Liabilities | 426,308 | 429,374 | (3,066) |
| Accrued Expenses | | | |
| Accrued Development Fee | 41,667 | 41,667 | - |
| Accrued Bond Interest Expense - 2021A | 1,831,950 | 915,975 | 915,975 |
| Accrued Bond Interest Expense - 2021B | 3,183,142 | 1,591,552 | 1,591,590 |
| Accrued Subordinated Loan Int | 4,210,769 | 4,115,489 | 95,280 |
| Accrued Operating Expenses | 293,630 | 461,280 | (167,650) |
| Accrued Audit Fees | - | - | - |
| Accrued Amsterdam Mgmt Fee | - | - | - |
| Accrued PPP Loan Interest Expense | - | - | - |
| Total Accrued Expenses | 9,561,158 | 7,125,963 | 2,435,195 |
| Total Current Liabilities | 13,596,671 | 9,165,224 | 4,431,447 |
| Entrance Fee Liability | | | |
| Refundable Resident Deposit Liability | 129,090,930 | 131,894,437 | (2,803,507) |
| Non-refundable Entrance Fees | 66,702,456 | 66,702,456 | - |
| Acc. Amort Non-refundable Ent. Fees | (48,600,097) | (46,667,220) | (1,932,877) |
| Total Entrance Fee Liability | 147,193,289 | 151,929,673 | (4,736,384) |
| Future Services Obligation Liability | 20,367,000 | 20,367,000 | - |
| Long Term Debt | | | |
| Long Term Debt - Subordinated Note | 3,000,000 | 3,000,000 | - |
| Bonds Payable - 2021A | 40,710,000 | 40,710,000 | - |
| Bonds Payable - 2021B | 127,327,200 | 127,327,200 | - |
| Deferred Financing Costs 2021 | (1,582,510) | (1,582,510) | - |
| Accum Amort - DFC 2021 | 152,098 | 123,639 | 28,459 |
| Paycheck Protection Program Loan | - | - | - |
| Total Long Term Debt | 169,606,789 | 169,578,330 | 28,459 |
| Total Liabilities | 350,763,749 | 351,040,227 | (276,478) |
| Equity | | | |
| Equity - Cash | 2,500 | 2,500 | - |
| Net Assets | (134,574,249) | (134,574,249) | - |
| Net Income | (11,032,656) | (8,659,040) | (2,373,616) |
| Total Equity | (145,604,405) | (143,230,789) | (2,373,616) |
| Total Liabilities & Equity | 205,159,344 | 207,809,438 | (2,650.094) |

**EXHIBIT E**

**Premises Owned or Leased by Debtor**

| Debtor | Property Address | Lease Expiration Date | Type of Interest |
|---|---|---|---|
| Amsterdam House Continuing Care Retirement Community, Inc. | 300 E. Overlook Port Washington, NY 11050 | N/A | Owned |

# <u>EXHIBIT F</u>

**Location of Debtor's Significant Assets and Records**

Pursuant to Local Rule 1007-4(a)(xi), the following lists the location of the Debtor's substantial assets, books and records, and nature, location, and value of any assets held by the Debtor outside of the United States:

**Location of Debtor's Substantial Assets**

300 E. Overlook
Port Washington, New York 11050

The Debtor's real property, leaseholds and inventory, and the location of these assets are provided in Exhibit E.

**Location of the Debtor's Books and Records:**

300 E. Overlook
Port Washington, New York 11050

**Debtor's Assets Outside of the United States**

The Debtor holds no assets outside of the United States.

**EXHIBIT G**

**Pending or Threatened Litigation Against the Debtor or Its Property**

| Caption or Information Regarding the Demand | Jurisdiction | Status or Disposition | Nature of Proceeding |
|---|---|---|---|
| Jose A. Tejeda vs. Amsterdam House Continuing Care Retirement Community, Inc. D/B/A The Amsterdam at Harborside, and DB Land Works Corporation<br><br>Docket No. 614824/2021 | New York (Supreme Court, Nassau County) | Pending – Plaintiff filed an amended verified complaint on February 17, 2023 | Personal Injury |
| Demand Letter for the Refund of 80% of a Former Resident's Entrance Fee | N/A | Threatened Litigation | Demand for Payment/Breach of Contract |
| Demand Letter for the Payment and/or Termination of Contract | N/A | Threatened Litigation | Demand for Payment/Termination of Contract |

# EXHIBIT H

## Summary of the Debtor's Senior Management

| Name | Tenure in Position | Position | Responsibilities |
|---|---|---|---|
| Brooke Navarre | 1 year, 2 months | President and CEO | As President and CEO, Brooke Navarre is responsible for overseeing the operations of the corporation and its assets. She directs and supervises operations of the Debtor, its administration, and each of its departments. Ms. Navarre's responsibilities also include reporting to the Board of Directors regarding the Debtor's operations and community strategy. Ms. Navarre previously served as Executive Director for 5 years and as Assistant Executive Director for 2.5 years. |
| Pamela Landman | 3 years, 11 months | Senior Vice President and General Counsel | The General Counsel oversees and manages the provision of all legal services to the corporation to ensure maximum protection of its legal rights and to maintain its operations within the limits prescribed by law. Among other responsibilities, Ms. Landman provides strategic guidance to the corporation on a variety of legal issues and examines and drafts business agreements and contracts with Residents, vendors and other outside parties. |
| Kelly DeJesus | 2 years, 4 months | Health Care Administrator and Finance Coordinator | The Health Care Administrator's duties include planning, developing, organizing, implementing, and evaluating the Health Center's programs and activities. Ms. DeJesus also assists with the development of the Health Center's organizational structure and articulates the roles of department heads within that structure. Further, Ms. DeJesus works on the development and administration of the Health Center's overall budget process. Ms. DeJesus is a licensed nursing home administrator in the State of New York. Ms. DeJesus previously served as Assistant Health Care Administrator, and prior to Assistant Health Care Administrator, as Finance Coordinator for 8 years. |

**EXHIBIT I**

**Estimated Payroll 30-days Following Petition Date**

| | |
|---|---|
| **Payments to Employees (Not Including Officers and Directors** | $377,000 |

**EXHIBIT J**

**Estimated Payment to Officers and Directors 30-days Following Petition Date**

| | |
|---|---|
| **Payments to Officers and Directors** | $40,000 |

## EXHIBIT K

**Schedule of Estimated Cash Receipts, Net Gains or Loss, Obligations, and Receivables Unpaid for 30-Days Following Petition Date**

| | |
|---|---|
| **Cash Receipts** | $1,793,000 |
| **Cash Disbursements**[1] | $3,945,000 |
| **Net Cash Gain/Loss** | ($2,152,000) |

| | |
|---|---|
| **Unpaid Obligations**[2] | $421,000 |
| **Unpaid Receivables**[3] | $442,000 |

1 Includes operating expenses plus certain accrued pre-petition obligations (subject to Court approval).

2 Unpaid post-petition obligations reflect accrued, but not due, operating costs.

3 Reflects unpaid post-petition receivables.

**EXHIBIT L**

**Insurance Policies List**

| COVERAGE TYPE | CARRIER | POLICY NUMBER | POLICY PERIOD |
|---|---|---|---|
| General and Professional Liability | MedPro - National Fire and Marine Insurance Company | NSC100971 | 10/24/2022-10/24/2023 |
| General and Professional Liability – 2nd Layer | MedPro - National Fire and Marine Insurance Company | ENSC100971 | 10/24/2022-10/24/2023 |
| Worker's Compensation | MEMIC Indemnity Co. | 6103800647 | 1/1/2023-1/1/2024 |
| Business Auto | The Travelers Companies, Inc. | BA-8T976366-22-43-G | 10/24/2022- 10/24/2023 |
| Cybersecurity | Accredited Specialty Insurance Company | 2-CIA-NY-17-S0111980-00 | 6/2/2022-6/2/2023 |
| Crime | Great American Insurance Company | SAA 0245474 11 00 | 10/24/2022-10/24/2023 |
| Property | The Travelers Companies, Inc. | P-630-8T977142-TIL-22 | 10/24/2022-10/24/2023 |
| Directors and Officers Liability | RSUI Indemnity | NPP703987 | 2/13/2023-2/13/2024 |

| COVERAGE TYPE | CARRIER | POLICY NUMBER | POLICY PERIOD |
|---|---|---|---|
| Directors and Officers Liability – Additional Layer | Allied World Assurance Company | 03127460[1] | 2/13/2023-2/13/2024 |

# EXHIBIT M

## The Debtor's Bank Accounts

| | Account Holder | Bank | Account Number(s)[22] | Account Type |
|---|---|---|---|---|
| 1. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 2862 | Main Deposit Account |
| 2. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 6837 | Main Disbursement Account |
| 3. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 8041 | Employee Benefits Account |
| 4. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 4297 | Resident Trust Account |
| 5. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 2614 | Security Deposit Account |
| 6. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 6665 | Employee Appreciation Account |
| 7. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 9986 | Friends of Independent Living Account |

[22] The last four digits of each Bank Account are listed.

| | Account Holder | Bank | Account Number(s)[22] | Account Type |
|---|---|---|---|---|
| 8. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 1532 | Legacy Fund |
| 9. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank<br>102 Duffy Avenue<br>Hicksville, New York 11801 | 2850 | Utility Deposit Account |
| 10. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank<br>275 Seventh Avenue<br>New York, New York 10001 | 3703-800<br>3703-900 | Entrance Fee Escrow Account |
| 11. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank<br>275 Seventh Avenue<br>New York, New York 10001 | 8646 | Supplemental Account |
| 12. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.1 | Revenue Fund |
| 13. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.12 | Entrance Fee Fund |
| 14. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.8 | Operating Reserve Fund |
| 15. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.2, 587.3, 587.4, 587.5, 587.6, 587.7 | Debt Service Funds |

| | Account Holder | Bank | Account Number(s)[22] | Account Type |
|---|---|---|---|---|
| 16. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.9 | Project Fund |
| 17. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.10 | Insurance Proceeds |
| 18. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.11 | Cost of Issuance |
| 19. | UMB Bank, N.A. | UMB Bank, N.A.<br>1010 Grand Boulevard<br>Kansas City, Missouri 64106 | 587.13 | Rebate Funds |

**EXHIBIT N**

**Organizational Chart**



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:
AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC., Debtor.

Main Case No. 8-23-70989-ast

- - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court
290 Federal Plaza
Central Islip, New York

March 24, 2023
11:05 AM

B E F O R E:
HON. ALAN S. TRUST
U.S. BANKRUPTCY JUDGE

ECRO: ELECTRONIC RECORDING

2 Motion to Authorize/Direct filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc. Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (I) Continued Use of the Debtor's Existing Cash Management System, (II) Maintenance of Its Existing Bank Accounts, (III) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. 345(b) and the U.S. Trustee Guidelines Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.

3 Motion to Pay / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Salaries, Commissions, Employee Benefits, Prepetition Payroll Taxes, and Other Obligations, (B) Maintain Compensation and Benefits Programs, and Pay Related Administrative Obligations, and (C) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief Filed by Gregory Juell on behalf of Amsterdam House Continuing Care Retirement Community, Inc.

4 Motion to Pay / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fees, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.

5 Motion to Prohibit/Enjoin/Restrain / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming the Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.

6 Motion to Pay / Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, Change or Enter into New Insurance Policies, and (II) Granting Certain Related Relief. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.)

7 Motion to Authorize/Direct / Debtor's Emergency Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Resident Information. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.)

8 Application to Employ / Debtor's Application for Entry of an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. 156(c), 11 U.S.C. 105(a), and E.D.N.Y. Administrative Order No. 658 Effective as of the Petition Date. filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.

9 Motion to Authorize/Direct / Debtors Emergency Motion for Entry of an Order Establishing Certain Notice, Case Management, Administration Procedures and Omnibus Hearing Dates. Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.)

10 Motion to Extend Deadline to File Schedules Filed by Debtor Amsterdam House Continuing Care Retirement Community, Inc.)

Transcribed by: River Wolfe
eScribers, LLC
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
(800) 257-0885
operations@escribers.net

A P P E A R A N C E S:

DLA PIPER LLP (US)

Attorneys for Debtor

200 South Biscayne Boulevard

Suite 2500

Miami, FL

BY: RACHEL NANES, ESQ.

NICOLE MCLEMORE, ESQ. (TELEPHONICALLY)

DLA PIPER LLP (US)

Attorneys for Debtor

1251 Avenue of the Americas

New York, NY 10020

BY: GREGORY JUELL, ESQ.

DLA PIPER LLP (US)
Attorneys for Debtor
1900 North Pearl Street
Suite 2200
Dallas, TX 75201

BY: JAMES P. MUENKER, ESQ.

DLA PIPER LLP (US)
Attorneys for Debtor
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067

BY: NADIA B. SALEEM, ESQ. (TELEPHONICALLY)

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
Attorneys for Bond Trustee
One Financial Center
Boston, MA 02111

BY: DANIEL S. BLECK, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for Office of the United States Trustee
560 Federal Plaza
Central Islip, NY 11722

BY: CHRISTINE H. BLACK, ESQ.

OTTERBOURG P.C.
Attorneys for Amsterdam Continuing Care Health System Inc.
230 Park Avenue
New York, NY 10169

BY: JONATHAN N. HELFAT, ESQ.

ALSO PRESENT:
MICHAEL MORTON, Ankura Consulting (TELEPHONICALLY)
BROOKE NAVARRE, CEO/President of Debtor (TELEPHONICALLY)
PAMELA LANDMAN, ESQ., Senior VP/General Counsel of Debtor (TELEPHONICALLY)
KATHRYN TRAN, Epiq Systems (TELEPHONICALLY)

P R O C E E D I N G S

THE CLERK: Okay. Good morning. I'm Yvette Mills, courtroom deputy for Chief Judge Alan S. Trust presiding. These hearings are being recorded. Please speak clearly.

The 11 o'clock case, starting with case number 23-70898 (sic), Amsterdam House Continuing Care Retirement Community.

THE COURT: All right. Good morning, everyone. This is the emergency first-day hearing in Amsterdam.

The Court has a number of matters on for this morning. There are also a number of pro hacs pending. Anybody that's got a pro hac pending, you are permitted to speak during the hearing. We'll get to the pro hacs. But don't worry about if you're not as of now admitted in the Eastern District of New York. If you do have a pro hac application pending, then that is certainly fine for you to speak this morning. We'll get to the process of those.

So with that, we'll hear from the debtor.

MS. NANES: Good morning, Your Honor. This is Rachel Nanes from DLA Piper. Can you hear us?

THE COURT: I can.

And anyone who is not speaking, please mute your line.

All right. Go ahead.

MS. NANES: Good morning, Your Honor. First, I wanted to thank the Court and the Court's chamber staff for

accommodating us today on short notice.

To start off the hearing, Your Honor, I just wanted to quickly make a few introductions for the Court. Joined today in the room with me are my colleagues James Muenker and Greg Juell. And to my right is Michael Morton of Ankura Consulting, LLC. He is the debtor's chief restructuring officer.

Joined with us also telephonically is Brooke Navarre, who is the chief executive officer and president of the debtor. Brooke has established a Zoom link at The Harborside so that residents are able to participate in the proceedings and listen in. So there are residents of the community who have joined us today.

Also joining us remotely is Pamela Landman, who is the general counsel of The Harborside.

And then finally in joining us remotely are my colleagues Nadia Saleem and Nicole McLemore, who will be assisting us today with the various first-day motions.

So Your Honor, for today's hearing, in terms of how we sort of approach things, I thought it would be helpful to provide the Court with a brief presentation regarding the events that led to the Chapter 11 filing and a brief discussion of the debtor's proposed strategy to implement a restructuring transaction as expeditiously as possible. And then --

THE COURT: Is that going to be a brief summary of what we've already read in Mr. Morton's declaration?

MS. NANES: Yes, and I will keep it very short, given that I assume the Court has read the declaration.

THE COURT: We have.

MS. NANES: And then, Your Honor, I thought we would pivot quickly to the first-day motions. I'm pleased to announce that it's my understanding that there are no pending objections with respect to the first-day motions.

We will discuss briefly an agreement that was reached late last night into early this morning regarding the DIP motion. I believe a proposed order has been filed with the Court, and it should have also been emailed to Ms. Willie. So hopefully the Court will be able to access that in connection with today's hearing or proposed.

THE COURT: I'm sorry. The proposed order on (indiscernible) --

MS. NANES: -- (indiscernible) correct, which is in lieu of the proposed order on the DIP motion.

THE COURT: All right. Let's get to that when we get to that.

MS. NANES: Okay. So Your Honor, I'll be brief, given what's been set forth in the first of these declarations.

As the Court undoubtedly is aware, in the summer of 2021, the debtor emerged from a Chapter 11 case having implemented a consensual restructuring with its key stakeholders, namely the bond trustee, certain consenting

bondholders, and the sole corporate member of the debtor, Amsterdam Continuing Care Health System, Inc.

As part of that 2021 restructuring, those key stakeholders made significant financial contributions to implement that strategy, and I think all the parties emerged from that case with confidence in the success and feasibility of that plan. Part of that plan was that as the debtor emerged from that Chapter 11 case, they would be able to share the continuing confidence of its key stakeholders and the debtor with prospective residents in order to encourage those residents to move into the community, notwithstanding the prior bankruptcies.

Unfortunately, despite best-laid plans, the debtor continued to face financial challenges, namely in attracting new residents. And as set forth in the declaration, new residents are really the lifeblood of a continuing care retirement community. When you face declining occupancy, you quickly face declining liquidity, and it's a problem that can get rather significant quickly.

And so in seeing declining occupancy despite best efforts to encourage prospective residents to move in, the debtor quickly engaged with its key stakeholders in order to implement a restructuring plan. As set forth in the declaration, the debtor engaged in what it believes is a robust pre-positioned marketing process. We continued to the fullest

extent possible engaging with our stakeholders throughout that process. We feel that the process was successful and that we have identified a proposed plan sponsor.

Of course, that plan sponsor and its proposal is subject to further discussions with our key stakeholders, A diligence period, definitive documentation, and of course, Court approval.

THE COURT: Okay. For everyone in the hearing, please mute your line, unless you are me, which none of you are, if you are speaking. Please mute your lines. Thank you.

MS. NANES: Thank you, Your Honor.

So the debtor commenced this case in order to implement a restructuring transaction. We believe at this time that that involves commencing a secondary marketing and overbid process. In the weeks leading up to the filing and really since then, we've reengaged with the bondholders and our other stakeholders regarding that process.

And we're committed to continuing those conversations in hopes of coming to the Court with a consensual path forward because I think it's in all parties interest to reach a consensus and to work close quickly towards a transaction that's in the best interests of the debtor, its residents, its creditors, and hopefully the extent feasible, one in which we can continue to perpetuate The Harborside's nonprofit mission.

So with that, Your Honor, unless there's any

questions, we're prepared to address the first in motion.

THE COURT: All right. Let me just ask, are there any parties-in-interest who wanted to be heard generally on the history of how we got here?

I'll certainly take folks' statements if (audio interference) are objections to any of the motions filed yesterday as we get to them. But any overall statement of status anyone wants to address at this point?

All right. All right.

MR. BLECK: Yes, Your Honor. Your Honor, Daniel Bleck --

THE COURT: Go ahead.

MR. BLECK: -- from Mintz, Levin representing the bond trustee. I would say it's nice seeing you again, but unfortunately, under difficult circumstances.

As Mr. Nanes has stated, unfortunately, we're here for a third time with respect to this matter. I think we were all hoping that we would have been able to reach a resolution or a solution to the financial problems associated with The Harborside. But unfortunately, the third time did not work, so we're here today.

At this point in time, I think as Your Honor probably has noticed, we have not walked into court on a consensual basis. We're still hoping to see if we can reach resolution on something. That involves all the key constituents, including

the sponsor here. And we remain willing to work in a collective manner, or a cooperative manner in trying to move this process forward.

But I think it's going to take the support of all the parties in this case, including not only the debtor, but also the sponsor, to see if we can reach a resolution that works for everybody and protects this community going forward. Thank you, Your Honor.

THE COURT: All right. Thank you.

Ms. Nanes.

MS. NANES: Your Honor, before we get to the first-days, if I can move forward the declaration of Michael Morton in support of the first-day -- of the debtor's petition and first-day motions, which at docket 13, into evidence in support of the first-day motions.

THE COURT: Well, I will consider it. The mechanical issue is, if I admit it into evidence, I'm going to open the floor for people to cross-examine here, which is not really where I think we want to be at a first-day hearing. I'll certainly consider what's in the declaration, but I don't want anyone to think that if I admit it into evidence, they are somehow waiving rights they might have to cross-examine.

That's not what today's hearings are for. But the Court will certainly take notice, not judicial notice, but will take notice of the declaration. But I'll reserve with

admitting it into evidence at a subsequent hearing on fuller notice.

MS. NANES: Thank you, Your Honor.

So with that, Your Honor, we wouldn't be here today and our first-days wouldn't be where they are if it wasn't for the help of our associates here at the DLA. So with the Court's permission, I'd like to turn things over, first, to Mr. Juell to address our cash-management and our wage motion.

And actually, Your Honor, I apologize. I think it would actually be helpful if we could take the DIP motion up first because the agreement that we've reached will inform certain of the changes that we're proposing in a subsequent first-day motion. So if it's okay with the Court, we'd like to present the agreed proposed interim order on use of cash collateral and then take the balance of the first-days.

THE COURT: Is the DIP motion going forward today?

MR. MUENKER: Your Honor, James Muenker of DLA Piper on behalf of the debtor. We are not moving forward with the DIP motion as filed. We are in --

THE CLERK: Can the person give their appearance before they speak, Judge?

THE COURT: Can you to please state your name again, please?

MR. MUENKER: James Muenker, M-U-E-N-K-E-R, of DLA Piper on behalf of the debtor.

THE COURT: All right.

MR. MUENKER: As I was explaining, Your Honor, we are not moving forward with the relief, all of the relief that has been requested in the DIP motion. The DIP motion sought use of cash collateral and approval of a junior, not priming, DIP from the member, or the sponsor, as has been referred to during this hearing this morning.

We are moving forward as it relates to consensual use of the bond trustee's cash collateral, pursuant to an agreement that we reached early this morning with the bond trustee on the terms of that use for a limited period of time. And so what we'll be requesting this morning, Your Honor, and the conceptual order was just uploaded. It's located at docket entry number 33. Your Honor has that. And I will briefly walk through the terms, the principal terms of that for Your Honor and explain what the agreement is.

In broad strokes, Your Honor, the parties have --

THE COURT: Just to make a -- before we get to the order that none of us have seen, at least on the Court's side as yet, in the budget that was contained within the DIP motion that's no longer going forward, I'll say for you all you haven't heard me say it before in other cases, traditionally there are two in bankruptcy, how much and when.

And so when looking through Mr. Morton's affidavit, which is somewhat still operational, the "how much" part was

there, but the "when" was not. And in looking at the budget, unless the budget is changed, it appeared to the Court that the debtor actually does not need to borrow money, at least under the DIP, for at least another ten days.

So I'm assuming you're only addressing now the use of the cash that was on hand at the petition date?

MR. MUENKER: Yes, Your Honor. So a couple of clarifications. First, the budget that was filed with the DIP motion sought relief in connection with the DIP loan in a worst-case situation. In other words, it assumed that the debtor would not be able to obtain the use of cash collateral, either consensually or nonconsensually. And so that's why the budget was larger than it otherwise might have been and we otherwise would have wanted it to be.

In connection with the agreement that's been reached with the bond trustee that's reflected in the order that was uploaded as soon as we reached that agreement and papered it, there is a new budget that is attached to the proposed order. It does seek, again, only to use cash collateral. So there will be no new money borrowing by the debtor. And it is limited to the amounts that are believed to be necessary through April 6th, which is when ultimately we would like to, subject to the Court's availability, come back to the Court for a further interim hearing with respect to the motion.

There's a number of things that the parties intend to

do between now and April 6th, but the budget that's attached to the interim order covers those expenses that need to be paid during that period of time. Those expenses total under a million dollars now. So it's a smaller request and it is again, limited to what is now consensual use of cash collateral on terms that are acceptable to the bond trustee.

THE COURT: All right. So the closest proximate date that I have for you all is April 5th. That's the closest proximate date to April 6th that we have. So the next hearing date will be April 5th.

Are there any special protections in the proposed cash collateral order that we have not seen. Typically on an emergency first-day hearing where nobody really knows what's happening, typically I grant the complaints (indiscernible) liens and the cash collaterals that are in use. No superpriority administrative claims purely for the use of cash collateral. No liens against avoidance actions purely for the use of cash collateral. No releases or waivers purely for the use of cash collateral on an emergency interim basis.

And so when we end up opening the order, assuming it's longer than the three-page order I otherwise would use, if we find any of that stuff, it's probably better for you all to rework that order, rather than us slashing through the order. Because typically in a case like this, nobody wants me to enter the order that I would have written.

And so I also want to make sure for due-process purposes, since I'm very happy you all have reached an agreement this morning, but again, nobody really knows what's in that agreement. And perhaps substantive parties-in-interest, including your potential 135 million dollars of resident creditors and your two-and-a-half-million dollars of general secured creditors may want to have the opportunity to look at that order and comment on it, and the Office of the United States Trustee, if they haven't seen it as yet either.

So I'm happy for you to describe it, but what will be better from a due-process standpoint is for people to actually see it and have the opportunity to comment on it before it becomes an order.

MR. MUENKER: Understood, Your Honor, and we're certainly happy to explain what's in the order and answer some of Your Honor's questions now and work with the bond trustee to the extent that any changes need to be made to the order to conform to issues that you have identified.

There are no -- just big picture, there are no liens on avoidance actions. There are no waivers or releases. Parties are reserving their rights.

There is a replacement lien. It carves out certain collateral, so it's not a replacement lien on everything.

There is a superpriority claim in it, and I've just heard from Your Honor that Your Honor does not like to see that

in connection with cash collateral order. But again, it carves certain things out, and they're both limited to any diminution in value that would arise from the use of cash collateral. That's all.

So those are really the protections that have been given to the bond trustee in connection with the consensual use of cash collateral. In addition to those protections, there are agreements by the debtor to provide certain financial and other types of information to the bond trustee to negotiate with the bond trustee in good faith regarding potential alternative forms of DIP financing. The bond trustee has recently provided the debtor with a, albeit nonbinding, term sheet that still needs to be fleshed out, but they did express an interest in being considered as the DIP lender.

And so consistent with our fiduciary duties, Your Honor, we intend to use the time that would be provided between now and I guess April 5th to explore not only that, but the bigger picture issues with the bondholders and the other stakeholders to try to come up with a fully consensual path forward in the case.

THE COURT: All right. And then, of course, the general concern about superpriority liens is not the statutory 507(b) failed adequate protection superpriority lien, if the superpriority lien for the recycling of cash collateral, as opposed to new money. So as you described, that would not

sound problematic.

Let me ask. I know we're going a little bit out of the batting order, but that's okay because we're getting substantive work done.

Let me ask Ms. Black from the U.S. Trustee's office. Have you all yet seen the proposed cash-collateral order?

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee.

No, I have not, Your Honor. It wasn't sent to me. Although I've had discussions with the parties yesterday and this morning, I only saw it when it hit the docket at 11:12 this morning. So I think it tracks what is generally approved by this Court during an emergency motion to use cash collateral, but I don't have anything specific with respect to the actual reading of the document.

THE COURT: Okay. Thank you.

MS. BLACK: You're welcome, Your Honor.

THE COURT: And other than the bond trustee, who I assume is happy or at least content with terms of the proposed order.

Are there parties-of-interest in this hearing, unsecured creditors, for example, that may want to take a look at that order before it's entered by the Court?

MR. HELFAT: Your Honor, this is Jonathan Helfat from Otterbourg. We represent the sole member Amsterdam Continuing

Care Health Systems.

And first, I would like to on a personal note the following, that I've worked on this case with Judge Cyganowski. She apologizes for not being here, but she is on a well-deserved vacation.

We have met with Mr. Black over the course -- telephonically and otherwise over the course of the last twenty-four hours, and the member is supportive of the terms of the stipulation that has been worked out between the parties.

THE COURT: All right. Thank you.

MR. BLECK: Good morning, Your Honor. I'm sorry, Daniel Black from Mintz, Levin representing the bond trustee.

It has, as been represented, what I would say a plain vanilla cash-collateral stipulation for two weeks. There are no acknowledgments of deference since there are no waiver of claims. There is no releases associated with this. It's a straight, what I would say, plain vanilla.

And with respect to the adequate protection, it's solely limited to the extent of diminution, so it is limited in that respect as well.

As was stated, the bond trustee remains very interested in providing the DIP facility in this case. We intend to have further discussions over the next week, week and a half to move forward and hopefully reach an arrangement where the bond trustee will be providing the DIP financing in this

case.

THE COURT: All right. Thank you.

All right. So why don't we move forward as follows then.

Ms. Black, if your office can provide any comments to the debtor and the bond trustee and the sole member/proposed sponsored let's say by 2 o'clock on Monday? That give you enough time? I don't know if it's three pages. I expect it's twenty-eight pages but --

MS. BLACK: Judge, that that would be ample time. We'll be able to get that done.

THE COURT: All right. And so then by the end of -- by the end of your day, which may differ from the end of my day on Monday, Ms. Nanes or Mr. Muenker, if you would then docket a letter and -- docket a letter (audio interference) email to AST hearings or AST orders, either is fine, reflecting that the order is or is not at that point on consent to the Office of the United States Trustee as well as the bond trustee and the proposed sponsor.

Whatever changes you all may be making in response to the U.S. Trustee's office, let me know by the end of the day Monday, if you have an agreed form of interim order or if not, how long the parties think they'll need to get to that proposed form of order or if, for some reason, talks have broken down over it.

We will know by end of the day Monday if we have an order that's then in shape for the Court to review to see if it's okay with me. All right. So by end of day Monday for the -- full status on the proposed cash-collateral order.

MS. NANES: Thank you, Your Honor. We will do that.

THE COURT: And then, the April 5, Ms. Mills, is that at 11?

THE CLERK: Yes, Judge. 11 o'clock is fine.

THE COURT: All right. So April 5th, we'll start at 11 a.m. It will be a hybrid hearing. For those of you who have missed being in the cultural capital of Long Island, which is Central Islip, New York, you can come in person. If not, that's certainly fine. We'll have a hybrid set up so that you can appear by Zoom. That will be April 5th at 11 a.m.

That will be wherever things then stand on the next interim hearing that we're going to have on cash collateral. If the DIP resurrects, just make sure that obviously notice is given to parties-in-interest of whatever the debtor is at that point asking for Court approval on. And whatever work we have not finished today on the first-day orders, we'll set that up for April 5th to be the final hearings on those.

I also anticipate, and this matters to Mr. Muenker, you all can tell me otherwise, but in each of the first two cases, the debtor filed a motion to excuse the appointment of a patient care ombudsman. That proposed clerk's office order has

already come up. To the extent that the debtor is going to ask again for excusal from that appointment, I would rather have at least a status on that at the April 5 at 11 a.m.

If you all are going to file that motion, feel free to file it and then bring it on for a status at the April 5th, but that would be for status only. And please get that filed by April 3 if the debtor is seeking to have that appointment waived.

MS. NANES: Thank you, Your Honor. We do intend to file a motion. We have it ready to go. We didn't want to put it on for a first-day matter. And we certainly want to discuss the relief that we're seeking with Ms. Black.

The short version of it is we're adopting the procedures that were approved by the Court in 21, but we just want to have an opportunity to discuss that with Ms. Black before we filed the motion. So we will do so before April 3rd.

THE COURT: All right. Very well. Thank you.

All right. So then, to the top of the list of first-days.

MS. NANES: Yes, Your Honor. So I will turn things over to Mr. Juell to kick us off at the top with our cash-management motion.

THE COURT: Okay. I think the parties know, but again, just for your benefit, our court several years ago adopted a protocol -- basically, what the younger lawyers and

others defined as less experienced, not necessarily chronologically handle motions, typically the types of motions that we're hearing today.

My general view has been that's a good thing. It's a good thing for the case (audio interference) of the "younger" lawyers. And they probably know more about the motion than the more senior partner on the file anyway because they probably did most of the work.

So if you all are jumping back and forth between folks that are handling different motions, that's certainly fine with the Court. I just usually try to stay with my one riot, one ranger rule. So it'll be one attorney per party per motion. All right.

MR. JUELL: Good morning, Your Honor. This is Greg Juell, DLA Piper, on behalf of the debtor.

I'll start with the first item on the agenda, which is the cash-management motion. It can be found in the first half of your binder and was filed at docket number 2.

So in the cash-management motion, the debtor seeks authority to continue using its existing cash-management system in the ordinary course to maintain its existing bank accounts and business forms and to waive certain requirements under Section 345(b) of the Bankruptcy Code to the extent they are applicable.

Just to give a very brief overview of the cash-

management system, the debtor maintains eleven bank accounts, nine at New York Community Bank, two at Amalgamated Bank. There's also thirteen bond trustee-held accounts that are part of the debtor's cash management system, but those have currently zero balance.

So the debtors have -- the two main accounts are the main deposit account and the main disbursement account, and these essentially functioned together as the debtor's operating accounts. Historically, money has been transferred to and from these funds into the trustee-held revenue fund, but those transfers have been suspended pre-petition, and the debtor intends to continue to suspend those transfers during the Chapter 11 case.

So with respect to the debtor bank accounts, two of them are held at Amalgamated Bank, which is not an authorized depository under the U.S. Trustee guidelines. However, one of the accounts is the entrance-fee escrow account. The balance is about 23,000 dollars as of the petition date, well below the FDIC limit. The other account is a supplemental account, which currently has no funds.

And then, one other thing I should point out with respect to the entrance-fee escrow account. New York Department of Financial Service regulations require the debtor to hold those escrowed funds with a New York-chartered escrow agent, which Amalgamated Bank is. The debtor doesn't have any

relationships with any authorized depository that could fulfill that role.

With respect to the business forms, the debtor seeks authority to continue to use its preprinted checks and deposit slips. Within fifteen days of entry of the interim order, the debtor will designate the forms with a DIP designation, and the debtor requests authority -- a waiver, rather, of the requirement to reprint those forms.

With respect to Section 345(b) of the Bankruptcy Code, the debtor is only seeking a waiver of those requirements in an abundance of caution and doesn't believe that a waiver would be necessary.

And finally, the Office of the U.S. Trustee has reviewed and provided informal comments to the proposed form of interim order. And there is only one small change in paragraph 7, which is the paragraph that addresses Section 645 of the Bankruptcy Code. And just the last three words "waived for cause" will be replaced with the word "adjourned". And Ms. Black's office has informed us with that change that she does -- that she does not object to entry of the proposed order.

So unless Your Honor has any questions, the debtor submits that the relief sought in the cash-management motion is appropriate under Sections 363 and 105 of the Bankruptcy Code and respectfully requests entry of the proposed order.

THE COURT: Since you're changing "waive" to "adjourn", does that mean this is now an interim order?

MR. JUELL: Yes, that's correct.

THE COURT: All right. Thank you.

Ms. Black.

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee.

I'm sure the Court is aware that we are quite concerned at this juncture with the present state of the banking problems that have arisen recently. I have had numerous discussions with counsel for the debtor about a 345 waiver.

It's come to our attention that the accounts at Amalgamated are not authorized depositories. But it's also come to our attention that one of those accounts is an escrow account and may not be of the estate. So under those circumstances, I'd ask counsel for the debtor to review that issue and to get back to us to determine whether a 345 waiver is in the cards or even necessary under those circumstances. If the account does not contain property of the estate, we would not be as concerned with respect to 345.

So under these circumstances, and with the understanding that the cash-management order is interim, something that we hope to revise or come to an agreement with on April 5th, we have no objection to the Court entering the

order.

THE COURT: All right. Thank you.

Then let me go back to the debtors. Did you all -- the amounts in the nonDIP account, is each account less than the 250,000 dollar of current FDIC insurance?

MR. JUELL: That's correct. One of the accounts has no funds, and the other account has about 23,000 dollars.

THE COURT: Okay. All right. All right. So then the Court will enter the proposed cash-management order on an interim basis with the final hearing to be April 5th at 11 a.m.. If you will, if you have not already, if you will upload that revised form of order through the e-orders process, and we will get to that and process that for you.

MR. JUELL: Thanks, Your Honor. We will do so.

The next item on the agenda is the employee-wage motion, which is at tab 2 of Your Honor's binder and was filed at docket number 3.

In the wage motion, the debtor requests authority to pay accrued pre-petition employee obligations and related administrative obligations to third parties to honor employee obligations and benefit programs and to maintain those. The debtor also seeks authority to make payroll deductions and to authorize banks and financial institutions to honor checks related to the foregoing.

Just a very brief overview of the debtor's workforce,

consists of approximately ninety-eight employees, eighty-two of which are full time, fourteen part time, and two per diem. The debtor also supplements its workforce with independent contractors from five different staffing agencies, which have been paid approximately 318,000 per month.

The main item with respect to the pre-petition employee obligations is outlined in paragraph 10 of the motion. You can see that the largest item is the payment to service providers, which is a little bit over 1.3 million dollars. The debtor is not seeking to pay this amount on an interim basis but is only reserving rights to seek this relief on a final basis. These payments to these staffing agencies go toward employees who provide critical day-to-day services to the debtor's operations, including the skilled nursing facility. They include registered nurses, nursing assistants, physical therapists. Many of them have formed relationships with residents, and to stop paying them would be disruptive to the debtor's operations.

One other thing to note. The debtor is not seeking authority to pay any pre-petition wages in excess of the 507 priority cap. In fact, the debtor is not seeking authority to pay the pre-petition wages at all because the most recent payroll was pre-funded and the next payroll date isn't until March 15th.

And we have discussed the motion and proposed order

with Ms. Black's office, and Ms. Black has said that she has no objection to entry of the proposed interim order, subject to adding language that the 1.3 million in payments to staffing agencies will be made in accordance with the DIP budget. And we will plan to circulate a revised order to the parties before submitting it to Your Honor.

So unless Your Honor has any questions, the debtor submits that the relief requested is appropriate under Sections 507, 363, and 105 of the Code and respectfully requests entry of the proposed order, subject to circulation and being uploaded.

Sorry, I think you might be on mute, Your Honor.

THE COURT: To clarify one thing, when you said it's already been pre-funded, so the money is actually already sitting with ADP to release and you all just need the authority for them to release that because there's a pre-petition stub portion in those checks?

MR. JUELL: I'm sorry, Your Honor. One second, if I may confer with my colleagues --

THE COURT: Sure.

MR. JUELL: -- to clarify.

MR. MUENKER: There is no relief requested.

THE COURT: I'm just --

MS. NANES: Your Honor --

THE COURT: -- yeah. Understood.

MS. NANES: Yeah. I'm so sorry, Your Honor.

THE COURT: Everything was going great until you got to the part where you said, and we already paid it, and I'm just trying to make sure I understand.

Paid it in the sense that they've already been paid so you don't need relief from the Court, or you still need relief from the Court because there is money sitting at ADP that they need to release, and they'd be releasing it post-petition even though it is paying pre-petition. Otherwise, we would just (indiscernible).

MS. NANES: Yes. Yes, Your Honor. You have that correct.

So we pre-funded payroll. So it's in ADP's account. Checks in the ordinary course will be issued on Tuesday of this coming week. So to the extent that those payments will include pre-position amounts, we are seeking that release. But the funds are currently held by ADP to be paid in the ordinary course.

THE COURT: Got it. Thank you.

Ms. Black.

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee. We don't have any objection to the payment of the employees provided that the amounts are below the statutory cap. I am also of the impression that no officers or directors are getting paid, with

respect to the payroll being paid. That's accurate. We are okay with the order as structured.

THE COURT: All right. I'll go back, then, to the debtor because typically, I think as other courts do, I usually reserve on insiders', officers', and directors' compensation until the final hearing on the employee motion. Are there any insiders included in this payroll?

MR. JUELL: No, Your Honor.

THE COURT: All right. All right. So then, why don't you all have that iteration worked out with the U.S. Trustee's office. You can submit that order. This will be the interim order. We'll hold it for a final to the April 5 at 11 hearing. So once that order is uploaded, we'll look for that and we can then process that for you.

To the extent that I don't know what your timing mechanic is on when ADP wants to hit the send button, so to the extent that that's an issue, I will so order and calendar with the relief that was granted this morning because if we get the order on Monday and it stays Wednesday, maybe ADP needs to click the send button on Monday. I've so ordered and calendared that this relief has been granted.

MR. JUELL: Your Honor.

MS. BLACK: Thank you, Your Honor.

THE COURT: For some reason later today.

MR. JUELL: Thank you, Your Honor. So I'll pass the

podium to my colleague, Nadia Saleem, who will present the next few motions on the agenda.

THE COURT: All right.

MS. SALEEM: Thank you.

Good morning, Your Honor. My name is Nadia Saleem from DLA Piper on behalf of the debtor. As Ms. Nanes mentioned, I plan to present agenda items 3, 4, 5, and 6.

So I'll start with the third item on the agenda and the third tab in your binder, which is docket number 4, and this is debtor's tax motion. And through this motion, the debtor seeks an interim order allowing the debtor to pay its tax license and reporting fees, as well as other governmental obligations. We're also requesting that our banks be authorized to receive, process, and pay all requests that may come in from the taxing authorities.

We're also requesting authorization for the debtor's banks to rely on the debtor's designation of any particular check or electronic payment request as appropriate. The debtor believes that 112,100 dollars in taxes and fees relating to the pre-petition period has accrued and will become due and owing to the governmental authorities after the petition date in the ordinary course.

We have provided a table on page 5 providing an overview of the taxes that have accrued as of the petition date and the amount that will come due during the first twenty-one

days after the petition date. Note that there is some uncertainty over when some of the taxes get paid. So we are taking a conservative approach in our request to the extent that they may come due during the interim period.

I would like to note that the Medicaid taxes are payable on the 15th of each month. In 2022, the debtor paid approximately 196,300 dollars in Medicaid taxes. And as of the petition date, the debtor estimates that it has approximately 20,000 dollars in Medicaid taxes outstanding, all of which will become due and owing during the twenty-one days following the petition date.

In addition to those taxes, there are sales taxes, ad valorem taxes, payments in lieu of taxes, reporting licensing and other fees, and estate unemployment insurance taxes, which are included in the summary chart. We have provided the proposed form of order to the U.S. Trustee, and the U.S. Trustee has indicated that it has no objections to relief on an interim basis.

THE COURT: All right. Thank you.

Ms. Black.

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee. I don't have any objection to the -- or the U.S. Trustee has no objection to the payment of taxes, but the tax motion was constructed on a twenty-one day window. And since we're going to be back in

court on April 5th with respect to these orders and I haven't had the opportunity to review the cash collateral budget and we have not yet solicited for a committee, I would like to have that order or this order limited to only those taxes that would have to be paid by April 5th and then the rest of it we can deal with at the next hearing date.

THE COURT: All right. That certainly makes sense to the Court. So to the extent that any of the taxes that are made the subject of the motion come due for ordinary-course payment on or before April 5th, then the debtor is authorized to make those payments, but the remainder of the taxes made the subject of the tax motion as of April 5th.

So if Ms. Nanes or someone from your office will update or modify the form of order to provide to pay those that accrue on or before April 5th, we'll take up the rest at the final hearing.

MS. NANES: We'll do that, Your Honor. Thank you.

MS. SALEEM: Thank you.

THE COURT: All right.

MS. SALEEM: Next, the fourth item on the agenda in docket number 5 and is the utilities motion and is located at tab 4 in your binder. And --

THE COURT: Yeah, Ms. Saleem, before you get too deep into this, is that typically the conversation you have on the second or third day of the case on a utility motion is, why are

we taking this up on the second or third day of the case? Isn't this something that ought to just be adjourned to the April 5 hearing? I don't if the debtor has gone through its protocol, the back-and-forth and the offer of adequate protections, et cetera. And I'm pretty sure I've heard in prior hearings the U.S. Trustee's office say, why are we taking this up on second or third day of the case.

Ms. Black, your memory's probably better than mine because you make that statement a lot more often than I hear it.

MS. BLACK: Yesterday, Your Honor. Theoretically, we don't have any objection to them setting up a system to take care of the deposits and the utilities. But I agree with the Court. At this juncture, I think that we should just adjourn this motion, carry it to the April 5th date, unless there is an immediate need to make the payment, but I don't think there is.

THE COURT: Ms. Saleem.

MS. SALEEM: There is no immediate need, just an interest in uninterrupted utility services.

THE COURT: Oh, well, I get that part. If (indiscernible) out there with their big, old disconnect pliers getting ready to ready to cut the power of the facility is a much bigger problem. So I'm just will adjourn the utilities' motion over to the April 5th. And at that point, we'll talk about the protocol with the -- everything in the motion seems

to be appropriate. But again, given the twenty-day back-and-forth issue, I'm just more comfortable taking that up at the April 5 hearing.

MS. SALEEM: Okay. Understood. Thank you.

Okay. Next, the fifth item on the agenda and the fifth tab in your binder is docket number 6, which relates to the debtor's insurance policies.

MS. NANES: Your Honor, sorry to interrupt. I think, given the Court's comments, I think we could probably adjourn the insurance motion as well.

THE COURT: Are there any payments coming up between now and the April 5?

MS. NANES: No, there are none contemplated.

THE COURT: All right. All right. Then why don't we put that over to the April 5th as well.

MS. NANES: Thank you, Your Honor. Sorry to interrupt.

THE COURT: No. No, not at all.

MS. SALEEM: Okay. Then, I will move on to the sixth item on the agenda, which is docket number 7, and relates to the implementation of procedures to maintain and protect confidential resident information.

The debtor seeks entry of an order authorizing the implementation of procedures to protect confidential information of current and former residents of the debtor, as

may be required by the Health Insurance Portability and Accountability Act of 1996, HIPAA, or as other -- or as is otherwise required to protect the residents' privacy.

And in the ordinary course of providing care for its residents, the debtor is required to maintain the confidentiality of certain patient information pursuant to HIPAA. The debtor recognizes that such requirements may conflict with the duty to disclose certain information under the Bankruptcy Code, including, without limitations, the duty to file a list of creditors under Section 521(a)(1)(A), and the list of schedules of assets and liabilities under Section 521(a)(1)(B)(i).

We are requesting relief in the form of authorization to implement procedures to protect confidential information, including the filing of a separate creditor matrix of the residents, along with a separate schedule of claims; permission to file a redacted version of the residents' schedules that redact the names and addresses of residents and assign a unique identification number to each resident; authorization to list the residents' unique ID number on any documents filed with the Court; and authorization for debtor's HIPAA-certified noticing and claims agent to take further precautions in the processing of residents' proofs of claims and service of documents. And these procedures were barred from the debtor's prior case.

We believe this relief is appropriate under Section

107(d)(1) of the Bankruptcy Code and request the Court to enter the proposed form of interim order filed with the Court.

THE COURT: All right. Thank you.

Ms. Black, the question that I have, and I'll pose it first to you is, obviously protecting the personal information, the HIPAA, the medical information of the residents -- because part of this care facility is a care facility, so HIPAA is clearly triggered -- to the extent that any of the residents may also be actual unsecured creditors as opposed to hypothetical or contingent unsecured creditors, does your office at this point have a view on whether there might be either an unsecured creditors' committee or a committee that includes residents to the extent that they hold either matured or contingent refund claims?

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee.

Yes, Your Honor. We do. We are of the impression that there is an active body of creditors who are residents at the facility. In the prior case, we have also had a active creditors committee, and there were residents who were members of that committee.

At this point in time, we've been unable to solicit committee because we were still awaiting the full address necessary to do that. I understand that this case has come in very quickly, and counsel has promised me that they will send

me the complete list so that we can perform our statutory function there.

As far as protecting the residents, we had utilized in the prior case a very similar procedure with a quick noticing agent. So the process itself doesn't specifically run afoul of our position at this time. Nobody wants to have a HIPAA problem in any kind of a Chapter 11 matter. But we do request that we get a list of all of the creditors and their addresses so that we can perform the statutory function and get a committee put together in this case because the creditors do matter here, and a lot of the residents have substantial claims in this case.

THE COURT: All right. The Court noted that at least in the motion, there was a U.S. Trustee's office carve-out. So that would be appropriate. I just want to make sure that your office is comfortable that if it comes to soliciting residents as potential members of the committee or otherwise, that that solicitation is not somehow running afoul of my order.

Because, again, the Court sees the need to both protect outward looking, whether it's from public disclosure of their information, but inward looking to make sure that to the extent that they have the right to participate as committee members, they be given that that right.

Is your office comfortable with the proposed form of audit?

MS. BLACK: At this point, yes, Your Honor, provided that we get the complete list expeditiously. I couldn't tell from the order -- my only reservation was, I couldn't tell from the order when they were required to give me that list. And I would respectfully request that they be directed to furnish it to me as soon as possible, although counsel has promised it to me, and I have no reason to believe that I won't get it by sometime today so --

THE COURT: Well, it would seem to the Court that as many as (audio interference) of the thirty largest unsecured creditors were all residents?

MS. BLACK: Yes, Your Honor.

THE COURT: All right.

MS. NANES: That's correct, Your Honor. This Rachel Nanes on behalf of the debtor.

We will get that list that's unredacted that includes the names and addresses of the residents. I will commit to getting that within the hour of the hearing being over.

And I would also just note for the Court's benefit, we've prepared what we would sort of call a key where residents would seek (indiscernible) they get service of documents and it lists the resident ID number, they will have the ability to connect with team members at The Harborside in order to understand what their resident ID number so they can track themselves through various filings with the Court.

THE COURT: All right. Thank you. And is this an interim order, or is this the final -- proposed to be the final order?

MS. BLACK: Your Honor, since we don't have a committee at this point, I would like to keep the option open in the event that we do have parties interested. And if we can carry this motion until the April 5th date.

THE COURT: All right. Ms. Saleem, is that okay with you?

MS. SALEEM: Yes, Your Honor.

THE COURT: Okay. All right. So then, if you all would just make sure that this uploaded form of order reflects this interim, with the final hearing to be April 5th at 11, and then we will get that processed for you.

MS. SALEEM: Thank you. We will do so.

And now, I will cede the virtual podium to my colleague Ms. McLemore.

MS. MCLEMORE: Good morning, Your Honor. Nicole McLemore from DLA Piper on behalf of the debtor. I'll be presenting agenda item numbers 7 through 9.

The next item on the agenda, located on tab 7 of the binder, docket number 8, is the debtor's application to retain Epiq Corporate Restructuring, LLC as claims and noticing agent in this case effective as of the petition date.

The debtor followed the Court's protocol for

employment of claims and noticing agents and solicited proposals from three reputable sales agents and has selected Epiq because their rates were competitive and reasonable.

Epiq will assist in serving required notices and documents in these cases, along with processing proofs claims filed in these cases. (Indiscernible) Epic services will alleviate cost and the burden on the Court and the clerk's office, and the debtor would request that Epiq's undisputed fees and expenses be treated as administrative expenses.

Your Honor, the application is also supported by the declaration of Kathryn Tran, the consulting director of Epiq, who is available here today if the Court has any questions.

We submitted the application and the proposed form of order to the Office of the United States Trustee, who has indicated it has no objections to the relief sought. And in addition, we've also received no other objection to the retention application at this time.

As a result, and based on 28 U.S. Code Section 156(c) and the Court's protocol for the employment of claims and noticing agents promulgated under Administrative Order 658, the debtor respectfully requests the Court enter the proposed order that was attached to the retention application.

THE COURT: All right. Thank you. And that order will be on a final basis, correct?

MS. MCLEMORE: Yes, that's correct, Your Honor.

THE COURT: All right. Thank you.

Ms. Black.

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee. We have no objection to the entry of that order on a final fee.

THE COURT: All right. And that order has been uploaded, Ms. McLemore?

MS. MCLEMORE: I don't believe that it's been uploaded yet, Your Honor, but we'll get that done today.

THE COURT: All right. Very well. So that retention will be approved of Epic on a final basis, and then we'll look for that order.

MS. MCLEMORE: Thank you, Your Honor.

The next item on the agenda, located on tab 8, docket number 9, is the debtor's emergency motion for an order establishing certain notice and case management procedures and omnibus hearing dates. By this motion, the debtor seeks entry of an order establishing the case-management procedures set forth in the proposed order attached to the motion as Exhibit A. I can briefly describe the procedures if Your Honor prefers, but otherwise we could proceed with a few administrative scheduling matters.

With respect to scheduling matters, we reviewed your audit procedures online, and based on our review of those procedures and the priorities, we adjusted paragraph I in the

proposed order to contemplate telephonic hearings. However, we did want to confirm with the Court whether the Court would prefer us to notice hearings as in the hybrid format or via Zoom or in-person only.

THE COURT: Well, I don't do telephone-only. My hearings are either on the Zoom platform or they're hybrid or they're in person.

I don't want to establish a general control because certain types of hearings, I will want everybody in in person. Many of the hearings will probably be hybrid. Part of that will depend on how many hearings there end up being and how frequently they come.

Court's anticipation was to find you all basically a monthly day (audio interference) a day each month for a hearing and to establish those as hybrid hearings going forward. But again, depending upon how the roads converge or diverge between the primary parties-in-interest, you all may end up being in one of my courtrooms more often than you're on my television screen.

So I will give you some more dates for hearings at the April 5th, because by then I'll have a little bit of flavor of how much of this is Kumbaya and how much of this is stay away. And then I can determine from that which of these hearings will be in person, which ones will be hybrid, but none of them will be purely by telephone, to the extent that that answers your

question.

MS. MCLEMORE: It does, Your Honor, and we'll reflect that in the proposed order.

Based upon Your Honor's comments, it sounds like the next omnibus hearing date will be April 5th at 11 a.m. So we can include that in the proposed order, and then we'll just wait to establish the final omnibus hearing date.

THE COURT: Yeah, April 5th is really the second-day hearing.

MS. MCLEMORE: Okay.

THE COURT: So we'll have a more fulsome hearing after that. But again, I need to know -- I need to see which direction the case is running by April 5 to figure out when the next hearing is and where it would be.

For the party's benefit, I do from time to time sit in Brooklyn, and while it is not the cultural capital of Suffolk County, I was told that Central Islip is actually part of Brooklyn, and it's at the east end of the tip of the Borough of Brooklyn. And not to have that debate today, but I do periodically sit in Brooklyn, and for a case like this, I will probably have some of the hearings over there. So just leave that part of the order as flexible as you can.

As far as objection deadlines, we have a Local Rule for objections. I won't enforce the objection deadline that's in the Local Rule when a hearing is held on expedited notice.

So I would say, basically, as soon as it's down -- as soon as (indiscernible) those orders down, the service and notice parts are fine.

MS. MCLEMORE: Okay.

THE COURT: -- but the objection deadline and when (indiscernible) will be, you can do that fairly thin in this order.

MS. MCLEMORE: Understood, Your Honor.

THE COURT: Ms. Black, did you want in on this order?

MS. BLACK: No, Your Honor. We have no position on it. We believe it's for the Court to determine. Thank you.

THE COURT: All right. Thank you.

MS. MCLEMORE: And Your Honor, we've received no other objections to this motion.

THE COURT: All right. All right. So then we'll look for a proposed form of court managing order to be uploaded.

MS. MCLEMORE: Yes, Your Honor.

THE COURT: All right.

MS. MCLEMORE: The last item on the agenda is on tab 9, docket number 10, and that's the schedules extension motion.

By this motion, the debtor seeks an extension of the deadline by which the debtor must provide and file the schedules of assets and liabilities and statement of financial affairs by sixteen days, for a total of thirty days from the petition date, through and including April 21, 2023, without

prejudice to the debtor's ability to request a further extension.

The debtor provides independent and enriched housing accommodations and services for over 234 residents. And due to the business and the relatively limited nature of the administrative staff available to assist in the preparation of schedules and the multiple critical operational matters that the professionals must address beginning of the case, the debtor would need additional time to properly and accurately complete the schedules and statements.

Like the other motions, we shared this motion a propose form of order with the Office of the United States Trustee, who has indicated that it has no objection to relief sought, and we've received no other objection to the extension requested in the motion.

Based upon Section 521 and -- I'm sorry, Your Honor.

THE COURT: Oh. Oh, I thought you were done with the pitch.

MS. MCLEMORE: Oh, one more brief line. Just based upon Section 521 and 105(a) of the Bankruptcy Code and Rules 1007(c) and 9006(b) of the Federal Rules of Bankruptcy Procedure, we'd request the Court enter the proposed order. Thank you.

THE COURT: All right. Thank you, Ms. McLemore.

Ms. Black .

MS. BLACK: Good morning, Your Honor. Christine Black, Office of the United States Trustee.

We have no objection to the requested extension until April 21. We have the 341 meeting scheduled for April 24. I don't think that we would be amenable to extending the deadline beyond the April 21st deadline so that we could have a meaningful 341 meeting.

But as it stands now, we have no objection to the requested extension of time until April 21st to file schedules, statement of financial affairs.

THE COURT: All right. I would pretty much take that to mean April 21, by no later than, for the schedules and SOFA so that by that point, we're thirty days into the case. So I would think (audio interference) even though there's been some slimming down of the back office support, that that ought to be enough time to update the schedules from 2021 and get those on file. All right. So if your office will submit an order approving the extension until April 21st, 2023.

MS. MCLEMORE: We will do so. Thank you, Your Honor.

And at this time, I'll see cede the virtual podium back to Ms. Nanes.

THE COURT: All right. Very well.

MS. NANES: So Your Honor, that takes care of the matters that we have set for today. We appreciate the Court's patience as we're sort of real-time navigating a resolution

that was reached this morning. So we're appreciative of the Court for scheduling a hearing on April 5th. We will work closely with our key stakeholders to try and maximize that time and look forward to seeing the Court again on April 5th.

THE COURT: So just one other -- thank you.

One other scheduling matter for all to consider, to the extent that (audio interference) making progress in the case, I can hear you all in Brooklyn on April 17th. And so I was just going to pencil that in as a maybe date, because it sounds like from what's been described this morning, you all may be moving toward some sort of at least interim arrangement with the bond trustee and the proposed plan sponsor, or it may completely blow up over the next ten days. You'll know that before I do.

But to the extent that there's a need for a substantive hearing that is not one of these first-day or second-days, I can hear you all, as I said, in Brooklyn on April 17th if there is a functional reason to do that.

We will otherwise, between now and the April 5th, look for those about thirty-day-spaced omnibus-type hearings to bring you all -- to bring you all back it. All right.

MS. MCLEMORE: Thank you very much, Your Honor.

THE COURT: All right. Very well. Thank you, all.

So we will look for the orders from today's hearing, the adjournment of the -- the matters that were simply

"adjourned" to the April 5th, you should all just include those in the notice of hearing for the April 5th, those which are adjourned as final hearings from today and those which are purely final hearings from today. And then the matters that were finally resolved today, such as Epiq, obviously those won't need to be carried.

Ms. Black, since it's now 12:15, sometime before 1:30, it sounds like you're going to have the full list of residents so that you all can do what you need to do with that list.

I am so ordering the calendar on the HIPAA relief as well. The Court has no concerns about your office making any unauthorized use of that list, but I haven't actually entered the order yet which has the UST carve-out. But I am granting that -- I have granted that motion and am so ordering the calendar with that relief so that the U.S. Trustee carve-out is also fully operative. All right.

MS. BLACK: Thank you, Your Honor.

THE COURT: All right. So that will then conclude this morning's hearing on Amsterdam Health Continuing Care. The Court will be in recess. We'll look for the orders from today, and we'll go off the record. Thank you, all.

(Whereupon these proceedings were concluded at 12:16 PM)

INDEX


| RULINGS: | PAGE | LINE |
|---|---|---|
| Debtor's motion for cash management is granted in part, as noted on the record | 31 | 13 |
| Debtor's motion to pay pre-petition wages is granted in part, as noted on the record | 35 | 21 |
| Debtor's motion to pay pre-petition taxes is granted in part, as noted on the record | 38 | 16 |
| Debtor's motion to implement procedures to maintain and protect confidential residential information is granted in part, as noted on the record | 45 | 14 |
| Debtor's motion to retain Epiq on a final basis is granted | 47 | 12 |
| Debtor's motion for court management is granted | 50 | 16 |
| Debtors' motion for deadline extension is granted | 52 | 18 |

C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true and accurate record of the proceedings.

River Wolfe (CDLT-265)
TTA-Certified Digital Legal Transcriber

eScribers
7227 North 16th Street, Suite #207
Phoenix, AZ 85020

Date: March 30, 2023

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor | Amsterdam House Continuing Care Retirement Community, Inc. | EIN: | 11−3711764 |
| | Name | | |
| United States Bankruptcy Court | Eastern District of New York | Date case filed for chapter: | 11 3/22/23 |
| Case number: | 8−23−70989−ast | | |

# NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

**NOTICE IS HEREBY GIVEN THAT:**

A transcript of the proceeding held on 3/24/23 was filed on 3/31/23.

The following deadlines apply:

The parties have until April 7, 2023 to file with the court a Notice of Intent to Request Redaction of this transcript. The deadline for filing a Transcript Redaction Request is April 21, 2023.

If a Transcript Redaction Request is filed, the redacted transcript is due May 1, 2023.

If no such Notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is June 29, 2023, unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber eScribers,LLC at 800−257−0885 or you may view the document at the public terminal at the Office of the Clerk.

Dated: March 31, 2023

For the Court, Robert A. Gavin, Jr., Clerk of Court

**BLnftrans2.jsp** [Notice of Filing Transcript and Deadlines to Restriction and Redaction rev. 02/01/17]

# Notice Recipients

District/Off: 0207−8 User: admin Date Created: 3/31/2023
Case: 8−23−70989−ast Form ID: 295 Total: 18

**Recipients of Notice of Electronic Filing:**
aty Gregory Juell gregory.juell@us.dlapiper.com

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db Amsterdam House Continuing Care Retirement Community, Inc. 300 E. Overlook Port Washington, NY 10050
aty James P. Muenker DLA PIPER LLP (US 1900 North Pearl Street, Suite 2200 Dallas, TX 75201
aty Rachel Nanes 200 South Biscayne Boulevard Suite 2500 Miami, FL 33131
RACHEL NANES ESQ.& NICOLE MCLEMORE ESQ. DLA PIPER LLP (US) Attorneys for Debtor 200 South Biscayne Blvd,Suite 2500 Miami, FL
GREGORY JUELL, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 1251 Avenue of the Americas New York, NY 10020
JAMES P. MUENKER, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 1900 North Pearl Street Suite 2200 Dallas, TX 75201
NADIA B. SALEEM, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 2000 Avenue of the Stars Suite 400, North Tower Los Angeles, CA 90067
DANIEL S. BLECK, ESQ. MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C. Attorneys for Bond Trustee One Financial Center Boston, MA 02111
CHRISTINE H. BLACK, ESQ. UNITED STATES DEPARTMENT OF JUSTICE Attorneys for Office of the United States Trustee 560 Federal Plaza Central Islip, NY 11722
JONATHAN N. HELFAT, ESQ. OTTERBOURG P.C. Attorneys for Amsterdam Continuing Care Health System Inc. 230 Park Avenue New York, NY 10169
RACHEL NANES ESQ & NICOLE MCLEMORE ESQ DLA PIPER LLP (US) Attorneys for Debtor 200 South Biscayne Blvd,Suite 2500 Miami, FL
GREGORY JUELL, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 1251 Avenue of the Americas New York, NY 10020
JAMES P. MUENKER, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 1900 North Pearl Street Suite 2200 Dallas, TX 75201
NADIA B. SALEEM, ESQ. DLA PIPER LLP (US) Attorneys for Debtor 2000 Avenue of the Stars Suite 400, North Tower Los Angeles, CA 90067
DANIEL S. BLECK, ESQ. MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C. Attorneys for Bond Trustee One Financial Center Boston, MA 02111
CHRISTINE H. BLACK, ESQ. UNITED STATES DEPARTMENT OF JUSTICE Attorneys for Office of the United States Trustee 560 Federal Plaza Central Islip, NY 11722
JONATHAN N. HELFAT, ESQ. OTTERBOURG P.C. Attorneys for Amsterdam Continuing Care Health System Inc. 230 Park Avenue New York, NY 10169

TOTAL: 17

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

**GREGORY M. JUELL**
Gregory.Juell@us.dlapiper.com
T 212.335.4608
F 917.778.8608

March 24, 2023

Honorable Alan S. Trust
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Courtroom 960
Central Islip, New York 11722

**Re: Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor")**
**Case No. 23-70989-AST**

Dear Judge Trust:

Following recent discussions and negotiations, the Debtor and UMB Bank, N.A., in its capacity as Trustee for the Series 2021A and 2021B Bonds (the "Bond Trustee"), submit the revised interim order on the DIP/Cash Collateral Motion [Dkt. No. 12] attached hereto as **Exhibit A**.[1]

The Debtor and the Bond Trustee look forward to providing further details to the Court regarding the motion and the revised interim order at today's hearing.

Respectfully submitted,

*/s/ Gregory M. Juell*
Gregory M. Juell

Attachments

---

[1] A redline of the revised interim order against the original interim order is attached hereto as **Exhibit B**.

**Exhibit A**

**Revised Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FURTHER INTERIM HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Motion")[2], and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, N.A., in its capacity as trustee for the bonds described more fully below (the "Bond Trustee"). Capitalized terms used in this Interim Order but not specifically defined have the meanings set forth in the Motion.

In connection with the Chapter 11 Case and the Motion, the Debtor and the Bond Trustee have stipulated and agreed as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

B. The Debtor is the owner and operator of a continuing care retirement community known as The Amsterdam at Harborside (the "Facility").

**The Secured Bond Obligations**

C. The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds described below, authorized and issued by Nassau County Industrial Development Agency (the "Issuer"). The Issuer issued (1) $40,710,000 Continuing Care Retirement Community Taxable Revenue Bonds, (Amsterdam at Harborside Project), Series 2021A (the "Series 2021A Bonds"), and (2) $127,327,200 Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (Amsterdam at Harborside Project), Series 2021B (the "Series 2021B Bonds" and together with the Series 2021A Bonds, the "Bonds") pursuant to the Indenture of Trust dated September 1, 2021(the "Indenture" and together with the other documents securing or otherwise related to the Bonds, the "Bond Documents").

D. The Bonds and the Debtor's obligations under the Bond Documents are secured by substantially all assets of the Debtor, including, without limitation: (i) the Gross Revenues of the Debtor;[3] (ii) the Mortgaged Property;[4] and (iii) "all moneys and securities from time to time held

[3] "Gross Revenues" is defined in the Bond Indenture to include "(i) all receipts, revenues, payments, income and other moneys received by or on behalf of the Corporation from any source, whether or not in connection with the ownership or the operation of all or any part of the Project, including, without limitation, all Entrance Fees (earned and unearned), Monthly Service Fees, and all other operating and non-operating revenues, and all rights to receive the same whether in the form of accounts, accounts receivable, contract rights, chattel paper, instruments, investment property, general intangibles of the Corporation and the proceeds thereof, the proceeds of any insurance coverage on and condemnation awards in respect of the Project or any gain on the sale or other Corporation

by the Bond Trustee pursuant to and under any of the Bond Documents ... and all investments and reinvestments of any such moneys and securities" (all of the foregoing, as further described in the Bond Documents, the "Bond Collateral").[5]

E. As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds and the obligations under the Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal on the Bonds in the amount of $168,037,200;

(ii) Accrued but unpaid interest on the Bonds in the amount of $2,256,808.50 as of the Petition Date; and

(iii) unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

F. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case solely for the first two weeks of this Chapter 11 Case

---

disposition of the Project; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the corporation; and including all gifts, grants, bequests, donations and contributions ... and (ii) all right, title and interest of the Corporation in and to the Funds and accounts established under this Indenture ..."

[4] "Mortgaged Property" is defined in that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 8, 2021 (the "Mortgage") from the Debtor and the Issuer to the Trustee, and such definition includes the land, buildings and improvements comprising the Facility, "all leases, subleases, lettings, licenses and other agreements under the terms of which any person other than [the Debtor] acquires any right to use or occupancy of the Mortgaged Property or any part thereof now or hereafter entered into (the "Leases"), all of the Debtor's right, title and interest in and to all Residency Documents (as defined in the Mortgage), and all of the Debtor's right, title and interest in "all personal and fixture property of every kind and nature including, without limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature which the [Debtor], or others on behalf of the [Debtor], possess, use or have the authority to possess or use ..., all general intangibles, together with all replacements thereof, substitutions therefore and additions thereto ...", and "all products and proceeds of each and every kind" of the identified Mortgaged Property.

[5] The Bond Trustee asserts a lien on substantially all of the Debtor's post-petition revenue. The Debtor and the Bond Trustee reserve all rights regarding such issue.

(through and including April 6, 2023) (the "Interim Period") while the parties discuss a longer term plan for the Chapter 11 Case. The Debtor has agreed to adjourn all other relief sought in the DIP Motion, including approval of the DIP Financing with Amsterdam Continuing Care Health System, Inc. (the "Member") and entry of the Interim Order attached to the DIP Motion, during the Interim Period. The Bond Trustee has agreed, pursuant to the terms hereof, to allow the Debtor to use the Cash Collateral solely during the Interim Period.

G. Pursuant to the Bankruptcy Code, the Debtor is required, upon the Bond Trustee's request, to provide adequate protection to the Bond Trustee in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral during the Interim Period except upon the terms and conditions of this Interim Order.

H. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis during this Interim Period, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Bond Collateral on the terms set forth in this Interim Order, reflecting the agreement of the Debtor and the Bond Trustee for this Interim Period.

I. Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY CONCLUDES AND ORDERS AS FOLLOWS:**

1. Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as debtor in possession pursuant to 11

U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in the Chapter 11 Case under Section 1102 of the Bankruptcy Code as of the date hereof.

2. Notice. The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), which notice was sent to, among others: Office of the U.S. Trustee for the Eastern District of New York; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the Member, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3. Good Cause. Good cause has been shown for entry of this Interim Order.

4. Disposition. The Motion is GRANTED on an interim basis solely as set forth herein, and is otherwise adjourned with respect to all other relief sought therein. The requirements of Bankruptcy Rule 4001(b)(2) and Local Rule 4001-5 are satisfied with respect to the use of Cash Collateral during the Interim Period on an interim and preliminary basis. The rights of all parties, including the Bond Trustee, to object to the relief sought in the Motion are reserved as further provided herein.

5. Authorization to Use Cash Collateral. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues, Rents and Receipts derived by the Debtor in the ordinary course of their business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "Cash Collateral") solely during this Interim Period until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day of the Interim Period, but only on the terms of this Interim Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget.

6. Exclusions from Cash Collateral. The Debtor is not authorized to use and shall not use any cash collateral of the Bond Trustee, other than Cash Collateral as set forth herein.

7. Replacement Lien. As adequate protection for any diminution in the value of Cash Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Collateral"); and (ii) all other assets of the Debtor of any kind or nature

whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, other than the Debtor's rights under that certain Liquidity Support Agreement (the "LSA") between the Debtor and Amsterdam Continuing Care Health System, Inc. dated as of June 14, 2021 (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Postpetition Collateral"); provided, however, that actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Sections 542, 544, 545, 547, 548 (exclusive of transferees under Section 549), 550 and 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") shall not be Postpetition Collateral under this Interim Order.

8. No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the liens granted to the Bond Trustee herein, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; provided, however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's

reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9. Superpriority Claim. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the Debtor's estate other than the Debtor's rights under the LSA (the "Secured Party Superpriority Claim"). The Secured Party Superpriority Claim shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of a final order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

10. Adequate Protection Payment. In consideration of the use of Cash Collateral, the Debtor shall make an adequate protection payment to the Bond Trustee in the amount of any Diminution, if any, during the Interim Period that is agreed to by the parties within ten (10) business days of the expiration of the Interim Period, unless the Bond Trustee has consented to the ongoing use of Cash Collateral by such expiration. In the event that the Debtor and the Bond Trustee do not agree on the amount of Diminution, the Court shall determine such amount on application or motion by the Bond Trustee on regular notice to the Debtor. Any such payment made by the Debtor shall be irrevocable and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b). For the avoidance of doubt, any such payment shall be without prejudice to the right of the Bond Trustee to assert a claim for payment of additional amounts in accordance with the Bond Documents. The Debtor expressly reserves the right to dispute any claimed Diminution by the Bond Trustee.

11. Financial Information. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, from and after the entry of this Interim Order and during the Interim Period, the Debtor shall provide to the Bond Trustee once each week (commencing with March 31, 2023), a weekly report certified by an authorized representative of the Debtor and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget. The Debtor and its professionals shall be available once each

week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives to discuss matters pertaining to The Harborside and the Chapter 11 Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

12. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (a "Termination Event"):

(i) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii) this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the Bond Trustee;

(iii) the Debtor violates any term or condition of this Interim Order;

(iv) the Debtor pays any line-item expenses in a manner, time or amount that is inconsistent with the Cash Collateral Budget;

(v) the Debtor fails to provide the stalking horse purchaser letter of intent/term sheet to the Bond Trustee by March 27, 2023; or

(vi) the Debtor fails to provide a comprehensive response to the Bond Trustee's debtor-in-possession financing term sheet by March 28, 2023.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis and the Bond Trustee expressly reserves the right to object to such request.

The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph in its sole discretion without further order of the Court.

13. Preservation of Rights. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

14. No Competing Liens. Except as set forth herein, during the Interim Period, the Debtor shall not grant liens on, or security interests in, the Bond Collateral or the Postpetition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

15. Negotiations in Good Faith. The Debtor and Bond Trustee agree that, during the Interim Period, they will negotiate in good faith with respect to the terms of any debtor-in-possession financing to be provided by the Bond Trustee, if any.

16. Reservation of Rights. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time, or the right of the Bond Trustee to contest any and all relief sought in the Motion.

17. Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or

(ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Bond Collateral are not being adequately protected.

18. No Control. Nothing in this Interim Order shall cause the Bond Trustee to be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

19. No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

20. Effectiveness. The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

21. Notices. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

(a) If to the Debtor to:

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Brooke Navarre

with a copy sent contemporaneously by email to:

DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
Attn: Rachel Nanes

DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Attn: James Muenker

If to the Bond Trustee to:

UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Mark Kalla

with a copy sent contemporaneously by email to:

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center

Boston, MA 02111
Attn: Daniel Bleck
Eric Blythe

22. Notice of Further Interim Hearing. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of a further interim hearing, to the Notice Parties.

23. Further Interim Hearing; Objections. A further interim hearing to consider the Motion will be held on April 6, 2023 at __.m. before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April __, 2023 at 4:00 p.m. and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

**Exhibit A**

**Cash Collateral Budget**

**Amsterdam House Continuing Care Retirement Community, Inc.**
Projected Weekly Cash Flows - Interim Period
*($ in thousands)*

| Proj / Act | Proj. | Proj. | Proj. | |
|---|---|---|---|---|
| Week Number | - | 1 | 2 | Proj. |
| Week Ended | 25-Mar | 1-Apr | 8-Apr | Total |
| 1. **Total Operating Receipts** | **$ -** | **$ 324** | **$ 3** | **$ 327** |
| 2. OPERATING DISBURSEMENTS | | | | |
| 3. Salaries and Wages | - | - | - | - |
| 4. Employee Benefits | - | - | (39) | (39) |
| 5. Contract Labor | - | (59) | (59) | (118) |
| 6. Food Purchases | - | (359) | - | (359) |
| 7. Medical Supplies | - | (23) | (23) | (46) |
| 8. General and Administrative | - | (58) | (66) | (124) |
| 9. Building and Maintenance | - | (62) | (15) | (77) |
| 10. Other Disbursements | - | (82) | (10) | (92) |
| 11. Capital Expenditures | - | (8) | (8) | (15) |
| 12. **Total Operating Disbursements** | **-** | **(650)** | **(219)** | **(869)** |
| 13. **Operating Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 14. RESTRUCTURING FEES | | | | |
| 15. Debtor Professional Fees | - | - | - | - |
| 16. Creditor Committee Professional Fees | - | - | - | - |
| 17. Filing / US Trustee Fees | - | - | - | - |
| 18. Other Professional Fees | - | - | - | - |
| 19. Process Costs | - | - | - | - |
| 20. Total Restructuring Fees | - | - | - | - |
| 21. **Net Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 22. SUMMARY OF CASH ACTIVITY | | | | |
| 23. Beginning Cash | 1,132 | 1,132 | 806 | 1,132 |
| 24. (+/-) Net Cash Flow | - | (326) | (216) | (542) |
| 25. (+) DIP Borrowing | - | - | - | - |
| 26. **Ending Cash** | **$ 1,132** | **$ 806** | **$ 590** | **$ 590** |

**Exhibit B**

**Redline**

~~IN THE UNITED STATES BANKRUPTCY COURT~~
~~FOR THE EASTERN DISTRICT OF NEW YORK~~

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FURTHER INTERIM HEARING; AND (IV) GRANTING RELATED RELIEF**

~~**INTERIM ORDER**~~This Interim Order (this "Interim Order") is entered upon the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured* ~~**NON PRIMING**~~*Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V)* ~~**SCHEDULING**~~*Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Motion")[2], and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, N.A., in its capacity as trustee for the bonds described more fully below (the "Bond Trustee"). Capitalized terms used in this Interim Order but not specifically defined have the meanings set forth in the Motion.

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

~~EAST\201662278.5~~

In connection with the Chapter 11 Case and the Motion, the Debtor and the Bond Trustee have stipulated and agreed as follows:

Upon the motion (the "Motion")[2] of the above captioned debtor and debtor in possession (the "Debtor") in the above captioned chapter 11 case (the "Chapter 11 Case"), seeking entry of an interim order (this "Interim Order") and a final order, pursuant to sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code") rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001 5 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), that, among other things:

(i) authorizes the Debtor to obtain postpetition financing (the "DIP Financing") on a secured non priming basis, consisting of a new money term loan facility (the "DIP Facility" and the loans issued thereunder, the "DIP Loans") in an aggregate principal amount of up to $9,000,000 pursuant to the terms and conditions set forth in this Interim Order and that certain term sheet annexed hereto as **Exhibit 1** (as may be amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Term Sheet"), executed by the Debtor and the DIP Lender (collectively, the "DIP Loan Parties");

(ii) approves the terms of and authorizing the Debtor to execute and deliver the DIP Term Sheet and any other agreements, instruments, and documents related thereto (collectively, the "DIP Loan Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

[2] Unless otherwise defined herein, all capitalized terms have the meaning given to such terms as in the Motion or the DIP Term Sheet (as defined herein).

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

B. The Debtor is the owner and operator of a continuing care retirement community known as The Amsterdam at Harborside (the "Facility").

**The Secured Bond Obligations**

C. The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds described below, authorized and issued by Nassau County Industrial Development Agency (the "Issuer"). The Issuer issued (1) $40,710,000 Continuing Care Retirement Community Taxable Revenue Bonds, (Amsterdam at Harborside Project), Series 2021A (the "Series 2021A Bonds"), and (2) $127,327,200 Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (Amsterdam at Harborside Project), Series 2021B (the "Series 2021B Bonds" and together with the Series 2021A Bonds, the "Bonds") pursuant to the Indenture of Trust dated September 1, 2021(the "Indenture" and together with the other documents securing or otherwise related to the Bonds, the "Bond Documents").

D. The Bonds and the Debtor's obligations under the Bond Documents are secured by substantially all assets of the Debtor, including, without limitation: (i) the Gross Revenues of the Debtor;[3] (ii) the Mortgaged Property;[4] and (iii) "all moneys and securities from time to time held

[3] "Gross Revenues" is defined in the Bond Indenture to include "(i) all receipts, revenues, payments, income and other moneys received by or on behalf of the Corporation from any source, whether or not in connection with the ownership or the operation of all or any part of the Project, including, without limitation, all Entrance Fees (earned and unearned), Monthly Service Fees, and all other operating and non-operating revenues, and all rights to receive the same whether in the form of accounts, accounts receivable, contract rights, chattel paper, instruments, investment property, general intangibles of the Corporation and the proceeds thereof, the proceeds of any insurance coverage on and condemnation awards in respect of the Project or any gain on the sale or other Corporation disposition of the Project; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or

by the Bond Trustee pursuant to and under any of the Bond Documents ... and all investments and reinvestments of any such moneys and securities" (all of the foregoing, as further described in the Bond Documents, the "Bond Collateral").[5]

E. ~~(iii) authorizes~~As of the Petition Date, the amounts due and owing by the Debtor ~~to enter into the DIP Facility and to incur all~~with respect to the Bonds and the obligations ~~owing thereunder and~~ under the ~~DIP Loan~~Bond Documents ~~to the DIP Lender~~are as follows (collectively, the "~~DIP Obligations"), and granting the DIP Lender the DIP Superpriority Claims, subject to payment of the Carve Out and the Adequate Protection Superpriority Claim (each as defined below);~~Bond Claim"):

~~(iv) authorizes the DIP Loan Parties to perform such other and further acts as may be necessary or desirable in connection with the Interim Order, the DIP Loan Documents, including the DIP Term Sheet, and the transactions contemplated hereby and thereby;~~

held or hereafter acquired by the corporation; and including all gifts, grants, bequests, donations and contributions ... and (ii) all right, title and interest of the Corporation in and to the Funds and accounts established under this Indenture ..."

[4] "Mortgaged Property" is defined in that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 8, 2021 (the "Mortgage") from the Debtor and the Issuer to the Trustee, and such definition includes the land, buildings and improvements comprising the Facility, "all leases, subleases, lettings, licenses and other agreements under the terms of which any person other than [the Debtor] acquires any right to use or occupancy of the Mortgaged Property or any part thereof now or hereafter entered into (the "Leases"), all of the Debtor's right, title and interest in and to all Residency Documents (as defined in the Mortgage), and all of the Debtor's right, title and interest in "all personal and fixture property of every kind and nature including, without limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature which the [Debtor], or others on behalf of the [Debtor], possess, use or have the authority to possess or use ..., all general intangibles, together with all replacements thereof, substitutions therefore and additions thereto ...", and "all products and proceeds of each and every kind" of the identified Mortgaged Property.

[5] The Bond Trustee asserts a lien on substantially all of the Debtor's post-petition revenue. The Debtor and the Bond Trustee reserve all rights regarding such issue.

(v) grants to the DIP Lender automatically perfected security interests in, and liens on, all of the DIP Collateral (as defined below) which liens shall be subject to the priorities set forth in the Interim Order;

(vi) authorizes and directs the Debtor to use the proceeds of the DIP Facility and Cash Collateral to fund the operational, employee, and other costs of the Debtor, including, without limitation, payments authorized to be made under "first day" or "second day" orders, and payments related to the working capital and other general corporate purposes of the Debtor, including the payment of professional fees and expenses, and in each case, consistent with, subject to, and within the categories and limitations contained in the Approved Budget (as defined in the DIP Term Sheet);

(i) Unpaid principal on the Bonds in the amount of $168,037,200;

(ii) Accrued but unpaid interest on the Bonds in the amount of $2,256,808.50 as of the Petition Date; and

(iii) unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

F. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case solely for the first two weeks of this Chapter 11 Case (through and including April 6, 2023) (the "Interim Period") while the parties discuss a longer term plan for the Chapter 11 Case. The Debtor has agreed to adjourn all other relief sought in the DIP Motion, including approval of the DIP Financing with Amsterdam Continuing Care Health System, Inc. (the "Member") and entry of the Interim Order attached to the DIP Motion, during the Interim Period. The Bond Trustee has agreed, pursuant to the terms hereof, to allow the Debtor to use the Cash Collateral solely during the Interim Period.

G. ~~(vii) authorizes~~Pursuant to the Bankruptcy Code, the Debtor ~~to use~~is required, upon the Bond Trustee's ~~Cash Collateral, as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), on an interim basis, and providing, among other things,~~request, to provide adequate protection to the Bond Trustee ~~for any diminution in the value of its interest in the Cash Collateral;~~in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral during the Interim Period except upon the terms and conditions of this Interim Order.

~~(viii) authorizes the DIP Lender to (1) terminate the funding obligations under the DIP Loan Documents in accordance with their terms; (2) declare the DIP Obligations to be immediately due and payable in full, to the extent permitted by the terms thereof; and (3) subject to the Interim Order, be granted relief from the automatic stay to foreclose on the DIP Liens (as defined below); and~~

~~(ix) schedules a final hearing to consider approval of this Motion on a final basis (the "Final Hearing") and approves the form of notice with respect to the Final Hearing.~~

~~The Court, having considered the Motion, the DIP Term Sheet, the proposed Interim Order, the *Declaration of Michael Morton in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), the pleadings filed with the Court, the evidence submitted and arguments proffered or adduced at the hearing held before the Court on March [__], 2023 (the "Interim Hearing"), and upon the record of this Chapter 11 Case; and adequate notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Rules; and it appearing that no other or further notice need be provided; and all objections, responses and reservations of rights with respect to the entry of the Interim Order, if any, to the relief requested in the Motion having been withdrawn,~~

resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, represents a sound exercise of the Debtor's business judgment, and is necessary for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

H. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis during this Interim Period, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Bond Collateral on the terms set forth in this Interim Order, reflecting the agreement of the Debtor and the Bond Trustee for this Interim Period.

I. Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES THAT:[3] AND ORDERS AS FOLLOWS:**

A. **Petition Date**. On March [__] 2023 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

B. **Debtor-in-Possession**. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. **Disposition**. The Motion is hereby granted in accordance with the terms of this Interim Order.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

1. D. Jurisdiction and Venue. TheThis Court has jurisdiction of this proceeding and the parties and property affected herebyover this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core", and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper pursuant tobefore this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in the Chapter 11 Case under Section 1102 of the Bankruptcy Code as of the date hereof.

2. E. Notice. Upon the record presented to the Court at the Interim Hearing,The Debtor has properly served notice of the Motion and the relief requested thereby and this Interim Order has been provided to: (i) theinterim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), which notice was sent to, among others: Office of the U.S. Trustee for the Eastern District of New York (the "U.S. Trustee"); (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the DIP LenderMember, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) all other parties required to receive notice under Local Rule 2002-2. Under the circumstances, and as immediate and irreparable loss would be caused to the estate if immediate financing were not obtained, the parties to which notice was given and the manner of notice was the best available under the circumstances and constitutes due and sufficient notice.those who have formally

appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3. Good Cause. Good cause has been shown for entry of this Interim Order.
F. **Findings Regarding Postpetition Financing and Use of Cash Collateral.**

(i) Request for Postpetition Financing and Use of Cash Collateral. The Debtor seeks authority to (a) enter into the DIP Term Sheet on the terms described herein and in the DIP Loan Documents, and (b) use the Bond Trustee's Cash Collateral on the terms described herein to administer this Chapter 11 Case and fund its operations in accordance with the budget attached as **Exhibit 2** hereto and the DIP Loan Documents. At the Final Hearing, the Debtor will seek final approval of the DIP Financing under the terms and conditions set forth in the DIP Loan Documents and use of Cash Collateral pursuant to a proposed final order (the "Final Order"). Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii) Immediate Need for Postpetition Financing and Use of Cash Collateral. The Debtor has an immediate and critical need to obtain financing pursuant to the DIP Financing and to continue to use the Cash Collateral in order to permit the orderly continuation of the operation of its business. The Debtor seeks to maximize the value of the assets of its estate for the benefit of its creditors. The incurrence of new debt under the DIP Loan Documents and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtor. Immediate and irreparable harm will be caused to the Debtor and its estate if immediate financing is not obtained and permission to use Cash Collateral is not granted. The

extensions of credit under the DIP Financing are fair and reasonable, and the Debtor's incurrence of the DIP Financing reflects the Debtor's exercise of prudent business judgment. The adequate protection provided in this Interim Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(iii) No Credit Available on More Favorable Terms. The DIP Financing is the best source of debtor in possession financing available to the Debtor. The Debtor is unable to procure financing from sources other than the DIP Lender on terms more favorable than the DIP Financing. The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. Financing on a postpetition basis is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's property with the priorities set forth herein, (2) superpriority claims to the extent set forth herein, and (3) the other protections set forth in this Interim Order.

(iv) Budget. As a condition to the Debtor's entry into the DIP Loan Documents, the extension of credit thereunder, and the authorization to use Cash Collateral, the Debtor has agreed that Cash Collateral and the proceeds of the DIP Financing shall be used solely in accordance with the terms and conditions of this Interim Order, the DIP Loan Documents, and the Approved Budget (as defined below). The Debtor represents that the Approved Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby. The Debtor represents that the Approved Budget is achievable in accordance with the terms of this Interim Order and will allow the Debtor to operate at all times during the Chapter 11 Case. The DIP Lender is relying upon the Debtor's compliance with the Approved Budget (subject to the

Permitted Variances (as defined in the DIP Term Sheet)) in determining to enter into the postpetition financing arrangements provided for in the DIP Loan Documents.

G. **Adequate Protection**. In exchange for the use of Cash Collateral to the extent set forth in this Interim Order, the Bond Trustee shall receive, *inter alia*, adequate protection to the extent of any diminution in the value of the Cash Collateral, in the form of (i) the Adequate Protection Superpriority Claim, and (ii) the Replacement Liens (as defined below).

H. **Section 506(c) Waiver**. In light of (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to payment of the Carve Out, the DIP Lender and has negotiated for, and the Debtor intend to seek in the Final Order, a waiver of any right to surcharge the DIP Collateral (as such term is defined in the DIP Term Sheet) under section 506(c) of the Bankruptcy Code.

I. **Release Under LSA**. As a condition of borrowing under the DIP Loan Documents, the Debtor has agreed to release the DIP Lender of its obligations arising under or related to the LSA up to the total amount advanced to the Debtor under the DIP Financing on a "dollar for dollar" basis. Such release by the Debtor is provided for good and valuable consideration.

J. **Business Judgment and Good Faith Pursuant to 364(e)**. The terms of this Interim Order and the other DIP Loan Documents are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents have been negotiated in good faith and at arms' length by and among the Debtor and the DIP Lender, with all parties being represented by counsel. Any credit extended pursuant to

this Interim Order shall be deemed to have been extended in good faith by the DIP Lender, as that term is used in § 364(e) of the Bankruptcy Code.

K. **Good Cause**. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and on going operations, (2) preserve and maximize the value of the Debtor's estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets. The extensions of credit under the DIP Financing, the use of Cash Collateral and the proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment.

L. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1. **Authorization and Conditions to Financing.**

4. 1.1 Motion GrantedDisposition. The Motion is granted in accordance withGRANTED on an interim basis solely as set forth herein, and is otherwise adjourned with respect to all other relief sought therein. The requirements of Bankruptcy RulesRule 4001(b)(2) and Local Rule 4001(c)(2) to the extent provided in this Interim Order. Entry into the DIP Term Sheet and other DIP Loan Documents is expressly and immediately authorized

and approved, and the-5 are satisfied with respect to the use of Cash Collateral during the Interim Period on an interim basis is authorized, in each case, subject to the terms and conditions set forth in this Interim Order and in the DIP Loan Documents. All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.and preliminary basis. The rights of all parties, including the Bond Trustee, to object to the relief sought in the Motion are reserved as further provided herein.

5. Authorization to Use Cash Collateral. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues, Rents and Receipts derived by the Debtor in the ordinary course of their business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "Cash Collateral") solely during this Interim Period until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day of the Interim Period, but only on the terms of this Interim Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget.

6. Exclusions from Cash Collateral. The Debtor is not authorized to use and shall not use any cash collateral of the Bond Trustee, other than Cash Collateral as set forth herein.

7. Replacement Lien. As adequate protection for any diminution in the value of Cash Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"),

and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Collateral"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, other than the Debtor's rights under that certain Liquidity Support Agreement (the "LSA") between the Debtor and Amsterdam Continuing Care Health System, Inc. dated as of June 14, 2021 (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Postpetition Collateral"); provided, however, that actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Sections 542, 544, 545, 547, 548 (exclusive of transferees under Section 549), 550 and 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") shall not be Postpetition Collateral under this Interim Order.

8. No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the liens granted to the Bond Trustee herein, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; provided,

however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

1.2 Authorization to Borrow and Use Loan Proceeds. To prevent immediate and irreparable harm to the Debtor's estates, and to enable the Debtor to continue to operate its business and preserve and maximize the value of its estate, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, the Debtor is hereby authorized to borrow under the DIP Facility in a principal amount of up to $4.8 million on or after the first business day following entry of the this Interim Order (the "Initial Advance"). Subject to the terms and conditions contained in the DIP Loan Documents, the Debtor shall use the proceeds of the Initial Advance solely for payment of expenses set forth in the Approved Budget (subject to the Permitted Variances) and amounts owing to the DIP Lender in accordance with the terms and conditions of the DIP Loan Documents.

1.3 DIP Obligations. The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, pursuant to the terms and conditions of the DIP Loan Documents, up to a maximum principal amount of $4.8 million. All DIP Obligations shall be enforceable against the Debtor, its estates, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter

11 Case, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case"). In the event of any inconsistencies between this Interim Order and the other DIP Loan Documents, this Interim Order shall control.

Section 2. **DIP Liens: Superpriority Administrative Claim Status.**

2.1 Postpetition Lien.

(a) Postpetition Lien Granting. To secure the prompt payment and performance of any and all DIP Obligations of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected security interests and liens (the "DIP Liens"), superior to all other liens, claims or security interests that any creditor of the Debtor's estate may have (but subject to the Carve-Out and the Adequate Protection Superpriority Claim (each as defined below) and the Permitted Liens), in and upon all of Debtor's property, wherever located (collectively, the "DIP Collateral"), and any proceeds of any of the DIP Collateral. In addition, subject to entry of the Final Order, the DIP Collateral shall include, and the DIP Liens shall be first priority senior liens with respect to, proceeds of any claims or causes of action of the Debtor pursuant to sections 502(d), 544, 545, 547, 548, 549, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code ("Avoidance Actions"). Notwithstanding the foregoing, solely for

purposes of this Interim Order, "DIP Collateral" does not include (i) any leasehold interest in real property, but shall instead include all proceeds of such leasehold interests; (ii) any executory contract or agreement to the extent the contract or agreement does not permit the grant of a lien thereon; and (iii) prior to the entry of the Final Order, DIP Collateral shall not include the Avoidance Actions or proceeds thereof. "Permitted Liens" shall include any valid, perfected and non avoidable liens existing as of the Petition Date, which for the avoidance of doubt shall include any valid, perfected and non avoidable liens existing as of the Petition Date that secure any claims arising under the Series 2021 Bonds.

(b) Lien Priority in DIP Collateral. The DIP Liens shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens shall be subject only to (a) Permitted Liens, (b) the Carve Out (as defined below), and (c) the Adequate Protection Superpriority Claim.

(c) Postpetition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such DIP Liens, including without limitation, control agreements with any financial institution(s) party to a deposit account control agreement or other depository account consisting of DIP Collateral (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lender, shall, in its sole discretion, elect for any reason to file, record or

otherwise effectuate any Perfection Act, then the DIP Lender is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by the DIP Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the DIP Liens.

2.2 Superpriority Administrative Expense Claims.

9. (a) DIP Loans. For each of the DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Lender is an granted allowedSuperpriority Claim. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to section 364Section 507(c)(1b) of the Bankruptcy Code, having priority over with recourse to and payable from any and all claims against the Debtor (assets of the Debtor's estate other than the Carve Out and the Adequate ProtectionDebtor's rights under the LSA (the "Secured Party Superpriority Claim (each as defined below)), whether now in existence or hereafter arising, including, without limitation, "). The Secured Party Superpriority Claim shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses or priority claims, diminution

claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in, or ordered pursuant to, inter alia, sections Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject tofollowing entry of the Final Ordera final order), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (the "DIP Superpriority Claims").

10. Adequate Protection Payment. In consideration of the use of Cash Collateral, the Debtor shall make an adequate protection payment to the Bond Trustee in the amount of any Diminution, if any, during the Interim Period that is agreed to by the parties within ten (10) business days of the expiration of the Interim Period, unless the Bond Trustee has consented to the ongoing use of Cash Collateral by such expiration. In the event that the Debtor and the Bond Trustee do not agree on the amount of Diminution, the Court shall determine such amount on application or motion by the Bond Trustee on regular notice to the Debtor. Any such payment made by the Debtor shall be irrevocable and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b). For the

avoidance of doubt, any such payment shall be without prejudice to the right of the Bond Trustee to assert a claim for payment of additional amounts in accordance with the Bond Documents. The Debtor expressly reserves the right to dispute any claimed Diminution by the Bond Trustee.

11. Financial Information. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, from and after the entry of this Interim Order and during the Interim Period, the Debtor shall provide to the Bond Trustee once each week (commencing with March 31, 2023), a weekly report certified by an authorized representative of the Debtor and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives to discuss matters pertaining to The Harborside and the Chapter 11 Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

12. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (a "Termination Event"):

(i) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

~~2.3 Carve Out.~~

~~(a) Carve Out. As used in this Interim Order, "Carve Out" shall have the meaning set forth in the DIP Term Sheet. For the avoidance of doubt, nothing in the DIP Loan~~

Documents shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in the definition of Carve Out.

(b) Excluded Professional Fees. Notwithstanding anything to the contrary in this Interim Order, neither the Carve Out nor the proceeds of DIP Collateral or any DIP Loan shall be used to pay any Allowed Professional Fees (as defined in the DIP Term Sheet) in connection with any of the following:

(i) an assertion or joinder in any claim, counter claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the DIP Obligations or the DIP Liens, (ii) invalidating the DIP Obligations or the DIP Liens, or (iii) preventing, hindering or delaying the DIP Lender's assertion or enforcement of the DIP Obligations or the DIP Liens or realization upon any DIP Collateral in accordance with the terms and conditions of this Interim Order;

(ii) a request to use Cash Collateral, except as set forth in this Interim Order, becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the DIP Lender in accordance with the terms and conditions of this Interim OrderBond Trustee;

(iii) the Debtor violates any term or condition of this Interim Order;

(iv) the Debtor pays any line-item expenses in a manner, time or amount that is inconsistent with the Cash Collateral Budget;

(iii) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in this Interim Order, without the prior written consent of the DIP Lender;

(iv) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Lender Protected Parties (defined below),

including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Lender Protected Parties under chapter 5 of the Bankruptcy Code;

(v) the cost of investigation into any claims against the DIP Lender Protected Parties in excess of $10,000Debtor fails to provide the stalking horse purchaser letter of intent/term sheet to the Bond Trustee by March 27, 2023; or

(vi) any act which has or could directly, materially and adversely modify or compromise the rights and remedies of the DIP Lender under this Interim Order, or which directly results in the occurrence of an Event of Default under this Interim Order.

2.4 Payment of Carve Out. Payment from the Carve-Out, whether by or on behalf of the DIP Lender, shall not and shall not be deemed to reduce the DIP Obligations, and shall not and shall not be deemed to subordinate any of the DIP Liens or the DIP Superpriority Claim to any junior prepetition or postpetition lien, interest or claim in favor of any other party. The DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any Allowed Professional Fees, and nothing in Section 2.3 of this Interim Order shall be construed to obligate the DIP Lender in any way, to directly pay compensation to or to reimburse any Allowed Professional Fees, or to ensure that the Debtor has sufficient funds to pay such Allowed Professional Fees other than as required to fund the Carve Out in accordance with the DIP Term Sheet.

(vi) the Debtor fails to provide a comprehensive response to the Bond Trustee's debtor-in-possession financing term sheet by March 28, 2023.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis and the Bond Trustee expressly reserves the right to object to such

request. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph in its sole discretion without further order of the Court.

13. Preservation of Rights. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

14. No Competing Liens. Except as set forth herein, during the Interim Period, the Debtor shall not grant liens on, or security interests in, the Bond Collateral or the Postpetition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

15. Negotiations in Good Faith. The Debtor and Bond Trustee agree that, during the Interim Period, they will negotiate in good faith with respect to the terms of any debtor-in-possession financing to be provided by the Bond Trustee, if any.

16. Reservation of Rights. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time, or the right of the Bond Trustee to contest any and all relief sought in the Motion.

17. Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or

(ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Bond Collateral are not being adequately protected.

18. No Control. Nothing in this Interim Order shall cause the Bond Trustee to be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

19. No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

20. Effectiveness. The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

21. Notices. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing and shall be

deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

2.5 Use of Cash Collateral; Adequate Protection.

(a) If to the Debtor to:

(a) Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtor shall be and is hereby authorized to use the Cash Collateral for the period commencing on the date of this Interim Order and terminating upon the earlier of (i) the Final Hearing, and (ii) the date on which the Bond Trustee obtains an order of this court directing termination of the Debtor's use of the Cash Collateral. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, and in accordance with the Approved Budget.

(b) Section 507(b) Priority Claims. As adequate protection for any diminution in the value of the Cash Collateral after the Petition Date, the Bond Trustee is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case to the extent of any diminution in the value of Cash Collateral (the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim shall be junior only to the Carve Out, and shall otherwise have priority over all administrative expense claims and unsecured claims against the Debtor and its estate now existing or hereafter arising, of any kind or nature whatsoever.

(c) Replacement Liens. The Bond Trustee shall receive first priority, valid, binding, enforceable and perfected replacement mortgages, pledges, liens and security interests in and upon all of the Debtor's property in which the Bond Trustee held a valid, perfected and non avoidable lien as of the Petition Date, wherever located, and any proceeds thereof, to the extent of any diminution in the value of its Cash Collateral (collectively, the "Replacement Liens"). The Replacement Liens shall be junior only to the Carve Out and the Permitted Liens.

Section 3. **Default; Rights and Remedies; Relief from Stay.**

3.1 Events of Default. The occurrence of any of the events identified in the DIP Term Sheet as an Event of Default shall constitute an "Event of Default".

3.2 Rights and Remedies upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order, including, without limitation, declaring all DIP Obligations immediately due and payable, accelerating the DIP Obligations, ceasing to provide DIP Loans, setting off any DIP Obligations with DIP Collateral or proceeds in the DIP Lender's possession (other than DIP Collateral subject to Permitted Liens), and enforcing any and all rights with respect to the DIP Collateral. The DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of the Debtor, or provide any other financial accommodations to the Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default, except as is necessary to fund the Carve Out.

~~3.3 Expiration of Commitment. Upon the expiration of the Debtor's authority to borrow and obtain other credit accommodations from the DIP Lender pursuant to the terms of this Interim Order, unless an Event of Default occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the DIP Obligations shall immediately become due and payable and the DIP Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to the Debtor or permit the use of Cash Collateral, subject to the Carve Out and the conditions set forth in Section 2.5(a) of this Interim Order.~~

~~3.4 Modification of Automatic Stay. Subject to entry of the Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Interim Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations, and apply such payments to the DIP Obligations pursuant to this Interim Order, and (d) to take any action and exercise all rights and remedies provided to it by this Interim Order or applicable law. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Remedies Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the official committee of unsecured creditors (the "Committee") (if appointed), and (iii) the U.S. Trustee, the DIP Lender shall be entitled to take any action and exercise all rights~~

and remedies provided to it by the Final Order or applicable law that the DIP Lender may deem appropriate in its sole discretion to proceed against and realize upon the DIP Collateral or any other assets or properties of Debtor's estate upon which the DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations. Upon the receipt of an Enforcement Notice, the Debtor may only make disbursements to (i) fund payment of the Carve Out; (ii) to pay costs, fees and expenses of the DIP Lender as set forth herein; and (iii) to pay any other amounts necessary to avoid immediate and irreparable harm (and solely to the extent provided in the Approved Budget), and may not disburse any other amounts. During the Remedies Notice Period, the Debtor, the Committee and/or any other party in interest shall be entitled to seek an emergency hearing with the Court with respect to any remedies sought to be exercised by the DIP Lender. In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Remedies Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in the Final Order.

Section 4. **Representations; Covenants; and Waivers.**

4.1 Debtor's Waivers. At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek further authority (a) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order, (b) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Obligations (other than unmatured indemnity obligations for which claims have not been asserted) on the effective date

of such plan or (c) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Lender as provided in this Interim Order or the DIP Lender's exercise of such rights or remedies (other than to object to the exercise of the rights and remedies within the Remedies Notice Period on the grounds set forth in Section 3.4 of this Interim Order); provided, however, that the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

4.2 Section 506(c) Claims. Subject to entry of the Final Order, no costs or expenses of administration which have or may be incurred in the Chapter 11 Case shall be charged against the DIP Lender, its respective claims or the DIP Lender's interest in the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender.

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Brooke Navarre

with a copy sent contemporaneously by email to:

DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
Attn: Rachel Nanes

DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Attn: James Muenker

4.3 Collateral Rights. Until all DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of this Interim Order, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in DIP Collateral.

If to the Bond Trustee to:

Section 5. **Advances; Forgiveness Conditions**UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Mark Kalla

with a copy sent contemporaneously by email to:

5.1 DIP Loan Mechanism. DIP Loans shall be made available to the Debtor in the manner described in the DIP Term Sheet. For the avoidance of doubt, the DIP Lender shall be under no further obligation to make DIP Loans following an Event of Default.

5.2 Interest Rate. The DIP Obligations shall bear interest at the rate set forth in the DIP Loan Documents. Such interest shall accrue but shall not be payable until the Maturity Date (defined below).

5.3 Approved Budget and Permitted Variances. The Debtor has prepared and delivered to the DIP Lender, and the DIP Lender has approved, an initial budget, a copy of which is annexed to this Interim Order as **Exhibit 2**. Prior to the Final Hearing, such budget shall be updated to cover a period of 13 weeks, and shall be further updated from time to time not less than every four weeks and shall show the Debtor's projected expenditures and receipts, each on a line-item basis, for a period not less than the following 13 weeks, and shall be in a form approved by the DIP Lender. The budget for a given period that has been approved by the DIP Lender shall be referred to herein as the "Approved Budget". The Debtor's expenditures and receipts shall be deemed in compliance with the Approved Budget provided that they are within the Permitted Variances as set forth in the DIP Term Sheet.

5.4 Financial Reports. The Debtor shall provide the Bond Trustee with all reports, documents and other materials, including financial reports and such other and further access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Bond Trustee from time to time; provided, however, that the Debtor shall have no obligation to provide the Bond Trustee with any information or access to any information that has not been provided to the DIP Lender.

5.5 Milestones. The Debtor shall comply with Milestones as set forth in the DIP Term Sheet.

5.6 Maturity Date. The DIP Obligations will become due and payable on the earlier of (i) November 30, 2023, or (ii) the occurrence of an Event of Default (the "Maturity Date").

5.7 Releases. The Debtor shall grant the DIP Lender and each of its Related Parties (as defined below) (collectively, "DIP Lender Protected Parties") a release from all claims and causes of action of any kind related to the Debtor arising at any time through and including the Petition Date, provided that such release shall not include any claims or causes of action against a DIP Lender Protected Party arising from such DIP Lender Protected Party's gross negligence, fraud or willful misconduct. "Related Parties" shall mean each of the DIP Lender's affiliated entities including each of its subsidiaries, and each such entities' directors, officers, members, managers, agents, employees, accountants and attorneys, including each of their third party professionals.

5.8 Indemnification. The Debtor shall indemnify and hold harmless the DIP Lender Protected Parties from and against any and all losses, claims, damages, liabilities and related expenses of any kind ("Losses") arising out of or in connection with any claims or causes

of action of any kind related to the Debtor arising at any time before, on or after the Petition Date, provided that such indemnification shall not include any Losses of a DIP Lender Protected Party arising out of or in connection with such DIP Lender Protected Party's gross negligence, fraud or willful misconduct.

5.9 Forgiveness. Upon the closing of a Sale (as defined below), the DIP Obligations (other than the Debtor's indemnification obligations as described herein) shall be forgiven by the DIP Lender provided that no Event of Default has occurred. A "Sale" shall mean the occurrence of the closing of a transaction providing for the sale of substantially all of the assets of the Debtor's continuing care retirement community currently known as The Harborside, or the sale of the equity/membership interests of the Debtor (or similar "affiliation transaction"), each pursuant to section 363 of the Bankruptcy Code in form and substance acceptable to the DIP Lender in its sole discretion, or pursuant to a chapter 11 plan, in form and substance acceptable to the DIP Lender in its sole discretion.

Section 6. **Other Rights and Postpetition Obligations.**

6.1 No Modification or Stay of This Interim Order. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, or any term hereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of the Chapter 11 Case (each, a "Subject Event"), (x) the acts taken by the DIP Lender in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising prior to the DIP Lender's actual receipt of written notice from the Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be entitled to the protections set forth in section 364(e) of the Bankruptcy Code.

6.2 Power to Waive Rights; Duties to Third Parties. The DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lender (the "DIP Lender Rights") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights. Any waiver by the DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to the DIP Lender.

6.3 Disposition of Collateral. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than pursuant to the terms of the Approved Budget, without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender) and, in each case, an order of the Court.

6.4 Reservation of Rights. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications

for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the estate.

6.5 Binding Effect.

(a) The provisions of this Interim Order, the DIP Obligations, the DIP Superpriority Claims and any and all rights, remedies, privileges and benefits in favor of each of the DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall terminate upon entry of a Final Order.

(b) This Interim Order shall be binding upon the Debtor, all parties served with the Motion and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Case or any Successor Case. This Interim Order shall also inure to the benefit of the Debtor, the DIP Lender and each of their respective successors and assigns.

6.6 Restrictions on Additional Financing, Plan Treatment.

(a) All DIP Loans and other financial accommodations under this Interim Order are made in reliance on this Interim Order and there shall not at any time be entered in the Chapter 11 Case, or in any Successor Case, any order (other than the Final Order) which authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to the DIP Liens or which is entitled to priority administrative claim status which is equal or superior to the DIP Superpriority Claims; unless, in each instance (x) the DIP Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender, or (y) such other order requires that all DIP

~~Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of this Interim Order (other than unmatured indemnity obligations for which claims have not been asserted), on terms and conditions acceptable to the DIP Lender. The DIP Liens and the rights of the DIP Lender pursuant to this Interim Order with respect to the DIP Obligations and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of the Debtor and, if the DIP Lender shall expressly consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan (unless forgiven pursuant to Section 5.8 of this Interim Order).~~

~~6.7 Payment and Review of DIP Lender Fees and Expenses. The Debtor shall pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under this Interim Order, including, without limitation, the non-refundable payment to the DIP Lender of the reasonable fees and expenses (including without limitation professional fees and legal fees and expenses) of the DIP Lender's counsel or other professionals, whether incurred before or after the Petition Date; provided, that the Debtor shall pay all such reasonable fees and expenses within five (5) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek the Court's approval of any such payments) to the Debtor, the U.S. Trustee and the Committee, unless, within such five (5) business day period, the Debtor, the U.S. Trustee or the Committee serve a written objection upon the requesting party, in which case, the Debtor~~

shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the parties or ordered by the Court to be paid.

6.8 Term; Termination. Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtor and the DIP Lender authorized by this Interim Order may be terminated pursuant to the terms set forth herein.

6.9 Retention of Jurisdiction. The Court retains jurisdiction and power with respect to all matters arising from or related to the DIP Financing and/or this Interim Order.

Section 7. **Final Hearing and Response Dates.**

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for April __, 2023, at ______ before the Court. The Debtor shall promptly mail copies of this Interim Order to (a) the parties that were provided notice of the Interim Hearing; (b) any other party that has filed a request for notices with the Court; and (c) counsel for the Committee, if any appointed. The Debtor may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and shall be made available free of charge at the office of Debtor's counsel. Such notice is deemed good and sufficient and that no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtor, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020; Attn: Rachel Nanes, Esq., James P. Muenker, Esq. and Gregory M. Juell, Esq.; (b) counsel for the DIP Lender, Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Melanie L. Cyganowski, Esq. and Jonathan N. Helfat, Esq., Fax: (212) 682-6104; (c) counsel to any Committee (if appointed); and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, in each case, to allow

actual receipt of the foregoing no later than 4:00 p.m., prevailing Eastern time, on April __, 2023.

Dated: Central Islip, New York
March __, 2023

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
Attn: Daniel Bleck

United States Bankruptcy Judge

**~~Exhibit 1~~**

**~~DIP Term Sheet~~**

~~Exhibit 2~~Eric Blythe
~~Approved Budget~~

22. Notice of Further Interim Hearing. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of a further interim hearing, to the Notice Parties.

23. Further Interim Hearing; Objections. A further interim hearing to consider the Motion will be held on April 6, 2023 at ___.m. before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April __, 2023 at 4:00 p.m. and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

| **Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 3/24/2023 10:58:01 AM** | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.us.dlapiper.com/EAST/201662278/5 | |
| **Modified DMS:** iw://dms.us.dlapiper.com/EAST/201884135/5 | |
| **Changes:** | |
| Add | 207 |
| ~~Delete~~ | 260 |
| ~~Move From~~ | 30 |
| Move To | 30 |
| Table Insert | 1 |
| ~~Table Delete~~ | 2 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 530 |

DLA PIPER

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

**GREGORY M. JUELL**
Gregory.Juell@us.dlapiper.com
T 212.335.4608
F 917.778.8608

March 27, 2023

Honorable Alan S. Trust
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Courtroom 960
Central Islip, New York 11722

**Re: Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor")**
**Case No. 23-70989 (AST)**

Dear Judge Trust:

We are writing to you on behalf of the Debtor in the above-referenced chapter 11 case filed on March 22, 2023.

Following the hearing held on March 24, 2023, counsel to the Debtor conferred with the United States Trustee for the Eastern District of New York (the "U.S. Trustee"), counsel to UMB Bank, N.A. (the "Bond Trustee") and counsel to Amsterdam Continuing Care Health System, Inc. (the "Member") regarding the proposed interim cash collateral order [Dkt. No. 33, Exh. A] (the "Initial Cash Collateral Order") filed on March 24, 2023 in connection with the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Dkt. No. 12]. Attached hereto as **Exhibit A** is a revised draft of the Initial Cash Collateral Order approved by the U.S. Trustee, the Bond Trustee and the Member (the "Revised Cash Collateral Order"). Attached hereto as **Exhibit B** is a redline of the Revised Cash Collateral Order marked against the Initial Cash Collateral Order.

The Debtor respectfully requests that the Revised Cash Collateral Order be entered at the Court's earliest convenience.

Respectfully submitted,

*/s/ Gregory M. Juell*
Gregory M. Juell

**Exhibit A**

**Revised Cash Collateral Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FURTHER INTERIM HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Dkt. No. 12] (the "Motion")[2], and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, N.A., in its capacity as trustee for the bonds described more fully below (the "Bond Trustee").

In connection with the Chapter 11 Case and the Motion, the Bond Trustee asserts as follows:

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

---

1 The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

2 Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

B. The Debtor is the owner and operator of a continuing care retirement community known as The Harborside (the "Facility").

**The Secured Bond Obligations**

C. The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds described below, authorized and issued by Nassau County Industrial Development Agency (the "Issuer"). The Issuer issued (1) $40,710,000 Continuing Care Retirement Community Taxable Revenue Bonds (Amsterdam at Harborside Project), Series 2021A (the "Series 2021A Bonds"), and (2) $127,327,200 Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (Amsterdam at Harborside Project), Series 2021B (the "Series 2021B Bonds" and together with the Series 2021A Bonds, the "Bonds") pursuant to the Indenture of Trust dated September 1, 2021 (the "Indenture" and together with the other documents securing or otherwise related to the Bonds, the "Bond Documents").

D. The Bonds and the Debtor's obligations under the Bond Documents are secured by substantially all assets of the Debtor, including, without limitation: (i) the Gross Revenues of the Debtor;[3] (ii) the Mortgaged Property;[4] and (iii) "all moneys and securities from time to time held

---

[3] "Gross Revenues" is defined in the Bond Indenture to include "(i) all receipts, revenues, payments, income and other moneys received by or on behalf of the Corporation from any source, whether or not in connection with the ownership or the operation of all or any part of the Project, including, without limitation, all Entrance Fees (earned and unearned), Monthly Service Fees, and all other operating and non-operating revenues, and all rights to receive the same whether in the form of accounts, accounts receivable, contract rights, chattel paper, instruments, investment property, general intangibles of the Corporation and the proceeds thereof, the proceeds of any insurance coverage on and condemnation awards in respect of the Project or any gain on the sale or other Corporation disposition of the Project; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the corporation; and including all gifts, grants, bequests, donations and contributions ... and (ii) all right, title and interest of the Corporation in and to the Funds and accounts established under this Indenture ..."

[4] "Mortgaged Property" is defined in that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 8, 2021 (the "Mortgage") from the Debtor and the Issuer to the Trustee, and such definition includes the land, buildings and improvements comprising the Facility, "all leases, subleases, lettings, licenses and other agreements under the terms of which any person other than [the Debtor] acquires any right to use or occupancy of the Mortgaged Property or any part thereof now or hereafter entered into (the "Leases"), all of the Debtor's right, title and interest in and to all Residency Documents (as defined in the Mortgage), and all of the Debtor's right, title and interest in "all personal and fixture property of every kind and nature including, without

by the Bond Trustee pursuant to and under any of the Bond Documents ... and all investments and reinvestments of any such moneys and securities" (all of the foregoing, as further described in the Bond Documents, the "Bond Collateral").[5]

E. As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds and the obligations under the Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal on the Bonds in the amount of $168,037,200;

(ii) Accrued but unpaid interest on the Bonds in the amount of $2,256,808.50 as of the Petition Date; and

(iii) unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

F. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case solely for the first two weeks of this Chapter 11 Case (through and including April 5, 2023) (the "Interim Period") while the parties discuss a longer term plan for the Chapter 11 Case. The Debtor has agreed to adjourn all other relief sought in the DIP Motion, including approval of the DIP Financing with Amsterdam Continuing Care Health System, Inc. (the "Member") and entry of the Interim Order attached to the DIP Motion, during the Interim Period. The Bond Trustee has agreed, pursuant to the terms hereof, to allow the Debtor to use the Cash Collateral solely during the Interim Period.

---

limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature which the [Debtor], or others on behalf of the [Debtor], possess, use or have the authority to possess or use ..., all general intangibles, together with all replacements thereof, substitutions therefore and additions thereto ...", and "all products and proceeds of each and every kind" of the identified Mortgaged Property.

[5] The Bond Trustee asserts a lien on substantially all of the Debtor's post-petition revenue. The Debtor and the Bond Trustee reserve all rights regarding such issue.

G. Pursuant to the Bankruptcy Code, the Debtor is required, upon the Bond Trustee's request, to provide adequate protection to the Bond Trustee in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral during the Interim Period except upon the terms and conditions of this Interim Order.

H. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis during this Interim Period, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Bond Collateral on the terms set forth in this Interim Order, reflecting the agreement of the Debtor and the Bond Trustee for this Interim Period.

I. Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY CONCLUDES AND ORDERS AS FOLLOWS:**

1. Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in the Chapter 11 Case under Section 1102 of the Bankruptcy Code as of the date hereof.

2. Notice. The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), which notice was sent to, among others: (i) the Office of the U.S. Trustee for the

Eastern District of New York; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the Member, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3. Good Cause. Good cause has been shown for entry of this Interim Order.

4. Disposition. The Motion is GRANTED on an interim basis solely as set forth herein, and is otherwise adjourned with respect to all other relief sought therein. The requirements of Bankruptcy Rule 4001(b)(2) and Local Rule 4001-5 are satisfied with respect to the use of Cash Collateral during the Interim Period on an interim and preliminary basis. The rights of all parties, including the Bond Trustee, to object to the relief sought in the Motion are reserved as further provided herein.

5. Authorization to Use Cash Collateral. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues, Rents and Receipts derived by the Debtor in the ordinary course of their business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "Cash Collateral") solely during this Interim Period until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day of the Interim Period, but only on the terms of this Interim

Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget.

6. Exclusions from Cash Collateral. The Debtor is not authorized to use and shall not use any cash collateral of the Bond Trustee, other than Cash Collateral as set forth herein.

7. Replacement Lien. As adequate protection for any diminution in the value of Cash Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Collateral"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, other than the Debtor's rights under that certain Liquidity Support Agreement (the "LSA") between the Debtor and Amsterdam Continuing Care Health System, Inc. dated as of June 14, 2021 (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Postpetition Collateral"); provided, however, that actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Sections 542, 544,

545, 547, 548 (exclusive of transferees under Section 549), 550 and 553 of the Bankruptcy Code shall not be Postpetition Collateral under this Interim Order.

8. No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the liens granted to the Bond Trustee herein, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; provided, however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9. Superpriority Claim. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the

Debtor's estate other than the Debtor's rights under the LSA (the "Secured Party Superpriority Claim"). The Secured Party Superpriority Claim shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of a final order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

10. Adequate Protection Payment. In consideration of the use of Cash Collateral, the Debtor shall make an adequate protection payment to the Bond Trustee in the amount of any Diminution, if any, during the Interim Period that is agreed to by the parties within ten (10) business days of the expiration of the Interim Period, unless the Bond Trustee has consented to the ongoing use of Cash Collateral by such expiration. In the event that the Debtor and the Bond Trustee do not agree on the amount of Diminution, the Court shall determine such amount on application or motion by the Bond Trustee on regular notice to the Debtor. Any such payment made by the Debtor shall be irrevocable and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code Sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b). For the

avoidance of doubt, any such payment shall be without prejudice to the right of the Bond Trustee to assert a claim for payment of additional amounts in accordance with the Bond Documents. The Debtor expressly reserves the right to dispute any claimed Diminution by the Bond Trustee.

11. Financial Information. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, from and after the entry of this Interim Order and during the Interim Period, the Debtor shall provide to the Bond Trustee once each week (commencing with March 31, 2023), a weekly report certified by an authorized representative of the Debtor and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives to discuss matters pertaining to The Harborside and the Chapter 11 Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

12. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (a "Termination Event"):

(i) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii) this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the Bond Trustee;

(iii) the Debtor violates any term or condition of this Interim Order;

(iv) the Debtor pays any line-item expenses in a manner, time or amount that is inconsistent with the Cash Collateral Budget;

(v) the Debtor fails to provide the stalking horse purchaser letter of intent/term sheet to the Bond Trustee by March 27, 2023; or

(vi) the Debtor fails to provide a comprehensive response to the Bond Trustee's debtor-in-possession financing term sheet by March 28, 2023.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis and the Bond Trustee expressly reserves the right to object to such request. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph in its sole discretion without further order of the Court.

13. Carve Out. The Bond Trustee consents to certain expenses incurred during the Interim Period that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "Carve Out"). For purposes hereof, the Carve Out means the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court plus any interest at the statutory rate.

14. Preservation of Rights. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

15. No Competing Liens. Except as set forth herein, during the Interim Period, the Debtor shall not grant liens on, or security interests in, the Bond Collateral or the Postpetition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

16. Negotiations in Good Faith. The Debtor and Bond Trustee agree that, during the Interim Period, they will negotiate in good faith with respect to the terms of any debtor-in-possession financing to be provided by the Bond Trustee, if any.

17. Reservation of Rights. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time, or the right of the Bond Trustee to contest any and all relief sought in the Motion.

18. Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Bond Collateral are not being adequately protected.

19. No Control. Nothing in this Interim Order shall cause the Bond Trustee to be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

20. No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

21. Effectiveness. The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

22. Notices. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

(a) If to the Debtor to:

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Brooke Navarre

with a copy sent contemporaneously by email to:

DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Attn: Rachel Nanes
E-mail: rachel.nanes@us.dlapiper.com

DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Attn: James Muenker
E-mail: james.muenker@us.dlapiper.com

If to the Bond Trustee to:

UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Mark Kalla

with a copy sent contemporaneously by email to:

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
Attn: Daniel Bleck
Eric Blythe
E-mails: dsbleck@mintz.com
erblythe@mintz.com

23. Notice of Further Interim Hearing. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of a further interim hearing, to the Notice Parties.

24. Further Interim Hearing; Objections. A further interim hearing to consider the Motion will be held on April 5, 2023 at 11:00 a.m. (EST) before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April 3, 2023 at 4:00 p.m. (EST) and shall

contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

# Exhibit A

**Cash Collateral Budget**

**Amsterdam House Continuing Care Retirement Community, Inc.**
Projected Weekly Cash Flows - Interim Period
*($ in thousands)*

| | Proj / Act | Proj. | Proj. | Proj. | |
|---|---|---|---|---|---|
| | Week Number | - | 1 | 2 | Proj. |
| | Week Ended | 25-Mar | 1-Apr | 8-Apr | Total |
| 1. | **Total Operating Receipts** | **$ -** | **$ 324** | **$ 3** | **$ 327** |
| 2. | OPERATING DISBURSEMENTS | | | | |
| 3. | Salaries and Wages | - | - | - | - |
| 4. | Employee Benefits | - | - | (39) | (39) |
| 5. | Contract Labor | - | (59) | (59) | (118) |
| 6. | Food Purchases | - | (359) | - | (359) |
| 7. | Medical Supplies | - | (23) | (23) | (46) |
| 8. | General and Administrative | - | (58) | (66) | (124) |
| 9. | Building and Maintenance | - | (62) | (15) | (77) |
| 10. | Other Disbursements | - | (82) | (10) | (92) |
| 11. | Capital Expenditures | - | (8) | (8) | (15) |
| 12. | **Total Operating Disbursements** | **-** | **(650)** | **(219)** | **(869)** |
| 13. | **Operating Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 14. | RESTRUCTURING FEES | | | | |
| 15. | Debtor Professional Fees | - | - | - | - |
| 16. | Creditor Committee Professional Fees | - | - | - | - |
| 17. | Filing / US Trustee Fees | - | - | - | - |
| 18. | Other Professional Fees | - | - | - | - |
| 19. | Process Costs | - | - | - | - |
| 20. | Total Restructuring Fees | - | - | - | - |
| 21. | **Net Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 22. | SUMMARY OF CASH ACTIVITY | | | | |
| 23. | Beginning Cash | 1,132 | 1,132 | 806 | 1,132 |
| 24. | (+/-) Net Cash Flow | - | (326) | (216) | (542) |
| 25. | (+) DIP Borrowing | - | - | - | - |
| 26. | **Ending Cash** | **$ 1,132** | **$ 806** | **$ 590** | **$ 590** |

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FURTHER INTERIM HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Dkt. No. 12] (the "Motion")[2], and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, N.A., in its capacity as trustee for the bonds described more fully below (the "Bond Trustee"). ~~Capitalized terms used in this Interim Order but not specifically defined have the meanings set forth in the Motion.~~

In connection with the Chapter 11 Case and the Motion, the ~~Debtor and the~~ Bond Trustee ~~have stipulated and agreed~~asserts as follows:

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

B. The Debtor is the owner and operator of a continuing care retirement community known as The ~~Amsterdam at~~ Harborside (the "Facility").

**The Secured Bond Obligations**

C. The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds described below, authorized and issued by Nassau County Industrial Development Agency (the "Issuer"). The Issuer issued (1) $40,710,000 Continuing Care Retirement Community Taxable Revenue Bonds~~,~~ (Amsterdam at Harborside Project), Series 2021A (the "Series 2021A Bonds"), and (2) $127,327,200 Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (Amsterdam at Harborside Project), Series 2021B (the "Series 2021B Bonds" and together with the Series 2021A Bonds, the "Bonds") pursuant to the Indenture of Trust dated September 1, 2021 (the "Indenture" and together with the other documents securing or otherwise related to the Bonds, the "Bond Documents").

D. The Bonds and the Debtor's obligations under the Bond Documents are secured by substantially all assets of the Debtor, including, without limitation: (i) the Gross Revenues of the Debtor;[3] (ii) the Mortgaged Property;[4] and (iii) "all moneys and securities from time to time held

[3] "Gross Revenues" is defined in the Bond Indenture to include "(i) all receipts, revenues, payments, income and other moneys received by or on behalf of the Corporation from any source, whether or not in connection with the ownership or the operation of all or any part of the Project, including, without limitation, all Entrance Fees (earned and unearned), Monthly Service Fees, and all other operating and non-operating revenues, and all rights to receive the same whether in the form of accounts, accounts receivable, contract rights, chattel paper, instruments, investment property, general intangibles of the Corporation and the proceeds thereof, the proceeds of any insurance coverage on and condemnation awards in respect of the Project or any gain on the sale or other Corporation disposition of the

by the Bond Trustee pursuant to and under any of the Bond Documents ... and all investments and reinvestments of any such moneys and securities" (all of the foregoing, as further described in the Bond Documents, the "Bond Collateral").[5]

E. As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds and the obligations under the Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal on the Bonds in the amount of $168,037,200;

(ii) Accrued but unpaid interest on the Bonds in the amount of $2,256,808.50 as of the Petition Date; and

(iii) unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

F. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case solely for the first two weeks of this Chapter 11 Case

Project; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the corporation; and including all gifts, grants, bequests, donations and contributions ... and (ii) all right, title and interest of the Corporation in and to the Funds and accounts established under this Indenture ..."

[4] "Mortgaged Property" is defined in that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 8, 2021 (the "Mortgage") from the Debtor and the Issuer to the Trustee, and such definition includes the land, buildings and improvements comprising the Facility, "all leases, subleases, lettings, licenses and other agreements under the terms of which any person other than [the Debtor] acquires any right to use or occupancy of the Mortgaged Property or any part thereof now or hereafter entered into (the "Leases"), all of the Debtor's right, title and interest in and to all Residency Documents (as defined in the Mortgage), and all of the Debtor's right, title and interest in "all personal and fixture property of every kind and nature including, without limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature which the [Debtor], or others on behalf of the [Debtor], possess, use or have the authority to possess or use ..., all general intangibles, together with all replacements thereof, substitutions therefore and additions thereto ...", and "all products and proceeds of each and every kind" of the identified Mortgaged Property.

[5] The Bond Trustee asserts a lien on substantially all of the Debtor's post-petition revenue. The Debtor and the Bond Trustee reserve all rights regarding such issue.

(through and including April ~~6~~5, 2023) (the "Interim Period") while the parties discuss a longer term plan for the Chapter 11 Case. The Debtor has agreed to adjourn all other relief sought in the DIP Motion, including approval of the DIP Financing with Amsterdam Continuing Care Health System, Inc. (the "Member") and entry of the Interim Order attached to the DIP Motion, during the Interim Period. The Bond Trustee has agreed, pursuant to the terms hereof, to allow the Debtor to use the Cash Collateral solely during the Interim Period.

G. Pursuant to the Bankruptcy Code, the Debtor is required, upon the Bond Trustee's request, to provide adequate protection to the Bond Trustee in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral during the Interim Period except upon the terms and conditions of this Interim Order.

H. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis during this Interim Period, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Bond Collateral on the terms set forth in this Interim Order, reflecting the agreement of the Debtor and the Bond Trustee for this Interim Period.

I. Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY CONCLUDES AND ORDERS AS FOLLOWS:**

1. Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or

examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in the Chapter 11 Case under Section 1102 of the Bankruptcy Code as of the date hereof.

2. Notice. The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), which notice was sent to, among others: (i) the Office of the U.S. Trustee for the Eastern District of New York; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the Member, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3. Good Cause. Good cause has been shown for entry of this Interim Order.

4. Disposition. The Motion is GRANTED on an interim basis solely as set forth herein, and is otherwise adjourned with respect to all other relief sought therein. The requirements of Bankruptcy Rule 4001(b)(2) and Local Rule 4001-5 are satisfied with respect to the use of Cash Collateral during the Interim Period on an interim and preliminary basis. The rights of all parties, including the Bond Trustee, to object to the relief sought in the Motion are reserved as further provided herein.

5. Authorization to Use Cash Collateral. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues, Rents and Receipts derived by the Debtor in the ordinary course of their business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "Cash Collateral") solely during this Interim Period until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day of the Interim Period, but only on the terms of this Interim Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget.

6. Exclusions from Cash Collateral. The Debtor is not authorized to use and shall not use any cash collateral of the Bond Trustee, other than Cash Collateral as set forth herein.

7. Replacement Lien. As adequate protection for any diminution in the value of Cash Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Collateral"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or

arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, other than the Debtor's rights under that certain Liquidity Support Agreement (the "LSA") between the Debtor and Amsterdam Continuing Care Health System, Inc. dated as of June 14, 2021 (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Postpetition Collateral"); provided, however, that actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Sections 542, 544, 545, 547, 548 (exclusive of transferees under Section 549), 550 and 553 of the Bankruptcy Code ~~(collectively, the "Avoidance Actions"[22])~~ shall not be Postpetition Collateral under this Interim Order.

8. No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the liens granted to the Bond Trustee herein, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; provided, however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No

obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9. Superpriority Claim. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the Debtor's estate other than the Debtor's rights under the LSA (the "Secured Party Superpriority Claim"). The Secured Party Superpriority Claim shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of a final order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

10. Adequate Protection Payment. In consideration of the use of Cash Collateral, the Debtor shall make an adequate protection payment to the Bond Trustee in the amount of any Diminution, if any, during the Interim Period that is agreed to by the parties within ten (10) business days of the expiration of the Interim Period, unless the Bond Trustee has consented to

the ongoing use of Cash Collateral by such expiration. In the event that the Debtor and the Bond Trustee do not agree on the amount of Diminution, the Court shall determine such amount on application or motion by the Bond Trustee on regular notice to the Debtor. Any such payment made by the Debtor shall be irrevocable and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code ~~sections~~Sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b). For the avoidance of doubt, any such payment shall be without prejudice to the right of the Bond Trustee to assert a claim for payment of additional amounts in accordance with the Bond Documents. The Debtor expressly reserves the right to dispute any claimed Diminution by the Bond Trustee.

11. Financial Information. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, from and after the entry of this Interim Order and during the Interim Period, the Debtor shall provide to the Bond Trustee once each week (commencing with March 31, 2023), a weekly report certified by an authorized representative of the Debtor and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives to discuss matters pertaining to The Harborside and the Chapter 11 Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

12. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (a "Termination Event"):

(i) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii) this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the Bond Trustee;

(iii) the Debtor violates any term or condition of this Interim Order;

(iv) the Debtor pays any line-item expenses in a manner, time or amount that is inconsistent with the Cash Collateral Budget;

(v) the Debtor fails to provide the stalking horse purchaser letter of intent/term sheet to the Bond Trustee by March 27, 2023; or

(vi) the Debtor fails to provide a comprehensive response to the Bond Trustee's debtor-in-possession financing term sheet by March 28, 2023.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis and the Bond Trustee expressly reserves the right to object to such request. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph in its sole discretion without further order of the Court.

13. Carve Out. The Bond Trustee consents to certain expenses incurred during the Interim Period that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "Carve Out"). For purposes hereof, the Carve Out means the

statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court plus any interest at the statutory rate.

14. ~~13.~~ Preservation of Rights. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

15. ~~14.~~ No Competing Liens. Except as set forth herein, during the Interim Period, the Debtor shall not grant liens on, or security interests in, the Bond Collateral or the Postpetition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

16. ~~15.~~ Negotiations in Good Faith. The Debtor and Bond Trustee agree that, during the Interim Period, they will negotiate in good faith with respect to the terms of any debtor-in-possession financing to be provided by the Bond Trustee, if any.

17. ~~16.~~ Reservation of Rights. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time, or the right of the Bond Trustee to contest any and all relief sought in the Motion.

18. ~~17.~~ Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay;

or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Bond Collateral are not being adequately protected.

19. ~~18.~~ No Control. Nothing in this Interim Order shall cause the Bond Trustee to be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

20. ~~19.~~ No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

21. ~~20.~~ Effectiveness. The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

22. ~~21.~~ Notices. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing

and shall be deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

(a) If to the Debtor to:

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Brooke Navarre

with a copy sent contemporaneously by email to:

DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
~~Suite 2500~~
Miami, FL 33131
Attn: Rachel Nanes
E-mail: rachel.nanes@us.dlapiper.com

DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Attn: James Muenker
E-mail: james.muenker@us.dlapiper.com

If to the Bond Trustee to:

UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Mark Kalla

with a copy sent contemporaneously by email to:

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
Attn: Daniel Bleck
Eric Blythe
E-mails: dsbleck@mintz.com

erblythe@mintz.com

23. ~~22.~~ Notice of Further Interim Hearing. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of a further interim hearing, to the Notice Parties.

24. ~~23.~~ Further Interim Hearing; Objections. A further interim hearing to consider the Motion will be held on April ~~6~~5, 2023 at ~~__.m.~~11:00 a.m. (EST) before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April 3, 2023 at 4:00 p.m. (EST) and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

**Exhibit A**

**Cash Collateral Budget**

| **Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 3/27/2023 3:09:33 PM** | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.us.dlapiper.com/EAST/201884135/5 | |
| **Modified DMS:** iw://dms.us.dlapiper.com/EAST/201884135/7 | |
| **Changes:** | |
| Add | 31 |
| ~~Delete~~ | 23 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 54 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER AUTHORIZING (I) CONTINUED USE OF THE DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE OF ITS EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF ITS EXISTING BUSINESS FORMS, AND (IV) A WAIVER OF CERTAIN DEPOSIT AND INVESTMENT REQUIREMENTS OF 11 U.S.C. § 345(B) AND THE U.S. TRUSTEE GUIDELINES**

This matter coming before the Court on the *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (i) Continued Use of the Debtor's Existing Cash Management System, (ii) Maintenance of Its Existing Bank Accounts, (iii) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. § 345(b) and the U.S. Trustee Guidelines* (the "Motion")[2] for entry of an interim order (this "Interim Order"), (i) authorizing the Debtor to (a) continue to use its existing Cash Management System, including existing bank accounts, (b) honor certain prepetition obligations related thereto, and (c) maintain its existing business forms, (ii) waiving certain requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, and (iii) granting related relief, including scheduling the Final Hearing; and this Court having jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334; and this Court having

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation, and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order.

2. The Final Hearing on the Motion shall be held on April 5, 2023, at 11:00 a.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time, on March 29, 2023 and served on the following parties: (i) proposed counsel to the Debtor, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn.: Gregory M. Juell, Esq. [gregory.juell@us.dlapiper.com]), 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131 (Attn.: Rachel Nanes, Esq. [rachel.nanes@us.dlapiper.com]), and 1900 North Pearl Street, Suite 2200, Dallas, Texas 75201 (Attn.: James P. Muenker, Esq. [james.muenker@us.dlapiper.com]); (ii) the Office of the United States Trustee for the Eastern District of New York (Central Islip Division), Alfonse M. D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722; (iii) counsel to the DIP Lender, Otterbourg P.C., 230 Park Avenue, New York, NY 10169 (Attn.: Melanie Cyganowski, Esq. [mcyganowski@otterbourg.com] and James Drew, Esq. [jdrew@otterbourg.com]); (iv) counsel to the 2021 Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial

Center, Boston, MA 02111 (Attn.: Daniel Bleck, Esq. [dsbleck@mintz.com])]; (v) counsel to any statutory committee appointed in this chapter 11 case; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

3. The Debtor is authorized but not directed, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to (a) maintain and continue using in the ordinary course, subject to the terms of this Interim Order and any other orders of this Court, and with the modifications to prepetition practice described in the Motion, the Cash Management System, including those Bank Accounts identified on the schedule attached hereto as **Exhibit 1**, substantially as depicted on the Cash Management Schematic attached hereto as **Exhibit 2**.

4. The Debtor is authorized to implement changes to the Cash Management System and procedures in the ordinary course of business, including by opening additional bank accounts and closing any Bank Accounts in its sole discretion without further order of this Court; provided that the Debtor will provide notice to the U.S. Trustee within five (5) business days of opening any new Debtor Bank Account. The provisions in this Interim Order which apply to Bank Accounts will apply to any such newly opened bank accounts as if they had been open on the date hereof.

5. The Debtor is further authorized, but not directed, to: (i) continue to use, with the same account numbers, each of the Bank Accounts in existence as of the Petition Date, including each of the accounts identified on **Exhibit 1** attached hereto, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines, including, without limitation, the requirement to establish separate accounts for cash collateral and/or tax payments; (ii) treat the Bank Accounts for all purposes as accounts of the Debtor as a debtor in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, wire transfer and other methods; (iv) pay the Bank Fees, including,

without limitation, any prepetition Bank Fees and any other Bank Fees for prepetition transactions that are charged to the Debtor on or after the Petition Date; and (v) otherwise perform its obligations under the documents governing the Bank Accounts.

6. The Debtor is authorized to continue to maintain and manage the Resident Trust Account, Friends of Independent Living Account, Legacy Fund, and Employee Appreciation Account on behalf of its Residents and employees, as applicable, in the ordinary course of business consistent with prepetition practices and as mandated by applicable law. The funds in the Resident Trust Account, Friends of Independent Living Account, Legacy Fund, and Employee Appreciation Account are not property of the Debtor's estate and shall not be available for distribution to creditors of the Debtor.

7. Subject to entry of the Final Order, the investment and deposit requirements of section 345 of the Bankruptcy Code, to the extent not satisfied by the Cash Management System (if any), are adjourned.

8. Notwithstanding the U.S. Trustee Guidelines requiring the Debtor to maintain all bank accounts at an Authorized Depository, and absent the consent of the U.S. Trustee, the Debtor is authorized to maintain its Bank Accounts at Amalgamated Bank subject to entry of a Final Order.

9. The Debtor is authorized to use, in their present form, all preprinted correspondence and Business Forms (including checks and letterhead); provided, that within fifteen (15) days of the entry of this Interim Order, the Debtor shall begin printing the "debtor in possession" designation on its checks and stamping its preprinted Business Forms with the "debtor in possession" designation; and provided further, that the Debtor shall create a gap in the sequence of the post-petition checks it uses in order to enable all parties to clearly delineate post-petition

payments or otherwise utilize its existing Cash Management System to implement a monitoring system which has the same effect.

10. The Banks are authorized but not directed to continue to service and administer the Debtor Bank Accounts as accounts of the Debtor, as a debtor in possession, without interruption and in the usual and ordinary course, and to receive, process, and honor and pay, to the extent of available funds, any and all checks, drafts, wires, or ACH Transfers (as defined below) drawn on the Bank Accounts on or after the Petition Date by the holders or makers thereof, as the case may be (the "Disbursements"); provided however, the Debtor shall take all reasonable steps to stop payment on any checks, drafts, wires, or ACH transfers drawn or issued by the Debtor before, but which did not clear the Bank Accounts prior to, the Petition Date, except checks approved to be paid by an order of this Court.

11. The Banks are authorized to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions ("ACH Transfers"), wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

12. The Banks shall not be required to honor any Disbursements unless there are immediately available funds in the Bank Accounts sufficient to cover such requests. The Banks are authorized to rely on the representations of the Debtor as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court. The Banks shall not be liable to any party or otherwise deemed in

violation of this Interim Order on account of (a) following the Debtor's instructions or Debtor's representations as to any order of this Court; (b) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures.

13. To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor is authorized to issue replacement Disbursements consistent with the orders of this Court.

14. The Banks are authorized to continue to honor any standing instructions of the Debtor with respect to daily or periodic wires, ACH Transfers or other debits made to the Bank Accounts in accordance with the Debtor's prepetition instructions. The Banks are further authorized to debit the Bank Accounts in the ordinary course of business and without further order of this Court on account of all checks drawn on the Debtor's accounts which were cashed at the counter of Banks or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

15. Within two (2) business days after the date of entry of this Interim Order, the Debtor shall contact each of the Banks, (i) providing the Debtor's employer identification number and the bankruptcy case number and identifying each of its Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case, and designating each of its Bank Accounts as a debtor in possession bank account, and (ii) advising the Banks not to honor checks issued by the Debtor prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and identifying those checks that are permitted to be cashed by an order of the Court.

16. The Debtor's credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks arising before, on or after the Petition Date.

17. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed as (a) an admission as to the validity or priority of any claim or lien against the Debtor, (b) a waiver of the Debtor's right to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Interim Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

18. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

19. Notice of the Motion shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice or waived.

20. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

21. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

22. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit 1**

**Bank Accounts**

**AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.**
**LIST OF BANK ACCOUNTS**

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 1. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2862 | Main Deposit Account |
| 2. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6837 | Main Disbursement Account |
| 3. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 8041 | Employee Benefits Account |
| 4. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 4297 | Resident Trust Account |
| 5. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2614 | Security Deposit Account |
| 6. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6665 | Employee Appreciation Account |
| 7. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 9986 | Friends of Independent Living Account |
| 8. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 1532 | Legacy Fund |
| 9. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2850 | Utility Deposit Account |
| 10. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 3703-800<br>3703-900 | Entrance Fee Escrow Account |
| 11. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 8646 | Supplemental Account |
| 12. | UMB Bank, N.A. | UMB Bank, N.A. | 587.1 | Revenue Fund |
| 13. | UMB Bank, N.A. | UMB Bank, N.A. | 587.12 | Entrance Fee Fund |
| 14. | UMB Bank, N.A. | UMB Bank, N.A. | 587.8 | Operating Reserve Fund |

[1] The last four digits of each Bank Account are listed.

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 15. | UMB Bank, N.A. | UMB Bank, N.A. | 587.2, 587.3, 587.4, 587.5, 587.6, 587.7 | Debt Service Funds |
| 16. | UMB Bank, N.A. | UMB Bank, N.A. | 587.9 | Project Fund |
| 17. | UMB Bank, N.A. | UMB Bank, N.A. | 587.10 | Insurance Proceeds |
| 18. | UMB Bank, N.A. | UMB Bank, N.A. | 587.11 | Cost of Issuance |
| 19. | UMB Bank, N.A. | UMB Bank, N.A. | 587.13 | Rebate Funds |

**Exhibit 2**

**Cash Management Schematic**

**Exhibit 1**

**Bank Accounts**

**AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.**
**LIST OF BANK ACCOUNTS**

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 1. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2862 | Main Deposit Account |
| 2. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6837 | Main Disbursement Account |
| 3. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 8041 | Employee Benefits Account |
| 4. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 4297 | Resident Trust Account |
| 5. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2614 | Security Deposit Account |
| 6. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6665 | Employee Appreciation Account |
| 7. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 9986 | Friends of Independent Living Account |
| 8. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 1532 | Legacy Fund |
| 9. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2850 | Utility Deposit Account |
| 10. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 3703-800<br>3703-900 | Entrance Fee Escrow Account |
| 11. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 8646 | Supplemental Account |
| 12. | UMB Bank, N.A. | UMB Bank, N.A. | 587.1 | Revenue Fund |
| 13. | UMB Bank, N.A. | UMB Bank, N.A. | 587.12 | Entrance Fee Fund |
| 14. | UMB Bank, N.A. | UMB Bank, N.A. | 587.8 | Operating Reserve Fund |

[1] The last four digits of each Bank Account are listed.

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 15. | UMB Bank, N.A. | UMB Bank, N.A. | 587.2, 587.3, 587.4, 587.5, 587.6, 587.7 | Debt Service Funds |
| 16. | UMB Bank, N.A. | UMB Bank, N.A. | 587.9 | Project Fund |
| 17. | UMB Bank, N.A. | UMB Bank, N.A. | 587.10 | Insurance Proceeds |
| 18. | UMB Bank, N.A. | UMB Bank, N.A. | 587.11 | Cost of Issuance |
| 19. | UMB Bank, N.A. | UMB Bank, N.A. | 587.13 | Rebate Funds |

# Exhibit 2

## Cash Management Schematic

# Cash Flow Schematic

## Chapter 11 Cash Management



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**AMENDED INTERIM ORDER AUTHORIZING (I) CONTINUED USE OF THE DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE OF ITS EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF ITS EXISTING BUSINESS FORMS, AND (IV) A WAIVER OF CERTAIN DEPOSIT AND INVESTMENT REQUIREMENTS OF 11 U.S.C. § 345(B) AND THE U.S. TRUSTEE GUIDELINES**

This matter coming before the Court on the *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing (i) Continued Use of the Debtor's Existing Cash Management System, (ii) Maintenance of Its Existing Bank Accounts, (iii) Continued Use of Its Existing Business Forms, and (IV) A Waiver of Certain Deposit and Investment Requirements of 11 U.S.C. § 345(b) and the U.S. Trustee Guidelines* (the "Motion")[2] for entry of an interim order (this "Interim Order"), (i) authorizing the Debtor to (a) continue to use its existing Cash Management System, including existing bank accounts, (b) honor certain prepetition obligations related thereto, and (c) maintain its existing business forms, (ii) waiving certain requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, and (iii) granting related relief, including scheduling the Final Hearing; and this Court having jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334; and this Court having

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation, and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED, on an interim basis, as set forth in this Interim Order.

2. The Final Hearing on the Motion shall be held on April 5, 2023, at 11:00 a.m. prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Eastern Time, on March 29, 2023 and served on the following parties: (i) proposed counsel to the Debtor, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn.: Gregory M. Juell, Esq. [gregory.juell@us.dlapiper.com]), 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131 (Attn.: Rachel Nanes, Esq. [rachel.nanes@us.dlapiper.com]), and 1900 North Pearl Street, Suite 2200, Dallas, Texas 75201 (Attn.: James P. Muenker, Esq. [james.muenker@us.dlapiper.com]); (ii) the Office of the United States Trustee for the Eastern District of New York (Central Islip Division), Alfonse M. D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722; (iii) counsel to the DIP Lender, Otterbourg P.C., 230 Park Avenue, New York, NY 10169 (Attn.: Melanie Cyganowski, Esq. [mcyganowski@otterbourg.com] and James Drew, Esq. [jdrew@otterbourg.com]); (iv) counsel to the 2021 Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial

Center, Boston, MA 02111 (Attn.: Daniel Bleck, Esq. [dsbleck@mintz.com])]; (v) counsel to any statutory committee appointed in this chapter 11 case; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

3. The Debtor is authorized but not directed, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to (a) maintain and continue using in the ordinary course, subject to the terms of this Interim Order and any other orders of this Court, and with the modifications to prepetition practice described in the Motion, the Cash Management System, including those Bank Accounts identified on the schedule attached hereto as **Exhibit 1**, substantially as depicted on the Cash Management Schematic attached hereto as **Exhibit 2**.

4. The Debtor is authorized to implement changes to the Cash Management System and procedures in the ordinary course of business, including by opening additional bank accounts and closing any Bank Accounts in its sole discretion without further order of this Court; provided that the Debtor will provide notice to the U.S. Trustee within five (5) business days of opening any new Debtor Bank Account. The provisions in this Interim Order which apply to Bank Accounts will apply to any such newly opened bank accounts as if they had been open on the date hereof.

5. The Debtor is further authorized, but not directed, to: (i) continue to use, with the same account numbers, each of the Bank Accounts in existence as of the Petition Date, including each of the accounts identified on **Exhibit 1** attached hereto, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines, including, without limitation, the requirement to establish separate accounts for cash collateral and/or tax payments; (ii) treat the Bank Accounts for all purposes as accounts of the Debtor as a debtor in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, wire transfer and other methods; (iv) pay the Bank Fees, including,

without limitation, any prepetition Bank Fees and any other Bank Fees for prepetition transactions that are charged to the Debtor on or after the Petition Date; and (v) otherwise perform its obligations under the documents governing the Bank Accounts.

6. The Debtor is authorized to continue to maintain and manage the Resident Trust Account, Friends of Independent Living Account, Legacy Fund, and Employee Appreciation Account on behalf of its Residents and employees, as applicable, in the ordinary course of business consistent with prepetition practices and as mandated by applicable law. The funds in the Resident Trust Account, Friends of Independent Living Account, Legacy Fund, and Employee Appreciation Account are not property of the Debtor's estate and shall not be available for distribution to creditors of the Debtor.

7. Subject to entry of the Final Order, the investment and deposit requirements of section 345 of the Bankruptcy Code, to the extent not satisfied by the Cash Management System (if any), are adjourned.

8. Notwithstanding the U.S. Trustee Guidelines requiring the Debtor to maintain all bank accounts at an Authorized Depository, and absent the consent of the U.S. Trustee, the Debtor is authorized to maintain its Bank Accounts at Amalgamated Bank subject to entry of a Final Order.

9. The Debtor is authorized to use, in their present form, all preprinted correspondence and Business Forms (including checks and letterhead); provided, that within fifteen (15) days of the entry of this Interim Order, the Debtor shall begin printing the "debtor in possession" designation on its checks and stamping its preprinted Business Forms with the "debtor in possession" designation; and provided further, that the Debtor shall create a gap in the sequence of the post-petition checks it uses in order to enable all parties to clearly delineate post-petition

payments or otherwise utilize its existing Cash Management System to implement a monitoring system which has the same effect.

10. The Banks are authorized but not directed to continue to service and administer the Debtor Bank Accounts as accounts of the Debtor, as a debtor in possession, without interruption and in the usual and ordinary course, and to receive, process, and honor and pay, to the extent of available funds, any and all checks, drafts, wires, or ACH Transfers (as defined below) drawn on the Bank Accounts on or after the Petition Date by the holders or makers thereof, as the case may be (the "Disbursements"); provided however, the Debtor shall take all reasonable steps to stop payment on any checks, drafts, wires, or ACH transfers drawn or issued by the Debtor before, but which did not clear the Bank Accounts prior to, the Petition Date, except checks approved to be paid by an order of this Court.

11. The Banks are authorized to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions ("ACH Transfers"), wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

12. The Banks shall not be required to honor any Disbursements unless there are immediately available funds in the Bank Accounts sufficient to cover such requests. The Banks are authorized to rely on the representations of the Debtor as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court. The Banks shall not be liable to any party or otherwise deemed in

violation of this Interim Order on account of (a) following the Debtor's instructions or Debtor's representations as to any order of this Court; (b) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures.

13. To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor is authorized to issue replacement Disbursements consistent with the orders of this Court.

14. The Banks are authorized to continue to honor any standing instructions of the Debtor with respect to daily or periodic wires, ACH Transfers or other debits made to the Bank Accounts in accordance with the Debtor's prepetition instructions. The Banks are further authorized to debit the Bank Accounts in the ordinary course of business and without further order of this Court on account of all checks drawn on the Debtor's accounts which were cashed at the counter of Banks or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

15. Within two (2) business days after the date of entry of this Interim Order, the Debtor shall contact each of the Banks, (i) providing the Debtor's employer identification number and the bankruptcy case number and identifying each of its Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case, and designating each of its Bank Accounts as a debtor in possession bank account, and (ii) advising the Banks not to honor checks issued by the Debtor prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and identifying those checks that are permitted to be cashed by an order of the Court.

16. The Debtor's credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks arising before, on or after the Petition Date.

17. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed as (a) an admission as to the validity or priority of any claim or lien against the Debtor, (b) a waiver of the Debtor's right to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Interim Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

18. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

19. Notice of the Motion shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice or waived.

20. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

21. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

22. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: March 28, 2023
Central Islip, New York

United States Bankruptcy Court Eastern District of New York

Alan S. Trust
Chief United States Bankruptcy Judge

**Exhibit 1**

**Bank Accounts**

**AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.**
**LIST OF BANK ACCOUNTS**

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 1. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2862 | Main Deposit Account |
| 2. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6837 | Main Disbursement Account |
| 3. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 8041 | Employee Benefits Account |
| 4. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 4297 | Resident Trust Account |
| 5. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2614 | Security Deposit Account |
| 6. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 6665 | Employee Appreciation Account |
| 7. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 9986 | Friends of Independent Living Account |
| 8. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 1532 | Legacy Fund |
| 9. | Amsterdam House Continuing Care Retirement Community, Inc. | New York Community Bank | 2850 | Utility Deposit Account |
| 10. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 3703-800<br>3703-900 | Entrance Fee Escrow Account |
| 11. | Amsterdam House Continuing Care Retirement Community, Inc. | Amalgamated Bank | 8646 | Supplemental Account |
| 12. | UMB Bank, N.A. | UMB Bank, N.A. | 587.1 | Revenue Fund |
| 13. | UMB Bank, N.A. | UMB Bank, N.A. | 587.12 | Entrance Fee Fund |
| 14. | UMB Bank, N.A. | UMB Bank, N.A. | 587.8 | Operating Reserve Fund |

[1] The last four digits of each Bank Account are listed.

| | Account Holder | Bank | Account Number(s)[1] | Account Type |
|---|---|---|---|---|
| 15. | UMB Bank, N.A. | UMB Bank, N.A. | 587.2, 587.3, 587.4, 587.5, 587.6, 587.7 | Debt Service Funds |
| 16. | UMB Bank, N.A. | UMB Bank, N.A. | 587.9 | Project Fund |
| 17. | UMB Bank, N.A. | UMB Bank, N.A. | 587.10 | Insurance Proceeds |
| 18. | UMB Bank, N.A. | UMB Bank, N.A. | 587.11 | Cost of Issuance |
| 19. | UMB Bank, N.A. | UMB Bank, N.A. | 587.13 | Rebate Funds |

**Exhibit 2**

**Cash Management Schematic**

# Cash Flow Schematic

## Chapter 11 Cash Management



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-70989 (AST) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FURTHER INTERIM HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Secured Non-Priming Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Dkt. No. 12] (the "Motion")[2], and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, N.A., in its capacity as trustee for the bonds described more fully below (the "Bond Trustee").

In connection with the Chapter 11 Case and the Motion, the Bond Trustee asserts as follows:

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On March 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

B. The Debtor is the owner and operator of a continuing care retirement community known as The Harborside (the "Facility").

**The Secured Bond Obligations**

C. The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds described below, authorized and issued by Nassau County Industrial Development Agency (the "Issuer"). The Issuer issued (1) $40,710,000 Continuing Care Retirement Community Taxable Revenue Bonds (Amsterdam at Harborside Project), Series 2021A (the "Series 2021A Bonds"), and (2) $127,327,200 Continuing Care Retirement Community Tax-Exempt Refunding Revenue Bonds (Amsterdam at Harborside Project), Series 2021B (the "Series 2021B Bonds" and together with the Series 2021A Bonds, the "Bonds") pursuant to the Indenture of Trust dated September 1, 2021 (the "Indenture" and together with the other documents securing or otherwise related to the Bonds, the "Bond Documents").

D. The Bonds and the Debtor's obligations under the Bond Documents are secured by substantially all assets of the Debtor, including, without limitation: (i) the Gross Revenues of the Debtor;[3] (ii) the Mortgaged Property;[4] and (iii) "all moneys and securities from time to time held

[3] "Gross Revenues" is defined in the Bond Indenture to include "(i) all receipts, revenues, payments, income and other moneys received by or on behalf of the Corporation from any source, whether or not in connection with the ownership or the operation of all or any part of the Project, including, without limitation, all Entrance Fees (earned and unearned), Monthly Service Fees, and all other operating and non-operating revenues, and all rights to receive the same whether in the form of accounts, accounts receivable, contract rights, chattel paper, instruments, investment property, general intangibles of the Corporation and the proceeds thereof, the proceeds of any insurance coverage on and condemnation awards in respect of the Project or any gain on the sale or other Corporation disposition of the Project; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the corporation; and including all gifts, grants, bequests, donations and contributions ... and (ii) all right, title and interest of the Corporation in and to the Funds and accounts established under this Indenture ..."

[4] "Mortgaged Property" is defined in that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 8, 2021 (the "Mortgage") from the Debtor and the Issuer to the Trustee, and such definition includes the land, buildings and improvements comprising the Facility, "all leases, subleases, lettings, licenses and other agreements under the terms of which any person other than [the Debtor] acquires any right to use or occupancy of the Mortgaged Property or any part thereof now or hereafter entered into (the "Leases"), all of the Debtor's right, title and interest in and to all Residency Documents (as defined in the Mortgage), and all of the Debtor's right, title and interest in "all personal and fixture property of every kind and nature including, without

by the Bond Trustee pursuant to and under any of the Bond Documents ... and all investments and reinvestments of any such moneys and securities" (all of the foregoing, as further described in the Bond Documents, the "Bond Collateral").[5]

E. As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds and the obligations under the Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal on the Bonds in the amount of $168,037,200;

(ii) Accrued but unpaid interest on the Bonds in the amount of $2,256,808.50 as of the Petition Date; and

(iii) unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Use of Cash Collateral and Need for Adequate Protection**

F. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case solely for the first two weeks of this Chapter 11 Case (through and including April 5, 2023) (the "Interim Period") while the parties discuss a longer term plan for the Chapter 11 Case. The Debtor has agreed to adjourn all other relief sought in the DIP Motion, including approval of the DIP Financing with Amsterdam Continuing Care Health System, Inc. (the "Member") and entry of the Interim Order attached to the DIP Motion, during the Interim Period. The Bond Trustee has agreed, pursuant to the terms hereof, to allow the Debtor to use the Cash Collateral solely during the Interim Period.

---

limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature which the [Debtor], or others on behalf of the [Debtor], possess, use or have the authority to possess or use ..., all general intangibles, together with all replacements thereof, substitutions therefore and additions thereto ...", and "all products and proceeds of each and every kind" of the identified Mortgaged Property.

[5] The Bond Trustee asserts a lien on substantially all of the Debtor's post-petition revenue. The Debtor and the Bond Trustee reserve all rights regarding such issue.

G. Pursuant to the Bankruptcy Code, the Debtor is required, upon the Bond Trustee's request, to provide adequate protection to the Bond Trustee in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral during the Interim Period except upon the terms and conditions of this Interim Order.

H. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis during this Interim Period, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Bond Collateral on the terms set forth in this Interim Order, reflecting the agreement of the Debtor and the Bond Trustee for this Interim Period.

I. Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY CONCLUDES AND ORDERS AS FOLLOWS:**

1. Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in the Chapter 11 Case under Section 1102 of the Bankruptcy Code as of the date hereof.

2. Notice. The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), which notice was sent to, among others: (i) the Office of the U.S. Trustee for the

Eastern District of New York; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor, (iii) counsel to the Member, (iv) counsel to the Bond Trustee, (v) the United States Attorney's Office for the Eastern District of New York, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the New York State Attorney General, and (ix) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3. Good Cause. Good cause has been shown for entry of this Interim Order.

4. Disposition. The Motion is GRANTED on an interim basis solely as set forth herein, and is otherwise adjourned with respect to all other relief sought therein. The requirements of Bankruptcy Rule 4001(b)(2) and Local Rule 4001-5 are satisfied with respect to the use of Cash Collateral during the Interim Period on an interim and preliminary basis. The rights of all parties, including the Bond Trustee, to object to the relief sought in the Motion are reserved as further provided herein.

5. Authorization to Use Cash Collateral. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues, Rents and Receipts derived by the Debtor in the ordinary course of their business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "Cash Collateral") solely during this Interim Period until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day of the Interim Period, but only on the terms of this Interim

Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget.

6. Exclusions from Cash Collateral. The Debtor is not authorized to use and shall not use any cash collateral of the Bond Trustee, other than Cash Collateral as set forth herein.

7. Replacement Lien. As adequate protection for any diminution in the value of Cash Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Collateral"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, other than the Debtor's rights under that certain Liquidity Support Agreement (the "LSA") between the Debtor and Amsterdam Continuing Care Health System, Inc. dated as of June 14, 2021 (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Postpetition Collateral"); provided, however, that actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Sections 542, 544,

545, 547, 548 (exclusive of transferees under Section 549), 550 and 553 of the Bankruptcy Code shall not be Postpetition Collateral under this Interim Order.

8. No Further Action Required. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the liens granted to the Bond Trustee herein, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; provided, however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9. Superpriority Claim. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the

Debtor's estate other than the Debtor's rights under the LSA (the "Secured Party Superpriority Claim"). The Secured Party Superpriority Claim shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of a final order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

10. Adequate Protection Payment. In consideration of the use of Cash Collateral, the Debtor shall make an adequate protection payment to the Bond Trustee in the amount of any Diminution, if any, during the Interim Period that is agreed to by the parties within ten (10) business days of the expiration of the Interim Period, unless the Bond Trustee has consented to the ongoing use of Cash Collateral by such expiration. In the event that the Debtor and the Bond Trustee do not agree on the amount of Diminution, the Court shall determine such amount on application or motion by the Bond Trustee on regular notice to the Debtor. Any such payment made by the Debtor shall be irrevocable and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code Sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b). For the

avoidance of doubt, any such payment shall be without prejudice to the right of the Bond Trustee to assert a claim for payment of additional amounts in accordance with the Bond Documents. The Debtor expressly reserves the right to dispute any claimed Diminution by the Bond Trustee.

11. Financial Information. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, from and after the entry of this Interim Order and during the Interim Period, the Debtor shall provide to the Bond Trustee once each week (commencing with March 31, 2023), a weekly report certified by an authorized representative of the Debtor and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives to discuss matters pertaining to The Harborside and the Chapter 11 Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

12. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (a "Termination Event"):

(i) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii) this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the Bond Trustee;

(iii) the Debtor violates any term or condition of this Interim Order;

(iv) the Debtor pays any line-item expenses in a manner, time or amount that is inconsistent with the Cash Collateral Budget;

(v) the Debtor fails to provide the stalking horse purchaser letter of intent/term sheet to the Bond Trustee by March 27, 2023; or

(vi) the Debtor fails to provide a comprehensive response to the Bond Trustee's debtor-in-possession financing term sheet by March 28, 2023.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis and the Bond Trustee expressly reserves the right to object to such request. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph in its sole discretion without further order of the Court.

13. Carve Out. The Bond Trustee consents to certain expenses incurred during the Interim Period that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "Carve Out"). For purposes hereof, the Carve Out means the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court plus any interest at the statutory rate.

14. Preservation of Rights. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

15. No Competing Liens. Except as set forth herein, during the Interim Period, the Debtor shall not grant liens on, or security interests in, the Bond Collateral or the Postpetition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

16. Negotiations in Good Faith. The Debtor and Bond Trustee agree that, during the Interim Period, they will negotiate in good faith with respect to the terms of any debtor-in-possession financing to be provided by the Bond Trustee, if any.

17. Reservation of Rights. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time, or the right of the Bond Trustee to contest any and all relief sought in the Motion.

18. Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Bond Collateral are not being adequately protected.

19. No Control. Nothing in this Interim Order shall cause the Bond Trustee to be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

20. No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

21. Effectiveness. The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

22. Notices. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

(a) If to the Debtor to:

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050
Attn: Brooke Navarre

with a copy sent contemporaneously by email to:

DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Attn: Rachel Nanes
E-mail: rachel.nanes@us.dlapiper.com

DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Attn: James Muenker
E-mail: james.muenker@us.dlapiper.com

If to the Bond Trustee to:

UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Mark Kalla

with a copy sent contemporaneously by email to:

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
Attn: Daniel Bleck
Eric Blythe
E-mails: dsbleck@mintz.com
erblythe@mintz.com

23. Notice of Further Interim Hearing. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of a further interim hearing, to the Notice Parties.

24. Further Interim Hearing; Objections. A further interim hearing to consider the Motion will be held on April 5, 2023 at 11:00 a.m. (EST) before the Honorable Alan S. Trust. Any party desiring to object to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before April 3, 2023 at 4:00 p.m. (EST) and shall

contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

Dated: March 28, 2023
Central Islip, New York

Alan S. Trust
Chief United States Bankruptcy Judge

**Exhibit A**

**Cash Collateral Budget**

**Amsterdam House Continuing Care Retirement Community, Inc.**
Projected Weekly Cash Flows - Interim Period
*($ in thousands)*

| | Proj / Act | Proj. | Proj. | Proj. | |
|---|---|---|---|---|---|
| | Week Number | - | 1 | 2 | Proj. |
| | Week Ended | 25-Mar | 1-Apr | 8-Apr | Total |
| 1. | **Total Operating Receipts** | **$ -** | **$ 324** | **$ 3** | **$ 327** |
| 2. | OPERATING DISBURSEMENTS | | | | |
| 3. | Salaries and Wages | - | - | - | - |
| 4. | Employee Benefits | - | - | (39) | (39) |
| 5. | Contract Labor | - | (59) | (59) | (118) |
| 6. | Food Purchases | - | (359) | - | (359) |
| 7. | Medical Supplies | - | (23) | (23) | (46) |
| 8. | General and Administrative | - | (58) | (66) | (124) |
| 9. | Building and Maintenance | - | (62) | (15) | (77) |
| 10. | Other Disbursements | - | (82) | (10) | (92) |
| 11. | Capital Expenditures | - | (8) | (8) | (15) |
| 12. | **Total Operating Disbursements** | **-** | **(650)** | **(219)** | **(869)** |
| 13. | **Operating Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 14. | RESTRUCTURING FEES | | | | |
| 15. | Debtor Professional Fees | - | - | - | - |
| 16. | Creditor Committee Professional Fees | - | - | - | - |
| 17. | Filing / US Trustee Fees | - | - | - | - |
| 18. | Other Professional Fees | - | - | - | - |
| 19. | Process Costs | - | - | - | - |
| 20. | Total Restructuring Fees | - | - | - | - |
| 21. | **Net Cash Flow** | **-** | **(326)** | **(216)** | **(542)** |
| 22. | SUMMARY OF CASH ACTIVITY | | | | |
| 23. | Beginning Cash | 1,132 | 1,132 | 806 | 1,132 |
| 24. | (+/-) Net Cash Flow | - | (326) | (216) | (542) |
| 25. | (+) DIP Borrowing | - | - | - | - |
| 26. | **Ending Cash** | **$ 1,132** | **$ 806** | **$ 590** | **$ 590** |